KAREN PAZZANI, SBN 252133
kjp@millerlawgroup.com
**MILLER LAW GROUP**
12121 Wilshire Blvd., Suite 1375
Los Angeles, CA 90025
Telephone: 310.943.8500
Facsimile: 310.943.8501

SAMUEL ZURIK III (*pro hac vice*)
SZ@kullmanlaw.com
RACHEL E. LINZY (*pro hac vice*)
REL@kullmanlaw.com
**THE KULLMAN FIRM**
A Professional Law Corporation
1100 Poydras Street, Suite 1600
New Orleans, Louisiana 70163
Telephone: (504) 524-4162
Facsimile: (504) 596-4189

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

DAVID L. TOTTEN, an individual, and all others similarly situated,
Plaintiffs

v.

KELLOGG BROWN & ROOT, LLC; MOLYCORP, INC.; and DOES 1 through 100,
Defendants.

Case No.: 5:14-cv-01766-DMG-DTBx

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF INDIVIDUAL AND DISMISS CLASS AND REPRESENTATIVE CLAIMS, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Hon. Dolly Gee
Date: December 5, 2014
Time: 9:30 a.m.
Crtrm: Spring Street, Ct. Rm. 7

[*Declaration of Randy Bynum and Proposed Order filed concurrently herewith*]

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, December 5, 2014, at 9:30 a.m. or as soon thereafter as the matter may be heard in Courtroom #7 of the above-entitled Court located at 312 N. Spring Street Courthouse, 2nd Floor, Los Angeles, CA 90012, Defendants Kellogg Root & Brown, LLC ("KBR") and Molycorp Inc.

("Molycorp") will, and hereby do, move this Court to compel arbitration of Plaintiff David L. Totten's ("Plaintiff") individual claims and to dismiss all claims that Plaintiff purports to bring on behalf of others.

This motion is made pursuant to the parties' express agreement to arbitrate all matters arising out of Plaintiff's employment with KBR, encompassing the claims brought by Plaintiff in this case, on an individual basis. Under controlling authority of the United States Supreme Court, Plaintiff must arbitrate his claims and he cannot proceed in arbitration on behalf of others. Accordingly, the Court should compel arbitration of Plaintiff's individual claims and dismiss his purported class and representative claims.

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Randy Bynum filed concurrently herewith, all pleadings and papers on file herein, and on such other evidence and argument as may be presented at the hearing on this matter. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 2, 2014.

Dated: September 25, 2014

By: /s/ Karen Pazzani
KAREN PAZZANI, SBN 252133
kjp@millerlawgroup.com
**MILLER LAW GROUP**
12121 Wilshire Blvd., Suite 1375
Los Angeles, CA 90025
Telephone: 310.943.8500
Facsimile: 310.943.8501

SAMUEL ZURIK III (*pro hac vice*)
SZ@kullmanlaw.com
RACHEL E. LINZY (*pro hac vice*)
REL@kullmanlaw.com
**THE KULLMAN FIRM**
A Professional Law Corporation
1100 Poydras Street, Suite 1600
New Orleans, Louisiana 70163
Telephone: (504) 524-4162
Facsimile: (504) 596-4189

Attorneys for Defendants

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

A. Plaintiff Worked for KBR on Its Molycorp Contract and Brought Wage and Hour Individual, Class and Representative Claims in Court. .......... 2

B. KBR's DRP Is the Exclusive Means for Resolving Employment Disputes. .......... 3

C. Plaintiff Agreed to Arbitrate His Claims on an Individual Basis. .......... 3

D. All of Plaintiff's Claims Relate to His Employment with KBR .......... 4

III. LEGAL ARGUMENT .......... 5

A. The Court Should Compel Plaintiff to Honor His Agreement and Arbitrate His Claims. .......... 5

1. The Parties Entered into a Valid Agreement to Arbitrate. .......... 5

a. Plaintiff's Agreement to Arbitrate Was Both Expressly Made in Writing and Implied in His Continued Employment. .......... 6

b. The Parties' Mutual Obligation to Arbitrate Constitutes Valid Consideration. .......... 6

2. The Issues in This Lawsuit Fall Within the Scope of the Arbitration Agreement. .......... 7

B. Plaintiff's Individual Claims Should Be Dismissed. .......... 8

C. The Court Should Dismiss Plaintiff's Class and Representative Claims. .......... 9

1. Plaintiff's Class Claims Should Be Dismissed As Contractually Barred. .......... 9

2. Plaintiff's PAGA Representative Claim Should Be Dismissed As Contractually Barred or Stayed. .......... 9

IV. CONCLUSION .......... 11

## TABLE OF AUTHORITIES

### CASES

Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304 (2013) .......... 9

Bradley v. Harris Research, Inc., 275 F.3d 884 (9th Cir. 2001) .......... 11

Comer v. Micor, Inc., 436 F.3d 1098 (9th Cir. 2006) .......... 6

CompuCredit Corp. v. Greenwood, 132 S. Ct. 665 (2012) .......... 9

Cox v. Ocean View Hotel Corp., 533 F.3d 1114 (9th Cir. 2008) .......... 5

Craig v. Brown & Root, Inc., 84 Cal. App. 4th 416 (2000) .......... 5, 6

Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985) .......... 11

Div. of Labor Law Enforcement v. Transpacific Transp. Co., 69 Cal. App. 3d 268 (1977) .......... 5

Doctor's Assocs. Inc. v. Casarotto, 517 U.S. 681 (1996) .......... 11

Eshagh v. Terminix Intern. Co. L.P., No. 1:11cv0222 AWI DLB, 2012 WL 1669416 (E.D. Cal. 2012) (Hon. Beck) .......... 8

Fardig v. Hobby Lobby Stores Inc., No. SACV 14-561 JVS (ANx), 2014 WL 2810025 (C.D. Cal. June 13, 2014) (Hon. Selna) .......... 10, 11

Ingle v. Circuit City Stores, Inc., 328 F.3d 1165 (9th Cir. 2003) .......... 5

Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348 P.3d 129 (2014) .......... 10, 11

Kilgore v. KeyBank, Nat'l Ass'n., 718 F.3d 1052 (9th Cir. 2013) .......... 5

Kruzich v. Chevron Corp., C–11–4488 EMC, 2011 WL 6012959 (N.D. Cal. Dec. 1, 2011) (Hon. Chen) .......... 7

Lewis v. USB Fin. Servs. Inc., 818 F.Supp.2d 1161 (N.D. Cal. 2011) (Hon. Armstrong) .......... 8

Marmet Health Care Ctr., Inc. v. Brown, 132 S. Ct. 1201 (2012) .......... 9

Miguel v. JPMorgan Chase Bank, N.A., No. CV 12–3308 PSG, 2013 WL 452418 (C.D. Cal. Feb. 5, 2013) (Hon. Gutierrez) .......... 1, 10

Mitsubishi Motors Corp. v. Solar-Chrysler-Plymouth, Inc., 473 U.S. 614 (1985) .......... 11

Morgan v. Xerox Corp.,
No. 2:13-cv-00409-TLN-AC, 2013 WL 2151656 (E.D. Cal. May 16, 2013) (Hon. Nunley) .......... 8

Morris v. Ernst & Young LLP,
C–12–04964 RMW, 2013 WL 3460052 (N.D. Cal. July 9, 2013) (Hon. Whyte) . 6

Morvant v. P.F. Chang's China Bistro, Inc.,
870 F. Supp. 2d 831 (N.D. Cal. 2012) (Hon. Rogers) .......... 9

Murphy v. DirecTV, Inc.,
724 F. 3d 1218 (9th Cir. 2013) .......... 1, 9

Radcliffe v. Bynum's Hiw, Inc.,
CV 11-02517 TJH MANX, 2011 WL 8001402 (C.D. Cal. June 30, 2011) (Hon. Hatter) .......... 7

Richards v. Ernst & Young, LLP,
No. 11-17530, 2013 U.S. App. Lexis 17488 (9th Cir. Aug. 21, 2013) (per curiam) .......... 11

Sparling v. Hoffman Constr. Co. Inc.,
864 F.2d 635 (9th Cir. 1988) .......... 8

Stolt-Nielson S.A. v. Animal Feeds Int'l Corp.,
559 U.S. 662 (2010) .......... 1, 9

Thinkjet Ink Info. Res., Inc. v. Sun Microsystems, Inc.,
368 F.3d 1053 (9th Cir. 2004) .......... 8

Thomas v. Home Depot USA Inc.,
527 F. Supp. 2d 1003 (N.D. Cal. 2007) (Hon. Jenkins) .......... 11

Thomson-CSF v. Am. Arbitration Ass'n.,
64 F.3d 773 (2d Cir. 1995) .......... 7

Velazquez v. Sears, Roebuck and Co.,
13CV680-WQH-DHB, 2013 WL 4525581 (S.D. Cal. Aug. 26, 2013) (Hon. Hayes) .......... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff David Totten ("Plaintiff") entered into a valid arbitration agreement with Defendant Kellogg Brown & Root, LLC ("KBR"), pursuant to which ***Plaintiff agreed to arbitrate all matters*** arising out of his employment with KBR on an individual basis. In this written agreement, ***Plaintiff expressly waived any right*** he might ostensibly have ***to bring class or representative claims***. Plaintiff nevertheless filed this lawsuit against Defendants asserting individual, class, and representative employment claims in direct contravention of his contractual agreement. Therefore, the Court should compel arbitration of Plaintiff's individual claims and dismiss his class and representative claims in accordance with the parties' valid and enforceable agreement. In the alternative, the Court should compel arbitration of Plaintiff's individual claims, dismiss his class claims, and stay his representative claim pending resolution of the individual arbitration.

Pursuant to United States Supreme Court governing precedent, arbitration agreements must be enforced according to their terms and in accordance with the expectations of the parties. AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748, 1753 (2011); Stolt-Nielson S.A. v. Animal Feeds Int'l Corp., 559 U.S. 662, 684 (2010); Murphy v. DirecTV, Inc., 724 F. 3d 1218, 1228 (9th Cir. 2013); Miguel v. JPMorgan Chase Bank, N.A., No. CV 12–3308 PSG, 2013 WL 452418, *10 (C.D. Cal. Feb. 5, 2013) (Hon. Gutierrez). Accordingly, the Court should enforce Plaintiff's agreement to arbitrate according to its terms, compel arbitration of Plaintiff's individual claims, and dismiss Plaintiff's class and representative action claims, or in the alternative, stay his representative action claims.

## II. STATEMENT OF FACTS

### A. Plaintiff Worked for KBR on Its Molycorp Contract and Brought Wage and Hour Individual, Class and Representative Claims in Court.

KBR hired Plaintiff on January 16, 2012. (See Declaration of Randy Bynum, filed concurrently herewith.) At his new hire orientation, Plaintiff signed an acknowledgment of and agreement to KBR's Dispute Resolution Program. (See Signed Agreement, attached as Ex. B to Bynum Decl.) KBR terminated Plaintiff's employment on or around June 24, 2013 for job abandonment.[1] (Id.) At that time, Plaintiff was working for KBR at the Mountain Pass rare earth mine in California where KBR provided services to Molycorp Inc. ("Molycorp"). (Id.) Following his discharge, Plaintiff filed suit in the "Superior Court of the State of California County of San Bernadino – San Bernardino District, Civil" against KBR, Molycorp, and Does 1 through 100 (collectively "Defendants") alleging a variety of state wage and hour violations during his employment.

On July 22, 2014, Plaintiff amended his Complaint, alleging the following causes of action (1) failure to pay wages for all hours worked at the minimum wage rate, in violation of California Labor Code Sections 1194 and 1197; (2) failure to pay overtime wages for daily overtime and all time worked, in violation of California Labor Code Sections 510, 1194, and 1198; (3) failure to provide second meal periods or pay meal period premium wages, in violation of California Labor Code Sections 512 and 226.7; (4) failure to provide complete and accurate wage statements, in violation of California Labor Code Section 226; (5) failure to timely pay all earned wages due at the time of separation of employment, in violation of California Labor Code Sections 201, 202, and 203; (6) unfair business practices, in violation of California Business and Professions Code Section 17200, *et seq.*; and (7) civil penalties pursuant to California Labor Code Section 2698, *et seq.* (the

[1] Plaintiff was a no call/no show from June 13, 2013 until his discharge. (Bynum Decl.)

Private Attorneys General Act or "PAGA"). (Doc. 1-1.) Defendants timely removed the matter to federal court.

### B. KBR's DRP Is the Exclusive Means for Resolving Employment Disputes.

KBR implemented a comprehensive Dispute Resolution Program ("DRP"), which provides KBR employees with a mandatory system for settling workplace conflicts with KBR and/or its clients. (Bynum Decl., ¶5.) Specifically, the DRP constitutes the exclusive means for KBR and its employees to resolve workplace disputes. (See DRP, attached as Ex. A to Bynum Decl., at pgs. 1, 5.) Under the DRP, all disputes arising out of an employee's employment with KBR or the termination of an employee's employment must be resolved through arbitration under the DRP instead of through trial before a court. (See DRP, at pp. 3-4.)

Moreover, the DRP binds employees to bring in arbitration their claims against not just KBR, but also specifically enumerated third-parties, including KBR's clients (such as Molycorp):

> This Program is intended to be for the benefit of the Company's clients, customers, contractors, and vendors, who are intended third-party beneficiaries of this Dispute Resolution Plan. The mandatory arbitration provisions of this Plan shall be applicable to all Disputes between Employees and the Company's clients, customers, contractors, and vendors, who shall have the right to enforce the provisions of the Plan.

(See DRP at p. 4.) In addition, the DRP bars both KBR and Plaintiff from pursuing claims on a class, collective, or representative basis:

> Each Dispute shall be arbitrated on an individual basis. Neither the Company nor any Employee or Applicant may pursue any Dispute on a class action, collective action or consolidated basis or in a representative capacity on behalf of other persons or entities who are claimed to be similarly situated, or participate as a class member in such a proceeding. The arbitrator in any proceeding under this Plan shall have no authority to conduct the matter as a consolidated, class, or collective action.

(See DRP at p. 5.)

### C. Plaintiff Agreed to Arbitrate His Claims on an Individual Basis.

Notably, Plaintiff signed an agreement to be bound by the DRP on his first day of employment -- January 16, 2012. (See Signed Agreement.) In his Signed

Agreement to the DRP, Plaintiff:

(1) acknowledged that he received and reviewed a copy of the DRP;

(2) specifically agreed "to the terms of the Program";

(3) acknowledged that he "[understood] that [the] agreement [was] a condition of [his] employment with the Company"; and

(4) acknowledged that he understood that the DRP "requires that certain legal claims [] against the Company be resolved through binding and final arbitration instead of any court system."

(Id.) As part of KBR's new hire orientation, KBR briefed Plaintiff on the DRP and provided him with an opportunity to ask any questions he might have about the DRP before signing it. (Bynum Decl., ¶¶ 7-9) Plaintiff continued his employment with KBR after he signed the agreement to be bound by the DRP and received briefing on the DRP. (Bynum Decl., ¶¶ 9-10.)

Accordingly, through his signed agreement and orientation, Plaintiff was fully aware that the DRP constituted his exclusive means of resolving workplace disputes against KBR or KBR's clients. In the instant case, Plaintiff did not follow the DRP, but instead breached his agreement and filed this lawsuit in the Superior Court of California. As a result, Defendants file the instant motion to compel Plaintiff to arbitration per his contractual agreement and obligation to do so.

**D. All of Plaintiff's Claims Relate to His Employment with KBR.**

The DRP broadly covers "all legal and equitable claims… with respect to… [t]he employment… of an Employee, including but not limited to the terms, conditions, or termination of such employment …[or] any other matter related to or concerning the relationship between the Employee and [KBR]. (DRP at pg. 2.) Moreover, the DRP explicitly provides that it applies to claims alleging the failure to pay wages. (Id.)

Plaintiff's allegations in this matter all arise out of or relate to the alleged failure to pay him wages. [Doc.1-1.] Because all of his claims arise out of his

employment with and compensation from KBR, this dispute falls squarely within the scope of the DRP. (DRP, pgs. 2-3.)

## III. LEGAL ARGUMENT

### A. The Court Should Compel Plaintiff to Honor His Agreement and Arbitrate His Claims.

The Court need only determine whether the parties have entered into a valid agreement to arbitrate their dispute in order to compel arbitration. Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 119 (9th Cir. 2008) ("The [Federal Arbitration Act ('FAA')] limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.") (internal citations omitted); Kilgore v. KeyBank, Nat'l Ass'n., 718 F.3d 1052, 1058 (9th Cir. 2013) ("The FAA mandates that district courts ***shall*** direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original) (internal quotations omitted). Both of those requirements are met here: Plaintiff agreed in no uncertain terms to arbitrate, and his wage and hour disputes are explicitly covered by the DRP. Thus, Plaintiff should be compelled to arbitrate per the DRP.

#### 1. The Parties Entered into a Valid Agreement to Arbitrate.

The parties plainly entered into "a valid agreement to arbitrate." Kilgore, 718 F.3d at 1058. With respect to the "validity" inquiry, courts generally apply ordinary state law contract principles. Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003). Under California law, a contract is valid if there is mutual assent between the parties and valid consideration. Div. of Labor Law Enforcement v. Transpacific Transp. Co., 69 Cal. App. 3d 268, 275 (1977) (stating mutual assent and consideration as the elements of a valid contract); see also Craig v. Brown & Root, Inc., 84 Cal. App. 4th 416, 420 (2000) (noting that general contract principles determine whether an arbitration agreement is binding) (specifically enforcing earlier version of same DRP as at issue in the instant

litigation). Here, the DRP meets both of the validity requirements.

**a. Plaintiff's Agreement to Arbitrate Was Both Expressly Made in Writing and Implied in His Continued Employment.**

***First, Plaintiff clearly, and in writing, assented to the DRP.*** (Bynum Decl., ¶9; Signed Agreement.) Notably, just above Plaintiff's signature, the Signed Agreement expressly states that Plaintiff had "received and reviewed a copy of the KBR Dispute Resolution Plan and Rules," "agreed to the terms of the Program," and understood that certain legal claims must be "resolved through binding and final arbitration instead of any court system." (Signed Agreement.) Accordingly, Plaintiff manifestly expressed his assent to be bound by the DRP.

Separate and apart from his express assent to the DRP, ***Plaintiff also implicitly agreed to the DRP by continuing to work for KBR.*** After acknowledging and agreeing to be bound by the DRP in writing and receiving briefing on the DRP, Plaintiff continued working for KBR. "California law also deems an at will employee's continued employment after notification of an arbitration program [as] an agreement to be bound by the terms of the arbitration program." Morris v. Ernst & Young LLP, C–12–04964 RMW, 2013 WL 3460052, *3 n. 1 (N.D. Cal. July 9, 2013) (Hon. Whyte) (citing Craig, 84 Cal. App. 4th at 422 (holding that employee was bound by the arbitration program when she received notification of employer's arbitration program through two mailings and continued working)). Thus, assent, both express and implicit, clearly exists here.

**b. The Parties' Mutual Obligation to Arbitrate Constitutes Valid Consideration.**

Second, valid consideration supports the DRP. Under the DRP, the parties mutually exchanged promises to arbitrate thereunder.[2] (Bynum Decl., ¶5; DRP pgs.

[2]The DRP expressly states that it is "intended to be for the benefit of [KBR's] clients, customers, contractors, and vendors, who are intended third-party beneficiaries of this Dispute Resolution Plan…. [and] have the right to enforce [the arbitration] provisions of the Plan." (DRP §3B, pg.4.) Courts have enforced such agreements for third party beneficiaries like Molycorp. See Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) (noting arbitration agreement can be enforced by a non-signatory); Thomson-CSF v. Am. Arbitration Ass'n., 64 F.3d 773, 776 (2d Cir.

4, 5 ("this Plan applies to and binds the Company, each Employee and Applicant…. [t]he Parties forgo any right either may have to a jury trial on claims relating in anyway to any Dispute.")) Moreover, Plaintiff accepted KBR's offer of employment in exchange for his agreement to arbitrate, and he continued to work for KBR after doing so. (Bynum Decl., ¶¶6-10; Signed Agreement ("I understand that this agreement is a condition of my employment with the Company.")) Thus, ***valid consideration exists in the mutual obligations and employment***. Kruzich v. Chevron Corp., C–11–4488 EMC, 2011 WL 6012959, *4 (N.D. Cal. Dec. 1, 2011) (Hon. Chen).

In summary, there is mutual assent by the parties and sufficient consideration to support the DRP. The DRP, therefore, is valid under California contract law and should be enforced. Radcliffe v. Bynum's Hiw, Inc., CV 11-02517 TJH MANX, 2011 WL 8001402, *1 (C.D. Cal. June 30, 2011) (Hon. Hatter).

### 2. The Issues in This Lawsuit Fall Within the Scope of the Arbitration Agreement.

As discussed above, the DRP expressly covers claims "concerning the relationship between the Employee and the Company including…allegations of…failure to pay wages." (DRP, pg. 2.) Plaintiff claims that KBR failed to pay him for all hours worked, including overtime and lunch breaks, in violation of California's labor laws. [See generally Doc. 1-1.] He further claims that KBR failed to issue accurate wage statements and timely pay wages due to the failure to pay him for all hours worked. (Id.) While KBR vigorously disputes the validity and merit of these claims, ***there is no question that the claims fall within the ambit of Plaintiff's employment and/or the payment of wages***.

Accordingly, the DRP is valid and includes within its scope the issues raised by Plaintiff's First Amended Complaint. Thus, the Court should order Plaintiff to

---

1995) (noting that nonsignatory to an arbitration agreement can be bound if incorporated by reference).

arbitrate, and, as shown below, the arbitration should proceed on an individual basis.

### B. Plaintiff's Individual Claims Should Be Dismissed.

Plaintiff's individual claims should be dismissed rather than stayed. Pursuant to Ninth Circuit authority, the Court may exercise its discretion and dismiss the entire action pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction and/or FRCP 12(b)(3) for improper venue. As the Ninth Circuit said in Sparling v. Hoffman Constr. Co. Inc., 864 F.2d 635, 638 (9th Cir. 1988):

> This Court held that 9 U.S.C. § 3 gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause. Thus, the provision did not limit the court's authority to grant a dismissal in the case.

Id.; see also Thinkjet Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004) (finding dismissal, instead of a stay, of plaintiffs' claims that were subject to arbitration agreement was appropriate); Morgan v. Xerox Corp., No. 2:13-cv-00409-TLN-AC, 2013 WL 2151656, *7 (E.D. Cal. May 16, 2013) (Hon. Nunley) (dismissing plaintiff's complaint because claim subject to arbitration); Eshagh v. Terminix Intern. Co. L.P., No. 1:11cv0222 AWI DLB, 2012 WL 1669416, *11 (E.D. Cal. 2012) (Hon. Beck) (holding FAA gives court discretion to dismiss claims subject to an arbitration agreement); Lewis v. USB Fin. Servs. Inc., 818 F.Supp.2d 1161, 1165 (N.D. Cal. 2011) (Hon. Armstrong) (same).

Hence, because the DRP is enforceable and encompasses Plaintiff's claims against Defendants, the Court should compel to arbitration and dismiss with prejudice the individual claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(3). In the alternative, Defendants request that the Court compel Plaintiff to pursue his claims in arbitration on an individual basis and stay this proceeding pending the outcome of the arbitration.

**C. The Court Should Dismiss Plaintiff's Class and Representative Claims.**

**1. Plaintiff's Class Claims Should Be Dismissed As Contractually Barred.**

Per United States Supreme Court precedent, waivers of class actions are valid and enforceable. Moreover, the Supreme Court has held that class arbitration cannot proceed in the absence of an affirmative agreement to arbitrate on such a basis. Concepcion, 131 S. Ct. at 1751; Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 684 (2010). Here, the parties did not agree to class or representative arbitration. To the contrary, the parties specifically agreed that class and representative claims are barred. (DRP at pg. 5 ("***neither the Company nor any Employee… may pursue any Dispute on a class action, collective action or consolidated basis***....") (emphasis added)). Thus, Plaintiff has expressly waived any rights he ostensibly might have had to pursue class or representative claims.

Since its landmark Concepcion decision, the United States Supreme Court, on a repeated and consistent basis, has held that arbitration agreements, including class action waivers contained therein, are valid, fully enforceable and must be enforced according to their terms. Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2312 (2013); Marmet Health Care Ctr., Inc. v. Brown, 132 S. Ct. 1201, 1203-04 (2012); CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 673 (2012). And since Concepcion, the Ninth Circuit further confirmed that class action waivers by and between employees and employers are valid and fully enforceable. Murphy, 724 F.3d at 1228; see also, Morvant v. P.F. Chang's China Bistro, Inc., 870 F. Supp. 2d 831, 846 (N.D. Cal. 2012) (Hon. Rogers). Thus, Plaintiff cannot proceed on a class basis and his class claims are subject to immediate dismissal.

**2. Plaintiff's PAGA Representative Claim Should Be Dismissed As Contractually Barred or Stayed.**

In the same vein, numerous district courts in the Ninth Circuit have found that representative action waivers between employers and employees, like the

waiver in Plaintiff's Signed Agreement, are valid and fully enforceable. Velazquez v. Sears, Roebuck and Co., 13CV680-WQH-DHB, 2013 WL 4525581, *7 (S.D. Cal. Aug. 26, 2013) (Hon. Hayes) (compelling arbitration of PAGA claim); Miguel, 2013 WL 452418, at *10 (holding individual PAGA claims are arbitrable and a representative PAGA action could not proceed in court due to representative action waiver); Grabowski v. Robinson, 817 F. Supp. 2d 1159, 1181 (S.D. Cal. 2011) (Hon. Hayes). This Court, in Fardig v. Hobby Lobby Stores Inc., No. SACV 14-561 JVS (ANx), 2014 WL 2810025 (C.D. Cal. June 13, 2014) (Hon. Selna), held just three months ago that "***a state law rule requiring arbitration agreements to permit collective PAGA actions is preempted as inconsistent with the objectives of the FAA.***" Id. at *6 (emphasis added). As a result, the Fardig court compelled arbitration of the plaintiff's PAGA claims on an individual basis and enforced the contractual bar on representative actions contained with the arbitration agreement. Id. at *7.

In the DRP, the parties agreed that neither could pursue any dispute "in a representative capacity on behalf of other persons or entities who are claimed to be similarly situated." (DRP at pg. 5.) Thus, ***Plaintiff's PAGA claims on behalf of others similarly situated are expressly barred per his contractual agreement and applicable Ninth Circuit precedent***.

While Plaintiff may argue that the California Supreme Court's holding in Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 360, 327 P.3d 129, 133 (2014),[3] mandates that Plaintiff's representative PAGA action remain in court, this argument must fail. Any state law rule that is inconsistent with the FAA – such as one which requires individuals to be able to pursue PAGA actions on a representative basis in contravention of a contractual agreement to the contrary – is

[3] In Iskanian, the California Supreme Court held that as a matter of public policy in California, an arbitration agreement cannot require an employee to give up the right to bring representative PAGA actions in any forum. 59 Cal. 4th at 360. It should be noted, however, that Iskanian also found that arbitration waivers of class actions are valid and enforceable. Id.

preempted by the FAA.[4] See, e.g., Fardig, 2014 WL 2810025. Based upon this well established legal principle, the defendant has appealed the representative PAGA waiver holding in Iskanian to the United States Supreme Court. (Petition for Writ of Certiorari, attached hereto.)

Accordingly, here, Plaintiff's representative PAGA claim should be dismissed. In the alternative, the appropriate course of action is to stay the representative PAGA claim pending resolution of Plaintiff's individual arbitration, or at the least, the Iskanian appeal, as the individual arbitration could result in the final and binding dismissal of some or all of Plaintiff's claims, thus rendering Plaintiff an inappropriate PAGA representative.[5] To move forward with both concurrently – individual claims in arbitration and PAGA representative claims in court – risks inconsistent holdings and judicial inefficiency.

## IV. CONCLUSION

Plaintiff has expressly agreed in writing to arbitrate his wage and hour claims against Defendant and has expressly waived all class and representative claims. United States Supreme Court and Ninth Circuit precedent have held such agreements to be valid and have enforced both individual arbitrations and class and representative bars. Accordingly, Defendants respectfully request that the Court

[4]The Federal Arbitration Act ("FAA") sets forth a "liberal policy favoring arbitration" and reinforces "the fundamental principle that arbitration is a matter of contract." Concepcion, 131 S. Ct. at 1745. The primary purpose of the FAA is to "enforce private agreements into which parties [have] entered." Mitsubishi Motors Corp. v. Solar-Chrysler-Plymouth, Inc., 473 U.S. 614, 625-26 (1985) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)). To that end, the FAA requires courts to "rigorously enforce agreements to arbitrate." Mitsubishi Motors, 473 U.S. at 626; Richards v. Ernst & Young, LLP, No. 11-17530, 2013 U.S. App. Lexis 17488, *6-7 (9th Cir. Aug. 21, 2013) (per curiam) ("[T]he Supreme Court recently has reiterated that 'courts must rigorously enforce arbitration agreements according to their terms'…"). Thus, the FAA requires district courts to direct parties to comply with the provisions of a valid arbitration agreement. 9 U.S.C. §§3, 4. Further, to the extent that state law carves out special rules for arbitration agreements that do not apply generally to all contracts, the Supreme Court holds that such law is "inconsistent with, and is therefore preempted by, the federal [arbitration act]." Doctor's Assocs. Inc. v. Casarotto, 517 U.S. 681, 688 (1996); Bradley v. Harris Research, Inc., 275 F.3d 884, 890 (9th Cir. 2001) (holding FAA preempted state franchise statute addressing forum selection clauses).

[5]See, e.g., Thomas v. Home Depot USA Inc., 527 F. Supp. 2d 1003, 1008-09 (N.D. Cal. 2007) (Hon. Jenkins) (finding named plaintiff's PAGA claim was untimely and therefore, dismissing representative PAGA action).

order Plaintiff to submit his individual claims to arbitration and dismiss all of Plaintiff's class and representative claims. In the alternative, Defendants request that the Court order Plaintiff to submit his individual claims to arbitration, dismiss his class claims, and stay his representative PAGA claim pending resolution of the arbitration of the individual claims and/or a determination by the United States Supreme Court regarding the enforceability of a waiver of a PAGA representative claim.

Respectfully submitted this 25th day of September, 2014.

Dated: September 25, 2014

By: /s/ Karen Pazzani

KAREN PAZZANI, SBN 252133
kjp@millerlawgroup.com
**MILLER LAW GROUP**
12121 Wilshire Blvd., Suite 1375
Los Angeles, CA 90025
Telephone: 310.943.8500
Facsimile: 310.943.8501

SAMUEL ZURIK III (*pro hac vice*)
SZ@kullmanlaw.com
RACHEL E. LINZY (*pro hac vice*)
REL@kullmanlaw.com
**THE KULLMAN FIRM**
A Professional Law Corporation
1100 Poydras Street, Suite 1600
New Orleans, Louisiana 70163
Telephone: (504) 524-4162
Facsimile: (504) 596-4189

Attorneys for Defendants

2014 WL 4730633 (U.S.) (Appellate Petition, Motion and Filing)
Supreme Court of the United States.

CLS TRANSPORTATION LOS ANGELES, LLC, Petitioner,
v.
Arshavir ISKANIAN, Respondent.

No. 14-341.
September 22, 2014.

On Petition for a Writ of Certiorari to the Supreme Court of California

**Petition for a Writ of Certiorari**

David F. Faustman, Counsel of Record, Yesenia Gallegos, Cristina Armstrong, Fox Rothschild LLP, 1800 Century Park East, Suite 300, Los Angeles, California 90067, (310) 598-4150, dfaustman@foxrothschild.com.

Leo V. Leyva, Cole, Schotz, Meisel, Forman & Leonard, P.A., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, (646) 563-8930, Attorneys for Petitioner.

***i** QUESTION PRESENTED

Is an employee's waiver in an arbitration agreement of a collective or "representative action" under the California Private Attorneys General Act, Cal. Labor Code § 2698 *et seq.*, so distinguishable from a "class action" waiver that it is immune from the otherwise preemptive effect of the Federal Arbitration Act, 9 U.S. Code § 1, *et seq.*, as held by this Court in *AT&T Mobility v. Concepcion,* 131 S. Ct. 1740 (2011)?

***II PARTIES TO THE PROCEEDING**

Petitioner CLS Transportation Los Angeles, LLC is the defendant in the trial court, and was the respondent in the California Court of Appeal, Second District, Division Two and in the California Supreme Court. Respondent Arshavir Iskanian is the plaintiff in the trial court, and was the appellant in the California Court of Appeal and in the California Supreme Court.

***III CORPORATE DISCLOSURE STATEMENT**

Petitioner CLS Transportation Los Angeles, LLC states that there is no publicly traded corporation that owns 10% or more of its stock.

***iv** TABLE OF CONTENTS

QUESTION PRESENTED ........ i
PARTIES TO THE PROCEEDING ........ ii
CORPORATE DISCLOSURE STATEMENT ........ iii
TABLE OF CONTENTS ........ iv
TABLE OF APPENDICES ........ vii
TABLE OF CITED AUTHORITIES ........ viii
PETITION FOR WRIT OF CERTIORARI ........ 1
OPINIONS BELOW ........ 1
JURISDICTION ........ 1

| | |
|---|---|
| CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED ........................................ | 2 |
| INTRODUCTION ........................................ | 3 |
| STATEMENT OF THE CASE ........................................ | 6 |
| A. Respondent Signed an Arbitration Agreement Waiving His Participation in Class and Representative Actions ........................................ | 6 |
| ***v** B. Petitioner Sought to Compel Arbitration of Respondent's Individual Claims in Response to a Purported Class Action Filed by Respondent ........................................ | 8 |
| C. *Gentry* Required Respondent to Litigate in State Court ........................................ | 8 |
| D. In 2011, *Gentry* Was Implicitly Overruled By *Concepcion* ........................................ | 9 |
| E. The Opinion of the Court of Appeal ........................................ | 10 |
| F. The Opinion of the California Supreme Court ........................................ | 12 |
| WHY THE PETITION SHOULD BE GRANTED ........................................ | 15 |
| A. The FAA Preempts California Law That Purports to Render the Waiver of a PAGA Representative Action Unenforceable ........................................ | 16 |
| B. There is No Principled Difference between a Class Action and a Representative Action under PAGA ........................................ | 20 |
| C. The Qui Tarn Analogy is a False Analogy ........................................ | 22 |
| D. Congress Did Not Exempt State Qui Tam Actions From The FAA ........................................ | 24 |
| ***vi** E. Federal Courts Disagree with the California Supreme Court ........................................ | 26 |
| F. *Iskanian* will Encourage Other States to Disregard the FAA ........................................ | 29 |
| CONCLUSION ........................................ | 30 |

***vii** TABLE OF APPENDICES

| | |
|---|---|
| APPENDIX A - CIVIL MINUTES GENERAL OF THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, FILED AUGUST 11, 2014 ........................................ | 1a |
| APPENDIX B - OPINION OF THE SUPREME COURT OF CALIFORNIA, FILED JUNE 23, 2014 ........................................ | 12a |
| APPENDIX C - OPINION OF THE COURT OF APPEAL OF THE STATE OF CALIFORNIA, SECOND APPELLATE DISTRICT, DIVISION TWO, FILED JUNE 4, 2012 ........................................ | 98a |
| APPENDIX D - LABOR CODE SECTION 2698-2699.5 ........................................ | 128a |

***viii** TABLE OF CITED AUTHORITIES

Cases

| | |
|---|---|
| *Amalgamated Transit Union v. Super. Ct.*, 209 P.3d 937 (Cal. 2009) . | 17, 24 |
| *Amaral v. Cintas Corp. 2*, 163 Cal.App.4th 1157 (Cal. Ct. App. 2008) ........................................ | 17 |
| *American Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2034 (2013) ........................................ | 4, 6, 15 |
| *Arias v. Super. Ct.*, 209 P.3d 923 (Cal. 2009) ........................................ | 17 |
| *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ............. | *passim* |
| *Caliber Bodyworks, Inc. v. Super. Ct.*, 134 Cal.App.4th 365 (Cal. Ct. App. 2005) ........................................ | 22 |
| *Clark v. American Residential Services LLC*, 175 Cal.App.4th 785 (Cal. Ct. App. 2009) ........................................ | 21 |
| *Compucredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012) ................. | 25 |
| *Cunningham v. Leslie's Poolmart, Inc.*, No. 13-2122 CAS (CWs), 2013 WL 3233211 (C.D. Cal. June 25, 2013) ........................................ | 22 |
| ***ix** *Discover Bank v. Super. Ct.*, 113 P.3d 1100 (Cal. 2005) ........... | 9, 21 |
| *Dunlap v. Super. Ct.*, 142 Cal.App.4th 330 (Cal. Ct. App. 2006) ........ | 21, 23 |
| *Echavez v. Abercrombie and Fitch Co., Inc.*, No. CV 11-9754 GAF (PJWx), 2012 WL 2861348 (C.D. Cal. Mar. 12, 2012) ..................... | 23 |
| *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) ........................... | 13, 14, 15, 28 |
| *Fardig v. Hobby Lobby Stores, Inc.*, No. SAC V 14-00561 JVS (ANx) (C.D. Cal. Aug. 11, 2014) ........................................ | 5, 27 |
| *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992) ............ | 28 |
| *Garabedian v. Los Angeles Cellular Telephone Co.*, 118 Cal.App.4th 123 (Cal. Ct. App. 2004) ........................................ | 21 |
| *Gentry v. Super. Ct.*, 165 P.3d 556 (Cal. 2007) ................................ | 8, 9 |

| | |
|---|---|
| *Grabowski v. C.H. Robinson Co.*, 817 F. Supp. 2d 1159 (S.D. Cal. 2011) .......... | 26 |
| *In re Cal. Title Ins. Antitrust Litig.*, No. 08-01341 JSW, 2011 WL 2566449 (N.D. Cal. June 27, 2011) .......... | 27 |
| ***x** *Kilgore v. KeyBank, N.A.*, 673 F.3d 947 (9th Cir. 2012) .......... | 11, 12, 16, 28 |
| *Marmet Health Care Center, Inc. v. Brown*, 132 S. Ct. 1201 (2012) .. | 25, 30 |
| *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151 (9th Cir. 2013) .......... | 5, 27 |
| *Nelson v. AT&T Mobility LLC*, No. C10-4802,2011 WL 3651153 (N.D. Cal. Aug. 18, 2011) .......... | 26 |
| *People ex rel. Allstate Insurance v. Weitzman*, 107 Cal.App.4th 534 (Cal. Ct. App. 2003) .......... | 22, 23 |
| *Perry v. Thomas*, 482 U.S. 483 (1987) .......... | 3, 16, 22 |
| *Preston v. Ferrer*, 552 U.S. 346 (2008) .......... | 3, 16, 22 |
| *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122 (C.D. Cal. 2011) ....... | 19 |
| *Southland Corp. v. Keating*, 465 U.S. 1 (1984) .......... | *passim* |
| *ShearsonlAmerican Express Inc. v. McMahon*, 482 U.S. 220 (1987) .. | 25 |
| ***xi** *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) .......... | 15 |
| *U.S. ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230 (9th Cir. 1997) .......... | 24 |
| *U.S. ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211 (9th Cir. 1996) .... | 23 |
| *U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993) .......... | 23 |
| *U.S. v. Swords to Plowshares*, 242 F.3d 385 (9th Cir. 2000) .......... | 24 |
| *Valle v. Lowe's HIW, Inc.*, No. 11-1489 SC, 2011WL 3667441 (N.D. Cal. Aug. 22, 2011) .......... | 26 |
| *Wolf v. Nissan Motor Acceptance Corp.*, No. 10-cv-3338 (NLH) (KMW), 2011 WL 2490939 (D.N.J. June 22, 2011) .......... | 27 |
| Statutes and Other Authorities | |
| Article I, Section 8, Clause 3, of the United States Constitution ......... | 2 |
| Article VI, Clause 2, of the United States Constitution .......... | 2 |
| ***xii** 9 U.S.C. §1 .......... | i |
| 9 U.S.C. §2 .......... | 2, 10 |
| 28 U.S.C. § 1257(a) .......... | 1 |
| Cal. Rules of Court 3.769(a) .......... | 21 |
| Cal. Labor Code § 2698 .......... | 3 |
| Cal. Labor Code § 2699 .......... | 18, 19 |
| Cal. Labor Code § 2699(a) .......... | 17, 19, 23 |
| Cal. Labor Code § 2699(e)(2) .......... | 17 |
| Cal. Labor Code § 2699(g)(1) .......... | 21 |
| Cal. Labor Code § 2699(i) .......... | 21 |
| Cal. Labor Code § 2699(l) .......... | 21 |
| *Weil*, Cal. Prac. Guide: Civil Procedure Before Trial § 14:1 .......... | 20 |

## *1 PETITION FOR WRIT OF CERTIORARI

Petitioner CLS Transportation Los Angeles, LLC respectfully petitions for a writ of certiorari to review the judgment of the Supreme Court of California in this case.

## HOPINIONS BELOW

The June 23, 2014 opinion of the California Supreme Court is reported at 59 Cal.4th 348,327 P.3d 129,173 Cal. Rptr.3d 289 (App., 12a - 97a.)

That opinion reversed and remanded the decision of the California Court of Appeal, Second District, Division Two, issued on June 4, 2012, reported at 142 Cal.Rptr.3d 372, and previously published at 206 Cal.App.4th 949. (App., 98a - 127a.)

The June 13, 2011 Order of the California Superior Court, County of Los Angeles, Case Number BC356521/ BC381065, granting Petitioner's motion for renewal of its prior motion for order compelling arbitration, dismissing class claims, and staying action pending the outcome of arbitration, was not reported.

## JURISDICTION

The opinion of the California Supreme Court was filed on June 23,2014. The jurisdiction of this Court is invoked under 28 U.S.C. § 1257(a), which provides for review by this Court of final judgments or decrees on issues of Constitutional law rendered by the highest court of a state in which a decision could be had. *See, e.g.*, *Southland Corp. v. Keating,* 465 U.S. 1, 6-8 (1984).

## *2 CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

Article I, Section 8, Clause 3, of the United States Constitution ("Commerce Clause") provides in part:

> The Congress shall have power … to regulate commerce with foreign nations, and among the several states….

Article VI, Clause 2, of the United States Constitution ("Supremacy Clause") provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and ***3** enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The California Private Attorneys General Act ("PAGA"), Cal. Labor Code § 2698, *et seq.*, is set forth in the appendix to this petition. (App., 128a - 138a.)

## INTRODUCTION

The Legislature and courts of California have a long and notable history of ignoring the preemptive effect of the FAA. From time to time over the past thirty years, this Court has been called upon to remind California that the Commerce Clause, the Supremacy Clause and the FAA require that arbitration agreements must be enforced "according to their terms". See for example, *Southland v. Keating,* 465 U.S. 1 (1984), *Perry v. Thomas,* 482 U.S. 483 (1987), *Preston v. Ferrer,* 552 U.S. 346 (2008), and most recently *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740 (2011) (*"Concepcion"*).

In 2002, the California Legislature enacted PAGA to create a private right of action for employees to sue their employers for various violations of the California Labor Code and to collect civil penalties to be shared with the state. PAGA permits an

employee to bring a "representative action" on behalf of himself and other employees, similar to a class action, and to recover attorney's fees and costs. These PAGA cases can involve millions of dollars in potential damages and fees.

In 2007, a limousine driver named Arshavir Iskanian ("Iskanian" or "Respondent") sued his employer, CLS ***4** Transportation Los Angeles, LLC ("CLS" or "Petitioner"), for alleged wage and hour violations under the California Labor Code. He initially pleaded a traditional "class action," and later added a "representative action" under PAGA. But Iskanian had signed an arbitration agreement specifically waiving any participation in a "class action" or a "representative action." Based upon this Court's decision in *Concepcion*, the trial court dismissed the class action and the PAGA representative action, and compelled Iskanian's individual case to arbitration. A three-justice panel of the California Court of Appeal unanimously affirmed the decision of the trial court. These judges saw no principled distinction between the purported class action and the alleged PAGA representative action for purposes of federal preemption under the FAA.

The California Supreme Court, however, while purporting to acquiesce in *Concepcion* and the more recent *American Express Co. v. Italian Colors Restaurant,* 133 S. Ct. 2034 (2013) ("*American Express*"), strained to distinguish the PAGA claim from the traditional class action. The Court held that while state law prohibiting waiver of a class action in an arbitration agreement was preempted by the FAA, the PAGA representative action was somehow "special" and exempt from the preemptive effect of the FAA:

> [PAGA] authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state [W]e conclude that an arbitration agreement ***5** requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy. In addition, we conclude that the FAA's goal of promoting arbitration as a means of private dispute resolution does not preclude our Legislature from deputizing employees to prosecute Labor Code violations on the state's behalf. Therefore, the FAA does not preempt a state law that prohibits waiver of PAGA representative actions in an employment contract.

(App., 13a.)

The California Supreme Court thus reasoned that a PAGA representative action was somehow different from a class action because the individual is acting as a "proxy" for the state, relieving him of his contractual obligation to arbitrate individually. Thus, the state need only "deputize" an employee to sue his employer in order to avoid the FAA.

This result is manifestly incorrect, and is simply another attempt to insulate a parochial state statute from preemption and enforcement of an arbitration agreement according to its terms. It is, in the words of the Ninth Circuit Court of Appeals, yet another "end run" around the FAA. *Mortensen v. Bresnan Commc'ns, LLC,* 722 F.3d 1151, 1159 (9th Cir. 2013). Indeed, one federal District Court in California has refused to recognize the legitimacy of the California Court's opinion on such an important issue of federal constitutional law. *Fardig v. Hobby Lobby Stores, Inc.,* No. SACV14-00561JVS (ANx) (C.D. Cal. Aug. 11, 2014) (App., 1a - 11a.)

***6** Doubtlessly, the divide between California's state courts and federal courts can only deepen, throwing the enforceability of existing and yet to be implemented arbitration agreements into doubt. Further, the "state proxy" distinction approved by the California Supreme Court will serve as a template for further legislation both in California and other states that would undermine the reach of the FAA.

Petitioner respectfully suggests that the import of this Court's decisions in *Concepcion* and *American Express* has not been fully implemented by the California Supreme Court, and requests that this Court accept *Iskanian v. CLS Transportation Los Angeles, LLC* for consideration. Specifically, Petitioner seeks a reversal of the portion of the holding in the decision below that exempts a waiver of PAGA representative actions in employment arbitration agreements from FAA preemption.

## STATEMENT OF THE CASE

Petitioner CLS provides limousine and other transportation services. Respondent Iskanian worked as a chauffeur for CLS for 17 months, from March 8, 2004 through August 2, 2005.

### A. Respondent Signed an Arbitration Agreement Waiving His Participation in Class and Representative Actions.

In December 2004, Respondent signed a Proprietary Information and Arbitration Policy/Agreement (the "Arbitration Agreement") in conjunction with a settlement agreement in which he received $1,350.00. Respondent agreed not to file any complaint against CLS in state ***7** court. Instead, he agreed to arbitrate all disputes and specifically promised not to file a "class action" or a "representative action". Petitioner and Respondent agreed to arbitrate "any and all claims" arising out of Petitioner's employment. The Arbitration Agreement provided for a neutral arbitrator, reasonable discovery, a written award, and judicial review of the award. Respondent was provided an opportunity to consult counsel before signing. The Arbitration Agreement also stated that Petitioner would pay the arbitrator's fees, costs, and any expenses that were unique to arbitration. Further, the Arbitration Agreement expressly stated that it "shall be governed by and construed and enforced pursuant to the Federal Arbitration Act … and not individual state laws regarding enforcement of arbitration agreements." Finally, it contained a class and representative action waiver, which read:

> Except as otherwise required under applicable law, (1) EMPLOYEE and COMPANY expressly intend and agree that *class action and representative action* procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this Policy/ Agreement; (2) EMPLOYEE and COMPANY agree that each will not assert *class action or representative action* claims against the other in arbitration or otherwise; and (3) each of EMPLOYEE and COMPANY shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person. (App., 14a.) (emphasis added)

***8** Respondent signed the Arbitration Agreement. After briefing and a hearing on the matter, the trial court enforced the Arbitration Agreement in accordance with its terms.

### B. Petitioner Sought to Compel Arbitration of Respondent's Individual Claims in Response to a Purported Class Action Filed by Respondent.

On August 4, 2006, Respondent filed a Class Action Complaint against Petitioner in the California Superior Court for the County of Los Angeles, case number BC356521, alleging various wage and hour claims. On February 9, 2007, Petitioner filed a motion to compel Respondent to arbitrate his claims on an individual basis. The trial court granted the motion. Respondent appealed this decision. While the appeal was pending, the California Supreme Court decided *Gentry v. Superior Court,* 165 P.3d 556 (Cal. 2007) (*"Gentry"*), which held that class action waivers in arbitration agreements were unenforceable under California law if "a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration." 165 P.3d at 568.

### C. *Gentry* Required Respondent to Litigate in State Court.

On May 27,2008, the Court of Appeal directed the trial court to "reconsider [the order compelling arbitration] in light of *Gentry*". Petitioner conceded, and Respondent agreed, that Petitioner's motion to compel arbitration would not prevail under the test set forth in *Gentry*.

***9** Meanwhile, on November 21, 2007, Respondent filed a separate, representative action pursuant to PAGA alleging violations of the California Labor Code ("PAGA Complaint"), California Superior Court for the County of Los Angeles, case number BC381065. On August 28, 2008, the trial court consolidated Respondent's first Complaint with his PAGA Complaint. On September 15, 2008, Respondent filed a Consolidated First Amended Complaint ("Consolidated Complaint") including the PAGA claim. The Consolidated Complaint became the operative complaint in this action.

**D. In 2011, *Gentry* Was Implicitly Overruled By *Concepcion.***

On April 27, 2011, in *Concepcion*, this Court held that class action waivers in arbitration agreements are enforceable under the FAA. *Concepcion* explicitly overruled *Discover Bank v. Superior Court,* 113 P.3d 1100 (Cal. 2005), the decision upon which *Gentry* was based, and ruled that arbitration agreements must be enforced "according to their terms." *Concepcion,* 131 S. Ct. at 1745-46, 1753.

In response to *Concepcion*, on May 16,2011, Petitioner immediately filed a renewed motion to compel individual arbitration on the bases that the class and representative action waiver in its Arbitration Agreement was valid, and that the FAA preempted the *Gentry* holding pursuant to *Concepcion.*

On June 13, 2011, the trial court properly granted Petitioner's renewed motion to compel arbitration. Respondent appealed the trial court's decision. The ***10** California Court of Appeal unanimously affirmed the trial court, finding the class and PAGA representative action waiver was effective.

**E. The Opinion of the Court of Appeal**

On appeal, Respondent contended that the representative PAGA claims were not arbitrable. The Court of Appeal evaluated the legislative history of the statute, as well as other courts' interpretations, and concluded that the class and PAGA representative action waiver was enforceable. On the PAGA issue, the Court of Appeal explained:

We recognize that the PAGA serves to benefit the public and that private attorney general laws may be severely undercut by application of the FAA. But we believe that the United States Supreme Court has spoken on the issue, and we are required to follow its binding authority.

In *Southland Corp. v. Keating, supra,* 465 U.S. at pages 10-11, the United States Supreme Court overruled the California Supreme Court's holding that claims brought under the Franchise Investment Law required judicial consideration and were not arbitrable. The United States Supreme Court held: "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and *withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." (Id.* at p. 10, italics added.) The ***11** Court further clarified the reach of the FAA in *Concepcion* by holding: "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." (*Concepcion, supra,* 131 S. Ct. at p. 1747.)

Iskanian argues that a PAGA action can only effectively benefit the public if it takes place in a judicial forum, outside of arbitration. Iskanian could be correct, but his point is irrelevant. Under *Southland Corp. v. Keating, supra,* 465 U.S. 1, and *Concepcion, supra,* 131 S.Ct. 1740, any state rule prohibiting the arbitration of a PAGA claim is displaced by the FAA.

(App., 118a - 119a.)

The Court of Appeal cited the Ninth Circuit Court of Appeals decision in *Kilgore v. Key Bank, N.A.,* 673 F.3d 947 (9th Cir. 2012), for additional support, explaining:

In *Kilgore*, the plaintiffs brought a class action alleging [Unfair Competition]. The district court declined to enforce arbitration agreements between the plaintiffs and defendants. The Ninth Circuit Court of Appeals reversed …. The court held that "the very nature of federal preemption *requires* that state law bend to conflicting federal law - no matter the purpose of the state law. It is not possible for a state legislature to avoid preemption simply because it intends to do so. The analysis of whether a particular statute precludes waiver of the right ***12** to a judicial forum - and thus whether that statutory claim falls outside the FAA's reach - applies only to *federal*, not state, statutes." (*Kilgore, supra,* 673 F.3d at p. 962.) The court observed that some members of the United States Supreme Court had expressed the view that section 2 of the FA A should be interpreted in a manner that would not prevent states from prohibiting arbitration on public policy grounds, but that view did not prevail. (673 F.3d at p. 962.) "We read the Supreme Court's decisions on FAA preemption to mean that, other than the savings clause, the only way a particular statutory claim can be held inarbitrable is if *Congress* intended to keep that *federal* claim out of arbitration proceedings …." (*Ibid.*)

This reasoning is directly applicable here. Following *Concepcion*, the public policy reasons underpinning PAGA do not allow a court to disregard a binding arbitration agreement. The FAA preempts any attempt by a court or state legislature to insulate a particular type of claim from arbitration.

(App., 120a.)

The Court of Appeal, thus, unanimously agreed with Petitioner that the PAGA representative claim was preempted.

**F. The Opinion of the California Supreme Court**

On the PAGA issue, the California Supreme Court reversed and remanded to the Court of Appeal. ***13** Notwithstanding the FAA and Supremacy Clause, the California Supreme Court determined that waiver of a PAGA representative action in an arbitration agreement was "contrary to public policy and unenforceable as a matter of state law". (App., 56a.)

The majority determined that PAGA was a non-waivable statutory right that fell outside the reach of FAA preemption and the reasoning of *Concepcion.* It said that a PAGA claim lies outside the FAA's coverage because it is not a private dispute between an employer and an employee arising out of their contractual relationship, but rather a "dispute between an employer and the state …." (App., 57a.) The majority likened a PAGA representative action to a "qui tarn action" (that is supposedly not waivable), and divined that Congress did not intend for the FAA to cover qui tarn cases. (App., 52a - 53a, 58a.) The majority also suggested that this Court's decision in *EEOC v. Waffle House, Inc.,* 534 U.S. 279 (2002), somehow supported the notion that FAA preemption did not apply to waivers of PAGA representative actions. (App., 60a - 61a.)

In concurrence, Justice Ming W. Chin disagreed with the majority's analysis of FAA preemption. [1] Justice Chin disputed the majority's underlying premise that a PAGA action was not a private dispute, because "a person may not bring a PAGA action unless he or she is 'an aggrieved employee' (§ 2699, subd. (a)), i.e., a person 'who was ***14** employed by' the alleged Labor Code violator and 'against whom' at least one of the alleged violations 'was committed (§ 2699, subd. (c))." (App., 77a - 78a.) Justice Chin further explained that "[u]nder the majority's view that PAGA claims 'lie[] outside the FAA's coverage' because they are not disputes between employers and employees 'arising out of their contractual relationship' … the state may, without constraint by the FAA, simply ban arbitration of PAGA claims and declare agreements to arbitrate such claims unenforceable. I do not subscribe to that view, for which the majority offers no case law support." (App., 78a.) Justice Chin also quarreled with the majority's analysis of *Waffle House,* explaining that it "actually *does* suggest that the FAA preempts the majority's rule." (App., 79a) (internal citation omitted). He stated:

The question there was whether, under the FAA, an agreement between an employer and an employee to arbitrate employment related disputes precluded the Equal Employment Opportunity Commission (EEOC), which was not "a party to" the arbitration agreement and had never "agreed to arbitrate its claims," from pursuing victim-specific relief in a judicial enforcement action.

 © 2014 Thomson Reuters. No claim to original U.S. Government Works. 

(*Waffle House, supra*, at p. 294.) The court said "no," explaining that nothing in the FAA "place[s] any restriction on a nonparty's choice of a judicial forum" (*Waffle House, supra*, at p. 289) or requires a "nonparty" to arbitrate claims it has not agreed to arbitrate (*id.* at p. 294). Because Iskanian is a party to the arbitration agreement in this case, this holding is inapposite. What is apposite in *Waffle House* is the court's statement that ***15** the FAA "ensures the enforceability of private agreements to arbitrate." (*Waffle House, supra*, 534 U.S. at p. 289.) This statement, which simply reiterates what the court has said "on numerous occasions" (*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 682 [176 L. Ed. 2d 605,130 S. Ct. 1758]), casts considerable doubt on the majority's view that the FAA permits either California or its courts to declare private agreements to arbitrate PAGA claims categorically unenforceable.

(App., 79a.)

The concurring opinion thus demonstrates that the majority's analysis of PAGA is fatally flawed.

## WHY THE PETITION SHOULD BE GRANTED

California purports to have created a statute, whereby an employee can sue an employer in civil court, that is off limits to arbitration agreements and immune from the preemptive sweep of the FAA. While the California Supreme Court's majority opinion purports to acquiesce in this Court's decisions in *Concepcion* and *American Express*, it goes on to create an exception for PAGA that swallows the rule of FAA preemption. It creates a rule where, in order to avoid FAA preemption, all a state need do is "deputize" its citizens to sue private parties notwithstanding valid arbitration agreements to the contrary. This Court should grant certiorari and reverse the California Supreme Court on this point.

### *16 A. The FAA Preempts California Law That Purports to Render the Waiver of a PAGA Representative Action Unenforceable.

The notable errors in the majority opinion are cogently set out in the concurring opinion of Justice Chin. He takes issue with the reasoning "for which the majority offers no case law support." (App., 78a.) He finds that the majority has adopted an incorrect and "novel theory … that renders the FAA completely inapplicable to PAGA claims." (*Id.*)

The notion that a PAGA action cannot be contravened by a private arbitration agreement because it was established for a so-called "public reason" is contrary to well-established law. *See, e.g.*, *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984) (finding the California Franchise law preempted by the FAA); *Perry v. Thomas*, 482 U.S. 483, 490-491 (1987) (finding the California Labor Code Section 229 preempted by the FAA); *Preston v. Ferrer*, 552 U.S. 346, 359 (2008) (finding the California Talent Agencies Act preempted by the FAA). "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Concepcion*, 131 S. Ct. at 1747 (holding that the waiver of a class action, a statutory procedure that presumably benefits the public, is enforceable); *see also Kilgore v. Keybank Nat'l Assn.* 673 F.3d 947,962 (9th Cir. 2012) ("[T]he very nature of federal preemption *requires* that state law bend to conflicting federal law - no matter the purpose of the state law. It is not possible for a state legislature to avoid preemption simply because it intends to do so.") Arguably, anything a state legislature does is supposedly for a public reason. Such is not enough to avoid scrutiny under the FAA.

***17** The notion that the Arbitration Agreement eliminates an employee's ability to bring a PAGA claim in any forum is unsupported. PAGA, by itself, does not confer any right on Respondent. There is no such thing as a "violation of PAGA". The civil penalties available under PAGA are for violations of other substantive sections of the Labor Code, and are discretionary. Cal. Labor Code § 2699(e)(2). Rather, the "substantive rights" conferred on Respondent are found in the underlying Labor Code provisions at issue. The California Supreme Court itself has held that the "Labor Code Private Attorney General Act of 2004 *does not create property or any other substantive rights.*" *Amalgamated Transit Union v. Super. Ct.*, 209 P.3d 937, 943 (Cal. 2009) (emphasis added). PAGA is simply one of several ways by which an employee may seek to enforce that substantive

right. *See Amaral v. Cintas Corp. 2*, 163 Cal.App.4th 1157, 1199 (Cal. Ct. App. 2008) ("PAGA did not impose new or different liabilities on defendants based on their past conduct.… It merely changed the procedural rules governing *who* has authority to sue for certain penalties."). Indeed, by its own terms, PAGA is "an alternative" to the prosecution of a Labor Code violation by "the Labor and Workforce Development Agency ("LWDA"), or any of its departments, divisions, commissions, boards, agencies or employees." Cal. Labor Code § 2699(a).

Moreover, an employee has no entitlement or obligation to bring a PAGA representative action. "[L]abor law enforcement agencies were to retain primacy over private enforcement efforts." *Arias v. Super. Ct.*, 209 P.3d 923,929-30 (Cal. 2009). An aggrieved employee must provide written notice to the LWDA before he or she can file a PAGA representative action, and thereafter he or she ***18** can only file a representative action if the LWDA declines to investigate or if the LWDA fails to respond to the notice in a timely manner, Cal. Labor Code § 2699.3, and if no other employee files first. If, however, the employee is permitted to file a PAGA action, the employee retains all prosecutorial discretion in how the action proceeds and is not limited by the state.

In addition, arbitration does not limit an employee's individual recovery of penalties under PAGA. The California Supreme Court did not hold otherwise. In fact, approximately 60 former members of the previously certified class in this case filed individual arbitrations seeking recovery of individual PAGA penalties. As one federal court explained:

> [R]equiring arbitration agreements to allow for representative PAGA claims on behalf of other employees would be inconsistent with the FAA. A claim brought on behalf of others would, like class claims, make for a slower, more costly process. In addition, representative PAGA claims "increase[] risks to defendants" by aggregating the claims of many employees. *See [Concepcion,* 131 S.Ct.] at 1752. Defendants would run the risk that an erroneous decision on a PAGA claim on behalf of many employees would "go uncorrected" given the "absence of multilayered review." *See id.* Just as "[a]rbitration is poorly suited to the higher stakes of class litigation," it is also poorly suited to the higher stakes of a collective PAGA action. *See id.* … *AT&T v. Concepcion* makes clear, however, that the state cannot impose such a ***19** requirement because it would be inconsistent with the FAA. *See Concepcion*, 131 S.Ct. at 1753.

*Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1142 (C.D. Cal. 2011).

The fact that Respondent must split any recovered penalties with the State does not change this analysis. PAGA's statutory language does not require representation of other aggrieved employees to recover civil penalties. Cal. Labor Code § 2699(a) (indicating that Penalties under relevant Labor Code provisions "*may* … be recovered by an aggrieved employee on behalf of himself or herself and other current or former employees" (emphasis added)). This analysis is supported further by the statute's legislative history. *See, e.g.*, Assembly Committee on Judiciary, Labor Code Private Attorneys General Act of 2004, Date of Hearing June 26, 2003, available online at: http:// www.leginfo.ca.gov/pub/03-04/bill/sen/ sb_0751-0800/ sb_796_cfa_20030626_110301_ asm_comm. html ("[P]rivate suits for Labor Code violations could be brought only by an employee or former employee of the alleged violator against whom the alleged violation was committed. This action *could* also include fellow employees also harmed by the alleged violation." (emphasis added)). Further, even the title of Section 2699 of the Labor Code reads "Actions brought by *an aggrieved employee or on behalf of self or other current or former employees.*" Cal. Labor Code § 2699 (emphasis added). It follows that an aggrieved individual can seek civil penalties under PAGA for himself or herself regardless of the existence of other current or former employees. Otherwise, the majority opinion leads to the absurd result that part of the case ***20** is arbitrated while the PAGA representative claims for civil penalties is separately litigated. This destroys the value intended by the parties in agreeing to arbitrate, and directly conflicts with the purpose of the FAA.

**B. There is No Principled Difference between a Class Action and a Representative Action under PAGA.**

PAGA is a tool to enforce substantive law. PAGA does not contain any substantive right, and there is nothing in the language of PAGA that precludes a waiver of representative actions in employment agreements. Under *Concepcion*, the FAA applies to waivers of collective or representative actions under PAGA no less than to waivers of class actions. There is simply no

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

principled distinction between a PAGA representative action and a class action. "Class actions and representative actions are quite similar. Both are essentially equitable in nature. They permit persons to sue on behalf of others." *Weil*, Cal. Prac. Guide: Civil Procedure Before Trial § 14:1.

A PAGA representative action and a class action are nearly identical in their nature. They are both initiated for the benefit of a specific group of aggrieved individuals, and both provide for the possibility of an incentive award for the representative and his or her counsel. *Concepcion* held that one can permissibly waive such a procedural right, as the California Supreme Court conceded. Notably, the waiver clause upheld in *Concepcion* specifically included "any purported class *and representative proceeding*". *Concepcion*, 131 S. Ct. at 1744, n. 2 (emphasis added). The case made no distinction between representative actions and class actions. The language of Respondent's Arbitration Agreement here is virtually identical to ***21** the clause upheld in *Concepcion.* Moreover, the clause in *Discover Bank*, which was at issue in *Concepcion,* is similar. It precluded both sides from participating in classwide arbitration, consolidating claims, or arbitrating claims "as a representative or member of a class or in a private attorney general capacity." *Discover Bank*, 113 P.3d at 1103.

When scrutinized, the supposed differences between PAGA and class actions are immaterial. In both "class" actions and PAGA representative actions: (1) the named plaintiff receives a premium payment (*see, e.g., Clark v. American Residential Services LLC*, 175 Cal.App.4th 785, 804 (Cal. Ct. App. 2009) (indicating that in a class action, the named plaintiff is entitled to an "incentive or enhancement award"); Cal. Labor Code § 2699(i) (explaining that 25% of the recovery goes to the named plaintiff in a PAGA action)); (2) this payment is meant to enhance compliance with the law (*see, e.g., Clark*, 175 Cal. App.4th at 804 (stating that incentive award is to induce the plaintiff to file a class action); *Dunlap v. Super. Ct*, 142 Cal.App.4th 330,336-337 (Cal. Ct. App. 2006) (explaining that PAGA was adopted to enhance the enforcement abilities of the Labor Commissioner)); (3) the attorneys are entitled to fees (*see, e.g., Garabedian v. Los Angeles Cellular Telephone Co.*, 118 Cal.App.4th 123,129 (Cal. Ct. App. 2004) (indicating that attorneys' fees should be fair in a class action); Cal. Labor Code § 2699(g)(1) (stating that prevailing employee is entitled to attorneys' fees)); (4) any settlement requires court approval (Cal. Rules of Court 3.769(a); Cal. Labor Code § 2699(1)); and (5) the "aggrieved party" is the employee.

***22 C. The Qui Tarn Analogy is a False Analogy.**

The California Supreme Court followed the erroneous reasoning of an unpublished District Court opinion, brought to its attention in the Consolidated Answer to Amicus Curiae Briefs. *Cunningham v. Leslie's Poolmart, Inc.*, No. 13-2122 CAS (CWs), 2013 WL 3233211 (C.D. Cal. June 25, 2013). The *Cunningham* case erroneously held that PAGA cannot be waived because PAGA is somehow "different" from a class action and more analogous to a qui tarn action. The California Supreme Court incorrectly agreed that a PAGA action is "a type of qui tarn action" that cannot be waived in an arbitration agreement because "a law established for a public reason cannot be contravened by a private agreement", and that "an employee's right to bring a PAGA action is [therefore] unwaivable". (App., 52a - 54a.) Presumably, all state statutes are established for a "public reason." This Court, however, has never waivered from finding such laws invalid where they prevent arbitration and frustrate the FAA. *See, e.g., Southland*, 465 U.S. 1 (California Franchise law), *Perry*, 482 U.S. 483 (California Labor Code); *Preston*, 552 U.S. 346 (California Talent Agency Act).

PAGA and qui tarn actions are fundamentally different. The purpose of PAGA is to protect employees, whereas the purpose of a qui tarn action is to remedy an injury inflicted on government itself. *Compare, e.g., Caliber Bodyworks Inc. v. Super. Ct.*, 134 Cal.App.4th 365, 375 (Cal. Ct. App. 2005) (stating that PAGA "is necessary to achieve maximum compliance with state labor laws.") *with People ex rel. Allstate Insurance v. Weitzman*, 107 Cal.App.4th 534,561,566 (Cal. Ct. App. 2003) (explaining that qui tam actions are to prosecute fraudulent claims ***23** made against the government). Similarly, the aggrieved party in a PAGA action is the employee who may have an employment contract and arbitration agreement, whereas the victim in a qui tam action is the government. *Compare* Cal. Labor Code § 2699(a) (stating that an aggrieved employee may file a PAGA action) *with Weitzman*, 107 Cal.App.4th at 561, 566 (noting that the "government is the direct victim" in a qui tam action). Likewise, the real party in interest in a PAGA action is the employee whereas the real party in interest in a qui tam action *is the government. Compare Dunlap*, 142 Cal.App.4th at 337 ("[T]he PAG Act empowers or deputizes an aggrieved employee to sue for civil

penalties "*on behalf of himself* or herself and other current or former employees … *as an alternative* to enforcement by the LWDA." (emphasis added)) *with* *United States ex rel. Hyatt v. Northrop Corp.,* 91 F.3d 1211, 1217 (9th Cir. 1996) (noting that the government "is always the real party in interest"). Further, the judiciary maintains the primary responsibility over a PAGA action, whereas such control may be retained by the executive branch in a qui tam action. *Compare* *Echavez v. Abercrombie and Fitch Co., Inc.,* No. CV 11-9754 GAF (PJWx), 2012 WL 2861348 (C.D. Cal. Mar. 12, 2012), *6 (indicating that judiciary maintains control over a PAGA action) *with* *U.S. ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 754 (9th Cir. 1993) (stating that the government can take "primary responsibility for prosecuting the action"). Finally, PAGA penalties are derived from violations directed at separate individuals, whereas a qui tam penalty represents an undivided amount of damages to the government.

***24** In any event, qui tarn actions can be prospectively released. For example, in *U.S. ex rel. Hall v. Teledyne Wah Chang Albany,* 104 F.3d 230, 231 (9th Cir. 1997), the federal court dismissed the qui tarn action because plaintiff had already executed a release that encompassed "any future *qui tam* claims." 104 F.3d at 231,233; *see* *U.S. v. Swords to Plowshares,* 242 F.3d 385,385 (9th Cir. 2000) (indicating that future qui tarn action was waived in the settlement and release of a prior action). Just as a qui tam action can be waived, so too can a PAGA representative action be waived without impermissibly giving up a "substantive right."

Thus, the attempt to insulate the waiver of a PAGA representative action from the reach of the FAA by characterizing it as a qui tarn action is pure sophistry.

**D. Congress Did Not Exempt State Qui Tarn Actions From The FAA**

The majority opinion disregards its own conclusion that PAGA *"does not create property or any other substantive rights*" and "is simply a *procedural statute."* *Amalgamated Transit,* 209 P.3d at 943 (emphasis added). Instead, the Court incorrectly determined that PAGA is "substantive" in nature because it is akin to a qui tam action. Regardless of any superficial resemblance between a qui tam and PAGA action, the issue is whether Congress allowed for a PAGA exception to the FAA. In this regard, the California Supreme Court misallocated the burden. The issue is not whether the FAA was "concerned with limiting [the] scope [of qui tam actions]" (App., 58a), but instead is whether the FAA carves qui tarn actions from its reach. "The burden is on the party opposing arbitration ***25** … to show that Congress intended to preclude a waiver of judicial remedies." *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220,227 (1987); *see also* *Compucredit Corp. v. Greenwood,* 132 S. Ct. 665, 669 (2012) (stating that an arbitration agreement must be enforced "unless the FAA's mandate has been 'overridden by a contrary congressional command' ").

In a per curiam decision, this Court in *Marmet Health Care Center, Inc. v. Brown,* 132 S. Ct. 1201 (2012) ("*Marmet*"), struck down West Virginia's prohibition against pre-dispute agreements to arbitrate personal injury and wrongful death claims against nursing homes. The Court explained that the absence of any reference to such claims in the FAA establishes that it is preempted: "The [FAA's] text includes *no exception* for personal-injury or wrongful-death claims. It *requires* courts to enforce the bargain of the parties to arbitrate. It 'reflects an emphatic federal policy in favor of arbitral dispute resolution.' " *Id.* at 1203 (emphasis added). Here, there is no exception in the FAA for PAGA waivers. Moreover, nothing in the FAA carves out an exception where a state decides that an individual who signed an agreement to arbitrate, limiting his personal ability to bring PAGA actions, is really acting as the state instead of himself. No amount of legislative legerdemain changes the unalterable fact that an individual, Mr. Iskanian, signed an agreement governed by the FAA that prevents him from bringing a PAGA representative action.

***26 E. Federal Courts Disagree with the California Supreme Court.**

Regardless of whether a state statute "benefits the public," it will be preempted by the FAA if it contravenes the prevailing law that arbitration agreements are to be enforced according to their terms. *Concepcion,* 131 S. Ct. at 1747. Federal courts in California agree with this approach. *See, e.g.,* *Grabowski v. C.H. Robinson Co.,* 817 F. Supp. 2d 1159, 1180 (S.D. Cal. 2011) ("[Plaintiff's] PAGA claim is arbitrable, and the arbitration agreement's provision barring him from bringing that claim

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

on behalf of other employees is enforceable."); *Valle v. Lowe's HIW, Inc.*, No. 11-1489 SC, 2011 WL 3667441 (N.D. Cal. Aug. 22, 2011) at *6 ("[T]o the extent that Plaintiffs argue that no PAGA claim is arbitrable, the court rejects this argument as unsupported by the law. Plaintiffs' PAGA claim is a state-law claim, and states may not exempt claims from the FAA."); *Nelson v. AT&T Mobility LLC*, No. C10-4802,2011 WL 3651153 (N.D. Cal. Aug. 18,2011) at *4 ("*Concepcion* preempts California law holding PAGA claim inarbitrable."). The Ninth Circuit has embraced a broad interpretation of *Concepcion*, stating:
We interpret *Concepcion's* holding to be broader than a restriction on the use of unconscionability to end-run FAA preemption. We take *Concepcion* to mean what its plain language says: Any general state-law contract defense, based in unconscionability or otherwise, that has a disproportionate effect on arbitration is displaced by the FAA. We find support for this reading from the illustration in *Concepcion* involving a case "finding unconscionable ***27** *or unenforceable as against public policy* consumer arbitration agreements that fail to provide for judicially monitored discovery." 131 S.Ct. at 1747 (emphasis added). Other courts have read *Concepcion* in a similar way. *See, e.g., In re Cal. Title Ins. Antitrust Litig.*, No. 08-01341 JSW, 2011 WL 2566449, at *2 (N.D. Cal. June 27, 2011) ("In the wake of new Supreme Court precedent" the court was "compelled to enforce the … arbitration provisions[.]"); *Wolf v. Nissan Motor Acceptance Corp.*, No. 10-cv-3338 (NLH)(KMW), 2011 WL 2490939, at *6-7 (D.N.J. June 22, 2011) ("[N]otwithstanding [state law], the Court is bound by [*Concepcion*]."); *see also Muriithi*, 712 F.3d at 180 (noting that "*Concepcion* sweeps … broadly" to preempt generally applicable contract defenses that "target[] the existence of an agreement to arbitrate as the basis for invalidating that agreement").

*Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151, 1159 (9th Cir. 2013) (footnote omitted).

In fact, federal courts continue to assert that FAA preemption applies, declining to follow the decision of the California Supreme Court. In *Fardig v. Hobby Lobby Stores, Inc.*, No. SAC V 14-00561 JVS (ANx) (C.D. Cal. Aug. 11, 2014) (App., 1a - 11a.), the District Court for the Central District of California explained:
Preemption is an issue of federal law. The Court is not bound by a state court's interpretation of federal law, but rather must examine for itself ***28** whether the state rule is consistent with the structure and purpose of the federal rule. *See, e.g., Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992); *Kilgore v. KeyBank, Natl Ass'n*, 673 F.3d 947, 960 (9th Cir. 2012) (holding that California rule permitting citizens to bring injunctive relief claims on behalf of the public was preempted by the FAA). Therefore, *Iskanian's* contrary reading of whether the PAGA waiver rule is preempted does not bind this Court….

Unlike in *Waffle House*, where it was the EEOC actually bringing the suit, in this case Plaintiffs are the named parties, even if they stand in the shoes of a California agency. Moreover, it is Plaintiffs who would control the litigation. Finally, the *Iskanian* decision offers no persuasive answer to the Court's concerns, articulated in its prior order, regarding the aggregation of civil penalties and determining whether labor laws were violated as to other employees.

Even in light of *Iskanian*, the Court continues to hold that the rule making PAGA claim waivers unenforceable is preempted by the FAA. There is nothing in *Iskanian* that should persuade the Court otherwise, and the Court is not bound by the California Supreme Court's understanding of federal law.

(App., 9a - 10a.)

***29** Thus, the *Iskanian* decision, (App., 12a - 97a), already has led to an internal conflict within the most populous state, with one federal court in California already rejecting *Iskanian's* PAGA carve-out from FAA preemption.

### F. *Iskanian* will Encourage Other States to Disregard the FAA.

By creating a legal fiction, that an individual party to an arbitration agreement may avoid his or her contractual obligations because he or she stands in the state's shoes, *Iskanian* holds that California may disregard the FAA and United States Supreme

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Court precedent. PAGA, as applied here, is nothing more than a state-created rule, based on state policy, establishing a "scheme inconsistent with the FAA." *Concepcion*, 131 S. Ct. at 1748. Under *Concepcion*, this cannot stand.

The underlying decision creates a dangerous precedent, as it provides other states with a playbook for yet another arbitration end run. Using *Marmet* as but one example, perhaps now West Virginia may "deputize" individuals to bring "private attorney general actions" against nursing homes on behalf of other aggrieved residents, with arbitration agreements being written out of the law as a result. It is not hard to come up with other examples that chip away at the FAA so that in the end there is little left.

***30 CONCLUSION**

The petition for a writ of certiorari should be granted.

Footnotes

1 Justice Chin ultimately determined, mistakenly, that a PAGA representative action could not be waived insofar as it forbids an employee from asserting PAGA in any forum. This is incorrect because the holdings below allowed Respondent to bring his PAGA case "representing" the state in his individual capacity in arbitration. The majority did not rule otherwise.

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.