Lee R. Feldman, Esq. (SBN 171628)
lee@leefeldmanlaw.com
Alicia Olivares, Esq. (SBN 181412)
alicia@leefeldmanlaw.com
Leonard H. Sansanowicz, Esq. (SBN 255729)
leonard@leefeldmanlaw.com
**FELDMAN BROWNE OLIVARES**
**A Professional Corporation**
10100 Santa Monica Blvd., Suite 2490
Los Angeles, California 90067
Telephone: (310) 552-7812
Fax: (310) 552-7814

Attorneys for Plaintiff, DAVID L. TOTTEN, and all others similarly situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DAVID L. TOTTEN, an individual, and all others similarly situated

Plaintiffs,

vs.

KELLOGG BROWN & ROOT, LLC, a Delaware Corporation; MOLYCORP, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,

Defendants.

CASE NO. 5:14-cv-0176-DMG-DTBx

[*Case Assigned to the Honorable Dolly M. Gee in Courtroom 7 - Spring Street*]

[San Bernardino County Superior Court Case No. CIVDS1408596]

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF INDIVIDUAL AND DISMISS CLASS AND REPRESENTATIVE CLAIMS**

Before Honorable United States District Judge Dolly M. Gee

Notice of Removal Filed: August 28, 2014

FELDMAN BROWNE OLIVARES
A PROFESSIONAL CORPORATION

## TABLE OF CONTENTS


**I. INTRODUCTION** .......... Page 1

**II. FACTUAL BACKGROUND** .......... Page 2

**III. LEGAL STANDARD** .......... Page 4

**IV. LEGAL ARGUMENT** .......... Page 4

**A. PLAINTIFF DID NOT AGREE TO ARBITRATE UNDER THE DRP** .......... Page 4

**B. THE KBR ARBITRATION AGREEMENT IS PROCEDURALLY UNCONSIONABLE** .......... Page 5

**C. THE KBR AGREEMENT IS SUBSTANTIVELY UNCONSIONABLE** .......... Page 6

**1. *The Agreement Lacks Mutuality*** .......... Page 6

**2. *KBR's Reservation Of The Right To Unilaterally Modify The Arbitration Policy And Rules At Its Sole Discretion Renders The Arbitration Agreement Unconscionable And Illusory*** .......... Page 8

**3. *The Requirement That All Discovery Costs Be Borne By The Party Taking The Discovery Is Unconscionable*** .......... Page 12

**4. *The Attorney's Fees Provision Is Unconscionable*** .......... Page 12

**5. *The Class Action Waiver Is Unconscionable And Unenforceable Because It Conflicts With The Right To Concerted Action Under The NRLA*** .......... Page 14

**a. The Fifth Circuit's Overreaction to Concepcion: arbitration does not take precedence over protected substantive employee rights** .......... Page 15

**b. The Eight Circuit's Faulty Logic** .......... Page 17

D. **DEFENDANT'S THE CLASS ACTION WAIVER CANNOT BE ENFORCED AGAINST PAGA CLAIMS UNDER THE CALIFORNIA SUPREME COURT'S ISKANIAN DECISION** ........ Page 18

V. **SEVERANCE IS INAPPROPRIATE DUE TO THE MULTIPLE UNCONSCIONABLE CLAUSES AND LACK OF MUTUALITY** ........ Page 22

VI. **CONCLUSION** ........ Page 24

FELDMAN BROWNE OLIVARES
A PROFESSIONAL CORPORATION

# TABLE OF AUTHORITIES

**Federal Cases:** **Pages:**


*Am. Exp. Co. v. Italian Colors Rest.*,
133 S.Ct. 2304 (2013) ........ 16, 20

*AT&T Mobility LLC v Concepcion*,
131 S.Ct. 1740 (2011) ........ 15, 20, 21

*Bauman v. Chase Inv. Serv. Corp.*,
747 F.3d 1117 (9th Cir. 2014) ........ 21

*Brooklyn Sav. Bank v. O'Neill*,
324 U.S. 697 (1945) ........ 18

*D.R. Horton, Inc. v. N.L.R.B.*,
737 F.3d 344 (2013) ........ 15

*Dumais v. Am. Golf Corp.*,
299 F.3d 1216 (10th Cir. 2002) ........ 11

*Eastex, Inc. v. N.L.R.B.*,
437 U.S. 556 (1978) ........ 16

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002) ........ 20

*Emporium Capwell Co. v. W. Addition Cmty. Org.*,
420 U.S. 50 (1975) ........ 16

*Ferguson v. Countrywide Credit Indus., Inc.*,
298 F.3d 778 (9th Cir. 2002) ........ 6

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 4

*Floss v. Ryan's Family Steak Houses, Inc.*,
211 F.3d 306 (6th Cir. 2000) ........ 11


FELDMAN BROWNE OLIVARES
A PROFESSIONAL LAW CORPORATION

*Hooters of Am., Inc. v. Phillips*,
173 F.3d 933 (4th Cir. 1999) ........................................................................11

*Ingle v. Circuit City Stores, Inc.*,
328 F.3d 1165 (9th Cir. 2003) ....................................................................4, 11

*Marmet Health Care Ctr., Inc. v. Brown*,
132 S.Ct. 1201 (2012)..................................................................................20

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)......................................................................................16

*NLRB v. Wash. Aluminum Co.*,
370 U.S. 9 (1962)..........................................................................................16

*Owen v. Bristol Care, Inc.*,
702 F.3d 1050 (8th Cir. 2013) .......................................................................17

*Prill v. NLRB*,
835 F.2d 1481 (D.C. Cir. 1987),....................................................................16

*Rent-A-Ctr West, Inc. v. Jackson*,
561 U.S. 63 (2010)........................................................................................20

*Reyes v. United Healthcare Serv., Inc.*,
2014 WL 3926813 (C.D. Cal., Aug. 11, 2014, CV 14-1741-DOC JEMX) .........10

*Stolt-Nielen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)...............................................................................20, 22

**California Cases:** **Pages:**

*A & M Produce Co. v. FMC Corp.*,
135 Cal.App.3d 473 (1982) .........................................................................4, 5

*Arias v. Super. Ct.*,
46 Cal.4th 969 (2009) ....................................................................................21

*Armendariz v. Found. Health Psychcare Serv., Inc.*,
24 Cal.4th 83 (2000) ................................................................ 3-8, 19, 22, 23



FELDMAN BROWNE OLIVARES
A PROFESSIONAL LAW CORPORATION

*Baker v. Osborne Dev. Corp.*, 159 Cal.App.4th 884 (2008) ........................................................8

*Casas v. Carmax Auto Superstores Calif. LLC*, 224 Cal.App.4th 1233 (2014) ........................................................10

*Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416 (2000) ........................................................5

*Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4h 1109 (2013)........................................................19, 20

*Harper v. Ultimo*, 113 Cal.App.4th 1402 (2003) ........................................................6

*Iskanian v. CLS Transp. Los Angeles, LLC*, (2014) 59 Cal.4th 348 ........................................................ 2, 18-21

*Kinney v. United HealthCare Serv., Inc.*, 70 Cal.App.4th 1322 (1999) ........................................................4

*Kirby v. Imoos Fire Protection, Inc.*, 53 Cal.4th 1244 (2012) ........................................................13

*Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064 (2003) ........................................................4

*Peleg v. Neiman Marcus Group, Inc.*, 204 Cal.App.4th 1425 (2012) ........................................................9

*Prouty v. Gores Tech. Group*, 121 Cal.App.4th 1225 (2004) ........................................................12

*Shaw v. Regents of Univ. of Calif.*, 58 Cal.App.4th 44 (1997) ........................................................8

*Sparks v. Vista Del Mar Child and Family Serv.*, 207 Cal.App.4th 1511 (2012) ........................................................9

*Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519 (1997) ........................................................6

FELDMAN BROWNE OLIVARES
A Professional Law Corporation

*Szetela v. Discover Bank*,
97 Cal.App.4th 1094 (2002) ....................5

*Trivedi v. Curexo Tech. Corp.*,
189 Cal.App.4th 387 (2010) ....................6

Wolschlager v. Fid. Nat'l Title Ins. Co.,
111 Cal.App.4th 784 (2003) ....................8

*Zullo v. Superior Court*,
197 Cal.App.4th 477 (2011) ....................6

**Federal Administrative Decisions and Orders:** **Pages:**

*D.R. Horton, Inc.*,
357 NLRB No. 184 (2012) ....................14, 15

*Meyers Indus.*,
281 NLRB 882 (1986) ....................16

*Murphy Oil USA, Inc. and Sheila M. Hobson*,
361 NLRB No. 72 (Oct. 28, 2014) .................... 14-18

**Federal Statutes**: **Pages**:

29 U.S.C. § 115 ....................17

29 U.S.C. § 158(a)(1) ....................14

29 U.S.C. §§ 102, 104, and 103 ....................17

29 U.S.C. §157 .................... 15-16

**State Statutes**: **Pages:**

Business and Professions Code § 17200 ....................1

Cal. Civ. Code § 1670.5 ....................4

Cal. Civ.Code § 3534 ....................12



FELDMAN BROWNE OLIVARES
A PROFESSIONAL LAW CORPORATION

Cal. Lab. Code § 218.5 .......... 13

California Civil Code § 1668 .......... 19, 21

California Civil Code § 3513 .......... 19, 21

California Labor Code § 226 .......... 1

California Labor Code § 2698 .......... 1

California Labor Code §§ 1194 and 1197 .......... 1

California Labor Code §§ 201, 202 and 203 .......... 1

California Labor Code§§ 510, 1194 and 1198 .......... 1

California Labor Code §§ 512, 226.7 .......... 1

**Secondary Sources**: **Pages**:

Janet Cooper Alexander, *To Skin a Cat: Qui Tam Actions as a State Legislative Response to Concepcion*, 46 Univ. of Michigan Journal of Law Reform 4, at p. 1228 (2013) .......... 21

FELDMAN BROWNE OLIVARES
A PROFESSIONAL LAW CORPORATION

# I. INTRODUCTION

Plaintiff David Totten's ("Plaintiff's") operative complaint alleges class claims against defendants Kellogg Brown & Root, LLC ("KBR") and Molycorp, Inc. ("MCI") (collectively, "Defendants") on behalf of a putative class of similarly situated employees for various violations of the California Labor Code.[1] On September 25, 2014, Defendants filed a motion to compel arbitration, arguing that (1) KBR's arbitration agreement as found in its "Dispute Resolution Program" ("DRP") is enforceable and (2) Plaintiff waived any right to file a class or collective action by signing a KBR Dispute Resolution Agreement ("DRA" or "Agreement").

As set forth below, Plaintiff never agreed to arbitrate under the DRP because he was never given access to that document; as such, the document could not have been validly incorporated by reference into the Agreement he signed. Moreover, the DRP is both procedurally and unconscionable, and therefore unenforceable. It lacks mutuality, is illusory, and contains multiple unconscionable provisions designed to unfairly maximize KBR's advantage, including (1) a provision retaining the unilateral right to modify or change the arbitration agreement and rules *even after a claim arises*; (2) a provision permitting KBR to recover its attorney's fees from its employees *even where it would not be permitted to do so under applicable law*; (3) a provision precluding employees from recovering litigation costs for depositions and expert witnesses *even though applicable*

[1] (1) Failure To Pay Wages For All Time Worked At Minimum Wage Rate, In Violation Of California Labor Code Sections 1194 and 1197; (2) Failure To Pay Overtime Wages For Daily Overtime And All Time Worked, In Violation Of California Labor Code Sections 510, 1194, And 1198; (3) Failure To Provide Second Meal Periods Or Pay Meal Period Premium Wages, In Violation Of California Labor Code Sections 512, 226.7; (4) Failure To Provide Complete And Accurate Wage Statements, In Violation Of California Labor Code Section 226; (5) Failure To Timely Pay All Earned Wages Due At Time Of Separation Of Employment, In Violation Of California Labor Code Sections 201, 202 And 203; (6) Unfair Business Practices, In Violation Of Business And Professions Code Section 17200, *Et Seq*.; and (7) Civil Penalties Pursuant to The Labor Code Private Attorneys General Act of 2004 ("PAGA"), California Labor Code Section 2698, *Et Seq*.

*law permits such recovery*; and (4) a provision prohibiting class action claims in arbitration in violation of the National Labor Relations Act ("NLRA").

Lastly, even if the agreement were enforceable, class action waivers are unenforceable under the NLRA and waivers of representative PAGA actions are unenforceable under *Iskanian v. CLS Transp. Los Angeles, LLC* (2014) 59 Cal.4th 348.

## II. FACTUAL BACKGROUND

Plaintiff worked for KBR and MCI from approximately January 16, 2012, until June 17, 2013. Declaration of David Totten in Support of Plaintiff's Opposition ("Totten Decl") ¶1. At the time he was hired, Plaintiff was handed and told to sign approximately 20 documents by KBR employee Lilian Mitchell ("Ms. Mitchell"). Totten Decl ¶2. One of these documents was a single page "KBR Dispute Resolution Agreement," which states that under KBR's DRP the employee must arbitrate certain claims he has against the company. Totten Decl ¶2; Exh. B to Bynum Declaration. **The DRA says nothing about KBR agreeing to arbitrate claims it might have against the employee**. *Ibid.* It purports to incorporate the actual DRP by reference but no such document was ever made available to Plaintiff to read. *Ibid.*

Ms. Mitchell told Plaintiff he needed to sign all the documents as quickly as possible so he could start his required MSHA training. Totten Decl ¶2. She further told Plaintiff he would not be hired unless he signed each document. *Ibid.* Plaintiff understood that he had no ability to negotiate any aspect of the documents or decline to sign any document he was directed to sign. *Ibid.* Plaintiff clearly recalls that he was not given, or given access to, the "KBR Dispute Resolution Plans and Rules" *either before or after* he was asked to sign the KBR Dispute Resolution Agreement. Totten Decl ¶¶2-3. In fact, Plaintiff specifically recalls that he was never given a copy of, or given access to the "KBR Dispute Resolution Plans and Rules" attached to defendant's motion. Totten Decl ¶4. He was never given a copy of, or given access to, any document that was anywhere near that length, at any time during his employment. *Ibid.*

Defendants' motion attaches a declaration from a Finance Manager, Randy Bynum, who was not present during Plaintiff's orientation and therefore, by his own admission, has no personal knowledge of what Plaintiff was told, shown or given when hired. Totten Decl ¶2. Mr. Bynum does not and cannot declare ***from personal knowledge*** that Plaintiff was <u>ever</u> given a copy of, or provided access to, the KBR Dispute Resolution Plan and Rules. Instead, he declares generally that in orientation new employees are typically **"provided with access to a copy of the DRP."** Declaration of Randy Bynum in Support of Defendants' Motion to Compel Arbitration and Dismiss ("Bynum Decl") ¶8. Mr. Bynum does not explain <u>how</u> new hires generally, or Plaintiff specifically, were "provided access" to a copy of the 34-page DRP and Rules, what "provided access to" even means, or why employees are not each given a copy of the rules to which they are being asked to agree to be bound. (See Objections to Bynum Decl filed concurrently herewith).

Regardless, Defendants offer no evidence whatsoever to establish that Plaintiff saw, knew about, or agreed to any of the rules or procedures contained in the 34 page DRP that Defendants apparently concede he was never given. At best, Plaintiff agreed to the one-paragraph long "Dispute Resolution Agreement" that he signed. That agreement is plainly unilateral, in violation of long-standing California authority, stating: **"I understand that <u>the Program requires that certain claims I have against the company</u> be resolved through binding and final arbitration instead of any court system."** *See Armendariz v. Found. Health Psychcare Serv., Inc.*, 24 Cal.4th 83, 117-18 (2000) (an arbitration must have a "modicum of bilaterality" to be enforceable). Defendants cannot enforce an agreement in which the employer concedes on the face of the agreement that its DRP only requires the employee to arbitrate *"certain claims I have against the company."* Defendants own description of its DRP as imposing a <u>unilateral</u> obligation on employees to arbitrate their own claims against KBR and its clients conclusively establishes that the DRP lacks mutuality.

## III. LEGAL STANDARD

To evaluate the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). Because Mr. Totten was employed in California, this court must evaluate the enforceability of the KBR arbitration agreement under California contract law. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

California courts may refuse to enforce an arbitration agreement if it is unconscionable. Cal. Civ. Code § 1670.5. Unconscionability exists when one party lacks meaningful choice in entering a contract or negotiating its terms and the terms are unreasonably favorable to other party. *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 486 (1982). Accordingly, a contract to arbitrate is unenforceable under the doctrine of unconscionability when there is both a procedural and substantive element of unconscionability. *Armendariz,* 24 Cal.4th at 114. However, procedural and substantive unconscionability "need not be present in the same degree." *Id.* "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* Procedural unconscionability arises from "an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." *Kinney v. United HealthCare Serv., Inc.*, 70 Cal.App.4th 1322, 1329 (1999). Substantive unconscionability exists when the terms of the agreement unreasonably favor one party. *Little v. Auto Stiegler, Inc.,* 29 Cal.4th 1064, 1071 (2003).

## IV. LEGAL ARGUMENT

### A. PLAINTIFF DID NOT AGREE TO ARBITRATE UNDER THE DRP

Plaintiff categorically declares that he was never given access to a copy of the DRP and was pressured to quickly sign a pile of documents without reading them carefully.

Totten Decl ¶¶2-4. Defendants have introduced no competent evidence establishing that Plaintiff was given a copy of, or access to, the DRP at or before the time he signed the Agreement to be bound by the Plan. The Bynum declaration lacks any foundation establishing Mr. Bynum's personal knowledge of what Plaintiff was or was not given access to during his orientation. Nor do Defendants point to any email ever sent to Plaintiff attaching a copy of the document or directing him how to find it. Defendants similarly offer no evidence that they make the DRP available online and notify employees how to find it.

While Defendants cite repeatedly to a KBR arbitration case decided by the California Court of Appeal 14 years ago, in that case the trial court found evidence sufficient to establish that KBR had twice mailed the plaintiff a copy of the Dispute Resolution Program and a memorandum explaining the commitment to arbitration. *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 421-22 (2000). Absent some competent evidence establishing that Plaintiff was ever given access to the actual DRP and Rules that he was purportedly agreeing to when he signed the Agreement, let alone a copy, he cannot be said to have assented to arbitrate under that program.

**B. THE KBR ARBITRATION AGREEMENT IS PROCEDURALLY UNCONSCIONABLE**

Procedural unconscionability focuses on two factors: oppression and surprise. *Armendariz,* 24 Cal.4th at 113; *A & M Produce Co.,* 135 Cal.App.3d at 486. "When the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present." *Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 1100 (2002); *see also Armendariz*, 24 Cal.4th at 113; and *A & M Produce Co.,* 135 Cal.App.3d at 486. "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *A & M Produce Co.,* 135 Cal.App.3d at 486. Even experienced but legally unsophisticated businessmen may be unfairly surprised by unconscionable

contract terms. *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1534-35 (1997). Plaintiff attests to the fact that he was given no right to negotiate and was presented with the arbitration agreement on a "take it or leave it" basis. Totten Decl ¶¶2-4.

In addition, Plaintiff was never given a copy of the DRP containing the rules and procedures and was never given a copy of any of the AAA or JAMS rules referenced in the DRP, all of which establishes a high degree of procedural unconscionability. Totten Decl ¶3; see e.g., *Trivedi v. Curexo Tech. Corp.,* 189 Cal.App.4th 387, 393 (2010); *Zullo v. Super. Ct,* 197 Cal.App.4th 477, 486 (2011). The California Court of Appeal has held that it is "oppressive to require the party to make an independent inquiry to find the applicable rules in order to fully understand what she was about to sign." *Harper v. Ultimo,* 113 Cal.App.4th 1402, 1406 (2003).

## C. THE KBR AGREEMENT IS SUBSTANTIVELY UNCONSCIONABLE

Where, as here, an arbitration agreement is procedurally unconscionable, the court must be "particularly attuned to claims that employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement." *Armendariz,* 24 Cal.4th at 115.

### *1. The Agreement Lacks Mutuality*

The California Supreme Court held in *Armendariz* that lack of mutuality renders unconscionable an arbitration agreement imposed by an employer on its employees. *Armendariz,* 24 Cal.4th at 117-18; *see also Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 785 (9th Cir. 2002).

Here, KBR required Plaintiff to execute an agreement drafted by KBR, entitled "KBR Dispute Resolution Agreement", which contains an admission that **"the [Dispute Resolution] Program requires that certain claims I have against the company be resolved through binding and final arbitration instead of any court system."** Exh. B to Bynum Declaration. By their own admission, in a document they drafted and required Plaintiff to sign, KBR represented to Plaintiff that the DRP applies to claims he has against the company, not to claims either the company has against him or he has against

them. As such, the agreement is unconscionably lacking in mutuality.

While Defendants will likely argue that the Agreement does not explicitly say that KBR is not waiving its own right to a jury trial on claims it may choose to bring against Plaintiff, the omission of any mention of a corresponding employer obligation to arbitrate its own claims is telling. As *Armendariz* recognized, **"the lack of mutuality can be manifested as much by what the agreement does not provide as by what it does**…" *Armendariz*, 24 Cal.4th at 120.

Defendants may also argue that the DRP itself is mutual, which is debatable. Nothing in the Agreement clearly and expressly binds KBR to arbitrate claims against employees.[2] But even if it did, KBR offers no evidence demonstrating that the DRP was ever made available to this particular plaintiff, let alone that it was made available for him to review before he signed the one-paragraph, unilateral agreement to waive his constitutional right to a jury trial.[3] Thus, Plaintiff knew only of the one-paragraph, unilateral agreement he was actually given when he signed.

Lastly, because there is no evidence that the DRP and Rules were "easily

---

[2] The DRP applies to all "disputes", which it defines (on page 2) rather obscurely as:

> E. **"Dispute"** means all legal and equitable **claims…** between persons bound by the Plan … or between a person bound by the Plan and a person or entity otherwise entitled to its benefits."

This ambiguous language appears to bind only "persons." While it also seems to cover disputes between a person and an entity not "bound" by the DRP but "otherwise entitled to its benefits", this language appears to say that KBR and its affiliated entities get the benefits of enforcing the agreement but are not "bound" by it. This interpretation is buttressed by a review of four (4) examples of covered disputes immediately thereafter, all of which are claims an employee would bring. There is no mention, for example, of KBR being required to arbitrate trade secret disputes, but employees claims for unpaid wages or discrimination are prominently and explicitly referenced.

[3] Plaintiff declares that it was never made available to him, while Mr. Bynum merely declares that it is KBR policy to make the DPR available. He offers to evidence that anyone provided it to Plaintiff and permitted him to read it.

available" to this Plaintiff,[4] the DRP and Rules were not effectively incorporated by reference. *Wolschlager v. Fid. Nat'l Title Ins. Co.*, 111 Cal.App.4th 784, 790 (2003) ("the terms of the incorporated document must be known or easily available to the contracting parties."); *Shaw v. Regents of Univ. of Calif.,* 58 Cal.App.4th 44, 54 (1997). Here, absent some evidence that the DRP was actually made available to Plaintiff at the time of or before he signed the agreement, it cannot be incorporated by reference. *Baker v. Osborne Dev. Corp.*, 159 Cal.App.4th 884, 896 (2008). If the DRP and Rules are not properly incorporated into the document Plaintiff signed, he cannot be said to have assented to that program. Moreover, the signed agreement, which is unilateral on its face and contains none of the guarantees required by *Armendariz*, is unenforceable.

### *2. KBR's Reservation Of The Right To Unilaterally Modify The Arbitration Policy And Rules At Its Sole Discretion Renders The Arbitration Agreement Unconscionable And Illusory*

The KBR Dispute Resolution Plan And Rules, attached to the Bynum Declaration as Exhibit A, is unenforceable because the Company reserves for itself the unilateral right to change or terminate the plan and its arbitration provision at its sole and exclusive discretion. The sole limitation that KBR places on its right to change or terminate the plan is that it agrees to give 30-days notice to current employees (**not former employees like this Plaintiff**) if it changes or terminates the plan. Worse, the KBR plan permits the company to change the rules of the plan even after it engages in illegal conduct it knows may result in a claim. At page 7 of the Plan, it states that: **"This Plan may be amended by Sponsor at any time by giving at least 30 days notice to current Employees. However, no amendment shall apply to a Dispute which is initiated prior to the effective date of the amendment."** (Plan at p. 7 ¶¶ 6-7).

[4] Mr. Bynum's declaration contains only a conclusory statement that the DPR is generally made available to employees during orientation, but does not state that this alleged practice was followed in Plaintiff's orientation and Plaintiff specifically denies that the DRP was ever discussed with him, let alone made available for him to review. Nor does the declaration lay any foundation for how Mr. Bynum would know what occurred at Plaintiff's specific orientation, at which he does not claim to have been present .

Importantly, the above-quoted language means that the amendments to the plan would apply to claims that have arisen, but have not yet been "initiated" by the employee. This clause permits KBR to fire an employee unlawfully, then quickly change the arbitration plan and rules to maximize the company's advantage based on the facts of any particular case, as long as it makes the changes before the fired employee "initiates" a "dispute" (which is defined at page 2 as a "legal or equitable claim…).

The notion that KBR reserves the right to change the rules of the game after it commits an unlawful act is reiterated in Paragraph 2B on page 11 of the Plan, which states that the "rules" applicable to any claim an employee may bring are those **"existing at the time proceedings are initiated under them."** (p.11 paragraph 2B). The Plan then defines "rules" as KBR's dispute resolution rules **"which may be amended from time to time."** (p. 4 paragraph k). Again, this means that KBR can compel its employees to agree to arbitrate future claims under rules and procedures that it reserves the right to change whenever it wants. KBR can violate California labor laws, fire any employee who opposes that unlawful conduct, then change all the rules of arbitration before that employee has a chance to "initiate" a claim.

The reservation of such a unilateral right to modify an arbitration agreement renders KBR's agreement to arbitrate *illusory.* See e.g., *Sparks v. Vista Del Mar Child and Family Serv.*, 207 Cal.App.4th 1511, 1523 (2012) ("The arbitration clause is unenforceable for other reasons. An agreement to arbitrate is illusory if, as here, the employer can unilaterally modify the handbook."). While the implied covenant of good faith and fair dealing may save a unilateral modification provision *that is silent as to the issue of whether any changes would apply retroactively to claims that have already accrued*, KBR's provision expressly permits the employer to change the rules *after a claim accrues* but before it is "initiated." Such a provision renders the agreement unconscionably lacking in mutuality because KBR's assent to be bound is *illusory. Peleg v. Neiman Marcus Group, Inc.*, 204 Cal.App.4th 1425, 1465 (2012):

"A unilateral modification provision that is silent as to whether contract

> changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims. Under this analysis, the arbitration agreement in *24 Hour Fitness* is not illusory. **If, however, a modification provision expressly addresses whether contract changes apply to claims that have accrued or are known to the employer, the covenant cannot create implied terms that contradict the express language.** (Citations) **An arbitration agreement that expressly *exempts* all claims, accrued or known, from contract changes is valid and enforceable without resort to the covenant. If, on the other hand, an arbitration agreement expressly applies a contract change to such claims, the covenant cannot vary the plain language, and the agreement is illusory.**

Here, the KBR Plan does <u>not</u> expressly exempt accrued or known claims from the clause permitting unilateral modification. On the contrary, the KBR plan explicitly limits the exemption to claims that are "**<u>initiated</u> prior to the effective date of the amendment.**" Under this clause, claims that <u>arise</u> prior to any modification, but are <u>initiated</u> subsequent to any modification, are expressly bound by the modification. That permits KBR to rig the game to advantage its own interests after a claim accrues and becomes known, but before it is "initiated." It would even permit KBR to change the arbitration agreement to cover (or not cover) specific employee claims that had already arisen but not yet been initiated, depending on whether KBR decided it wanted to arbitrate or litigate the specific claims it anticipated that employee might initiate.

This clause renders KBR's agreement to arbitrate and follow the rules laid out in its own plan "illusory." See *Reyes v. United Healthcare Serv., Inc.* 2014 WL 3926813 (C.D. Cal., Aug. 11, 2014, CV 14-1741-DOC JEMX) (Because "modifications may apply to claims already accrued or known to United Health… this modification provision renders the Arbitration Policy illusory."). See also *Casas v. Carmax Auto Superstores Calif. LLC,* 224 Cal.App.4th 1233, 1237 (2014) ("To the extent that this express statement would subject a claim to a modified agreement where the claim arose before a modification, but was not submitted to arbitration until after incorporation of that modification into the arbitration agreement, the covenant of good faith and fair dealing cannot vary the plain language, and the contract is illusory.").

In addition to rendering the company's agreement to arbitrate illusory, the unilateral modification provision renders the agreement to arbitrate *unconscionable. Id.* In *Ingle*, the Ninth Circuit, applying California law, held that a unilateral modification clause in an arbitration agreement allowing the employer the right to modify or terminate the agreement was substantively unconscionable:

> By granting itself the sole authority to amend or terminate the arbitration agreement, Circuit City proscribes an employee's ability to consider and negotiate the terms of her contract. Compounded by the fact that this contract is adhesive in the first instance, this provision embeds its adhesiveness by allowing only Circuit City to modify or terminate the terms of the agreement. Therefore, we conclude that the provision affording Circuit City the unilateral power to terminate or modify the contract is substantively unconscionable. *Ingle*, 328 F.3d at 1179.

In *Ingle*, as here, the employer was required to give 30 days' notice to the employees. Here, the employer is only required to give notice to <u>current</u> employees when it modifies or terminates the arbitration agreement. Which means that employees who were wrongfully fired are not even entitled to notice before the company modifies or changes the arbitration plan. The rules of the arbitration could be changed without notice as long as the employee had not yet "initiated" a claim. In *Ingle*, the Ninth Circuit held that even the less restrictive clause at issue therein was substantively unconscionable. *(See also Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) (invalidating arbitration agreement for unconscionability where, among other things, employer reserved the right to modify, the rules in whole or in part whenever it wished and without notice to the employee: "Nothing in the rules even prohibits Hooters from changing the rules in the middle of an arbitration proceeding.").

Similarly, the Tenth Circuit held that a clause granting the employer the same **unlimited** right to modify or terminate its policies, without an exclusion for the arbitration agreement, renders the arbitration agreement entirely invalid and unenforceable. *Dumais v. Am. Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002); *see also Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 310 (6th Cir. 2000).

3. ***The Requirement That All Discovery Costs Be Borne By The Party Taking The Discovery Is Unconscionable***

While California law permits employees suing for labor code violations to recover litigation costs, including deposition transcription charges, the KBR Plan (at page 21, paragraph 31 C) states as follows:

> **Fees and Expenses...Discovery costs (e.g., court reporter fees for original transcripts) shall be borne by the Party initiating the discovery. The cost of copies of deposition transcripts or other discovery shall be borne by the Party ordering the copy.**

This provision expressly curtails the employee's right to recover litigation costs recoverable at law, thereby chilling the exercise of rights guaranteed under the California Labor Code for fear of being saddled with costs in excess of any potential recovery. While the DRP elsewhere states generally that the remedies available in arbitration will be the same as in court, "under well established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision." *Prouty v. Gores Tech. Group,* 121 Cal.App.4th 1225 (2004); *see also* Cal. Civ.Code § 3534 ("particular expressions [in a contract] qualify those which are general"). Thus, the specific provision requiring deposition costs be borne by the party taking the deposition controls over any general provision to the contrary. Which means that the DRP requires a prevailing plaintiff to bear the costs of all depositions he/she takes, costs that could exceed the amount of damages claimed in a hotly contested case with numerous witnesses to depose.

4. ***The Attorney's Fees Provision Is Unconscionable***

The KBR Plan also contains an unconscionable provision expressly permitting the arbitrator to award either party, including KBR, attorney's fees as part of any award. (P.8 ¶ D).[5] Importantly, this clause does not restrict the arbitrator's authority to award fees to

---

[5] That section states, in pertinent part:

D. Notwithstanding the provisions of the preceding subsection, in any proceeding before an arbitrator, the arbitrator, in the arbitrator's discretion,

situations where the employer might be entitled to recover fees under a contract or statute. Rather, the agreement states that the arbitrator's "discretion to allow an award of fees under this subsection **<u>is in addition to</u>** any discretion, right or power which the arbitrator may have under applicable law." This clause therefore permits KBR to seek payment from its employee of hundreds of thousands of dollars in attorney's fees incurred defending any employee's arbitration claim. Worse, the agreement specifies that this authority for awarding attorney's fees applies ***even where such fees would not be recoverable under the law***.[6] For example, in this case Plaintiff's claims against KBR do not permit KBR to recover attorney's fees at all, or only in the event that KBR proves Plaintiff's claims were brought "in bad faith." See, Cal. Lab. Code § 218.5; *but see Kirby v. Imoos Fire Protection, Inc.*, 53 Cal.4th 1244 (2012) (Section 218.5's two-way fee-shifting does not apply to meal and rest break claims). Yet this clause would permit such recovery *notwithstanding* California law's contrary provisions.[7] The chilling effect of such a provision is incalculable. What employee would risk filing a claim knowing he/she may be subject to liability for KBR's exorbitant legal fees should he/she not prevail?

---

> may allow a prevailing Employee or Applicant a reasonable attorney's fee as part of the award. **The discretion to allow an award of fees under this subsection <u>is in addition to</u> any discretion, right or power which the arbitrator may have under applicable law**...

[6] The agreement at paragraph 33 makes clear that where the law conflicts with the DRP the DRP provisions apply:

> 33(B). **Except where otherwise expressly provided in these Rules**, the substantive law applied shall be state or federal substantive law which would be applied by a United States District Court sitting at the place of the proceeding.

[7] Labor Code Section 218.5 was recently amended to clarify that fees are only available to an employer who proves the claims against it were brought in bad faith. The Bill Analysis recognized that permitting employers to recover fees without proving bad faith may have "a chilling effect on contractual wage claims." California Bill Analysis, S.B. 462 Sen., 2/21/2013.

### 5. ***The Class Action Waiver Is Unconscionable And Unenforceable Because It Conflicts With The Right To Concerted Action Under The NRLA***

On October 28, 2014, a majority decision of the National Labor Relations Board in *Murphy Oil USA, Inc. and Sheila M. Hobson*, 361 NLRB No. 72 (Oct. 28, 2014) held that waivers of class or collective actions such as the one contained in the instant Agreement are unenforceable if employment is conditioned on employees signing such agreements because they violate Section 7 of the NLRA and Section 8(a)(1) of the Act makes it an "unfair labor practice for an employer…to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [S]ection 7." 29 U.S.C. § 158(a)(1). *Murphy Oil* reaffirmed the Board's prior ruling in *D.R. Horton, Inc.*, 357 NLRB No. 184 (2012) and addressed criticisms of the *D.R. Horton* ruling by the Fifth, Eighth and Second Circuits.

Specifically, *Murphy Oil* upheld that *D.R. Horton* was correctly decided as to:

(1) Section 7 of the Act grants employees the *substantive* right to act "concertedly for mutual aid or protection" and mandatory arbitration agreements that bar an employee's ability to bring join, class, or collective workplace claims restrict this *substantive* right;

(2) Agreements imposed by employers requiring employees to pursue claims against their employer only in an individual capacity violate the NLRA; and

(3) The conclusion that mandatory class action waivers are unlawful under the Act does not conflict with the FAA or undermine its policies because:

a. Such a finding treats arbitration agreements no less favorably than any other private contract that conflicts with federal law;

b. Section 7 rights are *substantive*, which means that they cannot be waived under the FAA like procedural rights found in other statutes;

c. The "savings clause" in the FAA affirmatively provides that an arbitration agreement's conflict with federal law is grounds for invalidating an agreement as it may be invalidated upon "any grounds as exist at law or in equity for the revocation of any contract"; and

d. If there is a direct conflict between the NLRA and the FAA, the Norris-LaGuardia Act – which prevents enforcement of private agreements inconsistent with the statutory policy of protecting employees' right to engage in concerted activity – requires the FAA to yield to the NLRA as necessary to accommodate Section 7 rights.

**a. <u>The Fifth Circuit's Overreaction to *Concepcion*: arbitration does not take precedence over protected substantive employee rights.</u>**

In *AT&T Mobility LLC v Concepcion*, 131 S.Ct. 1740 (2011) ("*Concepcion*"), the Supreme Court repudiated what it viewed as California's "hostility" to arbitration by holding that the FAA preempted California's law barring classwide arbitration waivers in consumer contracts of adhesion because (1) the "savings clause" (Section 2) of the FAA did not permit defenses to arbitration agreements that applied only to arbitration agreements, and (2) California's law was "inconsistent with the FAA," and any conflicting state law must yield to the FAA. *Concepcion*, 131 S.Ct. at 1746-47, 1750-51.

The NLRB decided *D.R. Horton* the following year, and the company appealed the Board's decision. *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344 (5th Cir 2013). The Fifth Circuit, hewing closely to *Concepcion*, narrowly construed the Board's decision, holding that the NLRB had overstepped its authority in trying to create procedural rights that had not previously existed and had failed to give proper deference to the FAA. *Horton*, 737 F.3d at 357. The *Horton* court found that a litigant's right to class actions is a procedural right, not a substantive right. *Id.* It also concluded that the Board's reliance on the FAA's savings clause could not overcome the FAA's policy favoring speedy and inexpensive dispute resolution. *Id.* at 758-60.

In *Murphy Oil*, the Board rejected the Fifth Circuit's conclusion that the pursuit of legal claims, either collectively or as a class action, is not a substantive right under Section 7 of the NLRA. *Murphy Oil*, 361 NLRB at 7. Such concerted activity is protected by Section 7's broader purpose of "mutual aid or protection" and prohibiting employees from bringing joint legal action would frustrate the Act's policy of protecting the right of workers "to act together to better their working conditions." *Id.* at 8; 29

U.S.C. §157; *see also Eastex, Inc. v. N.L.R.B.*, 437 U.S. 556, 566 (1978) (quoting *NLRB v. Wash. Aluminum Co.*, 370 U.S. 9, 14 (1962)). The Board noted Section 7 guarantees rights that are "collective rights," which by definition are substantive rights, and therefore does not create procedural rights. *Murphy Oil*, 361 NLRB at 8; *see Emporium Capwell Co. v. W. Addition Cmty. Org.*, 420 U.S. 50, 62 (1975). The Board emphatically proclaimed, "In short, contrary to the Fifth Circuit's view, the National Labor Relations Act is not simply another employment-related Federal statute. '[I]t is protection for joint employee action that lies at the heart of the Act.'" *Murphy Oil*, 361 NLRB at 8 (quoting *Meyers Indus.*, 281 NLRB 882, 883 (1986) (aff'd sub nom. *Prill v. NLRB*, 835 F.2d 1481 (D.C. Cir. 1987), cert. denied 487 U.S. 1205 (1988)).

The *Murphy Oil* Board acknowledged the current Supreme Court's "liberal" policy favoring arbitration but pointed out that even the high court's rulings "have limits":

> [T]he Federal policy favoring arbitration…does not permit a "prospective waiver of a party's *right to pursue* statutory remedies," such as a "provision in an arbitration agreement forbidding the assertion of certain statutory rights." [*Am. Exp. Co. v. Italian Colors Rest.*, 133 S.Ct. 2304, 2310 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)]. Insofar as an arbitration agreement prevents employees from exercising their Section 7 right to pursue legal claims concertedly—by, as here, precluding them from filing joint, class, or collective claims addressing their working conditions in *any* forum, arbitral or judicial—the arbitration agreement amounts to a prospective waiver of a right guaranteed by the NLRA. *Murphy Oil*, 361 NLRB at 8-9.

Where there is a conflict between the NLRA and the FAA, the Norris-LaGuardia Act ("NLGA") – enacted in 1932, seven years after the FAA and three years before the NLRA – demands that the FAA give way to the NLRA because: (1) the public policy of the United States is to ensure workers are "free from the interference, restraint, or coercion of employers…in..concerted activities for the purpose of…mutual aid or protection"; (2) protected activities include "any person participating…in any labor dispute who…is prosecuting, any action or suit in any court of the United States or any state"; and (3) any act that runs afoul of the policy articulated in Section 102 of the

NLGA "shall not be enforceable in any court of the United States." 29 U.S.C. §§ 102, 104, and 103. In fact, "All acts and parts of acts in conflict with the provisions of [the NLGA] are repealed." 29 U.S.C. § 115. While the NLRA does not explicitly override the FAA, this may be because for 75 years the FAA was never applied to employment contracts (until the Supreme Court in 2001 read the exemption in Section 1 of the FAA as referring to transportation workers) and so Congress did not contemplate the FAA when the NLRA was enacted in 1935 and reenacted in 1947. *Murphy Oil*, 361 NLRB at 10.

Thus, *Murphy Oil* establishes that an employer may not hide behind an arbitration agreement in an attempt to strip employees of their fundamental, protected, and substantive right to concerted legal action under Section 7 of the NLRA. Plaintiff has filed an NLRB charge that currently is pending before the Board (Exhibit "A").

**b. The Eighth Circuit's Faulty Logic**

In *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013), the Eighth Circuit reversed a district court's denial of a motion to compel arbitration in a suit with a Fair Labor Standards Act ("FLSA") collective action and also seeking class certification, holding that the NLGA did not preempt the FAA as "[t]he decision to reenact the FAA suggests that Congress intended its arbitration protections to remain intact even in light of the earlier passage of three major labor relations statutes [NLRA, in 1932, NLGA, in 1935, and FLSA in 1938]." *Owen*, 702 F.3d at 1053. Such a conclusion flies in the face of reality. The three workers protection statutes were passed at the height of the Great Depression and were as much job *creation* statutes as they were worker protection statutes; for example, the overtime pay provisions of the FLSA act as an incentive to employers to hire more employees rather than pay a premium wage for working employees longer hours (assuming all hourly rates are equal, paying five employees to work 40 hours per week is cheaper than paying four employees to work 50 hours per week for the same 200 hours of work, since the 40 hours of overtime are fifty percent more expensive than the fifth employee's regular hours of work). Further, there was a flurry of Supreme Court decisions in the early and mid-1940's interpreting the FLSA and

speaking generally of worker protections. *See, e.g., Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 706-07 (1945) (an employee's FLSA rights may not be waived by contract or through collective bargaining because "[t]he statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce."). Thus, "[i]t seems inconceiveable that legislation effectively restricting the scope of the [NLGA] and the NLRA could be enacted without debte or even notice, especially in 1947, when those labor laws were both relatively new and undeniably prominent." *Murphy Oil*, 361 NLRB at 11.

*Murphy Oil* makes clear that substantive rights such as concerted activity may not be waived, and reasserts that "as the primary interpreter of Federal labor law" the Board is entitled to at least some deference on this issue. *Id.*

D. ***THE CLASS ACTION WAIVER CANNOT BE ENFORCED AGAINST PAGA CLAIMS UNDER THE CALIFORNIA SUPREME COURT'S ISKANIAN DECISION***

The California Supreme Court recently held that any employment agreement that compels waiver of PAGA representative claims violates public policy and is unenforceable in California. *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348, 359 (2014). In *Iskanian*, the arbitration agreement provided the following:

> [E]xcept as otherwise required under applicable law, (1) EMPLOYEE and COMPANY expressly intend and agree that class action and representative action procedures shall not be asserted, nor witll they apply, in any arbitration pursuant to this Policy/Agreement; (2) EMPLOYEE and COMPANY agree that each will not assert class action and representative action claims against the other in arbitration or otherwise; and (3) each of EMPLOYEE and COMPANY shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person. *Iskanian*, 59 Cal.4th at 360-61.

The *Iskanian* court began its analysis by recognizing that a PAGA representative action is a form of *qui tam* action in which a private aggrieved employee seeks to impose

civil penalties (in lieu of criminal misdemeanors) that could be imposed by California's Labor and Workforce Development Agency ("LWDA") as a substitute for governmental action (where the LWDA lacks resources to investigate every claim and therefore deputizes aggrieved employees as private attorneys general). *Id.* at 378-82. The court noted that the civil penalties an aggrieved employee could recover are separate and above the individual statutory damages to which he may be entitled, as he would recover such penalties on behalf of the LWDA as an enforcement mechanism. *Id.* at 381. The court further noted that the unwaivability of certain statutory rights, e.g., those pursuant to PAGA, derives from two statutes rooted in public policy: (1) California Civil Code section 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own…violation of law, whether willful or negligent, are against the policy of the law"), and (2) California Civil Code section 3513 ("Anyone may waive the advantage of a law intended for his own benefit. But a law established for a public reason cannot be contravened by a private agreement."). *Id.* at 382-83; *see also Armendariz*, 24 Cal.4th at 100. Thus, the *Iskanian* court concluded that an employee's right to bring a representative action under PAGA could not be waived as a matter of statute and of public policy. *Id.* at 384.

The *Iskanian* court went one step further, holding:

> [T]he rule against PAGA waivers does not frustrate the FAA's objectives because…the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state Labor and Workforce Development Agency...[s]imply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and the *state*, which alleges directly or through its agents – either the Labor and Workforce Development Agency or aggrieved employees – that the employer has violated the Labor Code. *Id.* at 384, 386-87 (emphasis in original).

This ruling was consistent with the the California Supreme Court's holding in *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4h 1109 (2013) ("*Sonic-Calabasas II*"), in which the the Court held that an employer's mandatory arbitration agreement that deprived claimants of their rights under California's *Berman* hearing process through the

California Labor Commissioner was unconscionable and was not preempted by the Federal Arbitration Act ("FAA") ("a facially neutral state-law rule is not preempted simply because its evenhanded application 'would have a disproportionate impact on arbitration agreements.'").

With *Sonic-Calabasas II* and now with *Iskanian*, the California Supreme Court has clarified the Supreme Court's broad holding in *Concepcion* as applied to California's laws. Moreover, the state's highest court has found that PAGA does not "stand as an obstacle to the accomplishment of the FAA's objectives" and therefore PAGA claims may not be preempted by the FAA, as the primary objective of the Act was to settle ordinary commercial disputes, not to occupy the field of representative enforcement actions of an employer's violation of state wage and hour laws. *Iskanian*, 59 Cal.4th at 384-86; *Concepcion*, 131 S.Ct. 1740, 1748 (2011); *see also, inter alia, Italian Colors*, 133 S.Ct. 2304, 2308 (2013), *Marmet Health Care Ctr., Inc. v. Brown*, 132 S.Ct. 1201, 1202-03 (2012), *Rent-A-Ctr West, Inc. v. Jackson*, 561 U.S. 63, 64-65 (2010), and *Stolt-Nielen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 667 (2010).

*Iskanian* even highlighted that in the one case the high court considered involving state action against an individual, *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), the Supreme Court held that the Equal Employment Opportunity Commission's enforcement action was not barred by a private arbitration agreement because the EEOC was not a party to the arbitration agreement, nor was the EEOC a proxy for the employee; rather, the EEOC could prosecute the action without the employee's consent. *Iskanian*, 59 Cal.4th at 386.

*Iskanian* is squarely on all fours with this case. The DRP provides, in relevant part:

> Each Dispute shall be arbitrated on an individual basis. Neither the Company nor any Employee or Applicant may pursue any Dispute on a class action, collective action or consolidated basis or in a representative capacity on behalf of other persons or entities who are claimed to be similarly situtated, or participate as a class member in such a proceeding. (p.5, ¶4(B)(i)).

As discussed above, PAGA claims are not individual actions but representative actions

where an employee "stands in the shoes" of the LWDA to litigate actions that benefit the public, not merely to vindicate his private rights. *Arias v. Super. Ct.*, 46 Cal.4th 969 (2009); Janet Cooper Alexander, *To Skin a Cat: Qui Tam Actions as a State Legislative Response to Concepcion*, 46 Univ. of Michigan Journal of Law Reform 4, at p. 1228 (2013). Because they "are essentially law enforcement actions," Plaintiff may not waive his right to represent other aggrieved employees in a PAGA action against KBR *as a matter of public policy* ("a law established for a public reason cannot be contravened by a private agreement."). *See Bauman v. Chase Inv. Serv. Corp.*, 747 F.3d 1117, 1121 (9th Cir. 2014) (citing *Arias*); Cal. Civ. Code ¶ 3513. Moreover, KBR – again, as a matter of public policy – may not contract away its own responsibility to follow California's wage and hour laws. Cal. Civ. Code ¶ 1668. Defendants cannot escape *Iskanian*'s holding.

Defendants offer no relevant authority to show that arbitration agreements, and specifically the Supreme Court's holding in *Concepcion*, apply to PAGA representative actions under California law. Indeed, Defendants submit, somewhat wistfully, that the defendant in *Iskanian* has appealed that portion of the decision to the Supreme Court. However, the Supreme Court has not granted certiorari. *Iskanian* is still good law, and this Court should follow the ruling of California's highest court based directly on California's public policy. Defendants propose that the PAGA representative claim should be stayed pending the resolution of Plaintiff's individual claims in arbitration. As *Iskanian* plainly sets forth, Plaintiff's PAGA claims are the claims of the LWDA and all potentially aggrieved KBR employees and therefore are unwaivable. Since that portion of the DRP fails as a matter of public policy, it would be inappropriate to stay the PAGA claim pending resolution of Plaintiff's individual rights in another forum.

Defendants also propose, in the alternative, that this Court stay the PAGA claim pending the *Iskanian* appeal. That proposition is hardly an efficient resolution of this issue. There is no guarantee if or when the Supreme Court might grant certiorari in the *Iskanian* decision, and even if it did the case might not resolve for years. The purpose of Defendants' favored forum for resolution, arbitration, is to have a speedy and efficient

resolution. *Stolt-Nielen*, 559 U.S. at 685 ("In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."). Needlessly delaying a PAGA representative action is not only inefficient it is downright criminal given the state of California's economy and how desperately the state needs funds for employees to have access to justice. *See* California Judicial Branch Home, "InFocus: Judicial Branch Budget Crisis" (available at http://www.courts.ca.gov/partners/courtsbudget.htm, last viewed Nov. 10, 2014) ("The California state court system, the largest in the world, serves 38 million people. Unprecedented budget cuts since 2008 hamper the people's access to justice.").

## V. SEVERANCE IS INAPPROPRIATE DUE TO THE MULTIPLE UNCONSCIONABLE CLAUSES AND LACK OF MUTUALITY

Defendants' arbitration agreement contains multiple illegal provisions designed to disadvantage employees and maximize its own advantage. KBR has the right to amend or change the arbitration agreement's rules and definitions at any time before a claim is initiated, **even after the claim has arisen**. This is not only unfair but it also renders illusory KBR's consent to arbitrate on the same terms as Plaintiff if they can change the rules as claims arise. KBR can engage in illegal acts then decide whether it wants to change the Plan to exclude the potential claims arising from that illegal conduct. As long as it makes the changes prior to a claim being initiated, it can effectively turn a previously arbitrable claim into a non-arbitrable one, or vice versa.

In addition to this lack of mutuality of obligation evidenced by the unilateral modification clause, Defendants' actual Dispute Resolution Agreement is unilateral on its face, requiring only the employee to arbitrate claims he has against the company. This lack of mutuality cannot be severed. *Armendariz*, 24 Cal.4th at 124-26.

Moreover, the interests of justice would not be served by simply striking the

offending provisions because, as the California Supreme Court observed in *Armandariz*, an employer will not be deterred from drafting unenforceable arbitration agreements if it knows that the worst penalty it risks is severance of offending clauses after the employee litigates the matter. *Id.* at 124-125, fn. 13.

Lastly, *Armendariz* held that the primary focus in deciding whether to sever or void an agreement is the number of unconscionable clauses:

> "[T]wo factors weigh against severance of the unlawful provisions. First, **the arbitration agreement contains more than one unlawful provision**; it has both an unlawful damages provision and an unconscionably unilateral arbitration clause. **Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage**." *Id.* at 124.

Here, there are multiple unconscionable provisions designed to maximize the employer's advantage. Apart from the unilateral modification provision, KBR drafted the DRP rules to expose employees to liability for payment of KBR's attorney's fees even where fees would not be recoverable by KBR at law. This clause alone would chill employees' exercise of the right to arbitrate. But KBR did not stop there. It added a clause precluding employees from recovering costs recoverable under the law, such as deposition transcript fees, which can run tens of thousands of dollars. KBR further sought to discourage employees from pursuing low damage claims by including a clause prohibiting employees from bringing class or representative claims in arbitration. Viewed together, KBR's has clearly sought to "rig the game" to unfairly maximize its own advantages in arbitration by deterring employees from bringing claims and ensuring they have the ammunition to make an example of any employees who do file claims by saddling them with hundreds of thousands of dollars in legal fees incurred by KBR should they lose.

/ / /

/ / /

/ / /

## VI. CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to compel arbitration and hold that (1) Plaintiff did not agree to arbitrate; (2) the arbitration agreement is unconscionable and unenforceable even assuming Plaintiff had agreed to it; (3) the purported class action waiver violates the NLRA; and (4) the waiver of the right to bring PAGA representative actions violates California law.

Dated: November 14, 2014

FELDMAN BROWNE OLIVARES, APC

By: [signature]

LEE R. FELDMAN
ALICIA OLIVARES
LEONARD H. SANSANOWICZ
Attorneys for Plaintiff DAVID TOTTEN

# EXHIBIT A

FORM EXEMPT UNDER 44 U S C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |

**INSTRUCTIONS:**
**File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.**

1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

a. Name of Employer
KELLOGG BROWN & ROOT, LLC ("KBR")
MOLYCORP, INC. ("MCI")

b. Tel. No. (310) 943-8500

c. Cell No.

f. Fax No. (310) 943-8501

d. Address *(Street, city, state, and ZIP code)*
67750 Bailey Road, Mountain Pass, CA 92366

e. Employer Representative
Attorney: Karen J. Pazzani, Esq.
Miller Law Group
12121 Wilshire Blvd., Suite 1375
Los Angeles, CA 90025

g. e-Mail
kjp@millerlawgroup.com

h. Number of workers employed
1000+

i. Type of Establishment *(factory, mine, wholesaler, etc.)*
Mine

j. Identify principal product or service
Mining

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

These joint employers are violating the NLRA by attempting to enforce an arbitration agreement waiving the employees' rights to bring a class or collective action. The waiver of the right to class or representative action violates the NLRA and is the unfair labor practice being alleged here. See Murphy Oil USA, Inc. and Sheila M. Hobson, 361 NLRB No. 72 (Oct. 28, 2014) (the joint employers' violated Section 7 of the NLRA and Section 8(a)(1) of the Act, which makes it an "unfair labor practice for an employer…to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7"). Thus, even though this charge is being filed and served well before the six month statutory deadline, time is of the essence. I request the NLRB file a charge against KBR and MCI to prevent these joint employers from enforcing these unlawful provisions.

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
David L. Totten

4a. Address *(Street and number, city, state, and ZIP code)*
David L. Totten
7950 W. Flamingo Rd. #1109
Las Vegas, NV 89147

4b. Tel. No.

4c. Cell No. (760) 590-0724

4d. Fax No.

4e. e-Mail
davidtotten69 @gmail.com

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filed in when charge is filed by a labor organization)*

6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By [signature] Leonard Sansanowicz, Esq.
*(signature of representative or person making charge)* *(Print/type name and title or office, if any)*

Tel. No. (310) 552-7812

Office, if any, Cell No.

Fax No. (310) 552-7814

e-Mail
leonard@leefeldmanlaw.com

Address 10100 Santa Monica Blvd., Suite 2490, Los Angeles, California

11/10/14
*(date)*

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq*. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.