Lee R. Feldman, Esq. (SBN 171628)
lee@leefeldmanlaw.com
Alicia Olivares, Esq. (SBN 181412)
alicia@leefeldmanlaw.com
Leonard H. Sansanowicz, Esq. (SBN 255729)
leonard@leefeldmanlaw.com
**FELDMAN BROWNE OLIVARES**
**A Professional Corporation**
10100 Santa Monica Blvd., Suite 2490
Los Angeles, California 90067
Telephone: (310) 552-7812
Facsimile: (310) 552-7814

Michael Rubin, Esq. (SBN 80618)
mrubin@altber.com
**ALTSHULER BERZON LLP**
117 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Attorneys for Plaintiff, DAVID L. TOTTEN, and all others similarly situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DAVID L. TOTTEN, an individual, and all others similarly situated

Plaintiffs,

vs.

KELLOGG BROWN & ROOT, LLC, a Delaware Corporation; MOLYCORP, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,

Defendants.

CASE NO. 5:14-cv-01766-DMG-DTBx

[*Case Assigned to the Honorable Dolly M. Gee in Courtroom 7 - Spring Street*]

[San Bernardino County Superior Court Case No. CIVDS1408596]

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Before Honorable United States District Judge Dolly M. Gee

Notice of Removal Filed: August 28, 2014

**TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 3, 2015, following the Supreme Court's denial of certiorari in *CLS Transportation Los Angeles v. Iskanian*, U.S.Sup.Ct. No. 14-341, Judge Edward Chen of the U.S. District Court for the Northern District of California issued the attached order denying an employer's motion to compel arbitration of claims under California's Labor Code Private Attorneys General Act of 2004 ("PAGA").

The District Court in *Hernandez*, *et al. v. DMSI Stafing*, *LLC*, *et al.*, Case No. 3:14-cv-01531-EMC, adopted the reasoning of the California Supreme Court in *Iskanian* in holding that PAGA representative claims could not be the subject of forced waiver in a mandatory arbitration agreement. Specifically, the District Court held that a state law rule precluding the forced waiver of PAGA claims does not interfere with the fundamental attributes of arbitration, and that the Federal Arbitration Act does not preempt California's rule against PAGA waivers. (Order at 11:1-2, 14:1-2).

Attached hereto as Exhibit "A" is a true and correct copy of the Order Granting in Part and Denying in Part Defendants' Motion to Compel Arbitration in *Hernandez*.

Dated: February 5, 2015

FELDMAN BROWNE OLIVARES, APC
ALTSHULER BERZON LLP

By: /s/ Leonard H. Sansanowicz
Attorneys for Plaintiff DAVID TOTTEN

# EXHIBIT A

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTINA HERNANDEZ, *et al.*,

Plaintiffs,

v.

DMSI STAFFING, LLC., *et al.*,

Defendants.

_______________________________________/

No. C-14-1531 EMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION**

**(Docket No. 39)**

On February 27, 2014, Plaintiff Martina Hernandez filed a class action complaint alleging various violations of California's labor code and California's Unfair Competition Law ("UCL"), and bringing a representative claim under the Private Attorneys General Act ("PAGA"). Docket No. 1-1 ("Compl."). Ms. Hernandez brought this action against DMSI Staffing, LLC ("DMSI") and Ross Stores, Inc. ("Ross") (collectively "Defendants"). Pending before the Court is Defendants' motion to compel arbitration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Hernandez has filed a class action complaint against DMSI and Ross. Docket No. 1-1. Ms. Hernandez initially brought suit in Alameda County Superior Court, but Defendants removed the case in April of 2014. Docket No. 1. Ms. Hernandez's motion to remand was denied. Docket No. 38.

In her Complaint, Ms. Hernandez alleges she was jointly employed by DMSI and Ross to work in Ross's warehouse as a non-exempt employee who was paid by the hour. Compl. ¶ 1, 5. DMSI is a temporary staffing company that provides temporary staffing to Ross, a retail apparel

store. According to DMSI's Administrative Director of Staffing Operations, Christine Harrison, Ms. Hernandez was hired by DMSI after DMSI replaced a staffing agency named MJO as Ross's staffing partner. Ms. Hernandez had previously been staffed in a Ross warehouse through MJO. Docket No. 39-2, Harrison Decl. ¶¶ 5-6. When she began work with DMSI on March 26, 2012, Ms. Hernandez signed a Dispute Resolution Agreement ("DRA"). Docket No. 39-2. DMSI's Dispute Resolution Agreement provides:

> This Agreement sets forth the procedures to resolve any and all disputes arising out of or related to your employment with DMSI and/or termination thereof. . . . All such disputes will be resolved by an arbitrator through final and binding arbitration. . . . This Agreement is governed by the Federal Arbitration Act, 9 USC. Sec.1 *et seq*. . . . The arbitration shall be conducted with both parties having the right to conduct discovery and bring motions as provided for by the Federal Rules of Civil Procedure. However, there will be no right for any dispute to be brought, heard, or arbitrated as a Class or Collective Action of any sort of nature.

Harrison Decl., Ex. 1. Ms. Hernandez also signed a copy of the DRA in Spanish. *Id.*, Ex. 2.

According to Ross's Human Resources Administrator for its Southwest Distribution Center, Tina Lobato, in September of 2012, Ms. Hernandez applied to and was hired directly by Ross. Docket No. 39-3 ("Lobato Decl.") at ¶¶ 2-4; Ex. 1. Ms. Lobato attests that she participated in the orientations that were given to new employees like Ms. Hernandez. She states that the new hires were given a packet of Ross new hire documents, which were explained in both English and Spanish, depending on the mix of employees. Lobato Decl. ¶4. The new hires received a copy of Ross's employee handbook, called "Distribution & Transportation Associate Handbook." Lobato Decl. ¶ 6. The employee handbook contained an Arbitration Policy. Lobato Decl., Ex. 3. Ms. Hernandez signed an acknowledgment and agreement, recognizing that she "read, under[stood] and agree[d] to comply with the . . . Ross Arbitration Policy." Lobato Decl., Ex. 2. The Ross Arbitration Policy laid out at page 44 of the employee handbook provides:

> This Arbitration Policy ("Policy") applies to any disputes, arising out of or relating to the employment relationship, between an associate and Ross or between an associate and any of Ross' agents or employees, whether initiated by an associate or by Ross. This policy requires all such disputes to be resolved only by an Arbitrator through final and binding arbitration . . . . This Policy is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. . . . The parties will have

United States District Court
For the Northern District of California

> the right to conduct civil discovery and bring motions, as provided by the Federal Rules of Civil Procedure and enforced by the Arbitrator. However, there will be no right or authority for any dispute to be brought, heard or arbitrated as a class action, private attorney general, or in a representative capacity on behalf of any person.

Lobato Decl., Ex. 3.

Ms. Hernandez alleges DMSI and Ross violated various provisions of California's labor code as well as the Industrial Wage Commission's ("IWC") order, including failure to pay minimum wage (Cal. Lab. C. §§ 1194, 1194.2, 1197); failure to pay wages for all hours worked (Cal. Lab. C. § 204); failure to pay overtime (Cal. Lab. C. §§ 510, 1194); failure to pay timely wages owed upon termination or quitting (Cal. Lab. C. §§ 201-203); and failure to provide accurate and compliant wage statements (Cal. Lab. C. § 226). Ms. Hernandez alleges that, as a result of the labor code violations, the Defendants' business practices violated the UCL. Ms. Hernandez also seeks remedies under PAGA (Cal. Labor Code §§ 2698 and 2699).

Ms. Hernandez alleges six causes of action individually and on behalf of similarly-situated class members. Compl. at 1. The seventh cause of action under PAGA is brought as a representative action. *Id.* at 13. The Class is defined as "[a]ll current and former non-exempt, hourly paid California employees who worked through DMSO and who were assigned to any of Ross's warehouse facilities in California for any period of time within four years prior to the initiation of this action through certification . . . and whose work time was tracked by one or more time management systems." *Id.* ¶ 9. Defendants have answered. Docket No. 6.

Plaintiff does not oppose arbitration of her labor code claims or her claim under the UCL. Solely at issue is Plaintiff's seventh cause of action, the representative claim under PAGA. Plaintiff contends that she has not waived and is not bound to arbitrate her PAGA claim. At the hearing on Defendants' motion to compel, Plaintiff made an oral motion to amend her Complaint to dismiss without prejudice her PAGA claim. The Court gave leave for the parties to file supplemental briefing on whether Plaintiff should be permitted to amend her Complaint under Rule 15. For the reasons discussed below, the Court **DENIES** Plaintiff's motion to amend her Complaint, **GRANTS** Defendants' motion to compel arbitration as to Plaintiff's first six causes of action, and **DENIES in**

United States District Court
For the Northern District of California

**part and DEFERS in part** Defendants' motion to compel arbitration of Plaintiff's representative PAGA claim.

## II. DISCUSSION

A. Rule 15

At the hearing on the motion to compel, Plaintiff's counsel made an oral motion to amend, which Defendants opposed. The Court gave the parties leave for supplemental briefing on whether to permit amendment.[1] When a party seeks to dismiss some, but not all, of its claims, Rule 15 governs. *See Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1513 (9th Cir. 1995) ("[W]e have held that Rule 15, not Rule 41, governs the situation when a party dismisses some, but not all, of its claims."). Under Rule 15, a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, a court may deny leave to amend where there are grounds such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962).

In this case, Plaintiff seeks to amend by dismissing her PAGA causes of action, in part because she concedes her PAGA claim against DMSI is time-barred.[2] Docket No. 46 at 5-6. Defendants respond that the arbitrator should decide whether to permit amendment, that Plaintiff has acted in bad faith by knowingly prosecuting her time-barred claims, and that Plaintiff has brought her oral motion in an effort to engage in forum-shopping and other chicanery.

The Court agrees that there is evidence that Plaintiff has sought to amend in bad faith, and that prejudice would naturally follow from granting Plaintiff's motion. First, the facts suggest that

---

[1] The Court notes that the Plaintiff's oral motion and supplemental briefing do not comply with this Court's local rules regarding moving to amend the pleadings. This Court's local rules require that a party moving to amend a pleading reproduce the entire proposed amended pleading. *See* Civ. L.R. 10-1

[2] Although Plaintiff asserts her PAGA claim against Ross as the joint employer of DMSI is likewise time barred, she does not appear to assert her claims arising out of her direct employment by Ross between September 2012 and September 2013 are time barred. The PAGA claim does not appear to be limited to those who were jointly employed by DMSI and Ross.

United States District Court
For the Northern District of California

Plaintiff has engaged in forum-shopping. For example, Ms. Hernandez appears to have filed a state court action in Riverside duplicating her PAGA cause of action against Ross just one month after Defendants removed. *Compare* Docket No. 1, *with* Docket No. 46, Ex. B. Plaintiff offers no reason for filing the duplicate action, and it appears at least plausible that Plaintiff filed the state court action to hedge her bet on Plaintiff's (ultimately unsuccessful) motion to remand and ultimately allow her to manipulate the risk of compelled arbitration, which risk she may believe to depend on the forum. As discussed below, the California Supreme Court has enunciated a rule against waiver of PAGA claims, and it has concluded its rule is not preempted by the Federal Arbitration Act. *Iskanian v. CLS Transp. Los Angeles, LLC,* 59 Cal. 4th 348, 379 (2014) *cert. denied,* No. 14-341, 2015 WL 231976 (U.S. Jan. 20, 2015). That decision, however, is not binding on federal courts on the question of FAA preemption. The Court concludes that Plaintiff's motion to amend appears to have been brought to avoid the possibility of an adverse ruling on the pending motion to compel arbitration.

The Court is also skeptical of the timing of Plaintiff's motion to amend. Ms. Hernandez appears to contend that she discovered that her claim was time-barred when she learned of her termination date in DMSI's declaration in support of its motion to compel arbitration. *See* Docket No. 46 at 5. The Court finds this implausible. Ms. Hernandez presumably knew that she ceased working for DMSI in 2012. Correspondingly, she likely knew her claim was time-barred at multiple junctures of this litigation, including the inception of this action, the inception of the Riverside action in May of 2014 when she alleged only the timely PAGA claim against Ross (and not the untimely claim against DMSI), and during the pending dispute wherein she reviewed the Defendants' motion to compel arbitration months before she requested leave to amend.

It appears that Plaintiff timed her motion to amend so that she could have the benefit of previewing Defendants' motion to compel arbitration before deciding whether to abandon the federal case in favor of the parallel state case. Such a tactic is not countenanced by Rule 15, particularly where there is prejudice to Defendants resulting from potentially denying Defendants' right to fully adjudicate their motion to compel arbitration while subjecting Defendants to incurring the expense of unnecessary motion practice so that Plaintiff can have a trial run. Plaintiff's motion

United States District Court
For the Northern District of California

to amend is therefore denied. *See Acri,* 781 F.2d at 1398-99 (affirming denial of leave to amend where plaintiffs' motion was brought to "avoid the possibility of an adverse summary judgment ruling" and where allowing amendment would lead to prejudice due to the need for additional discovery); *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (holding "bad faith motive is a proper ground for denying leave to amend" and affirming denial of leave to amend where plaintiff's motive was to destroy diversity and destroy the court's jurisdiction). The Court will therefore proceed to address the merits of Defendants' motion to compel arbitration. In that motion, Defendants seek to enforce the putative waiver of Plaintiff's representative PAGA claims.

B. Federal Arbitration Act (FAA)

Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. One purpose of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). The FAA reflects a "liberal federal policy favoring arbitration agreements." *Waffle House,* 534 U.S. at 289.

The savings clause of Section 2 permits arbitration agreements to be declared unenforceable by generally applicable contract defenses but not by "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011). To put it more generally, Section 2's savings clause does not preserve state-law rules that "stand as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 1748; 1753 (applying obstacle preemption doctrine, quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). In *Concepcion*, the Court held that California's *Discover Bank* rule

United States District Court
For the Northern District of California

prohibiting waiver of classwide procedures in consumer contracts as unconscionable was preempted by the FAA. "Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 1748. The Court found that requiring classwide arbitration undermined arbitration's "fundamental attribute" of being an efficient, streamlined procedure designed to achieve expeditious results. *Id.* at 1749. The shift from bilateral to class-action arbitrations would result in "fundamental" changes to the arbitration process. *Id.* at 1750.

The issue before this Court is whether the FAA preempts California law prohibiting waiver of PAGA representative claims.

C. PAGA Waiver Under California State Law

The specific question in this case is whether the putative waivers of class, collective, private attorney general, and representative actions in the DRA and the Ross Arbitration Policy bar Ms. Hernandez from pursuing her representative PAGA claim. The Ross Arbitration Policy clearly contains a waiver of Ms. Hernandez's right to bring or arbitrate any dispute "as a class action, [as a] private attorney general, or in a representative capacity on behalf of any person." Lobato Decl., Ex. 3. As such, there is no question that the Ross arbitration clause purports to limit Ms. Hernandez's right to bring a representative PAGA claim. Whether the clause in the DRA purports to address a representative PAGA claim is less clear. The DRA provides that "there will be no right for any dispute to be brought, heard, or arbitrated as a Class or Collective Action of any sort of nature." Representative actions are not called out by this clause. Nonetheless, in this case, Ms. Hernandez does not argue that the DRA does not encompass a representative PAGA claim. Indeed, Ms. Hernandez appears to concede that the DRA and Ross Arbitration Policy both expressly forbid the PAGA claim herein. Docket No. 40, Opp. at 8.

Assuming that both clauses apply to preclude a PAGA representative claim, neither waiver is enforceable as a matter of California law. In *Iskanian*, the California Supreme Court ruled such a waiver is unenforceable as a matter of public policy. *Id.* at 382.

The Court found PAGA suits were enforcement actions in which the Labor and Workforce Development Agency ("LWDA") is the real party in interest. *Iskanian* concluded that a PAGA

United States District Court
For the Northern District of California

representative claim was in essence a *qui tam* action. *Id.* at 382. As a result, "the government entity on whose behalf the plaintiff files suit is always the real party in interest." *Id.* at 382. Thus, PAGA is "fundamentally a law enforcement action designed to protect the public and penalize the employer for past illegal conduct." *Franco,* 171 Cal. App. 4th at 1300. Under PAGA, "an 'aggrieved employee' may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations." *Arias,* 46 Cal. 4th at 980. Any recovery of penalties largely returns to the state; "[o]f the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.'" *Id.* at 980-81. An aggrieved employee may proceed with a PAGA claim only after providing written notice to the Labor and Workforce Development Agency ("LWDA") and providing the agency the opportunity to take over prosecuting the alleged violation. Cal. Lab. C. § 2699.3. In this manner, among others, California labor law enforcement agencies "retain primacy over private enforcement efforts." *Arias,* 46 Cal. 4th at 980. The state is bound by any resolution reached by its deputized plaintiff. *Iskanian,* 59 Cal. 4th at 387 (observing "judgment in a PAGA action is binding on the government").

Thus, PAGA representative suits differ from class actions and other suits in which a private plaintiff seeks relief on behalf of the public. A PAGA claim "functions as a substitute for an action brought by the government itself," and therefore any judgment binds the state labor law enforcement agencies. *Arias,* 46 Cal. 4th at 986. In a PAGA action "to recover civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *Id.* (quotation omitted). These differences, among others, have led California courts to recognize, for example, that "the PAGA representative action is fundamentally different than the injunctive relief action" under California's unfair competition law, false advertising law, or Consumer Legal Remedies Act. *McGill v. Citibank, N.A.,* 181 Cal. Rptr. 3d 494, 510 (Ct. App. 2014), *reh'g denied* (Jan. 7, 2015). *See Baumann v. Chase Inv. Servs. Corp.,* 747 F.3d 1117, 1123 (9th Cir. 2014) *cert. denied,* No. 14-260, 2014 WL 4373643 (U.S. Dec. 15, 2014) (discussing the distinct *qui tam* nature of PAGA representative suits and concluding that "a PAGA suit is fundamentally different than a

United States District Court
For the Northern District of California

class action") (quoting *McKenzie v. Fed. Express Corp.*, 765 F. Supp. 2d 1222, 1233 (C.D. Cal. 2011)).

*Iskanian* concluded that imposing on employees a waiver of representative claims "frustrates the PAGA's objectives" – the punishment and deterrence of labor code violations. *Iskanian,* 59 Cal. 4th at 384. A representative claim, unlike an individual claim, fully effectuates "the penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code." *Id.* (quoting *Arias,* 46 Cal.4th at 985-987). Waivers of representative claims are therefore contrary to public policy and not enforceable under California law. *Id.* at 382.

D. California Law Prohibiting PAGA Waiver Is Not Preempted by The FAA

The interpretation of PAGA and *Iskanian*'s decision that waivers of PAGA claims are not enforceable are questions of California state law. *See U.S. Fid. & Guar. Co. v. Lee Investments LLC,* 641 F.3d 1126, 1133 (9th Cir. 2011). Whether the *Iskanian* anti-waiver rule is preempted under the FAA is a matter of federal law. *See* U.S. Const., art. VI, cl. 2 ("the Laws of the United States ... shall be the supreme Law of the Land"); *Southland Corp. v. Keating,* 465 U.S. 1, 12 (1984) ("We thus read the underlying issue of arbitrability to be a question of substantive federal law: 'Federal law in the terms of the Arbitration Act governs that issue in either state or federal court.'" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)); *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 936 (9th Cir. 2013) ("When a state rule allegedly conflicts with the FAA, we apply standard preemption principles, asking whether the state law frustrates the FAA's purposes and objectives." (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2320 (2013) (Kagan J., dissenting))); *Langston v. 20/20 Companies, Inc.*, No. EDCV 14-1360 JGB SPX, 2014 WL 5335734, at *7 (C.D. Cal. Oct. 17, 2014); *Fardig v. Hobby Lobby Stores Inc.*, No. SACV 14-00561 JVS, 2014 WL 4782618, at *4 (C.D. Cal. Aug. 11, 2014). While *Iskanian's* holding on this question is not binding on this Court, for the reasons stated below, this Court finds *Iskanian* persuasive and agrees with its conclusion that the FAA does not preempt the *Iskanian* rule.

Defendants contend that the *Iskanian* rule against waiver of PAGA representative claims is not materially different from the *Discover Bank* rule prohibiting waivers of class actions found preempted in *Concepcion*. The Court disagrees.

The reasoning of *Concepcion* does not extend to a PAGA representative action. The Supreme Court in *Concepcion* identified aspects of class procedures that it found to be inconsistent with the FAA, which do not apply to PAGA representative actions. For example, *Concepcion* focused on the complexity of class certification procedures – including the need to determine whether the class may be certified, whether the named parties are sufficiently representative and typical, and how class discovery should be conducted. *Concepcion,* 131 S. Ct. at 1751. By contrast, as discussed in *Baumann*, "unlike Rule 23(a), PAGA contains no requirements of numerosity, commonality, or typicality." *Baumann,* 747 F.3d at 1123. There is no certification procedure. *Concepcion* noted it would typically take 583 or 630 days to complete class arbitrations. *Id.* Nothing in the record before this Court suggests PAGA representative claims would take nearly so long. *Concepcion* stressed the formality needed for class certification to bind class members, including the need for notice, an opportunity to be heard, and opt-out rights. *Concepcion,* 131 S. Ct. at 1751. PAGA, on the other hand, has "no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action." *Baumann,* 747 F.3d at 1122. Nor does a PAGA action require inquiry into the "named plaintiff's and class counsel's ability to fairly and adequately represent unnamed employees." *Id.* While the need for sufficient procedures to bind class members in class arbitration was cause for concern in *Concepcion,* PAGA's preclusive effect differs from that of class action judgments. "PAGA expressly provides that employees retain all rights 'to pursue or recover other remedies available under state or federal law, either separately or concurrently with an action taken under this part.'" *Baumann,* 747 F.3d at 1123 (quoting Cal. Lab. Code § 2699(g)(1)). Although, as discussed *supra*, the governmental agency and those represented by it may be bound in terms of their rights under PAGA, *Arias,* 46 Cal. 4th at 986, a PAGA recovery does not prevent employees from litigating their underlying wage and hour claims. *Id.* at 987. The due-process-related procedural requirements of formal class actions do not obtain in PAGA

representative actions. Thus, the *Iskanian* rule against waiver of PAGA claims does not threaten to undermine the fundamental attributes of arbitration.

Defendants' reliance on *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th Cir. 2013) which held that the FAA preempts the *Broughton-Cruz* rule to the contrary is misplaced.[3] Under the *Broughton-Cruz* rule, a plaintiff seeking broad injunctive relief under California's Consumer Legal Remedies Act, Unfair Competition Law, and False Advertising Law could not be compelled into arbitration. *See Broughton v. Cigna Healthplans of California,* 21 Cal. 4th 1066, 1079-80 (1999); *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 307 (2003). The Ninth Circuit found that the FAA preempted the *Broughton-Cruz* rule. *See Ferguson,* 733 F.3d at 934. *Ferguson* concluded that the *Broughton-Cruz* rule would forbid not just waiver of certain claims, but would prohibit outright the arbitration of those claims. *Id.* Such preclusion, *Ferguson* reasoned, ran afoul of the Supreme Court's command in *Concepcion* that state laws that prohibit arbitration of a particular type of claim are displaced by the FAA. *Id.* In light of the broad effect given to arbitration agreements, *Ferguson* concluded that "even where a specific remedy has implications for the public at large, it must be arbitrated under the FAA if the parties have agreed to arbitrate it." *Id.* at 935. *Ferguson* also criticized the justification for the *Broughton-Cruz* rule, which was premised on effective vindication of California's statutes and avoidance of the inherent conflict between the FAA and the purpose of those statutes. *Id.* at 935-36. *Ferguson* concluded that the effective vindication and inherent conflict exceptions do not extend to state statutes; they only apply to federal statutes. *Id.* Finally, *Ferguson* concluded that arguments relating to the institutional advantages of the judicial forum did not survive *Concepcion*. *Id.* at 936.

For the reasons stated in *Iskanian*, however, the rationale for preemption of the *Broughton-Cruz* rule does not apply to PAGA claims. As noted above, a PAGA claim is a type of *qui tam* action. *Iskanian,* 59 Cal. 4th at 382. The proper focus is on the real party in interest, not on

---

[3] Defendants cite to *Kilgore v. KeyBank, N.A.*, 673 F.3d 947 (9th Cir. 2012), which was reheard *en banc*. The *en banc* panel determined that the *Broughton-Cruz* rule that was deemed preempted by the initial *Kilgore* panel did not apply in light of the facts of that case. *Kilgore v. KeyBank, Nat. Ass'n,* 718 F.3d 1052, 1061 (9th Cir. 2013). *Ferguson,* however, squarely addressed the preemption question.

the public nature of the remedy sought. *Id.*; *cf. Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 739 (2014) (holding that where the state is the plaintiff in a *parens patriae* suit, even where the claim for restitution is based on injuries suffered by many citizens of the state, the suit does not constitute a "mass action" under CAFA); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 672 (9th Cir. 2012) (holding that, despite the possibility of restitution for thousands, the State of Nevada was the real party in interest in *parens patriae* suit, and therefore action was not a "mass action" for purposes of CAFA removal). Unlike the private plaintiffs in *Broughton-Cruz*, who sought relief that happens to have a public dimension, as *Iskanian* holds, the real party in interest in a representative PAGA is the government, which the plaintiff is deputized to represent.[4] The government exercises initial control over the action (having the right to bring the suit after notice), receives the lion share of the statutory recovery, and is bound by any judgment obtained. *Iskanian,* 59 Cal. 4th at 380-82; *see also McGill,* 181 Cal. Rptr. 3d at 509 (holding *Iskanian* inapplicable to *Broughton-Cruz* analysis; "PAGA is unique in comparison to the UCL, FAL, and CLRA because the state retains primacy over private enforcement efforts." (citation omitted)). A PAGA claim "is [therefore] not a dispute between an employer and an employee arising out of their contractual relationship[;] [i]t is a dispute between an employer and the *state*." *Id.* at 386 (emphasis in original). In this way, a PAGA claim is not merely derivative of an aggrieved employee's claims – the LWDA does not act as a proxy for that employee. *Id.* at 387-88; *cf., Waffle House,* 534 U.S. at 288 (observing "the EEOC is not merely a proxy for the victims of discrimination and that [its] enforcement suits should not be considered representative actions subject to Rule 23" (quoting *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n,* 446 U.S. at 318(1980)). *Ferguson* is inapposite to the *Iskanian* rule prohibiting waiver of PAGA claims because of the public nature of law enforcement that inheres in PAGA.

---

[4] The California Legislature elected to deputize an aggrieved employee to bring a claim on behalf of the state instead of a stranger to the employment relationship to avoid "private plaintiff abuse." *Id.* at 387.

To be sure, there are lower court cases extending case law relating to the preemption of the *Broughton-Cruz* rule to waivers of PAGA claims. *See, e.g., Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 846 (N.D. Cal. 2012) (citing *Kilgore v. KeyBank, Nat. Ass'n,* 673 F.3d 947, 951 (9th Cir. 2012), *on reh'g en banc,* 718 F.3d 1052 (9th Cir. 2013)); *see also Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW SSX, 2014 WL 5088240, at *12 (C.D. Cal. Oct. 7, 2014); *Ortiz,* 2014 WL 4961126, at *11 (following "the majority of federal district courts" in finding that PAGA action waivers are enforceable); *Fardig*, 2014 WL 4782618, at *3 (citing *Kilgore* and declining on motion for reconsideration to depart from prior holding following the majority of district court opinions); *see also Lucero v. Sears Holdings Mgmt. Corp.*, No. 14-CV-1620 AJB WVG, 2014 WL 6984220, at *6 (S.D. Cal. Dec. 2, 2014) (following *Fardig* and its progeny); *Mill v. Kmart Corp.*, No. 14-CV-02749-KAW, 2014 WL 6706017, at *6-7 (N.D. Cal. Nov. 26, 2014) (same); *Langston,* 2014 WL 5335734, at *8 (same). These cases are not persuasive, because they fail to recognize the critical difference between PAGA claims on behalf of the government and private suits for injunctive relief. These cases also fail to examine whether arbitration of PAGA representative claims, like class action claims, would in fact undermine the "fundamental attributes" of arbitration, a condition necessary to warrant the application of obstacle preemption which underpins the holding in *Concepcion*.

Moreover, as noted in *Iskanian*, the public nature of PAGA is significant because the FAA was not originally intended to govern disputes between the government (acting in its law enforcement capacity) and private employers. *See Waffle House,* 534 U.S. at 294. Instead, the FAA's focus is on arbitration of disputes between parties involving their own rights, not the rights of a public enforcement agency. In that vein, the FAA was not intended to preempt policies that vindicate the enforcement of *qui tam* suits brought on behalf of the state. *See Martinez v. Leslie's Poolmart, Inc.*, No. 8:14-CV-01481-CAS, 2014 WL 5604974, at *5 (C.D. Cal. Nov. 3, 2014) (compelling arbitration of representative claim and concluding the FAA does not preempt rule precluding waiver of representative PAGA claims); *United States v. Cancer Treatment Centers of Am., No.* 99 C 8287, 2002 WL 31497338, at *2 (N.D. Ill. Nov. 7, 2002) (holding *qui tam* action under False Claims Act is not subject to arbitration agreement).

United States District Court
For the Northern District of California

Finally, the Court notes that federalism concerns further support the conclusion that the FAA does not preempt California's rule against PAGA waivers. The principle of federalism counsels against disabling the authority of a state law enforcement agency acting within its police powers. "[S]tate laws dealing with matters traditionally within a state's police powers are not to be preempted unless Congress's intent to do so is clear and manifest." *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca,* 152 F.3d 1184, 1186 (9th Cir. 1998). As the Supreme Court has observed:

> [D]espite the variety of . . . opportunities for federal preeminence, we have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law. Indeed, in cases like this one, where federal law is said to bar state action in fields of traditional state regulation, we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654-55 (1995) (citations omitted); *United States v. Locke,* 529 U.S. 89, 108 (2000) (finding that where Congress legislates "in a field which the States have traditionally occupied" starting assumption is "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress" (citation omitted)); *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996) ("[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action."); *Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 110 (1992) (holding "a high threshold must be met if a state law is to be pre-empted for conflicting with the purposes of a federal Act"). Labor law enforcement falls squarely within a state's police powers. *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 756 (1985) ("States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State." (citation omitted)). A state's authority over its law enforcement activities is central to state sovereignty. *Printz v. United States,* 521 U.S. 898, 928 (1997) ("It is an essential attribute of the States' retained sovereignty that they remain independent and autonomous within their proper sphere of authority.").

*Iskanian* highlights the ways that California's police powers would be adversely affected by FAA preemption. PAGA's objectives – enhancing law enforcement and efficiently deploying resources to address a problem that costs California billions of dollars each year – squarely address issues of public concern. *Iskanian,* 59 Cal. 4th 348 at 379; 384. FAA preemption of the rule against waiver of PAGA claims would do more than hinder the state's ability to enforce its laws through *qui tam* actions; preemption would "disable one of the primary mechanisms for enforcing the Labor Code." *Id.* at 383.

The district court cases that have rejected *Iskanian* demonstrate that the risk to state sovereignty is not hypothetical. For example, *Ortiz v. Hobby Lobby Stores, Inc.,* No. 2:13-CV-01619, 2014 WL 4961126 (E.D. Cal. Oct. 1, 2014), compelled arbitration of the PAGA claim, but found that (1) Plaintiff could not pursue a representative PAGA claim, and (2) Plaintiff could not bring an individual PAGA claim. *Id.* at *13. In other words, *Ortiz* barred the PAGA claim in a judicial forum and next concluded that "Plaintiff is barred from pursuing her PAGA action in arbitration." *Id. Waffle House* cautioned that using the FAA to preclude the EEOC from seeking victim-specific relief would turn "what is effectively a forum selection clause into a waiver of a nonparty's statutory remedies." *Waffle House,* 534 U.S. at 295. *Ortiz* illustrates that compelling arbitration of a PAGA claim does not merely enforce a forum selection clause, but instead can have the practical effect of entirely waiving a state agency's statutory remedy.

Absent Congress's clear and manifest intent to disable the enforcement of one of California's police powers traditionally held by the state, this Court is particularly reluctant to find FAA preemption of *Iskanian's* rule against PAGA waiver.[5]

---

[5] This Court also does not find the FAA sufficiently pervasive, dominant, or obstructed to conclude that the FAA is impliedly the "sole federal authority" as to adjudication of labor law enforcement actions belonging to the state. *Cf. Lockheed Air Terminal, Inc. v. City of Burbank,* 457 F.2d 667, 671 (9th Cir. 1972) *aff'd,* 411 U.S. 624 (1973) (holding "pervasiveness of federal regulation in the field of air commerce, the intensity of the national interest in this regulation, and the nature of air commerce itself require the conclusion that State and local regulation in that area has been preempted" by the Aviation Act).

## III. CONCLUSION

The Court concludes that barring the waiver of representative PAGA claims and requiring such claims to be arbitrated would not interfere with the fundamental attributes of arbitration. *Cf. Concepcion*, 131 S. Ct. at 1748. Defendants have not shown that arbitration of these claims would be particularly complex, cumbersome, time-consuming, or expensive. Nor should FAA preemption be lightly considered in view of the historical purpose of the FAA and the federalism concerns which counsel deference to the state's exercise of traditional police power which is embodied in PAGA. In short, *Iskanian*'s anti-waiver rule does not "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 1735 (quoting *Hines v. Davidowitz*, 312 U.S. at 67). Accordingly, the Court denies Defendants' motion to enforce the waiver of Plaintiff's representative PAGA claims.

The fact that the waiver provisions of the arbitration clauses at issue cannot be enforced to bar PAGA representative claims does not necessarily dictate which forum is proper for their adjudication. The arbitration clauses here are ambiguous, because while both provisions broadly extend arbitration to all disputes arising out of or related to Plaintiff's employment, the waivers suggest that the parties did not anticipate that PAGA representative claims would be arbitrated. *See Iskanian*, 59 Cal. 4th at 391 ("The arbitration agreement gives us no basis to assume that the parties would prefer to resolve a representative PAGA claim through arbitration.").

The Court directs the parties to meet and confer regarding their views on how to proceed in light of the holdings of this order. The Court will address whether to bifurcate and stay the PAGA matter pursuant to 9 U.S.C. § 3 at the next case management conference on March 26, 2015.[6] To the extent the parties disagree on next steps, the parties shall agree on a briefing schedule on their respective interpretations of the DRA and Ross Arbitration Policy language. Such briefing shall be completed no later than March 12, 2015. If the parties are able to agree on next steps through meeting and conferring, the parties shall file a stipulation and proposed order.

---

[6] The Court finds that 9 U.S.C. § 3 and not Cal. Civ. Proc. C. § 1281.2 applies to this case. *See, e.g., Cronus Investments, Inc. v. Concierge Servs.*, 35 Cal. 4th 376, 391 (2005) (noting that procedural rules of the FAA clearly applied to federal courts sitting in diversity).

United States District Court
For the Northern District of California

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to amend the complaint, **DENIES** Defendants' motion to enforce waiver of Plaintiff's PAGA representative claims, **DEFERS** decision on bifurcation and stay; and **GRANTS** Defendants' uncontested motion to compel arbitration as to Ms. Hernandez's first six causes of action.

This order disposes of Docket No. 39.

IT IS SO ORDERED.

Dated: February 3, 2015

EDWARD M. CHEN
United States District Judge