Lee R. Feldman, Esq. (SBN 171628)
lee@leefeldmanlaw.com
Alicia Olivares, Esq. (SBN 181412)
alicia@leefeldmanlaw.com
Leonard H. Sansanowicz, Esq. (SBN 255729)
leonard@leefeldmanlaw.com
**FELDMAN BROWNE OLIVARES**
**A Professional Corporation**
10100 Santa Monica Blvd., Suite 2490
Los Angeles, California 90067
Telephone: (310) 552-7812
Facsimile: (310) 552-7814

Michael Rubin, Esq. (SBN 80618)
mrubin@altber.com
**ALTSHULER BERZON LLP**
117 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Attorneys for Plaintiff, DAVID L. TOTTEN, and all others similarly situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID L. TOTTEN, an individual, and all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>KELLOGG BROWN & ROOT, LLC, a Delaware Corporation; MOLYCORP, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 5:14-cv-01766-DMG-DTBx<br><br>[*Case Assigned to the Honorable Dolly M. Gee in Courtroom 7 - Spring Street*]<br><br>[San Bernardino County Superior Court Case No. CIVDS1408596]<br><br>**NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Before Honorable United States District Judge Dolly M. Gee<br><br>Notice of Removal Filed: August 28, 2014 |

**TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 30, 2015, the National Labor Relations Board issued the attached Decision and Order, *Chesapeake Energy Corporation and its wholly owned subisidiary Chesapeake Operating, Inc. and Bruce Escovedo*, Case 14-CA-100530, upholding the finding of an Administrative Law Judge that the arbitration agreement in question violated Section 8(a)(1) of the National Labor Relations Act.

Specifically, in *Chesapeake* the Board found that a provision in the arbitration agreement, "No Class or Collective Actions Permitted," that required employees – as a condition of their employment – to "pursue any claims that they may have solely on an individual basis through arbitration" violated Section 8(a)(1). Relying on its prior decisions in *Murphy Oil USA* (361 NLRB No. 72 (2014)) and *D.R. Horton, Inc.* (357 NLRB No. 184 (2012)), the Board held that the Federal Arbitration Act "does not permit a 'prospective waiver of a party's *right to pursue* statutory remedies,' such as a 'provision in an arbitration agreement forbidding the assertion of certain statutory rights.'" *Murphy Oil*, *supra*, slip op. at 8, citing *Amer. Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2310 (2013) (emphasis in original) (*see* Decision at p. 3).

Defendant's Dispute Resolution Plan contains a similar provision: "Resolution of Disputes…Neither the Company nor any Employee or Applicant may pursue any Dispute on a class action, collective action or consolidated basis or in a representative capacity on behalf of other persons or entities who are claimed to be similarly situated, or participate as a class member in such a proceeding." Exhibit A to Declaration of Randy Bynum ISO Motion to Compel Arbitration and Dismiss, p. 5, Paragraph 4(B).

///

///

///

///

///

Attached hereto as Exhibit "A" is a true and correct copy of the Board's Decision and Order.

Dated: May 1, 2015

FELDMAN BROWNE OLIVARES, APC
ALTSHULER BERZON LLP

By: /s/ Leonard H. Sansanowicz
Attorneys for Plaintiff DAVID TOTTEN

# EXHIBIT A

*NOTICE: This opinion is subject to formal revision before publication in the bound volumes of NLRB decisions. Readers are requested to notify the Executive Secretary, National Labor Relations Board, Washington, D.C. 20570, of any typographical or other formal errors so that corrections can be included in the bound volumes.*

**Chesapeake Energy Corporation and its wholly owned subsidiary Chesapeake Operating, Inc. *and* Bruce Escovedo.** Case 14–CA–100530

April 30, 2015

DECISION AND ORDER

BY CHAIRMAN PEARCE AND MEMBERS HIROZAWA AND JOHNSON

On November 8, 2013, Administrative Law Judge Bruce D. Rosenstein issued the attached decision. The General Counsel filed limited exceptions and a supporting brief. Respondents filed cross-exceptions, a supporting brief, and an answering brief.

The National Labor Relations Board has delegated its authority in this proceeding to a three-member panel.

The Board has considered the decision and the record in light of the limited exceptions, cross-exceptions, and briefs, and has decided to adopt the judge's rulings, findings, and conclusions only to the extent consistent with this Decision and Order and to adopt his recommended Order as modified and set forth in full below.[1]

There are two issues in this case, and both are governed by our decisions in *D.R. Horton, Inc*., 357 NLRB No. 184 (2012), enf. denied in relevant part 737 F.3d 344 (5th Cir. 2013), and *Murphy Oil USA*, 361 NLRB No. 72 (2014).[2] The first is whether Respondents' maintenance of a mandatory arbitration policy violates Section 8(a)(1) because it prohibits employees from filing unfair labor practice charges with the Board. The second issue is whether the arbitration policy separately violates Section 8(a)(1) by requiring employees to waive their Section 7 rights to engage in class or collective employment actions in all forums. We adopt the judge's 8(a)(1) finding with respect to the first issue, and reverse his dismissal of the 8(a)(1) allegation as to the second issue.

Respondent Chesapeake Operating is a wholly-owned subsidiary of Respondent Chesapeake Energy. Since July 2011, Respondents and other subsidiaries of Chesapeake Energy or related entities, collectively referred to as the "Company," have maintained an "Arbitration Agreement and Dispute Resolution Policy" (Agreement). The parties stipulated that all employees of both Respondents are required to sign the Agreement as a condition of employment.

The Agreement is set out in full in the judge's decision. In relevant part, it states in paragraph 2 that the Agreement is "[m]andatory . . . [and] requires binding arbitration to resolve all disputes between the Employee and the Company including any such disputes which may arise out of or relate to employment." Paragraph 5 specifies "Claims Covered" by the Agreement include "discrimination, harassment or retaliation claims whether under federal or state law," and states that employment claims cognizable under numerous specified federal statutes are covered by the Agreement. Among the specified statutory claims are those under the "National Labor Relations Act." Paragraph 9 is entitled "No Class or Collective Actions Permitted" and states:

> Employee agrees that he/she shall have no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or in a representative or a private attorney general capacity on behalf of a class of persons or the general public. No class, collective or representative actions are thus allowed to be arbitrated . . . and Employee agrees that he/she must pursue any claims that they may have solely on an individual basis through arbitration.

Charging Party Bruce Escovedo was a supervisory employee of Respondent Chesapeake Operating. As required by the Agreement, he signed it on July 19, 2011. He filed his initial charge against Chesapeake Operating in March 2013, and an amended charge against both Chesapeake Operating and Chesapeake Energy in July 2013.[3]

---

[1] On June 26, 2014, the Board denied, in an unpublished Order, the Charging Party's request to withdraw the charge in this case.

[2] Respondents argue that *D.R. Horton* is "void *ab initio*" because the three-member panel included Member Becker whose appointment was constitutionally invalid and had expired before the decision issued. For the reasons set forth in *Murphy Oil USA, Inc*., 361 NLRB No. 72, slip op. at 2 fn. 16, we reject this argument. For the reasons set forth in *Benjamin H. Realty Corp*., 361 NLRB No. 103, slip op. at 1 (2014), and *Huntington Ingalls Inc*., 361 NLRB No. 64, slip op. at 2 fn. 8 (2014), we also reject Respondents' argument that Acting General Counsel Solomon had no authority to issue the complaint because his appointment was invalid under the Federal Vacancies Reform Act.

[3] Respondents argue that the complaint is time-barred by Sec. 10(b) because it does not allege that they have "attempted to enforce" the Agreement during the 6-month period before Escovedo filed his initial charge, and because his "charges make no specific allegations of wrongdoing" during the 10(b) period. We agree with the judge that Respondents' arguments lack merit. The complaint here alleges that Respondents unlawfully "maintained," not enforced, the Agreement. Respondents admit that the Agreement has been maintained "since in or about July 2011" and stipulated that all their employees have been required to sign the Agreement since July 2011. This time period includes the 6-month period preceding the filing of the instant charge. The Board has repeatedly held that the maintenance of an unlawful rule is a continuing violation, regardless of when the rule was promulgated. See *Cellular Sales of Missouri, LLC*, 362 NLRB No. 27, slip op. at 2 (2015); *Carney Hospital*, 350 NLRB 627, 627 (2007); *Eagle-Picher Industries*, 331 NLRB 169, 174 fn. 7 (2000); *Wire Products Mfg. Corp.*, 326 NLRB 625, 633 (1998), enfd. sub nom. *NLRB v. R.T.*

Discussion

The Board held in *D.R. Horton*, 357 NLRB No. 184, slip op. at 4, and reaffirmed in *Murphy Oil USA, Inc*., 361 NLRB No. 72, slip op. at 13 fn. 78 and 79, 19, that a mandatory arbitration policy, such as the one in this case, constitutes a work rule that is properly analyzed under the test set forth in *Lutheran Heritage Village-Livonia*, 343 NLRB 646 (2004), to determine whether it violates Section 8(a)(1). Under this test, a work rule may be found unlawful if it explicitly restricts activities protected by Section 7 or, alternatively, upon a showing of one of the following: (1) employees would reasonably construe the rule as prohibiting Section 7 activity; (2) the rule was promulgated in response to union activity; or (3) the rule has been applied to restrict the exercise of Section 7 rights. Id. at 647.

The Board applied these principles in *D.R. Horton* and *Murphy Oil* and found that the mandatory arbitration policies in both cases violated Section 8(a)(1) in two separate respects. First, the policies violated Section 8(a)(1) because their language reasonably would lead employees to believe that they were prohibited from filing unfair labor practice charges with the Board. *D.R. Horton*, supra, slip op. at 2 fn. 2; *Murph*y Oil, supra, slip op. at 19 fn. 98. Second, the policies violated Section 8(a)(1) because they expressly required employees, as a condition of employment, to waive their right to collectively pursue employment-related claims in all forums, judicial and arbitral. *D.R. Horton*, supra, slip op. at 4, 13; *Murphy Oil*, supra, slip op. at 18.

Applying these principles here, we find the same violations. We agree with the judge that the Agreement violates Section 8(a)(1) by prohibiting employees from filing unfair labor practice charges with the Board, but we apply a slightly different rationale. As Respondents correctly note, the Agreement does not explicitly prohibit employees from filing charges with the Board. We find, however, that employees would reasonably construe the Agreement's language set forth above to prohibit them from doing so. Paragraphs 2 and 9 together require employees to agree to pursue any claim or dispute they may have against the Company solely through individual arbitration, and paragraph 5 explicitly states that any such claim or dispute, including those involving discrimination, harassment or retaliation arising under the National Labor Relations Act, are covered by the individual arbitration requirement. Read as a whole, the Agreement is sweeping in its scope and encompasses all employment claims, including those within the Board's jurisdiction. Indeed, Respondents' Arbitration Agreement more clearly precludes the filing of Board charges than the arbitration polices similarly found unlawful in *D.R. Horton* and *Murphy Oil.* See also *U-Haul Co*., 347 NLRB 375, 377 (2006), enfd. mem. 255 Fed.Appx. 527 (D.C. Cir. 2007) (although arbitration policy did not explicitly restrict employees from resorting to the Board's remedial procedures, breadth of policy language, referencing its applicability to causes of action recognized by federal law or regulation, reasonably would be read by employees as prohibiting filing of unfair labor practice charges). Accordingly, we conclude that because employees would reasonably construe the Agreement to prohibit them from filing Board charges, Respondents' maintenance of the Agreement violated Section 8(a)(1) of the Act.

Contrary to the judge, we find that maintenance of the Agreement violates Section 8(a)(1) under *Lutheran Heritage* for the additional reason that, like the arbitration policies in *D.R. Horton* and *Murphy Oil*, it explicitly prohibits employees from pursuing employment-related claims on a collective or class basis in all forums.[4] As

*Blankenship & Associates, Inc*., 210 F.3d 375 (7th Cir. 2000); *St. Luke's Hospital*, 300 NLRB 836 (1990); *Murphy Oil*, supra, slip op. at 13 (the vice of maintaining a workplace rule that restricts Sec. 7 activity is that it reasonably tends to chill employees' exercise of their statutory rights); *Lafayette Park Hotel*, 326 NLRB 824, 825 (1998), enfd. 203 F.3d 52 (D.C. Cir. 1999) (same). Cf. *Teamsters Local 293 (Lipton Distributing)*, 311 NLRB 538, 539 (1993) (finding violation for maintenance of unlawful contractual provision executed outside 10(b) period).

We also reject Respondents' argument that because Escovedo was a statutory supervisor and not an employee protected by the Act, and entitled to its remedies, the complaint based on his charge should be dismissed. Sec. 102.9 of the Board's Rules & Regulations provides that a charge may be filed by "any person," without regard to whether the person is a Sec. 2(3) employee entitled to relief under the Act. Further, the remedy and Order specifically limit relief to statutory employees of Respondents and the other "Company" entities affected by the maintenance of the unlawful Arbitration Agreement.

Finally, we reject Respondents' argument that the complaint against Chesapeake Energy should be dismissed because Escovedo was solely employed by Chesapeake Operating and "neither the Complaint nor the Stip[ulation] advances any legal theory under which Chesapeake Energy should be held liable for the conduct of Chesapeake Operating." Chesapeake Energy is identified in the Agreement as one of the "Compan[ies]" that maintains the mandatory arbitration requirement, and the Stipulation states that "Respondents have required *their* employees" to sign the Agreement. [emphasis added]. By alleging that it unlawfully maintained the Agreement with respect to its own employees, the complaint properly alleges Chesapeake Energy as a Respondent.

[4] Member Johnson agrees with his colleagues that the Respondent's arbitration agreement, as written, violates the Act insofar as employees would reasonably believe that the agreement restricted their rights to file a Board charge or access the Board's processes. See *Murphy Oil*, slip op. at 39 fn. 15; see also *U-Haul of California*, 347 NLRB at 377–378 (finding that, because employees would reasonably construe the broadly written language in the respondent's arbitration agreement to prohibit filing charges with the Board, the policy violated Sec. 8(a)(1)). Accordingly, he joins his colleagues only in ordering a remedy for that violation.

set forth above, paragraph 9 of the Agreement states "No Class or Collective Actions Permitted," and requires instead that employees "must pursue any claims that they may have solely on an individual basis through arbitration." As the Board explained in *D.R. Horton,* such a total proscription of class or collective actions violates Section 8(a)(1) because the "right to engage in collective action—including collective legal action—is the core substantive right protected by the NLRA and is the foundation on which the Act and Federal labor policy rest." 357 NLRB No. 184, slip op. at 10. Accordingly, the Board held that the arbitration agreement's nullification of the employees' Section 7 right to concertedly pursue their employment claims rendered the agreement unenforceable.

The judge determined, however, that *D.R. Horton'*s holding "cannot be sustained" because it is contrary to Supreme Court precedent under the Federal Arbitration Act (FAA) enforcing arbitration agreements that waive class arbitration of state and federal statutory claims. The *D.R. Horton* Board expressly rejected this contention, noting that the "Supreme Court's jurisprudence under the FAA, permitting enforcement of agreements to arbitrate federal statutory claims, including employment claims, makes clear that the agreement may not require a party to 'forgo the substantive rights afforded by the statute.'" *D.R. Horton*, supra, slip op. at 9, citing *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 26 (1991). The Board emphasized that this "highlights the material distinction" between the Act and the statutory claims that the Court enforced by individual arbitration under the FAA: "here, a requirement that employees' work-related claims be resolved through arbitration on an individual basis only *does* amount to a requirement that employees forgo the NLRA's substantive protections" and thus violates Section 8(a)(1). Id., slip op. at 11–12 [emphasis in original].

In *Murphy Oil*, the Board reiterated that no decision of the Supreme Court, including its post-*D.R. Horton* decision in *American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304 (2013), speaks directly to the issue we consider here. 361 NLRB No. 72, slip op. at 2. The Board noted that rather than undermining *Horton*, as found by the judge here, the Court affirmed the essential holding in *D.R. Horton* that the FAA's policy favoring arbitration "does have limits." The Board explained that the FAA's policy "does not permit a 'prospective waiver of a party's *right to pursue* statutory remedies,' such as a 'provision in an arbitration agreement forbidding the assertion of certain statutory rights.'" *Murphy Oil*, supra, slip op. at 8, citing *Italian Colors*, 133 S.Ct. at 2310 (emphasis in original). The Board concluded that:

> Insofar as an arbitration agreement prevents employees from exercising their Section 7 right to pursue legal claims concertedly—by, as here, precluding them from filing joint, class, or collective claims addressing their working conditions in *any* forum, arbitral or judicial—the arbitration agreement amounts to a prospective waiver of a right guaranteed by the NLRA. (The Act, of course, does not create an entitlement to class certification or the equivalent; it protects the right to *seek* that result.) Being required to proceed individually is no proper substitute for proceeding together, insofar as otherwise legally permitted, and only channels employee collective activity into disruptive forms of action. The "remedial and deterrent function" of the NLRA, which protects the right to concerted legal action, cannot possibly be served by an *exclusive* arbitral forum that denies the right of employees to proceed collectively.

*Murphy Oil*, supra, slip op. at 8–9. (footnotes omitted) (emphasis in original).

We reach the same conclusion here. As in *Murphy Oil* and *D.R. Horton*, Respondents violated Section 8(a)(1) of the Act by maintaining an arbitration agreement, which employees were required to sign as a condition of employment, that barred them from litigating employment claims against Respondents on a class/collective basis in all forums, arbitral or judicial.

## ORDER

The National Labor Relations Board orders that the Respondents, Chesapeake Energy Corporation and its wholly owned subsidiary Chesapeake Operating, Inc., Oklahoma City, Oklahoma, their officers, agents, successors, and assigns, shall

1. Cease and desist from

(a) Maintaining a mandatory arbitration agreement that employees reasonably would believe bars or restricts the right to file charges with the National Labor Relations Board.

(b) Maintaining a mandatory arbitration agreement that requires employees, as a condition of employment, to waive the right to maintain joint, class, or collective actions in all forums, whether arbitral or judicial.

(c) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed to them by Section 7 of the Act.

For the reasons set forth in detail in his dissent in *Murphy Oil*, supra, slip op. at 35–58, however, Member Johnson would not find that the Respondent's maintenance of the arbitration agreement violates the Act insofar as it prevents employees from pursuing class and other collective actions.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Rescind the unlawful arbitration agreement in all of its forms, or revise it in all of its forms to make clear to employees that the agreement does not constitute a waiver of their right to maintain employment-related joint, class, or collective actions in all forums, and that it does not restrict employees' right to file charges with the National Labor Relations Board.

(b) Notify all current and former employees who were required to sign the unlawful arbitration agreement that it has been rescinded or revised and, if revised, provide them a copy of the revised agreement.

(c) Within 14 days after service by the Region, post at their Oklahoma City, Oklahoma facilities, and at all other facilities where the unlawful arbitration agreement is or has been in effect, copies of the notice marked "Appendix."[5] Copies of the notice, on forms provided by the Regional Director for Region 14, after being signed by the Respondents' authorized representative, shall be posted by the Respondents and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted. In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondents customarily communicate with their employees by such means. Reasonable steps shall be taken by the Respondents to ensure that the notices are not altered, defaced, or covered by any other material. If the Respondents have gone out of business or closed the facility involved in these proceedings, the Respondents shall duplicate and mail, at their own expense, a copy of the notice to all current employees and former employees employed by the Respondents at any time since September 18, 2012.

(d) Within 21 days after service by the Region, file with the Regional Director for Region 14 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondents have taken to comply.

\Dated, Washington, D.C. April 30, 2015

______________________________
Mark Gaston Pearce, Chairman

[5] If this Order is enforced by a judgment of a United States court of appeals, the words in the notice reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

______________________________
Kent Y. Hirozawa, Member

______________________________
Harry I. Johnson, III, Member

(SEAL) NATIONAL LABOR RELATIONS BOARD

## APPENDIX

NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

Choose representatives to bargain with us on your behalf

Act together with other employees for your benefit and protection

Choose not to engage in any of these protected activities.

WE WILL NOT maintain a mandatory arbitration agreement that employees reasonably would believe bars or restricts the right to file charges with the National Labor Relations Board.

WE WILL NOT maintain a mandatory arbitration agreement that requires employees, as a condition of employment, to waive the right to maintain joint, class, or collective actions in all forums, whether arbitral or judicial.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights listed above.

WE WILL rescind the unlawful arbitration agreement in all of its forms, or revise it in all of its forms to make clear that the agreement does not constitute a waiver of your right to maintain employment-related joint, class, or collective actions in all forums, and that it does not restrict your right to file charges with the National Labor Relations Board.

WE WILL notify all current and former employees who were required to sign the unlawful arbitration agreement that it has been rescinded or revised and, if revised, provide them a copy of the revised agreement.

CHESAPEAKE ENERGY CORPORATION AND ITS WHOLLY OWNED SUBSIDIARY CHESAPEAKE OPERATING, INC.

The Administrative Law Judge's decision can be found at www.nlrb.gov/case/14–CA–100530 or by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1099 14th Street, N.W., Washington, D.C. 20570, or by calling (202) 273–1940.

*William F. LeMaster, Esq.,* for the Acting General Counsel.
*Michael F. Lauderdale, Esq.,* of Oklahoma City, Oklahoma, for the Respondent-Employer.
*Mark Hammons, Esq.,* of Oklahoma City, Oklahoma, for the Charging Party.

## DECISION

### STATEMENT OF THE CASE

BRUCE D. ROSENSTEIN, Administrative Law Judge. The parties herein waived a hearing and submitted the case directly to me by way of a Joint Motion and Stipulation of Facts dated September 11, 2013. The complaint herein, which was issued on July 30, 2013, and was based upon an unfair labor practice charge and amended charge filed on March 18 and June 17, 2013, by Bruce Escovedo (Charging Party or Escovedo), alleges that Chesapeake Energy Corporation and its wholly owned subsidiary Chesapeake Operating, Inc. (Chesapeake Energy, Chesapeake Operating, or collectively Respondents) have since July 2011, and at all material times, promulgated and maintained individual agreements with their current and former employees binding them to Respondents' dispute resolution policy (DRP) that precludes class or collective actions to be arbitrated pursuant to the DRP. The DRP further requires employees and former employees to submit all employment related disputes and claims to "binding arbitration," and further requires that all claims or disputes "in any way related to or arising out of (an employee's ) employment," including "claims under . . . the National Labor Relations Act . . ." are subject to binding arbitration. The Acting General Counsel alleges that these requirements violate Section 8(a)(1) of the National Labor Relations Act (the Act).

The joint stipulation provides as follows:

1. The charge in this proceeding was filed by the Charging Party on March 18, 2013, and a copy was served by regular mail on Respondent Chesapeake Operating on that same date.

2.. The amended charge in this proceeding was filed by the Charging Party on June 17, 2013, after request by the Board to conform to the Region's determination after conduct of the investigation, and a copy was served by regular mail on Respondents on that same date.

3. On July 30, 2013, the Regional Director for Region 14 of the Board issued a complaint and notice of hearing alleging that Respondents violated the National Labor Relations Act.

4. On August 12, 2013, Respondents filed their initial answer; on September 9, 2013, Respondents filed an amended answer to the complaint denying that it had committed any violation of the Act and setting forth their defenses.

5. Respondent Chesapeake Energy has been a corporation with an office and place of business in Oklahoma City, Oklahoma, herein called Respondent Chesapeake Energy's facility and through its subsidiaries and related companies, is a producer of natural gas, natural gas liquids, and oil. During the 12-month period ending June 30, 2013, Respondent Chesapeake Energy purchased and received at its Oklahoma City, Oklahoma facility goods valued in excess of $50,000 directly from points outside the State of Oklahoma. Respondent Chesapeake Energy is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

6. Respondent Chesapeake Operating has been a corporation with an office and place of business in Oklahoma City, Oklahoma, and has been engaged in the business of oil and gas exploration, production, and distribution. During the 12-month period ending June 30, 2013, Respondent Chesapeake Operating purchased and received at its Oklahoma City, Oklahoma facility goods valued in excess of $50,000 directly from points outside the State of Oklahoma. Respondent Chesapeake Operating is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

7. At all material times, Sabreena Coleman held the position of Chesapeake Operating Sr. director—human resources compliance. Coleman has been a supervisor of Respondent Chesapeake Operating within the meaning of Section 2(11) of the Act and an agent of Respondents within the meaning of Section 2(13) of the Act. Respondents acknowledge that the sending of the dispute resolution policy at issue in this matter to the Charging Party was authorized by its human resources department.

8. Since in or about July 2011, and at all material times, Respondents have required their employees to sign Respondents' arbitration agreement and dispute resolution policy (DRP). The DRP set forth below sent by Respondents to Charging Party for execution, and is the DRP that Respondents require all their employees to sign with the exception that the list of entities on the last page of the DRP has varied depending upon the entities affiliated with Respondents.

9. The Charging Party was not employed by Respondent Chesapeake Energy. The Charging Party was employed by Respondent Chesapeake Operating, in the position of reservoir engineering manager, and was a supervisor within the meaning of Section 2(11) of the Act.

10. Respondents assert that the DRP was electronically signed by the Charging Party on or about July 19, 2011, and further contend that his electronic signature on the document is binding,

11. On February 14, 2013, while addressing a pending Equal Employment Opportunity Commission charge filed against Respondent Chesapeake Operating, the Charging Party's attorney communicated to Respondent Chesapeake Operating that the Charging Party does not recall signing the arbitration

agreement.

Statement of Issues Presented

Whether Respondents violated Sections 8(a)(1) of the Act by requiring employees to sign the DRP attached as Exhibit G that (1) requires mandatory arbitration precluding access to the Board and (2) precludes class or collective actions.

The Dispute Resolution Policy, at issue herein, states as follows:

Employee Id: 065374
Name: Bruce Escovedo
Company: Chesapeake Operating, Inc.
ARBITRATION AGREEMENT AND DISPUTE RESOLUTION POLICY

1. At-Will Employment: It is hereby agreed by Bruce Escovedo ("Employee") and Chesapeake Energy Corporation, and all its wholly-owned or related entities and affiliates (see attached list of entities, collectively referred to as the "Company"), that Employee's employment is "at will" in nature, meaning that it can be terminated by the Company or the Employee at any time, with or without cause, and with or without notice unless the Employee and the Company have entered into a separate written employment agreement specifying a set term of employment which is signed by both parties.

2. Mandatory Dispute Resolution Policy: Employee acknowledges that the Company has a mandatory Dispute Resolution Policy ("DRP") which requires binding arbitration to resolve all disputes between the Employee and the Company including any such disputes which may arise out of or relate to employment (see also paragraph 5 below). Employee acknowledges that the DRP is to be broadly interpreted to apply to any dispute which Employee and the Company may have between each other, to include disputes over whether claims are covered by the DRP. Employee also acknowledges that the DRP provides mutual benefits for Employee and the Company, to include faster and more economical resolution of employment related disputes.

3. Federal Arbitration Act: Employee acknowledges that employment with the Company involves interstate commerce, and that the Federal Arbitration Act ("FAA"), 9 U.S.C. AA § 1, et seq., shall apply to the DRP.

4. Jury Trial: Employee understands and acknowledges that by accepting and/or continuing employment with the Company, and thereby agreeing to the terms of the DRP, that both Employee and the Company give up the right to trial by jury in a court of law for all employment related disputes.

5. Claims Covered by DRP: A) Employee acknowledges that any claim or dispute between the Employee and the Company including any claim or dispute in any way related to or arising out of his/her employment with the Company is subject to binding arbitration under the DRP, to specifically include discrimination, harassment or retaliation claims, whether under federal or state law; by way of example only, claims under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866, the Equal Pay Act, the Civil Rights Act of 1991, the Rehabilitation Act of 1973, the Employee Retirement Income Security Act, the Uniform Services Employment Reemployment Rights Act, the Older Worker Benefit Protection Act of 1990, the Worker Adjustment and Retraining Act of 1988, the Fair Labor Standards Act, the Occupational Health and Safety Act, the National Labor Relations Act, the Family and Medical Leave Act, the Americans with Disabilities Act, as amended, the Pregnancy Discrimination Act of 1978, the Age Discrimination in Employment Act, and other state or federal common and statutory law. B) Employee acknowledges that any claims Employee may have relating to or arising out of the employment relationship, to include application for employment, actual employment, termination of employment or events occurring after termination, shall be subject to binding arbitration under the DRP. C) Employee acknowledges that any claim or dispute Employee may have against the Company includes claims or disputes with the Company's owners, directors, officers, managers, other employees, agents, representatives and affiliated parties and entities, including affiliated parties relating to the administration of the Company's employee benefit and health plans are subject to binding arbitration under the DRP.

6. Claims Not Covered by DRP: A) Employee understands that claims for worker's compensation benefits and unemployment compensation benefits are not covered by the DRP. B) Employee also understands that any claim the Company may have against Employee for injunctive or equitable relief is excluded from the DRP, to include claims or actions to enforce on-competition/non-solicitation agreements, to protect Company trade secrets, proprietary information or confidential information, to protect other Company property, and to protect the Company's business reputation.

7. Arbitrator: Employee understands that an independent arbitrator shall be selected jointly by the Employee and the Company who shall administer the arbitration. If, however, the Employee and the Company cannot agree on an arbitrator, then the claim shall be filed with the American Arbitration Association ("AAA") as set forth in Section 8. In this case, the independent arbitrator shall be selected pursuant to the AAA rules.

8. Applicable Rules to AAA Claims: All arbitration which is filed with the American Arbitration Association shall be administered by the Dallas, Texas AAA office and shall be before a single arbitrator in accordance with the American Arbitration Association's National Rules for the Resolution of Employment Disputes and shall be undertaken pursuant to the Federal Arbitration Act.

9. No Class or Collective Actions Permitted: Employee agrees that he/she shall have no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or in a representative or a private attorney general capacity on behalf of a class of persons or the general public. No class, collective or representative actions are thus allowed to be arbitrated pursuant to the DRP

and Employee agrees that he/she must pursue any claims that they may have solely on an individual basis through arbitration.

10. Fees and Expenses: The Company will pay any administrative fees and all expenses and fees of the arbitrator.

11. Notice. The Employee shall provide notice to the Company of any claim to the address set forth below:

Chesapeake Energy Corporation
Post Office Box 18128
Oklahoma City, OK 73154-0128
Attn: Lisa M. Phelps

Such notice shall include a reasonable description of the Employee's claims against the Company and the relief requested. As noted above, if the Employee and the Company cannot agree on an arbitrator, then the Employee shall file his/her claim with the AAA.

12. Right to Representation: Employee has the right to be represented by an attorney during arbitration proceedings, but is not obligated to do so, and Employee acknowledges that any expenses related to legal representation shall be Employee's own responsibility.

13. Discovery Procedures: Employee understands civil procedure, discovery and evidence rules that apply in federal court shall apply in any arbitration proceeding, subject to modifications deemed appropriate by the arbitrator in accordance with the substantive law. Employee acknowledges that disputes about discovery shall be decided by the arbitrator.

14. Damages and Relief: Employee understands that the arbitrator shall have the same authority, but no more, as would a judge or jury in a court of law to grant monetary damages or such other relief as may be in conformity under the applicable law. As noted in Section 6, this agreement to arbitrate, however, shall not preclude the Company from obtaining injunctive or other equitable relief from a court of competent jurisdiction.

15. Arbitrator's Award: The arbitrator shall upon request by either Employee or the Company provide them with a written and reasoned opinion for any final award the arbitrator shall make. Employee acknowledges that any final award by an arbitrator shall be subject to the appeal procedures set forth in the Federal Arbitration Act. The decision of the arbitrator will be enforceable in any court of competent jurisdiction. The arbitrator shall have the discretion and authority to award costs and attorney fees to the prevailing party or, alternatively, may order each party to bear its/his/her own costs and attorney fees in connection with the arbitration to the extent permitted by applicable law.

16. Location: Unless otherwise agreed by the Employee and the Company, arbitration will take place in Oklahoma City, Oklahoma unless the Employee is employed in a state other than Oklahoma. In that case, the arbitration shall take place in the capital of the state where the Employee is employed.

17. Employment Status: Employee acknowledges the DRP does not alter his/her "at will" employment status unless the Employee and the Company have entered into a separate written employment agreement specifying a set term which is signed by both parties.

18. Change, Modification or Discontinuation of DRP: Employee understands and acknowledges that the terms of the DRP in effect at the time a request for arbitration is made will be binding on Employee and the Company. Employee also acknowledges that the Company reserves the right to change, modify or discontinue this DRP at any time, for any reason upon prior written notice of at least ten (10) business days to the Company's current employees. Such written notice shall be effective whether provided to Employee personally, by mailing to a last known residential address, by email transmission to personal or Company email account, or by posting in the place of employment. However, no amendment or termination shall apply to a dispute or claim for which a proceeding has been initiated.

19. Severability: Employee acknowledges that should any term or provision, or portion thereof, of this arbitration agreement and DRP be declared void or unenforceable, it shall be severed, and the remainder of this arbitration agreement and DRP shall be enforceable.

20. Other Agreements regarding Arbitration: Employee acknowledges that any provision in an agreement relating to arbitration with the Company is null and void and of no further legal effect. However, the remaining terms of any such agreement (including an individual employment agreement) continue to be in full force and effect. Employee further acknowledges that any agreement contrary to the terms of this agreement and DRP (excluding changes described in section 18) must be entered into in writing by the President of the Company, and that no supervisor or other representative of the Company has the authority to enter into any agreement contrary to the terms stated herein, to include for employment for any specified period of time. Employee also specifically acknowledges that any oral representations or statements made at any time do not alter the terms stated herein.

21. Entire Agreement: Except as noted below, Employee acknowledges that this is the entire agreement between him/her and the Company regarding the terms and length of employment, and for resolution of employment-related disputes, and that it supersedes any prior agreement between Employee and the Company regarding these issues unless the Employee and the Company have entered into a separate written employment agreement signed by the Employee and the Company. In this case, the terms and provisions of any such employment agreement will control in case of any conflict between these two agreements and except as noted in paragraph 20 above, the arbitration clause in any such employment agreement is void and of no further legal effect. Employee also understands that there will be certain other contractual agreements that will be entered into with the Company at the beginning of

or during employment including a Confidentiality Agreement. These agreements remain in full force and effect.

LIST OF ENTITIES
Chesapeake Appalachia, L.L.C.
Chesapeake Energy Marketing, Inc.
Chesapeake Midstream Management, L.L.C.
Chesapeake Operating, Inc.
Compass Manufacturing, L.L.C.
Great Plains Oilfield Rental, L.L.C.
Hawg Hauling & Disposal, L.L.C.
Hodges Trucking Company, L.L.C.
Keystone Rock & Excavating, L.L.C.
MidCon Compression, L.L.C.
Nomac Drilling, L.L.C.
Performance Technologies, L.L.C.

I, Bruce Escovedo, attest that I have read, understand and agree to be legally bound to all of the above terms.
Employee ID: 065374
7/19/2011 4:36:28 PM
Version Arbitration 2.00
Personnel File Date: 7/16/2012

Discussion

This is another case raising issues related to *D.R. Horton, Inc.*, 357 NLRB No. 184 (2012), in which the Board found that the respondent violated Section 8(a)(1) of the Act by requiring its employees, as a condition of employment, to sign an "agreement" that any and all future employment claims against the company would be determined on an individual basis by final and binding arbitration. The Board held that the mandatory arbitration "agreement" was unlawful for two reasons: (1) it did not contain an exception for unfair labor practice allegations, and thus would reasonably lead employees to believe that they could not file unfair labor practice charges with the Board, and (2) it required employees to waive their substantive right under the Act to pursue concerted (i.e. class or collective) legal action in any forum, arbitral or judicial.[1]

The issue in the subject case is whether Respondents likewise violated Section 8(a)(1) of the Act by the provisions in the DRP that prohibit employees from bringing any dispute as a class or collective action and requiring them to pursue any claims they have solely on an individual basis through arbitration. In addition, the case raises the issue of requiring employees to submit all employment related disputes and claims to "binding arbitration" including claims under the Act by precluding unfair labor practice charges to be filed with the Board.

Legal Principles

The Acting General Counsel and the Charging Party, relying on the Board's decisions in *D.R. Horton*, supra, *Supply Technologies, LLC*, 359 NLRB No. 38 (2012), and *U-Haul Co. of California*, 347 NLRB 375, 377–378 (2006), enfd. 255 Fed. Appx. 527 (D.C. Cir. 2007), argue that the Respondents violated Section 8(a)(1) of the Act because the mandatory DRP prohibits employees' rights to engage in collective action and directly interferes with employees' access to the Board and its processes.

The Respondents opine that the Board can no longer rely upon its decision in *D.R. Horton*, supra, and asserts that Circuit Court of Appeals decisions have held that the Board was improperly constituted at the time it issued the *Horton* opinion invalidating class and collective action waivers in mandatory arbitration agreements. See *NLRB v New Vista Nursing & Rehabilitation*, 719 F.3d 203, 221 (3d Cir. 2013); *NLRB v. Enterprise Leasing Co. Southwest, LLC*, 2013 WL 3722388 (4th Cir. 2013). Additionally, Respondents principally rely on the United States Supreme Court's *American Express Co. v. Italian Colors Restaurants* decision, 133 S.Ct. 2304 (June 20, 2013), that implicitly rejected the analysis used by the Board in the *D.R. Horton* decision.

Affirmative Defenses

Respondents argue that (1) the Charging Party does not have standing because he was not employed by Chesapeake Energy and because he was a Section 2(11) supervisor under the Act; (2) the Charging Party is not entitled to relief in this matter because he was an admitted 2(11) supervisor at the time the subject unfair labor practice charge was filed; (3) the charge filed against Chesapeake Energy is barred because the Board rather than the Charging Party solicited its filing; (4) the underlying charge was untimely because the Charging Party signed the DRP on July 19, 2011, and the original charge was filed on March 18, 2013; (5) the Board can no longer rely upon the *D. R. Horton* decision based on various Circuit Court of Appeals and Supreme Court decisions; and (6) the issuance of the subject complaint is in doubt as the Acting General Counsel, Lafe E. Solomon, was not validly appointed under the Federal Vacancies Reform Act.

Concerning Items (1) and (2) above, Section 10018.2 of the Board's Unfair Labor Practice (ULP) case handling manual provides that any person or organization may file an unfair labor practice charge that serves to trigger an investigation by the Office of the General Counsel. Section 2 (1) of the Act defines the term "person" to include one or more individuals. Thus, in accordance with Section 102.9 of the Board's Rules and Regulations, Section 2(11) supervisors are permitted to file charges under the Act.[2] However, in agreement with the Respondents, the Charging Party in the subject case is not entitled to individual relief in this matter because at the time that Escovedo filed the underlying charge he was an admitted su-

[1] Recent administrative law judge decisions are currently pending before the Board involving substantially similar issues to the subject case. See *24 Hour Fitness, USA, Inc.,* JD (SF)–51–12 (Nov. 6, 2012), *Mastec Services,* JD (NY)–25–13 (June 3, 2013), Bloomingdale's, *Inc.,* JD (SF)–29–13 (June 25, 2013), *Applebee's Neighborhood Grill & Bar,* JD (NY)–49–13 (Sept. 30, 2013), and *Concord Honda,* JD (SF)–48–13 (Oct 23, 2013).

[2] The *Countrywide Financial Corp.* case cited by the Respondent in its brief relies on the February 13, 2013 decision of a Board administrative law judge (JD (SF)–09–13). Such a decision, absent review by the Board, is not binding precedent regarding the subject case. Therefore, I reject the Respondent's position that the subject complaint should be dismissed against Chesapeake Energy. It is further noted per the parties' "Stipulation" that Respondent Energy's DRP applies equally to the employees of Respondent Chesapeake Operating.

pervisor.[3] With respect to Item (3), Section 10264.1 of the ULP manual authorizes the Regional Office investigating the unfair labor practice charge to seek an amended charge to cover all complaint allegations, and Section 10062.5 of the ULP manual provides that where the investigation of a charge reveals evidence of unfair labor practices not specified in a charge, and the charge does not support complaint allegations covering the apparent unfair labor practices found, the Charging Party should be apprised of the potential deficiency and given the opportunity to file an amended charge. See *Petersen Construction Corp.*, 128 NLRB 969, 972 (1960). In regard to Item (4), I find that each independent requirement that employees execute the DRP 6 months prior to the filing of the subject charge on March 18, 2013, constitutes an independent unfair labor practice. *Seton Co.*, 332 NLRB 979 (2000) (employer gave similar warnings that were not actionable because of the time bar, but its prior actions did affect the viability of a claim based on similar conduct; each instance was viewed as a separate and independent event for purposes of Section 10(b)). Item (5) will be discussed later in this decision. With respect to Item (6), that affirmative defense is rejected as the Board has previously addressed the issue of whether the Acting General Counsel was validly appointed under the Federal Vacancies Reform Act and dismissed such challenges. See *Bloomingdale's, Inc.*, 359 NLRB No. 113 (2013), and *Bedgrove Post Acute Center*, 359 NLRB No. 77 (2013).

## Analysis

The Respondents (Item 5) strongly argue that the Supreme Court decision in *American Express Co.*, supra, contravenes the Board's holding in *D.R. Horton*, supra, that a policy or agreement that precludes employees from filing employment-related collective or class claims against their employer, as in this case, restricts employees' Section 7 right to engage in concerted action for mutual aid or protection, and therefore violates Section 8(a)(1) of the Act. The *American Express* case involved the question of whether a contractual arbitration provision waiving the right to arbitrate on a class basis is enforceable under the Federal Arbitration Act (FAA), even when a plaintiff can demonstrate that the cost of prevailing on the claim in individual arbitration would likely exceed any potential recovery. In recent years, the Supreme Court has decided several cases upholding the enforceability of arbitration agreements. In *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011), the Supreme Court held that the FAA preempted a state law precluding enforcement of a class arbitration waiver. Likewise, in *Stolt-Nielsen S.A. v. Animal Feeds International Corp.*, 558 U.S. 662 (2010), the Supreme Court held that a party may not be compelled to submit to class arbitration absent an agreement to do so. Additionally, the Supreme Court in *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772 (2010), held that the FAA reflects the overarching principle that arbitration is a matter of contract and in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), stated it applied even for claims alleging a violation of a federal statute unless the FAA's mandate has been overridden by a contrary congressional command.

The Supreme Court noted in the *American Express* decision that no contrary congressional command required us to reject the waiver of class arbitration here and the Sherman and Clayton Acts make no mention of class actions. In fact, they were enacted decades before the advent of Federal Rule of Civil Procedure 23, which was "designed to allow an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." As it concerns the subject case, the principles expressed by the Supreme Court equally apply to the Board since the Act does not mention class actions, and was enacted long before the advent of Rule 23.

For all of the above reasons, and principally relying on the decision of the Supreme Court in *American Express* discussed above, I find in agreement with the Respondents that the Board's position that class and collective action waivers in arbitration agreements violate Section 8(a)(1) of the Act cannot be sustained. Accordingly, I recommend that paragraph 4(a) of the complaint be dismissed.

With respect to paragraph 4(b) of the complaint that alleges the DRP directly interferes with employees' access to the Board and its processes, I find that Section 8(a)(1) of the Act has been violated. In this regard, I note that the identical issue presented in this case was not addressed in the Supreme Court's *American Express* decision. However, the Supreme Court discussed the "effective vindication" exception noted in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985), that would prevent a prospective waiver of a party's right to pursue statutory rights. *U-Haul Co. of California*, supra.

## Conclusions of Law

1. Respondents are employers engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

2. By maintaining and distributing, since at least September 2012, its dispute resolution policy that prohibits employees from their right to file unfair labor practice charges with the Board, the Respondents have engaged in unfair labor practices within the meaning of Section 8(a)(1) of the Act.

3. The Respondents have not otherwise violated Section 8(a)(1) of the Act by maintaining and enforcing against employees the dispute resolution policy since September 2012.

## Remedy

Having found that the Respondents engaged in certain unfair labor practices, I shall order them to cease and desist and to take certain affirmative action designed to effectuate the policies of the Act.

Specifically, the Respondents shall be required to rescind or revise the dispute resolution policy with respect to the exclusion of unfair labor practice allegations under the Act and the right of employees to file charges with the Board. In addition, the Respondents shall be required to notify employees that this has been done and to post a notice regarding the violation. Finally, because the dispute resolution policy containing the overbroad language is used on a corporatewide basis, the Respondents shall be required to take these actions at all of its facilities where the dispute resolution policy is in effect. See *D.*

[3] The cases cited by the Acting General Counsel in its brief for the opposite proposition are distinguishable from the facts in the subject case.

*R. Horton, Inc.*, 357 NLRB No. 184, slip op. at 13; and *U-Haul of California*, 347 NLRB at 375 fn. 2.

On these findings of fact and conclusions of law and on the entire record, I issue the following recommended[4]

ORDER

The Respondents, Chesapeake Energy Corporation and its wholly owned subsidiary Chesapeake Operating, Inc., Oklahoma City, Oklahoma, its officers, agents, successors, and assigns, shall

1. Cease and desist from

(a) Maintaining and distributing its current dispute resolution policy that prohibits employees from their right to file unfair labor practice charges with the Board.

(b) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

(c) Requiring our wholly-owned subsidiaries or related entities and affiliates, as listed in our arbitration agreement and dispute resolution policy, to prohibit or restrict employees from filing charges with the National Labor Relations Board.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Rescind or revise the dispute resolution policy with respect to the exclusion of unfair labor practice allegations under the Act and the right of employees to file charges with the Board.

(b) Notify employees of the revisions or rescissions by providing them with a copy of the revised dispute resolution policy, or by specifically notifying them that the dispute resolution policy has been rescinded for the reasons set forth in this Decision and Order.

(c) Within 14 days after service by the Region, post at its facilities in Oklahoma City, Oklahoma, copies of the attached notice marked "Appendix."[5] Copies of the notice, on forms provided by the Regional Director for Region 14, after being signed by the Respondent's authorized representatives, shall be posted immediately upon receipt and maintained for 60 consecutive days in conspicuous places including all places where notices to employees are customarily posted. In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with their employees by such means. *Picini Flooring*, 356 NLRB No. 9 (2010). Reasonable steps shall be taken by the Respondents to ensure that the notices are not altered, defaced, or covered by any other material. In the event that, during the pendency of these proceedings, the Respondents have gone out of business or closed the facility involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, a copy of the notice to all current employees and former employees employed by the Respondents at any time since September 2012.

(d) Within 21 days after service by the Region, file with the Regional Director a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

IT IS FURTHER ORDERED that the complaint is dismissed insofar as it alleges violations of the Act not specifically found.

Dated, Washington, D.C. November 8, 2013

[4] If no exceptions are filed as provided by Sec. 102.46 of the Board's Rules and Regulations, the findings, conclusions, and recommended Order shall, as provided in Sec. 102.48 of the Rules, be adopted by the Board and all objections to them shall be deemed waived for all purposes.

[5] If this Order is enforced by a judgment of a United States court of appeals, the words in the notice reading "Posted by Order of the National labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

APPENDIX

NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

Choose representatives to bargain with us on your behalf

Act together with other employees for your benefit and protection

Choose not to engage in any of these protected activities.

WE WILL NOT maintain or distribute our dispute resolution policy that prohibits employees from their right to file unfair labor practices with the Board.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of rights guaranteed you by Section 7 of the National Labor Relations Act.

WE WILL NOT require our wholly-owned subsidiaries or related entities and affiliates, as listed in our arbitration agreement and dispute resolution policy, to prohibit or restrict employees from filing charges with the National Labor Relations Board.

WE WILL rescind or revise the dispute resolution policy with respect to the exclusion of unfair labor practice allegations under the Act and the right of employees to file charges with the Board.

WE WILL notify our employees of the revisions or rescissions by providing them with a copy of the revised dispute resolution policy, or by specifically notifying them that the dispute resolution policy has been rescinded for the reasons set forth in this Decision and Order.

CHESAPEAKE ENERGY CORPORATION AND ITS WHOLLY OWNED SUBSIDIARY CHESAPEAKE OPERATING, INC.