HOLLY R. LAKE, SBN 204304
hlake@millerlawgroup.com
**MILLER LAW GROUP**
12121 Wilshire Blvd., Suite 1375
Los Angeles, CA 90025
Telephone: 310.943.8500
Facsimile: 310.943.8501

SAMUEL ZURIK III (*pro hac vice*)
SZ@kullmanlaw.com
RACHEL E. LINZY (*pro hac vice*)
REL@kullmanlaw.com
**THE KULLMAN FIRM**
A Professional Law Corporation
1100 Poydras Street, Suite 1600
New Orleans, Louisiana 70163
Telephone: (504) 524-4162
Facsimile: (504) 596-4189

Attorneys for Defendants

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| DAVID L. TOTTEN, an individual, and all others similarly situated,<br>Plaintiffs<br><br>v.<br><br>KELLOGG BROWN & ROOT, LLC; MOLYCORP, INC.; and DOES 1 through 100,<br>Defendants. | Case No.: 5:14-cv-01766-DMG-DTBx<br><br>**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Hon. Dolly Gee<br>Crtrm: Spring Street, Ct. Rm. 7 |

Defendants Kellogg Brown & Root ("KBR") and MolyCorp, Inc. ("MolyCorp") (collectively "Defendants"), respectfully submit this Notice of Supplemental Authority. Since pleadings closed on Defendants' Motion to Compel Arbitration [Doc. No. 21] on November 21, 2014, Plaintiff has submitted three Notices of Supplemental Authorities [Doc. Nos. 30, 35, 36] but has failed to identify for the Court the cases decided that support the overwhelming majority position advanced by Defendants on enforceable waivers of PAGA claims and class action claims as well as the current status of the federal courts on the National Labor Relations Board's attempts to

override the Federal Arbitration Act. To ensure the Court is fully informed of the status of the law, Defendants submit this Notice of Supplemental Authority.

## I. California Federal Courts Have Recently Held that Waivers of PAGA Claims Are Valid.

Conspicuously absent from Plaintiff's Notices of Supplemental Authority are the federal district court opinions in *Estrada v. CleanNet USA, Inc.*, No. C 14-01785 JSW, 2015 WL 833701 (N.D. Cal. Feb. 24, 2015) (attached as Exhibit A) and *Nanavati v. Adecco USA, Inc.*, No. 14-CV-04145-BLF, 2015 WL 1738152 (N.D. Cal. Apr. 13, 2015) (attached as Exhibit B).

On February 24, 2015, in *Estrada*, the United States District Court of the Northern District of California held that an arbitration agreement that prohibits proceeding with claims on a "representative basis extends to representative PAGA claims," finding that the state statute is preempted by the FAA. *Estrada*, 2015 WL 833701, at *5. In reaching its decision, the *Estrada* court relied on the reasoning of other district courts within the Ninth Circuit that permitting PAGA claims—that were waived in an arbitration agreement—"would slow the dispute resolution process." *Id.* at *4 (quoting *Fardig v. Hobby Lobby Stores Inc.*, 2014 WL 4782618, at *3 (C.D.Cal. Aug. 11, 2014)). Noting that a state law that interferes with the purpose of the FAA is preempted, the Court ruled that the California Supreme Court's holding in *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal.4th 348, 383–84 (2014), that PAGA claims cannot be waived "contravene[s] the FAA's purpose" and is, therefore, preempted. *Id.* at *4-5 (quoting and citing *Fardig*, 2014 WL 4782618 at *3-4). Therefore, the *Estrada* court permitted the plaintiffs to arbitrate their PAGA claims as individuals as long as their relief was "limited to that which they could obtain as individuals." *Id.*

On April 13, 2015, the United States District Court of the Northern District of California decided to follow the weight of federal courts and fully rejected the holding of *Iskanian*. *Nanavati*, 2015 WL 1738152, at *7. Like the *Estrada* court, the *Nanavati* court reasoned that the *Iskanian* holding was inconsistent with the FAA's purpose. *Id.*

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

at *8. Specifically, the *Iskanian* holding will result in: (1) terms of arbitration agreements not being enforced; (2) representative claims being entirely removed from arbitration; and (3) parties having to endure lengthy litigation for representative claims instead of arbitration. *Id.* Moreover, the FAA "also displaces doctrines 'normally thought to be generally applicable' that 'have been applied in a fashion that disfavors arbitration.'" *Id.* at *7 (quoting *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011)). A rule that prohibited the waiver of PAGA claims in arbitration agreements would disrupt arbitration's goal of quick, cost-efficient resolution and "disproportionately impact[] arbitration agreements." *Id.* at *7 (citing *Concepcion*, 131 S. Ct. at 1747). "When California law and federal law are thus incompatible, the state rule must give way to the FAA." *Id.* at *8. Additionally, because a PAGA claim is under the complete control of the plaintiff and under the plaintiff's name, it is "akin to a private action between private parties." *Id.* As a dispute that is essentially between private parties, the terms of the arbitration agreement between the parties controls the dispute. *Id.* Therefore, the *Nanavati* found that the waiver of representative claims was enforceable and that the plaintiff could only pursue a PAGA claim in an individual capacity in arbitration. *Id.* at *9.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

## II. No Cases Subsequent to the Arbitration Pleadings in this Matter Have Invalidated Class Action Waivers in Arbitration Agreements.

The Defendants have not found any California federal courts holding that class action waivers are invalid since the briefings closed in this case. Additionally, no cases cited by the Defendants have been overruled since the briefing. Thus, the majority view, as established by United States Supreme Court precedent and as set forth by Defendants in the briefing, that class action waivers are valid and enforceable holds today.

## III. The Fifth Circuit's Overruling of *D.R. Horton* Remains the Law in the Federal Courts on the NLRB's Attempts to Revoke the FAA.

Plaintiffs have supplemented with NLRB rulings but have failed to note that the Court is not subject to the agency's determinations, that the NLRB's recent rulings on

this subject are contrary to United States Supreme Court precedent and federal law, and that the federal appellate courts have rejected the NLRB's contention that class action waivers in arbitration agreements violate the National Labor Relations Act's protected, concerted activity. The prevailing view of federal appellate courts rejects the NLRB's contention and holds that class arbitration waivers are valid and enforceable. *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344 (5th Cir. 2013). *See also Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1075 and n.3 (9th Cir. 2013) (noting other courts' disagreement with the NLRB's rationale in *Murphy Oil*); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297-98, n.8 (2d Cir. 2013); *Owens v. Bristol Care, Inc.*, 702 F.3d 1050, 1053-54 (8th Cir. 2013).

Respectfully submitted this 15th day of June, 2015.

/s/ Holly R. Lake
HOLLY R. LAKE, SBN 204304
hlake@millerlawgroup.com
**MILLER LAW GROUP**
12121 Wilshire Blvd., Suite 1375
Los Angeles, CA 90025
Telephone: 310.943.8500
Facsimile: 310.943.8501

SAMUEL ZURIK III (*p.h.v.*)
SZ@kullmanlaw.com
RACHEL E. LINZY (*p.h.v.*)
REL@kullmanlaw.com
**THE KULLMAN FIRM**
A Professional Law Corporation
1100 Poydras Street, Suite 1600
New Orleans, Louisiana 70163
Telephone: (504) 524-4162
Facsimile: (504) 596-4189
**Attorneys for Defendants**

4817-4176-7717, v. 1

# EXHIBIT A

KeyCite Yellow Flag - Negative Treatment
**Disagreed With by** Zenelaj v. Handybook Inc., N.D.Cal., March 3, 2015

2015 WL 833701
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

Esther Estrada, et al., Plaintiffs,
v.
CleanNet USA, Inc., et al., Defendants.

No. C 14–01785 JSW | Signed February 24, 2015

**Attorneys and Law Firms**

Christopher Allen Wimmer, Greg Demirchyan, Emergent Legal, San Francisco, CA, for Plaintiffs.

R. Brian Dixon, Littler Mendelson, PC, Laura Emily Hayward, Littler Mendelson, Richard Hill, Littler Mendelson A Professional Corporation, Charles G. Miller, Charles Griffith Towle, Sony Broto Barari, Bartko, Zankel, Bunzel & Miller, San Francisco, CA, William Vincent Depaul Whelan, Solomon Ward Seidenwurm Smith LLP, San Diego, CA, for Defendants.

## ORDER GRANTING MOTIONS TO COMPEL ARBITRATION

JEFFREY S. WHITE, UNITED STATES DISTRICT JUDGE

***1** Now before the Court are three motions to dismiss or to compel arbitration, filed by Defendants. (ECF Nos. 40, 41, 42.) Having carefully considered the parties' pleadings and relevant legal authority, the Court hereby GRANTS the motions to compel arbitration.

## BACKGROUND

The following facts are drawn from the operative complaint. Plaintiffs Esther Estrada, Isaac Carrazco, and Maria Jacobo ("Plaintiffs") are California residents who seek to represent a class of individuals allegedly injured by corporate Defendants CleanNet USA, D & G Enterprises, Inc., CleanNet of San Jose, CleanNet of Southern California, CleanNet of San Diego, CleanNet of Sacramento, and individual Defendants Mark Salek and David Crum (collectively, "Defendants"). Defendants are alleged to operate an integrated business wherein CleanNet USA controls its Area Operators, who in turn sell franchises to individuals. Each Plaintiff purchased a franchise. To purchase a franchise, each Plaintiff signed a franchise agreement. All three franchise agreements contained dispute resolution provisions and class action waivers.[1] All three franchise agreements provide that the parties must first attempt to resolve disputes through direct negotiation. (FAC Ex. A; Crum Decl. Exs. A, B.) They then provide that, before a demand for arbitration can be made, the parties must attempt to settle their dispute through mediation. (*Id.* ) If that fails, "[a]ll disputes, controversies, and claims of any kind arising between the parties, including but not limited to claims arising out of or relating to this Agreement ... shall be settled by arbitration...." (*Id.* ) Finally, the agreements provide that "Franchisee shall not seek to arbitrate or litigate as a representative of, or on behalf of, any other person or entity, any dispute, controversy, and claim of any kind arising out of or relating to this Agreement...." (*Id.* ) Plaintiffs not only signed these agreements, they initialed each page. (*Id.* )

1 Esther Estrada's franchise agreement differs from those entered into by the other two Plaintiffs in a manner that does not materially alter these provisions.

On April 18, 2014, Plaintiffs filed this putative class action. On June 03, 2014, Plaintiffs filed an amended complaint, alleging sixteen causes of action. Defendants now move to compel arbitration, or to dismiss the complaint.

## ANALYSIS

### A. Legal Standards Applicable to Motions to Compel Arbitration.

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's

only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement. *United Computer Sys. v. AT & T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); 9 U.S.C. § 4.

***2** The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53–54 (1995). The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625–26 (1985) (quotations omitted).

Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion."). Thus, as with any contract an arbitration agreement is "subject to all defenses to enforcement that apply to contracts generally." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

### B. The Franchise Agreements Are Not Unconscionable.

Plaintiffs argue that the dispute resolution provisions are both procedurally and substantively unconscionable. They contend that the unconscionability permeates the entirety of the franchise agreements, and that the agreements as a whole are thus unenforceable.

Unconscionability remains a basic contract defense that may be used to invalidate arbitration provisions. *AT & T Mobility LLC v. Concepcion*, ––– U.S. ––––, 131 S.Ct. 1740, 1746 (2011). "Like other contracts, an arbitration provision is invalid if it is both procedurally and substantively unconscionable." *Armendariz v. Found. Health Psychare Serv., Inc.*, 24 Cal.4th 83, 114–15 (2000). Courts apply a sliding scale when analyzing these two factors, but "both must be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Grabowski v. Robinson*, 817 F.Supp.2d 1159, 1171 (S.D.Cal.2011) (quotation omitted). "The party opposing arbitration has the burden of proving the arbitration provision is unconscionable." *Id.* (quotation omitted).

#### 1. The Franchise Agreements Are Minimally Procedurally Unconscionable.

Procedural unconscionability "concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. The element focuses on oppression or surprise." *Gatton v. T–Mobile, USA, Inc.*, 152 Cal.App. 4th 571, 581 (2007) (quotations omitted). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Id.* (quotations omitted). "Surprise is defined as the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed term." *Id.* (quotations omitted).

Plaintiffs argue that the dispute resolution provisions of the franchise agreements are procedurally unconscionable because they are the product of both oppression and surprise. With respect to oppression, Plaintiffs contend that, due to Defendants' superior bargaining power, Plaintiffs had no opportunity to negotiate the terms of the agreements, and no meaningful choice about whether to accept them. With respect to surprise, Plaintiffs argue that the dispute resolution provisions were buried within lengthy contracts Plaintiffs did not understand, and that Defendants failed to give Plaintiffs the statutorily required fourteen days to review them before signing.

***3** In response, Defendants contend that the dispute resolution provisions were clearly labeled, with bolded, capitalized section headings that should have alerted Plaintiffs to their existence. Defendants argue that Plaintiffs were given the opportunity to review the agreements,[2] and that they were encouraged to consult with a lawyer before signing. Moreover, Defendants contend that Plaintiffs each represented in their respective franchise agreements that they were capable of doing business in English, and that doing so was not a undue burden on them.

2 There is a dispute regarding whether Plaintiffs were in fact given fourteen days to review the franchise agreements. However, Plaintiffs admit that they each at

least had several days in which to review their agreements before deciding whether to sign. (Estrada Decl. ¶¶ 4–5; Jacobo Decl. ¶¶ 4, 6; Carrazco Decl. ¶¶ 4, 6.)

Given the characteristics of these franchise agreements, and the circumstances under which they were signed, the Court is not persuaded that there was any more than a minimal amount of procedural unconscionability in the signing of the franchise agreements. *See*Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1284 (9th Cir. 2006) (noting that evidence that defendant had "overwhelming bargaining power, drafted the contract, and presented it to [plaintiff] on a take-it-or-leave-it basis" amounted to only minimal evidence of procedural unconscionability).

**2. The Franchise Agreements Are Not Substantively Unconscionable.**

Unlike procedural unconscionability, which focuses on the manner in which agreement to a disputed term was sought or obtained, substantive unconscionability relates to the actual terms of the arbitration agreement and whether those terms are "overly harsh" or "generate one-sided results." *Id.* at 1281 (internal quotation marks omitted). "The paramount consideration in assessing conscionability is mutuality." *Id.* (internal quotation marks omitted). Thus, to avoid substantive unconscionability, an agreement must possess a "modicum of bilaterality." *Armendariz,* 24 Cal.4th at 117.

Plaintiffs argue that the dispute resolution provisions of the franchise agreements are substantively unconscionable because they are overly harsh, and because they sanction one-sided results. Specifically, Plaintiffs contend that the dispute resolution provisions create procedural hurdles,[3] shorten limitations periods, limit damages, prohibit recovery of fees, and impose substantial costs related to mediation and arbitration, all of which favors Defendants.

3 Plaintiffs refer in passing to "procedural hurdles," but fail to explain precisely what they mean by this phrase. Accordingly, the Court does not address any alleged "procedural hurdles" in assessing the agreements' substantive unconscionability.

The Court finds that the dispute resolution provisions are not substantively unconscionable. Plaintiffs argue that the agreements impermissibly shorten the limitations period to 180 days when they state that, if negotiations fail, the dissatisfied party must submit the dispute to mediation or arbitration within 180 days. Defendants counter that they do not agree that this statement shortens the limitations period, and that, should the Court determine that it does, it is severable. The Court agrees that this statement is ambiguous, however, in an abundance of caution the Court SEVERS the requirement that a dispute be submitted to meditation or arbitration within 180 days.

With respect to Plaintiffs' contention that the dispute resolution provisions limit their ability to recover fees and damages, the Court is not persuaded. Indeed, the agreements expressly provide that any "arbitrator shall have the power to enter an award ... protecting its rights to the same extent a court could do...." (*See* FAC Ex. A.) The Court further finds that the waiver of punitive damages is not so egregious as to render the dispute resolution provisions substantively unconscionable. To the extent Plaintiffs take issue with portions of the agreements potentially bearing on recovery, but not contained in the dispute resolution provisions themselves, these are matters for the arbitrator to decide. *See*Kairy v. Supershuttle Int'l, Inc., 2012 WL 4343220, at *9 (N.D.Cal. Sept. 20, 2012).

***4** Finally, the Court is also not persuaded by Plaintiffs' arguments that arbitration would present an undue financial burden on them. Plaintiffs contend that the dispute resolution provisions' fee-splitting requirement is unconscionable because Plaintiffs cannot afford to split the cost of arbitration. However, Plaintiffs fail to provide the Court sufficient information from which the Court could draw a valid conclusion regarding Plaintiffs' ability to split costs. Nor do Plaintiffs provide the Court with an estimate of the costs they might face should arbitration move forward. Based on this dearth of information, the Court cannot conclude that the mere speculative risk that arbitration might impose a financial burden on Plaintiffs justifies invalidating the dispute resolution provisions. *See*Green Tree Fin. Corp.–Alabama v. Randolph, 531 U.S. 79, 81 (2000) (holding that "a party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs").

The Court further notes that the dispute resolution provisions provide that small disputes may be settled in a local dispute resolution office, in an effort to minimize costs, and that Defendants have repeatedly stated that they are willing to pay 100% of the costs of any AAA mediation. For the above-stated reasons, the Court concludes that the dispute resolution provisions are not substantively unconscionable.

The Court has found that the dispute resolution provisions are minimally procedurally unconscionable, but are not substantively unconscionable. Accordingly, the Court must enforce the dispute resolution provisions, and the parties are ORDERED to resolve their disputes in accordance with these provisions.

**C. Plaintiffs Must Arbitrate On An Individual Basis.**
Plaintiffs concede that, should they be required to arbitrate, the dispute resolution provisions' class action waivers bar them from pursuing representative actions related to their franchise investment law, contract, and tort claims. (Opp'n at 12 n.7.) However, Plaintiffs argue that their PAGA claims should still be permitted to proceed on a representative basis.

PAGA permits individuals to bring representative claims for an employer's violation of the California Labor Code. Cal. Lab.Code. §§ 2699 et seq. Those individuals are essentially deputized as private attorneys general, and are permitted to seek penalties for violations "that could otherwise only be assessed by California's Labor and Workforce Development Agency." *Cunningham v. Leslie's Poolmart, Inc.,* 2013 WL 3233211, at *5 (C.D. Cal. June 25, 2013).

Numerous courts within the Ninth Circuit have held that class action waivers that extend to representative PAGA actions are permissible. *See, e.g.,Miguel v. JPMorgan Chase Bank, N.A.*, 2013 WL 452418, at *9 (C.D.Cal. Feb. 5, 2013); *Morvant v. P.F. Chang's China Bistro, Inc.,* 870 F.Supp.2d 831, 845–46 (N.D.Cal.2012); *Quevedo v. Macy's, Inc.,* 798 F.Supp.2d 1122, 1140–42 (C.D.Cal.2011); *Grabowski v. Robinson*, 817 F.Supp.2d 1159, 1181 (S.D.Cal.2011). The California Supreme Court, however, has held that, as a matter of California law, an employee's right to bring a representative PAGA action cannot be waived. *Iskanian v. CLS Transp. L.A., LLC,* 59 Cal.4th 348, 383–84 (2014). However, the California Supreme Court noted that this rule could be preempted if it conflicted with the FAA's objectives. *Id.* at 384. In upholding class action waivers, the United States Supreme Court has "made clear that any state-law rule standing as an obstacle to the accomplishment of the FAA's objectives of enforcing arbitration agreements according to their terms to allow for efficient procedures tailored to the specific dispute was preempted." *Fardig v. Hobby Lobby Stores Inc.*, 2014 WL 4782618, at *3 (C.D.Cal. Aug. 11, 2014). The district courts within the Ninth Circuit that have upheld the waiver of representative PAGA claims have done so on the basis that permitting them to go forward when they have been waived in an arbitration agreement "would slow the dispute resolution process, in opposition to the FAA's goals." *Id.* (collecting cases).

***5** The Court is persuaded that the reasoning employed by these other district courts is correct, and that permitting Plaintiffs' representative PAGA claims to go forward would contravene the FAA's purpose. The California Supreme Court's holding in *Iskanian* notwithstanding, this Court is bound to examine for itself whether PAGA waivers are permissible. The Court finds that the provision prohibiting Plaintiffs from proceeding on a representative basis extends to representative PAGA claims. To the extent the *Iskanian* holding would frustrate the FAA's goals, the Court finds that it is preempted. *SeeFardig*, 2014 WL 4782618, at *4 ("Even in light of *Iskanian,* the Court continues to hold that the rule making PAGA claim waivers unenforceable is preempted by the FAA."). Plaintiffs may arbitrate their PAGA claims as individuals or, to the extent California law permits, as state agents, provided their relief is limited to that which they could obtain as individuals.

**D. Standing.**
The Court has concluded that Plaintiffs must arbitrate their claims on a solely individual basis. The only question remaining is which Defendants must join Plaintiffs in arbitration. Defendants contend that Plaintiffs only have standing to sue those Defendants with whom they had direct contact.

The franchise agreements at issue here contain broad dispute resolution provisions which state that all disputes arising between the parties must be decided through mediation or arbitration. The Court finds that the question of which Defendants Plaintiffs may sue is a question that should properly be decided by the mediator or arbitrator. Accordingly, the Court declines to rule on the issue of standing at this time.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motions to compel arbitration. Plaintiffs shall attempt to resolve their disputes, on a solely individual basis, in accordance with the franchise agreements that they signed. The Court further ORDERS the proceedings STAYED pending arbitration.

**IT IS SO ORDERED.**

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

2015 WL 1738152
Only the Westlaw citation is currently available.
United States District Court,
N.D. California,
**San Jose Division**.

Rajan Nanavati, on behalf of himself and all others similarly situated, and on behalf of the general public Plaintiff,
v.
Adecco USA, Inc., Defendant.

Case No. 14–cv–04145–BLF | Signed April 13, 2015

**Synopsis**
**Background:** Employee brought putative class action against employer, a staffing company that recruited and employed temporary employees who were placed at employer's client sites, alleging employer failed to compensate him for overtime and meal breaks, failed to keep accurate records of the number of hours he worked, and failed to promptly pay all compensation owed upon his termination from employment, in violation of California labor law. Employer filed motion to compel arbitration.

**Holdings:** The District Court, Beth Labson Freeman, J., held that:

[1] employer sufficiently demonstrated the existence of a valid agreement with employee to arbitrate claims relating to employee's employment;

[2] employee's claims fell within scope of the parties' arbitration agreement;

[3] class action waiver in arbitration agreement was valid and enforceable; and

[4] Federal Arbitration Act (FAA) preempted state law rule against waiver of employee's right to bring a representative Private Attorney General Act (PAGA) action.

Motion granted.

**Attorneys and Law Firms**

Kevin R. Allen, Daniel Velton, Velton Zegelman PC, Vijayta R. Chetty, Sunnyvale, CA, for Plaintiff.

Julie Westcott O'Dell, Julie Erin Patterson, Bryan Cave LLP, Irvine, CA, for Defendant.

**ORDER GRANTING MOTION TO COMPEL ARBITRATION; STAYING ACTION PENDING COMPLETION OF ARBITRATION**

**[Re: ECF 13]**

BETH LABSON FREEMAN, District Judge

***1** This lawsuit concerns alleged violations of the California Labor Code committed by defendant Adecco USA, Inc. ("Defendant"). Plaintiff Rajan Nanavati ("Plaintiff") brings claims on behalf of himself and a putative class of others similarly situated, seeking recompense and penalties in connection with those alleged violations. Plaintiff also seeks to bring a representative action under California's Labor Code Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab.Code § 2698 *et seq.*, which permits statutory penalties for violations of the Labor Code. Before the Court is Defendant's Motion to Compel Arbitration. Def.'s Mot., ECF 13. The Court heard oral argument on the motion on March 25, 2015. For the reasons stated herein, Defendant's Motion to Compel Arbitration is GRANTED.

**I. BACKGROUND**
Defendant is a Delaware Corporation with its corporate headquarters in Jacksonville, Florida. Compl. ¶ 17, ECF 1; Decl. of Virginia Watson ¶ 1, ECF 13–2. Defendant is "one of the largest staffing companies in the United States," and recruits and employs temporary employees (the company calls them "associates") who are placed at Defendant's client sites. Watson Decl. ¶ 1; *see also* Compl. ¶¶ 5, 17. Plaintiff was one such employee and was employed by Defendant "to perform services for defendant's client Google" for about four months from January to May 2014. Compl. ¶ 11; Watson Decl. ¶ 2. In a complaint originally filed in the Superior Court for the County of Santa Clara, Plaintiff alleges that during that period of employment, Defendant violated California labor laws by failing to compensate him for overtime and

meal breaks, failing to keep accurate records of the number of hours he worked, and failing to promptly pay all compensation owed (including overtime and mealtime compensation) upon Plaintiff's termination from employment. Compl. ¶¶ 25–35. Plaintiff brings claims regarding these violations on behalf of himself and a class of similarly situated current and former employees who performed services for Defendant's clients in California in the four years prior to the filing of the complaint. *Id.* ¶ 22. On September 15, 2014, Defendant removed the action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711–15. Notice of Removal, ECF 1. This Court has jurisdiction under 28 U.S.C. § 1332(d).

On November 21, 2014, Defendant filed the instant motion to compel arbitration of Plaintiff's claims pursuant to a Dispute Resolution and Arbitration Agreement for Consultants/Associates ("Agreement") that Plaintiff signed as part of the "on-boarding" process to begin employment with Defendant. The Agreement provides that "the Company and Employee agree that any and all disputes, claims or controversies arising out of or relating to this Agreement, the employment relationship between the parties, or the termination of the employment relationship, shall be resolved by binding arbitration...." Watson Decl. Exh. C (Agreement) at ¶ 1. In bold and capitalized font, the first paragraph concludes: "By signing this agreement, the parties hereby waive their right to have any dispute, claim or controversy decided by a judge or jury in a court." *Id.* Most salient to the issues before the Court, paragraphs 7 and 8 of the Agreement further provide (likewise in bold and capitalized font):

> ***2** 7. By signing this agreement, the parties agree that each may bring claims against the other only in their individual capacity, and not as a plaintiff or class member in any purported class and/or collective proceeding.
>
> 8. Furthermore, by signing this agreement, the parties agree that each may bring claims against the other only in their individual capacity and not in any representative proceeding under any private attorney general statute ("PAGA claim"), unless applicable law requires otherwise. If the preceding sentence is determined to be unenforceable, then the PAGA claim shall be litigated in a civil court of competent jurisdiction and all remaining claims will proceed in arbitration.

Agreement at ¶¶ 7–8. Employees may opt out within 30 days of signing the arbitration agreement. *Id.* ¶ 9. In order to do so, an employee must first request a form from the human resources department via an email address provided in paragraph 9 of the Agreement. The same paragraph states clearly that "[a]n Employee who opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision...." *Id.* Failure to timely submit a completed opt out form constitutes acceptance of the Arbitration Agreement. *Id.*

The undisputed facts, as set forth in the declaration of Virginia Watson, the Senior Vice President of Operations for Defendant, show that Plaintiff reviewed and electronically signed the Agreement on January 21, 2014 as part of Defendant's "on-boarding" process for new hires.[1] Watson Decl. ¶¶ 4–10, Exh. C. Plaintiff furthermore acknowledged agreement to Defendant's Electronic Signature Agreement and acknowledged receipt and acceptance of the terms of the "on-boarding" forms. *Id.* ¶¶ 7, 13, Exhs. B, D. Based on her review of Plaintiff's records, as well as confirmation from Defendant's HR Department, Watson also attests that Defendant received no email from Plaintiff requesting the form that would allow him to opt out of the arbitration agreement, nor does Defendant have a signed opt out form from Plaintiff. *Id.* ¶ 12.

1 These facts are not in dispute because Plaintiff has submitted no declaration of his own refuting the facts. In fact, Plaintiff relies on the Watson Declaration in his opposition to Defendant's motion. *See* Pl.'s Opp. 4–5, ECF 14.

On December 5, 2014, after Defendant sought to compel arbitration, Plaintiff filed a complaint with the National Labor Relations Board ("NLRB") alleging unfair labor practices including, *inter alia,* the promulgation of an allegedly unlawful arbitration agreement. Pl.'s Opp. 3; Decl. of VJ Chetty ¶ 2, ECF 14–1; Pl.'s Request for Judicial Notice ("RJN") Exh. B, ECF 14–1.[2] At the March 26 hearing, Plaintiff indicated that the NLRB had investigated the allegations and communicated its intent to file a complaint against Defendant in the near future. Plaintiff requested orally that the Court stay this action pending resolution of the NLRB's complaint.

2 Plaintiff's Request for Judicial Notice is GRANTED as to Exhibit B, as Plaintiff's filing with the NLRB is a public record of which the Court may properly take judicial notice. Fed.R.Evid. 201; *Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360, 1364 (9th Cir.1998). The Court need not take judicial notice of Exhibit A, which is the operative pleading in this action. The request for judicial notice is accordingly DENIED with respect to that document.

## II. LEGAL STANDARD

***3** The Federal Arbitration Act ("FAA") governs the enforceability and scope of an arbitration agreement. 9 U.S.C. § 1 *et seq.* Under the FAA, a party seeking to invoke an arbitration agreement may petition the district court "which, save for such agreement, would have jurisdiction [to hear the case], for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; *see also* *Trompeter v. Ally Financial, Inc.,* 914 F.Supp.2d 1067, 1071 (N.D.Cal.2012).

[1] [2] [3] A district court faced with a petition to enforce an arbitration clause engages in a limited two-part inquiry: first, it determines whether the arbitration agreement is valid, and second, it determines whether the agreement encompasses the claims at issue. *See, e.g.,* *Mitsubishi Motors Co. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 627–28, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *see also* *Trompeter,* 914 F.Supp.2d at 1071. The FAA dictates that arbitration agreements are "a matter of contract," and "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."9 U.S.C. § 2. Such generally applicable contract defenses include "fraud, duress, or unconscionability, but not [ ] defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT & T Mobility LLC v. Concepcion,* ––– U.S. ––––, 131 S.Ct. 1740, 1746, 179 L.Ed.2d 742 (2011). Consistent with the text of the FAA, "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.,* ––– U.S. ––––, 133 S.Ct. 2304, 2309, 186 L.Ed.2d 417 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)).

## III. DISCUSSION

Defendant submits that this entire action must be sent to arbitration because the Agreement is valid and enforceable and, by its terms, applies to all of Plaintiff's claims. Def.'s Mot. 2–7. Because the Agreement contains class and representative action waivers, Defendant moreover contends that Plaintiff must arbitrate his claims in an individual capacity. *Id.* 7–10. Plaintiff challenges the enforceability of the two waiver provisions. *See* Pl.'s Opp. 3–12, ECF 14.

### A. The Arbitration Agreement is Valid

[4] As an initial matter, the Court finds that Defendant has sufficiently demonstrated the existence of a valid agreement between the parties to arbitrate claims relating to Plaintiff's employment with Defendant. At oral argument, Plaintiff attempted to argue that *Ruiz v. Moss Brothers Auto Group,* 232 Cal.App.4th 836, 181 Cal.Rptr.3d 781 (2014), a recent state court of appeal ruling that Plaintiff brought to the Court's attention in January 2015, demonstrates that Defendant has not met its burden of proving the existence of an enforceable arbitration agreement. The *Ruiz* court affirmed the trial court's factual determination that the employer failed to submit sufficient evidence that the plaintiff employee was the person who electronically signed the arbitration agreement at issue where the employee testified that he did not recall signing the agreement and would not have signed such an agreement if it had been presented to him. *Id.* at 840.

Reliance on *Ruiz* is unavailing because, as Defendant properly notes, nowhere in his opposition to the motion to compel arbitration did Plaintiff challenge the authenticity of his signature or the prima facie validity of the arbitration agreement. Def.'s Reply 1, ECF 15. As such, Plaintiff has already conceded that he is bound by a valid agreement. Moreover, Plaintiff offers no evidence to suggest that he did not sign the Agreement, nor does he challenge the facts set forth in the declaration of Virginia Watson, Defendant's Senior Vice President of Operations, which establish in detail her basis for concluding that Plaintiff did electronically sign the Agreement. *See* Watson Decl. ¶¶ 3–13. In the absence of evidence raising any doubts as to the provenance of the electronic signature on the Agreement, the detailed Watson declaration easily satisfies Defendant's low burden to authenticate Plaintiff's electronic signature and establish the existence of a valid arbitration agreement. *Compare* *Ruiz,* 232 Cal.App.4th at 844–45 ("unsupported assertion" that the plaintiff was the one who electronically signed agreement insufficient to authenticate the signature "in the face of [the plaintiff's] failure to recall electronically signing" the agreement).[3]

3 The *Ruiz* court distinguished its case from a prior case, *Condee v. Longwood Management Corp.,* 88 Cal.App.4th 215, 218, 105 Cal.Rptr.2d 597 (2001), which held that the employer is not required to authenticate the employee's signature *as a preliminary matter*. The *Ruiz* court found that the employer bears the burden of proof to authenticate a signature once the employee contests the validity of the arbitration agreement. *Ruiz,* 232 Cal.App.4th at 845–46. Plaintiff

did not contest the validity of the Agreement and, as such, Defendant was not required to authenticate his signature as a preliminary matter. In any event, however, Defendant has satisfactorily authenticated Plaintiff's signature even under *Ruiz*.

***4** [5]The Court therefore concludes that there exists a valid agreement to arbitrate between the parties. Further, all of Plaintiff's claims fall within the scope of the Agreement, as they arise out of "the employment relationship between the parties" and "the termination of the employment relationship." Agreement ¶ 1. The only question remaining is the enforceability of the waiver provisions requiring Plaintiff to arbitrate his claims in an individual capacity.

**B. The Class Action Waiver is Valid and Enforceable**

[6]Plaintiff contends that paragraph 7 of the Agreement, which prohibits him from proceeding as "a plaintiff or class member in any purported class and/or collective proceeding" is unenforceable under federal law. The filing of a class action lawsuit to enforce state labor laws, Plaintiff argues, is "concerted activity" protected by section 7 of the National Labor Relations Act ("NLRA"). Pl.'s Opp. 3–4; *see*29 U.S.C. § 157. Because the NLRA deems it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" section 7, 29 U.S.C. § 158(a)(1), Plaintiff contends that the class action waiver in the Agreement is an unlawful restraint on collective action and therefore unenforceable under the NLRA. *See* Pl.'s Opp. 8–9.

Plaintiff relies on two decisions by the NLRB to advance his argument: *In reD.R. Horton, Inc.*, 357 N.L.R.B. No. 184 (Jan. 3, 2012) ("*Horton I* ") and *Murphy Oil USA, Inc.*, 361 N.L.R.B. No. 72 (Oct. 28, 2014). In *Horton I,* the NLRB found that mandatory arbitration agreements that bar employees from bringing joint, collective, or class action claims restrict substantive rights under section 7 of the NLRA and are therefore unlawful. *Horton I*, 357 N.L.R.B. No. 184, at *5–8. The NLRB furthermore concluded that the rule against waiver of class actions in employment agreements did not conflict with the objectives of the FAA. *Id.* at *11–16. The majority of federal courts to have considered *Horton I* have rejected its reasoning. Specifically, the Fifth Circuit partially overruled *Horton I*, finding that the NLRB had misapplied the FAA and that the Board's rule against waiving class actions does not fall within the "savings clause" of § 2 of the FAA. *D.R. Horton, Inc. v. N.L.R.B.,* 737 F.3d 344, 359 (5th Cir.2013) ("*Horton II*");[4] 9 U.S.C. § 2 (arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). Furthermore, the Fifth Circuit determined that there is no congressional command in the NLRA that overrides the FAA and its liberal policy of promoting individual arbitration. *Horton II, 737 F.3d at 360–62*. Noting that agreeing with the NLRB would create a circuit split, the Fifth Circuit sided with the weight of federal courts holding class action waivers enforceable. *Id.* at 362; *see*Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1075 n. 3 (9th Cir.2013) (observing number of federal courts that have rejected Horton I); *see alsoBrown v. Citicorp Credit Servs., Inc.*, No. 1:12–CV–00062–BLW, 2015 WL 1401604 (D.Idaho Mar. 25, 2015) (granting reconsideration of prior determination that class waiver in arbitration agreement violates NLRA and granting motion to enforce arbitration agreement containing class action waiver). Indeed, even the California Supreme Court rejected Horton I when faced with a class waiver provision in an arbitration agreement that was entered free of coercion. *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348, 367–74, 173 Cal.Rptr.3d 289, 327 P.3d 129 (2014). Despite this skepticism from numerous courts, the NLRB reaffirmed *Horton I* in *Murphy Oil*, concluding that an employer violates the NLRA when it requires, as a condition of employment, an arbitration agreement that waives an employee's access to class action procedures.[5] *Murphy Oil*, 361 N.L.R.B. No. 72, at *2–3, 11, 24–26.

4 The Fifth Circuit also noted that "[t]he use of class action procedures ... is not a substantive right" and observed that there are "numerous decisions holding that there is no right to use class procedures under various employment-related statutory frameworks." *Horton II*, 737 F.3d at 357.

5 Since *Murphy Oil*, one district court has confronted and declined to apply that decision, instead following binding circuit precedent rejecting *Horton I* to enforce a class action waiver. *Patterson v. Raymours Furniture Co.*, No. 14–CV–5882 VEC, ––– F.Supp.3d ––––, ––––, 2015 WL 1433219, at *7 (S.D.N.Y. Mar. 27, 2015).

***5** Although the Ninth Circuit has never taken a concrete stance on *Horton I,* in *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir.2014), a unanimous panel of the Ninth Circuit rejected arguments against enforcing a class action waiver in an employment agreement similar to the ones Plaintiff advances here.

Without deciding whether the filing of a class action to enforce labor laws is "concerted activity" within the meaning of the NLRA, the court determined that the plaintiff failed to show that the arbitration agreement she signed with Bloomingdale's "interfered with, restrained, or coerced her in the exercise of her right to file a class action." *Id.* at 1075. Distinguishing *Horton I* on the ground that it concerned a *mandatory* agreement to arbitrate, the *Johnmohammadi* court found dispositive the fact that Bloomingdale's "did not *require* [the plaintiff] to accept a class-action waiver *as a condition of employment*." *Id.* (emphasis added). Had the plaintiff wanted to retain her right to file a class action, "nothing stopped her from opting out of the arbitration agreement." *Id.* at 1075–76. "In the absence of any coercion influencing the decision," the Ninth Circuit found no unlawful restraint or interference in merely presenting an employee with a choice to arbitrate on an individual basis or resolve future employment disputes in court. *Id.* at 1076.

Plaintiff attempts to distinguish *Johnmohammadi* on two grounds: first, that it predated the NLRB's subsequent reaffirmation of *Horton I* in *Murphy Oil,* and second that unlike in *Johnmohammadi,* Defendant here did exercise coercion to unlawfully influence Plaintiff's decision to accede to the arbitration agreement. Pl.'s Opp. 4–7. Neither argument is persuasive. *Murphy Oil,* like *Horton I,* concerned a mandatory arbitration agreement with no opportunity to opt out. Therefore, to the extent *Murphy Oil* remains viable given the round judicial rejection of *Horton I,* it is inapplicable to the Ninth Circuit's reasoning in *Johnmohammadi,* which focused on a lack of coercion in the employee's agreement (through failure to opt out) to arbitrate. Indeed, as Defendant notes, the arbitration agreement and class action waiver in *Johnmohammadi* were upheld by an administrative law judge in collateral NLRB proceedings for precisely that reason. Def.'s Reply 3 (citing *Bloomingdale's, Inc. & Fatemeh Johnmohammadi,* 31–CA–071281, 2013 WL 3225945 (June 25, 2013)).

Nor is this case factually distinguishable from *Johnmohammadi*. Despite Plaintiff's attempts to characterize Defendant's "on-boarding" process as coercive, *see* Pl.'s Opp. 4–5, it is no different from the process described in *Johnmohammadi*. When Defendant hired Plaintiff, he received a set of documents including an arbitration agreement that clearly and simply described Defendant's alternative dispute resolution program and the contours of the parties' agreement to arbitrate. The arbitration agreement permitted Plaintiff to opt out within 30 days without any negative consequence. Agreement ¶ 9. By not opting out, Plaintiff became bound by the terms of the arbitration agreement. *Johnmohammadi,* 755 F.3d at 1074 (citing *Circuit City Stores, Inc. v. Ahmed,* 283 F.3d 1198, 1199–1200 (9th Cir.2002)). To be sure, Plaintiff was not given the opt out form when he signed the Agreement. However, merely being required to request the form by email did not force Plaintiff to make the decision to opt out "while sitting in front of the computer and going through the entire packet of orientation materials," Pl.'s Opp. 5, since nothing precluded him from copying the email address and requesting a form later. Nor does this Court find persuasive Plaintiff's assertion that the need to request an opt out form from the human resources department operated as a deterrent to opting out. *Id.* Plaintiff certainly did not testify that he felt deterred by this process.[6] Further, because the opt out provision specifically assures that opting out would not carry any adverse employment consequences, it would be unreasonable to simply presume that Plaintiff was coerced into not opting out. The more reasonable conclusion is that Plaintiff made a "fully informed and voluntary decision" to accede to the Agreement. *Johnmohammadi,* 755 F.3d at 1074.

6 Plaintiff is in fact completely silent concerning all of this. He relies solely on the declaration of Virginia Watson submitted by Defendant to make his case that his agreement to arbitrate on an individual basis was in some way coerced.

***6** In sum, *Johnmohammadi* squarely controls the outcome in this case. Here, as in *Johnmohammadi,* Plaintiff signed an arbitration agreement and was afforded ample opportunity to opt out of the arbitration agreement. He chose not to do so. Therefore, the class action waiver is not an unlawful restraint of Plaintiff's right to engage in concerted activity and is enforceable according to the terms of the Agreement.[7]

7 Because *Johnmohammadi* so clearly controls, the Court DENIES Plaintiff's request to stay this action pending resolution of the NLRB's civil action.

### C. The PAGA Waiver is Enforceable

[7]In addition to the class waiver provision of the Agreement, Plaintiff challenges the enforceability of paragraph 8, which further requires the parties to arbitrate their claims in an individual capacity and "not in any representative proceeding under any private attorney general statute." Agreement ¶ 8; Pl.'s Opp. 11–12. The Court finds that the FAA requires enforcement of this

waiver of representative claims.

The enforceability of a waiver of representative claims under California's PAGA statute, Cal. Lab.Code § 2698 *et seq.*, is an unsettled area of the law. There is persuasive authority on both sides and no binding determination by the Court of Appeals for the Ninth Circuit or the United States Supreme Court as of yet. Most notably, the California Supreme Court in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal.4th 348, 173 Cal.Rptr.3d 289, 327 P.3d 129 (2014), recently ruled that employment agreements that "requir[e] employees to waive the right to bring a PAGA action before any dispute arises" are "contrary to public policy" and therefore unenforceable. *Id.* at 383, 327 P.3d 129. The PAGA statute was enacted to deputize individuals to enforce state labor laws on behalf of the state. *See id.* at 388, 327 P.3d 129 (characterizing the PAGA statute as the state "supplement[ing]" its enforcement capability "by authorizing willing employees to seek civil penalties for Labor Code violations traditionally prosecuted by the state"). Therefore, the Court reasoned, a "PAGA action is a dispute between an employer and the state Labor and Workforce Development Agency." *Id.* at 384, 327 P.3d 129. By contrast, the *Iskanian* court observed that the FAA is a statute that focuses on *private* disputes, noting that the United States Supreme Court's FAA jurisprudence, with one exception, "consists entirely of disputes involving the parties' *own* rights and obligations, not the rights of a public enforcement agency." *Id.* at 385, 327 P.3d 129 (emphasis in original); *see generally id.* at 384–87, 327 P.3d 129. As such, "a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship." *Id.* at 386, 327 P.3d 129. Because a state enforcement agency's interests are interposed between parties in a PAGA representative action, the *Iskanian* court concluded that the FAA simply does not apply and does not operate to preempt the state's rule against *ex ante* waivers of PAGA representative claims. *Id.* at 387–89, 327 P.3d 129. The United States Supreme Court denied *certiorari* on January 20, 2015. 135 S.Ct. 1155, 190 L.Ed.2d 911 (2015).

Few federal district courts have followed *Iskanian*. As interpretation of the FAA and preemption are issues of federal law, the majority of district courts to have confronted the issue acknowledge *Iskanian* as persuasive authority but conclude that the rule against PAGA waivers frustrates the goals of the FAA and is therefore preempted. *Estrada v. CleanNet USA, Inc.*, No. C 14–01785 JSW, 2015 WL 833701, at *4–5 (N.D.Cal. Feb. 24, 2015) (collecting pre-*Iskanian* cases that found PAGA waivers enforceable and holding the *Iskanian* rule preempted to the extent it frustrates the FAA's goals); *see also Mill v. Kmart Corp.*, No. 14–CV–02749–KAW, 2014 WL 6706017, at *6–7 (N.D.Cal. Nov. 26, 2014) (declining to follow *Iskanian* ); *Lucero v. Sears Holdings Mgmt. Corp.*, No. 14–CV–1620 AJB WVG, 2014 WL 6984220, at *3–6 (S.D.Cal. Dec. 2, 2014) (same); *Langston v. 20/20 Companies, Inc.*, No. EDCV 14–1360 JGB SPX, 2014 WL 5335734, at *6–8 (C.D.Cal. Oct. 17, 2014) (same); *Chico v. Hilton Worldwide, Inc.*, No. CV 14–5750–JFW SSX, 2014 WL 5088240, at *12–13 (C.D.Cal. Oct. 7, 2014) (same); *Ortiz v. Hobby Lobby Stores, Inc.*, No. 2:13–CV–01619, 52 F.Supp.3d 1070, 2014 WL 4961126, at *9–11 (E.D.Cal. Oct. 1, 2014) (same); *Fardig v. Hobby Lobby Stores Inc.*, No. SACV 14–00561 JVS, 2014 WL 4782618, at *3–4 (C.D.Cal. Aug. 11, 2014) (same).

***7** More recently, two courts have broken with the pack and found *Iskanian* persuasive. In *Hernandez v. DMSI Staffing, LLC.*, No. C–14–1531 EMC, ––– F.Supp.3d ––––, ––––, 2015 WL 458083 (N.D.Cal. Feb. 3, 2015), the court conducted a thorough analysis of *Iskanian* and found persuasive the fact that there is a "critical difference between PAGA claims on behalf of the government" and private suits. *Id.* ––– F.Supp.3d at ––––, –––– – ––––, at *7–8. Moreover, because PAGA representative actions are not class actions requiring numerosity, commonality, or typicality, the court found the reasoning of *Concepcion* inapplicable to PAGA claims. *Id.* ––– F.Supp.3d at ––––, ––––, at *6. Finally, the *Hernandez* court also noted the federalism concerns attendant in enforcing PAGA waivers to the detriment of California's police powers of enforcement. *Id.* ––– F.Supp.3d at ––––, –––– – ––––, at *8–9. Shortly thereafter, the court in *Zenelaj v. Handybook Inc.*, No. 14–CV–05449–TEH, ––– F.Supp.3d ––––, 2015 WL 971320 (N.D.Cal. Mar. 3, 2015), followed *Iskanian* and *Hernandez* and declined to enforce a waiver of representative actions in an arbitration agreement. *Id.* ––– F.Supp.3d at ––––, –––– – ––––, at *7–8.

[8] [9]Although the *Hernandez* and *Zenelaj* orders are thorough and well-reasoned, the Court finds that it must respectfully follow the weight of federal courts rejecting *Iskanian*. "The central premise of the Supremacy Clause is that federal law is superior to state law." *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 936 (9th Cir.2013). "The Supreme Court has therefore long recognized that any state law that 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' is preempted." *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are

enforced according to their terms.' " *Concepcion,* 131 S.Ct. at 1748 (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). It is furthermore "beyond dispute," that the FAA "was designed to *promote* arbitration." *Concepcion,* 131 S.Ct. at 1749 (emphasis added); *see also* *KPMG LLP v. Cocchi,* ––– U.S. ––––, 132 S.Ct. 23, 25, 181 L.Ed.2d 323 (2011) (per curiam) (the FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution' " (quoting *Mitsubishi,* 473 U.S. at 631)). It is this Court's determination that a rule against pre-dispute waivers of representative claims under PAGA stands as an obstacle to that liberal policy.

Just like the California rule against class action waivers at issue in *Concepcion,* the *Iskanian* rule against *ex ante* waivers of PAGA representative claims does not, on its face, disfavor arbitration. *See* *Concepcion,* 131 S.Ct. at 1747, 1750. The FAA, however, also displaces doctrines "normally thought to be generally applicable" that "have been applied in a fashion that disfavors arbitration," particularly "since the judicial hostility towards arbitration that prompted the FAA had manifested itself in a great variety of devices and formulas declaring arbitration against public policy." *Id.* at 1747 (internal quotations omitted). In this case, the Court is persuaded that a rule that private employees cannot waive the ability to bring a PAGA representative claim *before* a dispute arises necessarily disfavors arbitration agreements because such agreements are generally made before a dispute arises. Moreover, as the Supreme Court explained in *Concepcion,* private parties enter into bilateral arbitration agreements in order to take advantage of "the informality of arbitral proceedings," "reducing the cost and increasing the speed of dispute resolution." *Id.* at 1749. The contracting parties may exercise discretion "in designing arbitration processes [ ] to allow for efficient, streamlined procedures tailored to the type of dispute." *Id.* Knowing that bringing class or representative claims into the arbitral forum sacrifices those advantages of bilateral arbitration, *id.* at 1751–52, employers and employees may agree ahead of time that they prefer speedy and cost-efficient dispute resolution and reasonably consent–as the parties did here–to resolve disputes arising out of the employment relationship only in an individual capacity so as to take full advantage of the arbitral forum. Thus, like the situation in *Concepcion,* a rule that an employee cannot waive invocation of the PAGA statute before a dispute arises upsets that design and disproportionately impacts arbitration agreements. *Id.* at 1747.

***8** The Court notes that the PAGA waiver at issue in this case also contains a fail-safe provision, which provides that if the waiver is determined to be unenforceable, "the PAGA claim shall be litigated in a civil court of competent jurisdiction and all remaining claims will proceed in arbitration." Agreement ¶ 8. As an initial matter, the Court rejects Plaintiff's argument that this expressed preference for a judicial forum *if* an employee is permitted to bring a representative PAGA claim should be used to defeat the waiver of such a representative claim. Pl.'s Opp. 11–12. Rather, the parties here clearly consented to and preferred individual arbitration but sought to protect themselves from potentially having to resolve an expansive representative action in informal arbitration in recognition that the state of the law regarding waivers of representative claims was unsettled.[8] More fundamentally, this fail-safe provision precisely demonstrates the manner in which the *Iskanian* rule stands as an obstacle to the accomplishment of the FAA's "overarching purpose," which is "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion,* 131 S.Ct. at 1748. Applying the *Iskanian* rule in this case results in a number of outcomes inconsistent with the objectives of the FAA: the Agreement will not be enforced according to its terms with respect to the waiver of PAGA representative claims; the representative claim will be removed entirely from arbitration; *and* the parties will be committed to a lengthy litigation in a judicial forum concerning that representative claim.[9] When California law and federal law are thus incompatible, the state rule must give way to the FAA.

8 Defense counsel represented at oral argument that the "aggrieved employees" that Plaintiff seeks to represent likely number in the tens of thousands and, given the nature of Defendant's business, could encompass temporary workers in a vast array of professions, ranging from bakers to computer programmers.

9 The Court pauses here to observe that while the PAGA statute does not *require* numerosity, commonality, typicality, adequacy of representation, or similar protections found in Federal Rule of Civil Procedure 23, *Baumann v. Chase Inv. Servs. Corp.,* 747 F.3d 1117, 1122 (9th Cir.2014), the California Supreme Court has held that PAGA "is simply a procedural statute allowing an aggrieved employee to recover civil penalties—for Labor Code violations—that otherwise would be sought by state labor law enforcement agencies," *Amalgamated Transit Union, Local 1756, AFL–CIO v. Superior Court,* 46 Cal.4th 993, 1003, 95 Cal.Rptr.3d 605, 209 P.3d 937 (2009). There are no federal rules of civil procedure that govern the litigation

of a representative action. As such, a federal court is not foreclosed from applying the requirements of Rule 23. *Baumann*, 747 F.3d at 1124. Indeed, some of the procedural protections of Rule 23 must pertain to the extent a judgment in a PAGA claim is to have binding effect on non-party aggrieved employees. *Cf.Arias v. Superior Court*, 46 Cal.4th 969, 985–87, 95 Cal.Rptr.3d 588, 209 P.3d 923 (2009).

Finally, the California Supreme Court has recognized that PAGA "is simply a procedural statute allowing an aggrieved employee to recover civil penalties—for Labor Code violations—that otherwise would be sought by state labor law enforcement agencies"). *Amalgamated Transit Union, Local 1756, AFL–CIO v. Superior Court*, 46 Cal.4th 993, 1003, 95 Cal.Rptr.3d 605, 209 P.3d 937 (2009). Although, as a suit ostensibly on behalf of a state enforcement agency, a PAGA representative claim may bear some resemblance to a federal *qui tam* action, there are also critical differences. *Cf.Iskanian*, 59 Cal.4th at 382, 327 P.3d 129. In contrast to *qui tam* actions under the False Claims Act ("FCA"), the state enforcement agency retains no control over the prosecution of a PAGA representative action once the agency has decided not to investigate an alleged violation. *See*Cal. Lab.Code § 2699.3; *U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 932 (2009) (after choosing not to intervene in a relator's case, the United States retains a number of rights, including the right to review discovery and to veto a relator's decision to voluntarily dismiss the action). In similar fashion, a representative PAGA suit is significantly different from the government enforcement action in *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002), wherein the EEOC was "master of its own case," with the statutory authority "to evaluate the strength of the public interest at stake" and pursue a claim even without the employee's consent. *Id.* at 290–96, 122 S.Ct. 754; *accord,Langston*, No. EDCV 14–1360 JGB SPX, 2014 WL 5335734, at *7. Because an aggrieved employee pursues the PAGA action in his own name, exercises complete control over the lawsuit, and is not restrained by any provision of the PAGA statute from settling or disposing of the claim as he sees fit, a PAGA representative action–once the State has chosen not to intervene–is much more akin to a private action between private parties in which the State has a beneficial interest. As a dispute that is, at its core, between private parties, the terms of their arbitration agreement control.

***9** It bears repeating that the Agreement in this case does not contain the hallmarks of a procedurally unconscionable contract of adhesion. Although Plaintiff was required to sign the Agreement when he began employment and could not negotiate its terms, the Agreement itself is short and very clearly identifies the rights being waived. Most importantly, Plaintiff could easily opt out of the Agreement within thirty days without any adverse employment consequences. He did not do so. Plaintiff therefore freely, and without coercion, waived his access to the procedural device of a representative action under the PAGA statute.[10] The FAA requires that such a waiver be enforced according to its terms.

10 To the extent such waivers of representative claims "frustrate [ ] the PAGA's objectives," *Iskanian*, 59 Cal.4th at 384, 327 P.3d 129, that species of argument under the "effective vindication"/"inherent conflict" exception to preemption does not apply to state laws, *Ferguson*, 733 F.3d at 936.

The Court therefore finds that the waiver of representative claims in paragraph 8 of the Agreement is enforceable, and Plaintiff may only pursue his claims in an individual capacity. To the extent California law permits Plaintiff to maintain a PAGA claim in an individual capacity, that claim may be pursued in arbitration.

### D. Stay

Once a court has determined that the claims in an action are "referable to arbitration under an agreement in writing for such arbitration," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Defendant has requested that the Court stay this action pending arbitration. Def.'s Mot. 10. Plaintiff's opposition brief is silent on the issue. As such, the Court grants Defendant's request and stays this action pending the completion of arbitration as to all of Plaintiff's claims.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Compel Arbitration is GRANTED. All of the claims that Plaintiff has asserted in this action are subject to arbitration according to the terms of the Dispute Resolution and Arbitration Agreement for Consultants/Associates.

Defendant's request to stay this action pending arbitration is GRANTED. All deadlines and hearings previously set in this case are hereby VACATED. The parties are ORDERED to file by October 15, 2015 a two-page letter updating the Court as to the status of arbitration.

**IT IS SO ORDERED.**

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.