Lee R. Feldman, Esq. (SBN 171628)
lee@leefeldmanlaw.com
Alicia Olivares, Esq. (SBN 181412)
alicia@leefeldmanlaw.com
Leonard H. Sansanowicz, Esq. (SBN 255729)
leonard@leefeldmanlaw.com
**FELDMAN BROWNE OLIVARES**
**A Professional Corporation**
10100 Santa Monica Blvd., Suite 2490
Los Angeles, California 90067
Telephone: (310) 552-7812
Facsimile: (310) 552-7814

Michael Rubin, Esq. (SBN 80618)
mrubin@altber.com
**ALTSHULER BERZON LLP**
117 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Attorneys for Plaintiff, DAVID L. TOTTEN,
and all others similarly situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID L. TOTTEN, an individual, and all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>KELLOGG BROWN & ROOT, LLC, a Delaware Corporation; MOLYCORP, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 5:14-cv-01766-DMG-DTBx<br><br>[*Case Assigned to the Honorable Dolly M. Gee in Courtroom 7 - Spring Street*]<br><br>[San Bernardino County Superior Court Case No. CIVDS1408596]<br><br>**NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Before Honorable United States District Judge Dolly M. Gee<br><br>Notice of Removal Filed: August 28, 2014 |

**TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that the National Labor Relations Board (Board) recently issued several decisions and orders reiterating (and in some instances extending) its decisions in *Murphy Oil USA, Inc.*, 361 NLRB No. 72 (Oct. 28, 2014) and *D.R. Horton, Inc.*, 357 NLRB No. 184 (2012), that class action waivers violate Sections 7 and 8(a)(1) of the National Labor Relations Act (NLRA and Sections 2 and 3 of the Norris LaGuardia Act (NLGA) by prohibiting employees from filing class, collective or representative actions.

In *Citigroup Technology, Inc*., Case 12-CA-130742 (Dec. 1, 2015), the Board held that a company violated Sections 7 and 8(a)(1) of the NLRA by maintaining an Employment Arbitration Policy (EAP) that required employees to arbitrate all workplace disputes on an individual basis and by relying on that EAP provision in opposing class treatment of a claim filed with the AAA.

In *Amex Card Services Company, et al.*, Case 28-CA-123865 (Nov. 10, 2015), the Board held that an arbitration agreement that provided "There shall be no right or authority for any claims to be arbitrated on a class or collective basis" and that no employee "shall have any right to participate in a representative capacity or as a member of a class of claimants in a court of law pertaining to any claims subject to arbitration" violated Section 8(a)(1) and was facially unlawful, both for its prohibition on concerted activity as well as for its waiver or limitation of employees' rights to file a charge with the Board. *Id* at *2-3.

Similarly, in *Nijjar Realty, Inc., d/b/a Pama Management and Gerardo Haro*, Case 21-CA-092054 (Nov. 10, 2015), the Board held that requiring employees, as a condition of employment, to waive their right to file a wage and hour class action in the Superior Court of the State of California restricted the employees' right to concerted activity under Section 7 of the Act and violated *D.R. Horton*. *Id.* at *2 (quoting *Beyoglu*, 362 NLRB No. 152 (2015), slip. op. at 2 ("the filing of an employment-related class or collective

action by an individual is an attempt to initate, to induce, or to prepare for group action and is therefore conduct protected by Section 7."). The Board further held that even if the arbitration agreement had an opt-out provision (thereby arguably removing it from the status of a mandatory condition of employment) it still violated *D.R. Horton* and *Murphy Oil*. *Id.* at *2; *see also On Assignment Staffing Services*, 362 NLRB No. 189 (2015), slip. op. at 1, 4-5 (holding that even if an opt-out provision renders an arbitration agreement not a mandatory condition of employment, if the agreement bars collective actions in any forum it still inhibits employees' Section 7 rights to concerted activity and is unlawful).

In *Bristol Farms*, Case 21-CA-103030 (Nov. 25, 2015), the Board reiterated its holdings in *D.R. Horton*, *Murphy Oil*, and *On Assignment* and concluded that an "optional" arbitration agreement still violated Section 7 of the Act and inhibited concerted activity. *Id.* at *1-2. The Board further affirmed that employees' rights to pursue joint, class, or collective employment actions is a substantive right under Section 7 ("It is a bedrock principle of federal labor law and policy that agreements in which individual employees purport to give up the statutory right to act concertedly for their mutual aaid or protection are void."). *Id.* at *2.

Finally, in *Convergys Corp.*, Cases 14-CA-075249 and 14-CA-083936, 363 NLRB No. 51 (Nov. 30, 2015), a case that did *not* involve an arbitration agreement, the Board relied on the same principles set forth in its *D.R. Horton* line of cases in holding that an employer's unilaterally imposed policy requiring employees to waive their right to litigate employment disputes on a class or collective basis class violates Sections 7 and 8(a)(1) of the NLRA. *See id.* at 1 n.2.

True and correct copies of the cases are attached hereto as Exhibits A-E.

Dated: December 11, 2015

FELDMAN BROWNE OLIVARES, APC
ALTSHULER BERZON LLP

By: /s/ Leonard H. Sansanowicz
Attorneys for Plaintiff DAVID TOTTEN

# Exhibit A

*NOTICE: This opinion is subject to formal revision before publication in the bound volumes of NLRB decisions. Readers are requested to notify the Executive Secretary, National Labor Relations Board, Washington, D.C. 20570, of any typographical or other formal errors so that corrections can be included in the bound volumes.*

**Citigroup Technology, Inc. and Citicorp Banking Corporation (parent), a subsidiary of Citigroup, Inc. *and* Andrea Smith.** Case 12–CA–130742

December 1, 2015

DECISION AND ORDER

BY MEMBERS MISCIMARRA, HIROZAWA, AND MCFERRAN

On December 23, 2014, Administrative Law Judge Donna N. Dawson issued the attached decision. The Respondent filed exceptions and a supporting brief, the General Counsel filed an answering brief, and the Respondent filed a reply brief.

The National Labor Relations Board has delegated its authority in this proceeding to a three-member panel.

The Board has considered the decision and the record in light of the exceptions and briefs and has decided to affirm the judge's rulings, findings, and conclusions only to the extent consistent with this Decision and Order.[1]

There are two issues in this case: (1) whether the Respondent violated Section 8(a)(1) of the Act by maintaining the Employment Arbitration Policy (EAP), which requires employees, as a condition of employment, to agree to resolve certain employment-related disputes exclusively through individual arbitration; and (2) whether the Respondent violated Section 8(a)(1) of the Act by enforcing the EAP by opposing class treatment of the arbitration demand filed with the American Arbitration Association (AAA) by a former employee for claims brought under the Fair Labor Standards Act.

Applying the Board's decisions in *D.R. Horton*, 357 NLRB No. 184 (2012), enf. denied in rel. part, 737 F.3d 344 (5th Cir. 2013), and *Murphy Oil USA*, 361 NLRB No. 72 (2014), enf. denied, --F.3d-- (5th Cir. Oct. 26, 2015), the judge found that the Respondent violated Section 8(a)(1) of the Act by maintaining the EAP. We adopt that finding.[2]

The judge also found that the Respondent violated Section 8(a)(1) of the Act by enforcing the EAP because, after the demand for class arbitration was filed with the AAA, the Respondent called to the AAA's attention the fact that the arbitration agreement did not provide for class treatment of arbitration demands. Based on the fact that the former employee initiated the arbitration proceeding, and considering the provisions and policies of the Federal Arbitration Act, we find, contrary to the judge, that the Respondent's conduct did not amount to enforcement of the EAP in violation of Section 8(a)(1).[3] Accordingly, we reverse the judge and dismiss the enforcement allegation.

ORDER

The National Labor Relations Board adopts the recommended Order of the administrative law judge as modified below and orders that the Respondent, Citigroup Technology, Inc. and Citigroup Banking Corporation (Parent), a Subsidiary of Citigroup, Inc., Tampa, Florida, its officers, agents, successors, and assigns, shall take the action set forth in the Order as modified.

1. Delete paragraphs 1(b), 2(c), and 2(d) and reletter the subsequent paragraphs.

2. Substitute the attached notice for that of the administrative law judge.

Dated, Washington, D.C. December 1, 2015

Kent Y. Hirozawa, Member

Lauren McFerran, Member

(SEAL) NATIONAL LABOR RELATIONS BOARD

MEMBER MISCIMARRA, concurring in part and dissenting in part.

In this case, my colleagues find that the Respondent's Employment Arbitration Policy (EAP) violates Section 8(a)(1) of the National Labor Relations Act (the Act or NLRA) because the EAP waives the right to participate in class or collective actions regarding non-NLRA employment claims. I respectfully dissent from this finding for the reasons explained in my partial dissenting opinion in *Murphy Oil USA, Inc.*[1] Charging Party Andrea Smith signed the EAP and later participated in a demand for

[1] We have amended the remedy and modified the judge's recommended Order and notice to conform to our findings.

[2] For the reasons stated in *Murphy Oil*, supra, we disagree with the views of our dissenting colleague.

[3] If the former employee's claims had been brought in court as a collective action, and the Respondent had moved to dismiss based on the EAP, we would have found that the Respondent violated Sec. 8(a)(1) by enforcing the unlawful policy. See *Murphy Oil*, supra at 26–28.

[1] 361 NLRB No. 72, slip op. at 22–35 (2014) (Member Miscimarra, dissenting in part). The Board majority's holding in *Murphy Oil* invalidating class-action waiver agreements was recently denied enforcement by the Court of Appeals for the Fifth Circuit. *Murphy Oil USA, Inc. v. NLRB*, No. 14–60800, 2015 WL 6457613 (5th Cir. Oct. 26, 2015).

class arbitration filed by employee Darlene Echevarria with the American Arbitration Association (AAA) alleging violations of the Fair Labor Standards Act. The EAP does not authorize group or class arbitration. In reliance on the EAP, the Respondent requested that the AAA reject Echevarria's demand for class arbitration and instead only accept her individual claim. The AAA granted the request. For the reasons that follow, I agree with my colleagues that the Respondent's request did not violate the Act.

I agree that an employee may engage in "concerted" activities for "mutual aid or protection" in relation to a claim asserted under a statute other than NLRA.[2] However, Section 8(a)(1) of the Act does not vest authority in the Board to dictate any particular procedures pertaining to the litigation of non-NLRA claims, nor does the Act render unlawful agreements in which employees waive class-type treatment of non-NLRA claims. To the contrary, as discussed in my partial dissenting opinion in *Murphy Oil*, NLRA Section 9(a) protects the right of every employee as an "individual" to "present" and "adjust" grievances "at any time."[3] This aspect of Section 9(a) is reinforced by Section 7 of the Act, which protects each employee's right to "refrain from" exercising the collective rights enumerated in Section 7. Thus, I believe it is clear that (i) the NLRA creates no substantive right for employees to insist on class-type treatment of non-NLRA claims;[4] (ii) a class-waiver agreement pertaining to non-NLRA claims does not infringe on any NLRA rights or obligations, which has prompted the overwhelming majority of courts to reject the Board's position regarding class-waiver agreements;[5] and (iii) enforcement of a class-action waiver as part of an arbitration agreement is also warranted by the Federal Arbitration Act (FAA).[6] Although questions may arise regarding the enforceability of particular agreements that waive class or collective litigation of non-NLRA claims, I believe these questions are exclusively within the province of the court or other tribunal that, unlike the NLRB, has jurisdiction over such claims.

The majority properly finds that the Respondent's successful invocation of the EAP before the AAA to preclude class arbitration was lawful. See *Stolt-Nielsen S.A. v. Animal Feeds International Corp.*, 559 U.S. 662, 684–685 (2010) (holding that a "party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so") (emphasis in original). Accordingly, I join my colleagues in dismissing this complaint allegation.

Because I believe the Respondent's EAP was lawful under the NLRA, however, I respectfully disagree with the majority's assertion that the Respondent would have violated the Act if, based on the EAP, it had moved to dismiss claims filed in court. A multitude of court deci-

[2] I agree that non-NLRA claims can give rise to "concerted" activities engaged in by two or more employees for the "purpose" of "mutual aid or protection," which would come within the protection of NLRA Sec. 7. See *Murphy Oil*, 361 NLRB No. 72, slip op. at 23–25 (Member Miscimarra, dissenting in part). However, the existence or absence of Sec. 7 protection does not depend on whether non-NLRA claims are pursued as a class or collective action, but on whether Sec. 7's statutory requirements are met—an issue separate and distinct from whether an individual employee chooses to pursue a claim as a class or collective action. Id.; see also *Beyoglu,* 362 NLRB No. 152, slip op. at 4–5 (2015) (Member Miscimarra, dissenting).

[3] *Murphy Oil*, above, slip op. at 30–34 (Member Miscimarra, dissenting in part). Sec. 9(a) states: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That *any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted*, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment" (emphasis added). The Act's legislative history shows that Congress intended to preserve every individual employee's right to "adjust" any employment-related dispute with his or her employer. See *Murphy Oil*, above, slip op. at 31–32 (Member Miscimarra, dissenting in part).

[4] When courts have jurisdiction over non-NLRA claims that are potentially subject to class treatment, the availability of class-type procedures does not rise to the level of a substantive right. See *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 362 (5th Cir. 2013) ("The use of class action procedures . . . is not a substantive right.") (citations omitted), petition for rehearing en banc denied No. 12-60031 (5th Cir. 2014); *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 332 (1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims.").

[5] The Fifth Circuit has twice denied enforcement of Board orders invalidating a mandatory arbitration agreement that waived class-type treatment of non-NLRA claims. See *Murphy Oil USA, Inc. v. NLRB*, above; *D.R. Horton, Inc. v. NLRB,* above. The overwhelming majority of courts considering the Board's position have likewise rejected it. See *Murphy Oil,* 361 NLRB No. 72, slip op. at 34 (Member Miscimarra, dissenting in part); id., slip op. at 36 fn. 5 (Member Johnson, dissenting) (collecting cases); see also *Patterson v. Raymours Furniture Co., Inc*., No. 14-CV-5882 (VEC), 2015 WL 1433219 (S.D.N.Y. Mar. 27, 2015); *Nanavati v. Adecco USA, Inc.,* No. 14-cv-04145-BLF, 2015 WL 1738152 (N.D. Cal. Apr. 13, 2015), motion to certify for interlocutory appeal denied 2015 WL 4035072 (N.D. Cal. June 30, 2015); *Brown v. Citicorp Credit Services, Inc.,* No. 1:12-cv-00062-BLW, 2015 WL 1401604 (D. Idaho Mar. 25, 2015) (granting reconsideration of prior determination that class waiver in arbitration agreement violated NLRA).

[6] Even if a conflict existed between the NLRA and an arbitration agreement's class waiver provisions, the FAA requires that the arbitration agreement be enforced according to its terms. *Murphy Oil,* above, slip op. at 34 (Member Miscimarra, dissenting in part); id., slip op. at 49–58 (Member Johnson, dissenting).

sions have enforced similar agreements in such circumstances.[7] As the Fifth Circuit recently observed after rejecting (for the second time) the Board's position regarding the legality of class waiver agreements: "[I]t is a bit bold for [the Board] to hold that an employer who followed the reasoning of our *D.R. Horton* decision had no basis in fact or law or an 'illegal objective' in doing so. The Board might want to strike a more respectful balance between its views and those of circuit courts reviewing its orders."[8] I also believe that any Board finding of a violation based on filing with a court a meritorious motion to compel arbitration would improperly risk infringing on the Respondent's rights under the First Amendment's Petition Clause. See *Bill Johnson's Restaurants v. NLRB,* 461 U.S. 731 (1983); *BE & K Construction Co. v. NLRB,* 536 U.S. 516 (2002); see also my partial dissent in *Murphy Oil,* above, 361 NLRB No. 72, slip op. at 33–35.

Dated, Washington, D.C. December 1, 2015

Philip A. Miscimarra, Member

NATIONAL LABOR RELATIONS BOARD

APPENDIX

NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union
Choose representatives to bargain with us on your behalf
Act together with other employees for your benefit and protection
Choose not to engage in any of these protected activities.

[7] See, e.g., *Murphy Oil, Inc., USA v. NLRB,* above; *Johnmohammadi v. Bloomingdale's,* 755 F.3d 1072 (9th Cir. 2014); *D. R. Horton, Inc. v. NLRB*, above; *Owen v. Bristol Care, Inc.,* 702 F.3d 1050 (8th Cir. 2013); *Sutherland v. Ernst & Young LLP,* 726 F.3d 290 (2d Cir. 2013).

[8] *Murphy Oil USA, Inc. v. NLRB,* above, at *6.

WE WILL NOT maintain our Employment Arbitration Policy (EAP), which requires employees, as a condition of their employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial, and requires all disputes relating to wages, hours, or other working conditions to be submitted to individual binding arbitration.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights listed above.

WE WILL rescind or revise the EAP in all of its forms to make it clear to employees that the policy does not constitute a waiver of their right in all forums to maintain class or collective actions about wages, hours, and other working conditions.

WE WILL notify all former and current employees who were required to sign or otherwise agree to the EAP in any form at our facilities at any time since December 26, 2012, that the EAP has been rescinded or revised and, if revised, WE WILL provide them with a copy of the revised agreement.

CITIGROUP TECHNOLOGY, INC. AND CITIGROUP CITICORP BANKING CORPORATION (PARENT), A SUBSIDIARY OF CITIGROUP, INC.

*Thomas W. Brudney, Esq.,* for the General Counsel.
*Edward M. Cherof, Esq., Jonathan J. Spitz, Esq., Stephanie Adler-Paindiris, Esq. (Jackson Lewis, LLP),* of Orlando, Florida, *& Andrew Frisch, Esq. (Morgan & Morgan*), for the Respondent.

DECISION

STATEMENT OF THE CASE

DONNA N. DAWSON, Administrative Law Judge. This case involves issues related to *Murphy Oil USA, Inc*., 361 NLRB No. 72 (2014), and *D.R. Horton, Inc.,* 357 NLRB No. 184 (2012), enf. granted in part and denied in part 737 F.3d 344 (5th Cir. 2013). On June 12, 2014, Andrea Smith ("Charging Party" or "Smith") filed an initial charge, and on August 27, 2014, she filed a first amended charge. A complaint issued on August 29, 2014, and an amended complaint issued on September 10, 2014 ("the complaint"). The complaint alleges that Citigroup Technology, Inc. and Citicorp Banking Corporation (parent), a subsidiary of Citigroup, Inc. ("Respondent") violated Section 8 (a)(1) of the National Labor Relations Act (the "NLRA" or the "Act") by maintaining and enforcing a mandatory employment arbitration policy precluding its employees from pursuing any group, class, or collective actions, arbitration or otherwise, concerning wages, hours, and other terms and conditions of employment. Although Respondent admits in its amended answer that it maintained and enforced its arbitration policy, it denies that any of its actions violated the Act and sets forth several affirmative defenses.

On October 8, 2014, the parties jointly requested that the case be decided without a hearing based on a stipulated record, with attachments. The motion was granted on October 9, 2014, and the parties subsequently filed their briefs.

Having considered the entire stipulated record and the briefs, for the reasons set forth below, I make the following

### FINDINGS OF FACT

#### I. JURISDICTION

At all material times, Respondent, a Delaware corporation with an office and place of business in Tampa, Florida (Respondent's Tampa facility), has been engaged in the business of providing global financial services. Respondent admits and I find that it is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

#### II. ALLEGED UNFAIR LABOR PRACTICES

Since about December 26, 2012, Respondent has "maintained and enforced" as part of its U.S. Employee Handbook, "Appendix A: The Employment Arbitration Policy" revised ("EAP") which is applicable to all of its employees in the United States, including those employed at its Tampa facility. This arbitration policy includes the following relevant provision:

> The Policy makes arbitration the required and exclusive forum for the resolution of all disputes arising out of or in any way related to employment based on legally protected rights (i.e., statutory, regulatory, contractual, or common-law rights) that may arise between an employee or former employee and Citi or its current and former parents, subsidiaries, and affiliates and its and their current and former officers, directors, employees, and agents (and that aren't resolved by the internal Dispute Resolution Procedure) including, without limitation, claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, the Sarbanes-Oxley Act of 2002, and the amendments thereto, and any other federal, state, or local statute, regulation, or common-law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment, compensation, breach of contract, defamation, retaliation, whistle-blowing, or any claims arising under the Citigroup Separation Pay Plan.
>
> Except as otherwise required by applicable law, this Policy applies only to claims brought on an individual basis. Consequently[,] neither Citi nor any employee may submit a class action, collective action, or other representation action for resolution under this Policy.

(Jt. Exh. 4).

Since about December 26, 2012, and at all material times thereafter, Respondent has required its newly hired employees to agree to and accept it's EAP as a condition of employment. Based on this agreement, Respondent has precluded these employees from filing any "group, class, collective, or other representative action claims in arbitration," or otherwise, in connection with disputes identified in the EAP concerning wages, hours, and other terms and condition of employment. Of note, Respondent's EAP also states that it does not "exclude the National Labor Relations Board from jurisdiction over disputes covered by the [Act]" (Id.).

In January 2013, Respondent hired Darlene Echevarria (Echevarria) as an antimoney laundering operations analyst in its Tampa facility. Echevarria worked in this position from January 7 until August 23, 2013.

Similarly, Respondent hired Charging Party Smith. By letter dated January 31, 2013, Respondent offered Smith the position of antimoney laundering operations analyst in its Tampa facility. The job offer letter includes an arbitration provision which reads in relevant part:

> **<u>Arbitration</u>**:
> Any controversy or dispute relating to your employment with or separation from Citi will be resolved in accordance with Citi's Employment Arbitration Policy as set forth in the Principles of Employment which you will be required to sign as a condition of your Citi employment, the terms of which are incorporated herein. A copy of the Principles of Employment is attached.
>
> I acknowledge that I have received and read or have had the opportunity to read this arbitration agreement. I understand that this arbitration agreement requires that disputes that involve the matters subject to the agreement be submitted to mediation or arbitration pursuant to the arbitration agreement rather than to a judge and jury in court.

(Jt. Exh. 2, p. 4.) The referenced "Principles of Employment," state in relevant part:

> [Y]ou agree to follow our dispute resolution/arbitration procedure for resolving all disputes (other than disputes which by statute are not arbitrable) arising out of or relating to your employment with and separation from Citi.* This applies while you are employed by us as well as after your employment ends. While we hope that disputes with our employees will never arise, we want them resolved promptly if they do arise. These procedures do not preclude us from taking disciplinary actions (including terminations) at any time, but if you dispute those actions, we both agree that the disagreement will be resolved through these procedures. Our procedures are divided into two parts:
>
> 1. An internal dispute resolution procedure that allows you to seek review of any action taken regarding your employment or termination of your employment which you think is unfair.
>
> 2. In the unusual situation when this procedure does not fully resolve a dispute, and such dispute is based upon a legally protected right (i.e., statutory, contractual, or common law), we both agree to submit the dispute, within the time provided by the applicable statute(s) of limitations, to binding arbitra-

tion as follows:

. . . .

- Before the American Arbitration Association ("AAA") where you don't meet the criteria above for FINRA [Financial Industry Regulatory Authority, Inc.] arbitration, FINRA declines the use of its facilities, or you are a Dual Employee and your dispute does not involve CGMI [Citigroup Global Markets Inc.] or activities related to your securities license(s).

Arbitrations shall be conducted in accordance with the respective arbitration rules of the FINRA or AAA, as applicable, then in effect and as supplemented by Citi's Arbitration Policy then in effect ("Arbitration Policy"). A detailed description of the Arbitration Policy is included in the Employee Handbook, and is available for review prior to your acceptance of employment if you choose to review it. Again, it is your responsibility to read and understand the dispute resolution/arbitration procedure.

(Jt. Exh. 2, pp. 7–8.)

On February 5, 2013, Smith accepted and signed the January 31, 2013 job offer as a condition of her employment. She also electronically signed the receipt for Respondent's U.S. 2013 Employee Handbook and EAP. (Jt. Exhs. 2–3.) Smith worked for Respondent as an antimoney laundering operations analyst from about February 19, 2013, until March 28, 2014, when she voluntarily resigned.

On March 28, 2014, Echevarria, on her own behalf, and also on the behalf of other similarly situated employees of Respondent, including Smith and Danielle Lucas (Lucas), Yadira Calderon (Calderon), and Kelleigh S. Weeks (Weeks), through counsel, filed a demand for arbitration with the American Arbitration Association (the AAA), titled "Nationwide Class Action Arbitration Submission," (class arbitration action), along with a "Notice of Filing Notice of Consent to Join," and notices of "Consent to Join" collective action.[1] They sought designation of the action as a collective action and alleged that Respondent violated the Fair Labor Standards Act (FLSA), 29 U.S.C. Sec. 201 et. seq., by failing to pay overtime premium pay. (Jt. Exh. 5).

On April 14, 2014, the AAA case filing coordinator, Kristen Cottone (Cottone) sent a letter to the representatives of the parties to the class arbitration action, requesting a copy of the complete arbitration agreement so that the AAA could determine whether to proceed with the class action. The letter stated that, "[t]he Association requests that either Claimant or Respondent provide a contract clause providing for administration by the [AAA]." Cottone also requested any additional documents that "discuss arbitration procedures to be followed, such as an employee handbook," as well a court order or joint stipulation, if any, compelling the dispute to arbitration. (Jt. Exh. 6.)

On April 15, 2014, counsel for Respondent sent a letter to the AAA, along with a copy of the EAP, and requested that the AAA reject Echevarria's demand for designation of the claim as a nationwide collective arbitration action, and instead, only accept her individual claim. (Jt. Exh. 7.) On April 28, 2014, Cottone, on behalf of the AAA, notified the parties that the AAA had received a copy of the EAP, and that, "[i]n accordance with the AAA's policy on class arbitrations, we cannot administer this matter as a class action since the agreement between the parties prohibits class claims." She further advised the parties that they "may proceed with this matter on an individual basis." (Jt. Exh. 8.) Thus, as admitted by Respondent, it successfully enforced its EAP.

## III. DECISION AND ANALYSIS

### *A. Respondent's Maintenance and Enforcement of Its EAP Violates Section 8(a)(1) of the Act*

The complaint asserts violations of Section 8(a)(1) of the Act. Under Section 8(a)(1), it is an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7 of the Act. The rights guaranteed in Section 7 include the right "to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . ."

In *D.R. Horton*, 357 NLRB No. 184, slip op. at 1, the Board found that an employer violates Section 8(a)(1) of the Act by imposing, as a condition of employment, a mandatory arbitration agreement that precludes employees from "filing joint, class, or collective claims addressing their wages, hours, or other working conditions against the employer in any forum, arbitral or judicial." Citing to *Spandsco Oil & Royalty Co*., 42 NLRB 942, 948–949 (1942), *Salt River Valley Water Users Assn*., 99 NLRB 849, 853–854 (1952), enfd. 206 F.2d 325 (9th Cir. 1953), and many other cases, the Board noted that such concerted legal action addressing wages, hours, and working conditions has consistently fallen within Section 7's protections. Most recently, in *Murphy Oil USA, Inc*., 361 NLRB No. 72, slip op. at 1–2, the Board adopted and reaffirmed the rationale and decision in *D.R. Horton*. The Murphy Oil Board found that the respondent violated Section 8(a)(1) of the Act by requiring its employees to agree to mandatory arbitration agreements requiring them to resolve all employment-related disputes through individual arbitration, and by taking steps to enforce the unlawful agreements in Federal district court when the charging party and three other employees filed a collective action under the FLSA. Id.

The complaint here specifically alleges that Respondent violated the Act by maintaining and enforcing the EAP as a condition of its employees' employment, including that of the Charging Party (Smith), by precluding them from filing any group, class, collective, or other representative action claims, through arbitration or the judicial system, of disputes identified in the EAP concerning wages, hours, and other terms and conditions of employment.

First, it is undisputed that Respondent's EAP has been maintained as a condition of the newly hired employees' employment from December 26, 2012, and continuing to the present, as evidenced by the stipulated record. This includes, of course, Smith's employment. Further, Smith electronically signed the

[1] Darlene Echevarria, on her own behalf and others similarly situated v. Citigroup, Inc., a Foreign Corporation and Citibank, N.A., Case No. 01–14–0000–0324.

EAP on February 5, 2013, when she accepted Respondent's employment offer and acknowledged receipt of the principles of employment and the U.S. 2013 Employee Handbook receipt form. (Jt. Exh. 4.) Therefore, I find the EAP was a mandatory rule imposed by Respondent as a condition of employment. As such, the EAP is evaluated in the same manner as any other workplace rule. See *D.R. Horton*, 357 NLRB No. 184, slip op. at 5.

To determine if such a rule, including a mandatory arbitration policy, violates Section 8(a)(1) of the Act, the Board applies the test set forth in *Lutheran Heritage Village-Livonia*, 343 NLRB 646 (2004). See *U-Haul Co. of California*, 347 NLRB 375, 377 (2006), enfd. 255 Fed.Appx. 527 (D.C. Cir. 2007); *D.R. Horton*, supra, 357 NLRB No. 184. Under Lutheran Heritage, the first inquiry is whether the rule explicitly restricts activities protected by Section 7. If it does, the rule is unlawful. If it does not, "the violation is dependent upon a showing of one of the following: (1) employees would reasonably construe the language to prohibit Section 7 activity; (2) the rule was promulgated in response to [Section 7] activity; or (3) the rule has been applied to restrict the exercise of Section 7 rights." Lutheran Heritage, supra at 647. In the instant case, I find that the EAP explicitly restricts activities protected by Section 7, in that it states:

> Except as otherwise required by applicable law, this Policy applies only to claims brought on an individual basis. Consequently neither Citi nor any employee may submit a class action, collective action, or other representation action for resolution under this Policy.

Further, Respondent admitted, in its answer, to paragraph 4(c) of the complaint that by maintenance of its EAP, it "has precluded employees from filing any group, class, collective, or other representative action claims in arbitration with respect to disputes identified in the [EAP] which concern wages, hours and other terms and conditions of employment." In addition, Respondent admitted, to paragraph 5(b) of the complaint, that since on or about April 15, 2014, it made efforts to enforce its EAP when it requested that the AAA reject the nation-wide class action submission filed by Echevarria, on her own behalf, and on behalf of other of Respondent's similarly situated employees, including Smith. (Jt. Exh. 5.) Accordingly, I find that Respondent's maintenance of its EAP and efforts to enforce it violate the Act because the EAP expressly precludes any class or collective actions. In doing so, I find that Respondent restricted the exercise of employees' Section 7 rights in violation of Section 8(a)(1) of the Act. This finding is fully supported by the Board's decisions in D.R. Horton and Murphy Oil.

### *B. D.R. Horton and Murphy Oil Are Controlling*

Respondent insists that this matter is not one to be "decided in a vacuum of [NLRB] precedent," but "a proceeding that brings into question the jurisdiction of the Board to act in a matter Congress has chosen to regulate through . . . the [FAA] . . . ," and not the NLRA or Board law. In support of this argument, Respondent presents a litany of recent United States Supreme Court decisions which "have established the broad preemptive sweep of the FAA," by mandating "that arbitration agreements must be enforced according to their terms." Respondent contends that these decisions "reject the application of other state and federal statutes" in order to deem arbitration agreements invalid in the absence of an express 'congressional command' to override the FAA. See (R. Br. citing and discussing, e.g., *American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304 (2013); *CompuCredit*, 132 S.Ct. 665, 669 (2012); and *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985)). In the same vein, Respondent argues that the NLRA has not vested the Board with authority to dictate or guarantee how other courts or agencies would or should adjudicate non-NLRA legal claims, whether they be class, collective, joinder of individual claims, or otherwise, citing Board Member Miscimarra's dissent in *Murphy Oil*. Respondent also asserts that the Board's holding in *D.R. Horton* is incorrect based on its rejection by the U.S. Court of Appeals for the Fifth Circuit in its opinion on appeal of *D.R. Horton* (737 F.3d 344 (Dec. 3, 2013)), and based on other federal court opinions. In sum, Respondent urges that I ignore the Board's decisions in *D.R. Horton* and *Murphy Oil*, and instead, follow its interpretation of Supreme Court precedent, Federal court opinions, and Board member dissent.

However, I decline to deviate from Board precedent. The Board majority, in both *D.R. Horton* and *Murphy Oil*, considered all arguments, and most court decisions, raised and relied on by Respondent, to support a different conclusion, by which I am bound unless and until it is reversed by the Supreme Court. See *Pathmark Stores*, 342 NLRB 378 fn. 1 (2004); *Waco, Inc*., 273 NLRB 746, 749 fn. 14 (1984) ("it is a judge's duty to apply established Board precedent which the Supreme Court has not reversed," and "for the Board, not the judge, to determine whether precedent should be varied.") (citation omitted).[2]

In *American Express Co*., supra, the Supreme Court dismissed claims by multiple merchants that their agreements to arbitrate individual claims as the sole method of resolving disputes was invalid, and concluded that when federal statutory claims are involved, such as federal antitrust laws, the FAA's directive can only be "overridden by a contrary congressional command."[3] However, the Board in *D.R. Horton* distinguished American Express, finding that it did not involve the substantive Section 7 right of employees to engage in collective action, including collective legal action, for mutual aid and protection concerning wages, hours, and work conditions.

Although the Supreme Court has upheld the enforcement of individual mutual arbitration agreements in these and other cases, the Board recognizes that the Court has never addressed or resolved the issue of exclusive individual arbitration over class and/or collective actions under the Act. The Board understands that the FAA establishes a liberal policy favoring arbitration agreements. *D.R. Horton*, 357 NLRB No. 184, slip op. at

---

[2] Respondent's argument, in its brief, that the Board's nonacquiescence position is untenable because of Federal Circuit Court opinions rejecting *D.R. Horton* is without merit. See (R. Br. fn. 4).

[3] The merchants in *American Express* challenged the rates that American Express charged them, and argued that it would only be cost effective to proceed collectively. The Court found that the Federal antitrust laws at issue failed to guarantee "an affordable procedural path to the vindication of every claim." *American Express*, supra at 2039.

8. However, as noted in *D.R. Horton*, the Supreme Court has "repeatedly emphasized" that the FAA protects agreements to arbitrate federal statutory claims "so long as 'a party does not forgo the substantive rights afforded by the statute.'" Id. at 9–10, citing *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp*., supra at 628.[4]

Respondent further contends that the Supreme Court in American Express makes clear that it is improper to find a congressional command where none exists, and therefore, since none exists in the language or legislative history of the NLRA, there should be no such finding here. However, as stated, the Board decisions in *D.R. Horton* and *Murphy Oil* establish that such a command exists in that Section 7 substantively guarantees employees the right to engage in collective action, including collective legal action, for mutual aid and protection concerning wages, hours, and working conditions. For the same reasons, the Supreme Court's decision in *CompuCredit*, supra, and other cases cited by Respondent are distinguishable.[5] Further, these general consumer litigation and commercial cases do not address the central questions of how and to what extent the FAA may be used to interfere with, by way of private agreements, the fundamental substantive right of workers to engage in concerted activity established and protected by the NLRA—the gravamen of the violation here and in *D.R. Horton.*

Respondent also points to *AT&T Mobility v. Concepcion*, 131 S.Ct. 1740 (2011),[6] *Marmet Health Care Center v. Brown*, 133 S.Ct. 1201 (2012) (requirement that courts enforce the parties' bargain to arbitrate), and other Supreme Court cases to support its argument that the validity of their EAP and class action waiver contained therein must be based only on the FAA. Similarly, the Supreme Court in these cases did not address the issue of mandatory arbitration agreements in the context of individual employment agreements and the well-established substantive right of employees under the NLRA to engage in concerted legal action against their employer. The Murphy Oil Board has reaffirmed, and thoroughly and convincingly explained its rationale as to why D.R. Horton was correctly decided, despite the FAA's liberal arbitration policy. Thus, Respondent's argument that the FAA must always override the NLRA in these mandatory arbitration agreement cases fails.

The Board in Murphy Oil noted the Supreme Court's recent confirmation "that the Federal policy favoring arbitration, however, liberal, has its limits. It does not permit a 'prospective waiver of a party's right to pursue statutory remedies.'" *Murphy Oil*, 361 NLRB No. 72, slip op. at 8, citing *Italian Colors*, supra, 133 S.Ct. at 2310 (quoting *Mitsubishi Motors Corp*., supra, at 637) (emphasis in original). In doing so, the Board established that an arbitration agreement that prevents employees from exercising their substantive Section 7 right to pursue legal claims concertedly to address work conditions in any forum "amounts to a prospective waiver of a right guaranteed by the NLRA," and is unlawful. Id. at 9.

The Board in *Murhpy Oil* also found that even applying the framework applied by the Fifth Circuit Court of Appeals, *D.R. Horton* is good law. The Board established that both exceptions to the FAA's requirement that arbitration agreements must be enforced according to their terms, apply to cases such as *D.R. Horton*. First, the Murphy Oil Board found the arbitration agreement in its case "invalid under Section 2 of the FAA, the statute's savings clause, which provides for the revocation 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Murphy Oil*, 361 NLRB No. 72, slip op. at 9, citing 9 U.S.C. § 2. The Board found that such grounds existed in its case, and relied on earlier Supreme Court decisions to establish that, "any individual employment contract that purports to extinguish rights guaranteed by Section 7 of the National Labor Relations Act is unlawful." Id. at 9, citing *National Licorice, Co. v. NLRB*, 309 U.S. 350, 361 (1940) and *J.I. Case, Co. v. NLRB*, 321 U.S. 332, 337 (1944).

Second, the Board agreed with the D.R. Horton Board's opinion regarding the second exception of the FAA's mandate, that Section 7 of the Act does constitute a "contrary congressional command" overriding the FAA. It saw "no compelling basis for the court's conclusion that to override the FAA, Section 7 was required to explicitly provide for a private cause of action for employees, a right to file a collective legal action, and the procedures to be employed." Further, the Board emphasized the substantive right to engage in collective legal activity "plainly authorized by the broad language of Section 7, as it has been authoritatively construed by the Supreme Court in [*Eastex, Inc. v. NLRB*, 437 U.S. 556, 566 (1978)] as part of the protected 'resort to administrative and judicial forums.'" *Murphy Oil*, 361 NLRB No. 72, slip op. at 9. All other cases cited by Respondent in support of its positions favoring the FAA over the NLRA and discrediting Board precedent are not specifically addressed here as they are so thoroughly explained in *D.R. Horton* and *Murphy Oil*.

*C. Respondent's Remaining Arguments Are Unsupported*

Respondent's assertion that unrepresented employees are on an equal playing field with unions that, on behalf of its members, can voluntarily agree to waive a judicial forum in favor of arbitration is without merit. The Act clearly recognizes the inequality of bargaining power between employees without benefit of a collective-bargaining agreement or union representation and employers who are corporately or otherwise organized. See 29 U.S. C. § 151. Therefore, a mandatory arbitration agreement, such as Respondent's EAP, which embodies a waiver restricting employees' substantive rights under the Act, "is the antithesis of an arbitration agreement providing for union representation in arbitration that was reached through the statutory process of collective bargaining . . . " *Murphy Oil*, 361 NLRB No. 72, slip op. at 10. Although the D.R. Horton

[4] The Board distinguished *Gilmer*, in that it "addresses neither Section 7 nor the validity of a class action waiver," and involved an individual claim and an arbitration agreement without any language specifically waiving class or collective actions. *D.R. Horton*, 357 NLRB No. 184, slip op. at 10, fn. 22.

[5] The Supreme Court in *CompuCredit* invalidated an arbitration agreement waiving the ability of consumers to sue a credit card marketer and the card's issuing bank in court for alleged violations of the Credit Repair Organization Act (CROA).

[6] In *AT&T Mobility LLC v. Concepcion*, the Supreme Court found the FAA preempted California state law making class-action waivers in consumer adhesion contracts unconscionable.

and Murphy Oil Boards recognize the importance of such balancing of power under the Act, neither claims the inequality in bargaining power between individual employees and employers is the only reason to invalidate mandatory arbitration agreements.

Respondent argues that its EAP is distinguishable from the agreement that the Board found unlawful in *D.R. Horton* because it specifically states that it does not "exclude the National Labor Relations Board from jurisdiction over disputes covered by the [Act] . . . " Similarly, Respondent claims that its EAP would not preclude the U.S. Department of Labor, or similar state agency, from seeking class-wide or collective action on behalf of the Charging Party. See (R. br., fn. 2). However, there is nothing in Respondent's EAP which allows for employees, past or present, to pursue in any way, even as parties in an FLSA or DOL action, class, joint, or collective claims in arbitration or court. Moreover, Respondent's EAP "makes arbitration the required and exclusive forum for the resolution of all disputes arising out of or in any way related to employment based on legally protected rights." (Jt. Exh. 1.) It does not leave open any judicial forum, as required by the Board in *D.R. Horton*, nor does it allow for collective or class arbitration. See *D.R. Horton*, 357 NLRB No. 184, slip op. at 12. Of note, the Murphy Oil Board rejected a similar argument where a revised arbitration agreement stated that employees would not waive their Section 7 right to file a class or collective action in court, but maintained its original language under which employees "explicitly waive their right" to file or be a party or class member in a class or collective action in arbitration or other forum. See *Murphy Oil*, 361 NLRB No. 72, slip op. at 19.

Respondent also asserts that the Board has no authority to order it to take action regarding litigation initiated by the Charging Party in another forum, and which involves another federal statute, the FLSA. The Board, in *D.R. Horton* and *Murphy Oil*, explained how the Board and court decisions recognized this authority in cases, such as this one, where mandatory arbitration agreements "restrict the exercise of the substantive right to act concertedly for mutual aid or protection that is central to the [NLRA]." *Murphy Oil*, 361 NLRB No. 72, slip op. at 5, citing *D.R. Horton*, 357 NLRB No. 184, slip op. at 2–3 & fn. 4. The Murphy Oil Board recognized that while the underlying claims before it involved the FLSA, the NLRA "is the source of the relevant, substantive right to pursue those claims concertedly." Id. at 5. Further, the Board and courts have held that the filing of FLSA cases, and seeking support of others in pursuit of those cases, constitutes the kind of concerted activity protected by the Act. See, *Murphy Oil*, Id., citing *Spandso Oil & Royalty Co.,* 42 NLRB 942, 949–950 (1942); *Salt River Valley Water Users' Assn. v. NLRB*, 206 F.2d 325 (9th Cir. 1953).

Next, Respondent contends that even if the EAP was mandatory, it did not violate the Act because the use of class action procedures is not a substantive right. Similarly, Respondent denies that Smith, Echevarria, and other similarly situated employees, engaged in concerted activities with other employees for the purpose of mutual aid and protection by filing a nationwide collective action arbitration submission before the AAA on about March 28, 2014. This contention fails on both counts. First, the Board has made clear that the Act does not create or ensure a right to "class certification or the equivalent," but a right "to pursue joint, class, or collective claims if and as available, without the interference of an employer-imposed restraint." *Murphy Oil*, 361 NLRB No. 72, slip op. at 2, citing *D.R. Horton,* 357 NLRB No. 184, slip op. at 10 & fn. 14.

Second, Smith and other employees joined the nationwide class action submission filed by Echevarria, as is evidenced by the "Notice of filing Notice of Consent to Join" and "Notices of Consent to Join Collective Action" signed by Echevarria, Smith, Lucas, Calderon, and Weeks. (Jt. Exh. 5.) There is simply no evidence in this case that Smith, Eschevarria, and the other designated, similarly situated employees were acting on their own behalf. Thus, I reject Respondent's argument that concerted activity in this case is merely presumed, and not based on actual evidence as required by the Board. See *Meyers Industries, Inc. & Prill*, 268 NLRB 493 ("Meyers I") and *Meyers Industries, Inc. & Prill*, 281 NLRB 882 (1986) ("Meyers II").

Respondent also contends, in the same context, that since Smith was no longer an employee at the time she filed the underlying charge, she could not have been engaged in protected concerted activity when she submitted a demand for class-wide arbitration, or have joined a putative class action for the purpose of mutual aid or protection. Respondent relies on *Statutory Engineers, Local 39*, 346 NLRB 336, 347 fn. 9, in which the Board affirmed an administrative law judge's decision finding that Sec. 2(3) of the Act does not include in its definition of employees former employees who are filing personal lawsuits against their former employer and who have lost their jobs for reasons other than a labor dispute or because of an unfair labor practice. Accepting this argument would mean that Smith would not have standing to have filed the underlying charge, which she clearly does. Unlike this case, in Statutory Engineers, supra, the affected employee was found to have been terminated for good cause, and had filed a personal lawsuit. Here, Smith did not file a personal lawsuit. Moreover, the Act does not place such a limitation on who may file a charge. See Sec. 10 of the Act and *NLRB v. Indiana & Michigan Electric Co.*, 318 U.S. 9, 17 (1943). It is well established that the term "employee" under the Act includes former employees of the employer. See Section 2(3) of the Act; *Redwood Empire, Inc.,* 296 NLRB 369, 391 (1989); *Waco, Inc*., 273 NLRB 746, 747 fn. 8 (1984).

Next, Respondent asserts this claim should be barred due to the "Voluntariness Carve-Out" in footnote 28 of D.R. Horton. In other words, Respondent argues that because Smith, unlike the charging party in D.R. Horton, signed and agreed to the terms of the EAP when she applied for employment, she was fully informed, and voluntarily agreed to individually arbitrate any employment disputes with Respondent. However, as Respondent acknowledged, the charging party in Murphy Oil, like Smith, did in fact sign the arbitration agreement when she applied for employment. Although the Murphy Oil Board did not specifically address the matter of voluntariness, it clearly establishes that it matters not when an employee signs a mandatory arbitration agreement forfeiting his or her Section 7 substantive rights.

Next, Respondent argues that this claim is untimely under Section 10(b) of the Act because Respondent's alleged actions

causing Smith to be bound by its EAP occurred more than six months before she filed her charge on June 8, 2014. Respondent contends that the 6-month statute of limitations commenced in February 13, 2013, when Smith began employment with Respondent, and agreed to its EAP. However, this argument is without merit under controlling case law holding that a continuing violation exists as long as the rule is still being enforced at the time the charge is filed. See e.g., *Carney Hospital*, 350 NLRB 627, 640 (2007). Further, Respondent did not attempt to enforce its EAP until April 14, 2014, when it sent a letter to the AAA requesting that the class-action arbitration submission be rejected. See *Alamo Cement Co*., 277 NLRB 1031, 1036–1037 (1985) (not time barred where enforcement allegation could not have been litigated sooner).

Finally, in its answer, Respondent relied on the Supreme Court decisions *Bill Johnson's v. NLRB*, 461 U.S. 731, 741 (1983), and *BE&K Construction*, 536 U.S. 516 (2002), to argue that its request for the AAA to preclude class arbitration pursuant to its EAP is constitutionally protected by the First Amendment, and should therefore be stayed pending the final outcome of Smith's FLSA claim. This argument is admittedly based on Respondent's belief that its EAP and enforcement thereof are lawful. As Respondent acknowledges, the Murphy Oil Board rejected this argument and reliance on Bill Johnson's and BE&K because it found the underlying arbitration agreements and enforcement of those agreements unlawful. Further, the First Amendment does not protect the right to file lawsuits or motions that have an illegal objective under the Act. See *Murphy Oil*, 361 NLRB No. 72, slip op. at 20–21; *Allied Trades Council (Duane Reade)*, 342 NLRB 1010, 1013 fn. 4 (2004), citing *Bill Johnson's*, supra at 738. I reject these First Amendment arguments, as well as Respondent's claim that its efforts did not constitute enforcement of its EAP. I find that Respondent's efforts to enforce its unlawful EAP, by petitioning the AAA to reject the nation-wide class action claim pursuant to the EAP, clearly had an illegal basis pursuant to the Board decisions in *D.R. Horton* and *Murphy Oil*.

Based on the foregoing, I find that Respondent's maintenance of its EAP and enforcement efforts through the AAA violate Section 8(a)(1) of the Act as alleged in complaint.

## Conclusions of Law

1. Respondent is an employer within the meaning of Section 2(6) and (7) of the Act.

2. Respondent violated Section 8(a)(1) of the Act by maintaining the EAP, and by enforcing that policy by moving to compel individual arbitration of the Charging Party's class-action submission before the AAA.

3. Respondent has engaged in unfair labor practices affecting commerce within the meaning of Section 2(6) and (7) of the Act.

## Remedy

Having found that Respondent has engaged in certain unfair labor practices, I shall order it to cease and desist therefrom and to take certain affirmative action designed to effectuate the policies of the Act.

As I have concluded that the EAP is unlawful, the recommended order requires that Respondent revise or rescind it and advise its employees in writing that said rule has been so revised or rescinded. Because Respondent utilized the EAP on a corporate-wide basis, Respondent shall post a notice at all locations where the EAP, or any portion of it requiring all and/or enumerated employment-related disputes to be submitted to individual arbitration, was in effect. See, e.g., *U-Haul Co. of California*, supra, fn. 2 (2006); *D.R. Horton*, supra, slip op. at 17. Respondent is also ordered to distribute appropriate remedial notices to its employees electronically, such as by email, posting on an intranet or internet site, and/or other appropriate electronic means, if it customarily communicates with its employees by such means. *J. Picini Flooring*, 356 NLRB No. 9 (2010).

I recommend Respondent be required to reimburse Charging Party Andrea Smith and other grievants for any litigation and related expenses, with interest, to date and in the future, directly related to Respondent's filing its request/petition for the AAA to reject their demand for a nationwide collective or class arbitration in Darlene Echevarria et al. v. Citigroup, Inc., et al. (Case No. 01–14–0000–0324). Determining the applicable rate of interest on the reimbursement will be as outlined in *New Horizon*, 283 NLRB 1173 (1987) (adopting the Internal Revenue Service rate for underpayment of Federal taxes). Interest on all amounts due to Ms. Smith shall be computed on a daily bases as prescribed in *Kentucky River Medical Center*, 356 NLRB 8 (2010).

On these findings of fact and conclusions of law and on the entire record, I issue the following recommended.[7]

## ORDER

Respondent, its officers, agents, successors, and assigns, shall

1. Cease and desist from

(a) Maintaining an EAP that precludes employees from filing and/or maintaining class or collective actions in any arbitral or judicial forum.

(b) Enforcing (or attempting to enforce) the EAP to prohibit class or collective actions;

(c) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Rescind or revise the EAP, in all forms and places, to make it clear to employees that the policy does not require them, as a condition of their employment, to waive their right to maintain employment-related class or collective actions in all forums, whether arbitral or judicial.

(b) Notify the employees of the rescinded or revised EAP, to include providing them with a copy of any revised policies, acknowledgement forms or other related documents, or specific notification that the EAP has been rescinded.

---

[7] If no exceptions are filed as provided by Sec. 102.46 of the Board's Rules and Regulations, the findings, conclusions, and recommended Order shall, as provided in Sec. 102.48 of the Rules, be adopted by the Board and all objections to them shall be deemed waived for all purposes.

(c) Reimburse Smith and all grievants for all reasonable expenses and legal fees, if any, incurred in opposing Respondent's request/petition to compel individual arbitration before the AAA, with interest, in Darlene Echevarria et al. v. Citigroup, Inc., et al. (Case No. 01–14–0000–0324).

(d) Ensure that the Charging Party Andrea Smith, and all similarly situated employees, have a forum to litigate or arbitrate their class complaint by either moving the AAA, jointly with the Charging Party upon request, to vacate its decision to not administer the matter as a class action, or permitting her/their claims, upon request, to be arbitrated on a class-wide basis.

(e) Within 14 days after service by the Region, post at its facility in Tampa, Florida, and in all facilities where it has maintained and/or enforced the EAP, copies of the attached notice marked "Appendix."[8] Copies of the notice, on forms provided by the Regional Director for Region 12, after being signed by Respondent's authorized representative, shall be posted by Respondent and maintained for 60 consecutive days in conspicuous places including all places where notices to employees are customarily posted. In addition to physical posting of paper notices, the notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if Respondent customarily communicates with its employees by such means. Reasonable steps shall be taken by Respondent to ensure that the notices are not altered, defaced, or covered by any other material. In the event that, during the pendency of these proceedings, Respondent has gone out of business or closed the facility involved in these proceedings, Respondent shall duplicate and mail, at its own expense, a copy of the notice to all current employees and former employees employed by the Respondent at any time since December 26, 2012.

(f) Within 21 days after service by the Region, file with the Regional Director a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

Dated, Washington, D.C. December 23, 2014

APPENDIX
NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union
Choose representatives to bargain with us on your behalf
Act together with other employees for your benefit and protection
Choose not to engage in any of these protected activities.

WE WILL NOT maintain or enforce an employment arbitration policy (EAP) or agreement that requires employees, as a condition of their employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial, and/or requires disputes relating to wages, hours, or other working conditions be submitted to individual binding arbitration.

WE WILL NOT enforce a mandatory arbitration program by asserting it in class-action arbitration or litigation regarding wages that the Charging Party Andrea Smith brought against us.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights guaranteed you by Federal labor law.

WE WILL rescind or revise the EAP to arbitrate in all of its forms to make it clear to employees that the policy does not constitute a waiver of their right in all forums to maintain class or collective actions about wages, hours, and other working conditions.

WE WILL notify all former and current employees who were required to sign or otherwise agree to the EAP in any form at our facilities at any time since December 26, 2012, of the rescinded or revised mandatory arbitration program set forth in our EAP, to include providing them with a copy of any revised agreements, acknowledgement forms, or other related documents, or specific notification that the EAP has been rescinded.

WE WILL reimburse Charging Party Andrea Smith and other grievants for any litigation expenses directly related to opposing Respondent's (Citigroup Technology, Inc. and Citigroup Citicorp Banking Corporation (parent), a subsidiary of Citigroup, Inc.) request/petition to compel individual arbitration before the AAA, in Darlene Echevarria et al. v. Citigroup, Inc., et al. (Case No. 01–14–0000–0324).

WE WILL ensure that the Charging Party Andrea Smith, and all similarly situated employees, have a forum to litigate or arbitrate their class complaint by either moving the AAA, jointly with the Charging Party upon request to vacate its decision to not administer the matter as a class action, or permitting her/their claims, upon request, to be arbitrated on a class-wide basis.

CITIGROUP TECHNOLOGY, INC. AND CITIGROUP CITICORP BANKING CORPORATION (PARENT), A SUBSIDIARY OF CITIGROUP, INC.

The Administrative Law Judge's decision can be found at www.nlrb.gov/case/12-CA-130742 or by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1099 14th Street, N.W., Washington, D.C. 20570, or by calling (202) 273-1940.

---

[8] If this Order is enforced by a judgment of a United States court of appeals, the words in the notice reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

# Exhibit B

*NOTICE: This opinion is subject to formal revision before publication in the bound volumes of NLRB decisions. Readers are requested to notify the Executive Secretary, National Labor Relations Board, Washington, D.C. 20570, of any typographical or other formal errors so that corrections can be included in the bound volumes.*

**Amex Card Services Company, a subsidiary of American Express Travel Related Services Company, Inc., a subsidiary of American Express Company *and* Erandi Acevedo, Jennifer Flynn, and Jonathan Longnecker.** Case 28–CA–123865

November 10, 2015

DECISION AND ORDER

BY CHAIRMAN PEARCE AND MEMBERS HIROZAWA AND MCFERRAN

Upon a charge filed March 6, 2014, by Erandi Acevedo, Jennifer Flynn, and Jonathan Longnecker, the General Counsel issued a complaint and notice of hearing on May 22, 2014, alleging that the Respondent has been violating Section 8(a)(1) of the Act by: (1) at all material times, maintaining the rules set forth in the documents entitled "American Express Company Employment Arbitration Policy" and "New Hire Employment Arbitration Policy Acknowledgement Form"; and (2) since about February 27, 2014, enforcing the rules in those documents by maintaining a cause of action in the United States District Court of the District of Arizona seeking to compel individual arbitration of wage and hour claims by its employees.

On October 10, 2014, the Respondent, the Charging Parties, and the General Counsel filed a joint motion to waive a hearing and a decision by an administrative law judge and to transfer this proceeding to the Board for a decision based on a stipulated record. On March 18, 2015, the Board granted the parties' joint motion. Thereafter, the Respondent and the General Counsel filed briefs.

The National Labor Relations Board has delegated its authority in this proceeding to a three-member panel.[1]

On the entire record and briefs, the Board makes the following

FINDINGS OF FACT

I. JURISDICTION

The Respondent, a corporation with an office and place of business in Phoenix, Arizona, has been engaged in providing credit card services. In conducting its operations during the 12-month period ending March 6, 2014, the Respondent purchased and received at its facility goods valued in excess of $50,000 directly from points outside the State of Arizona, and the Respondent derived gross revenues in excess of $100,000. The Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

II. ALLEGED UNFAIR LABOR PRACTICES

*A. Stipulated Facts*

The Charging Parties are former employees of the Respondent at its call center facility in Phoenix, Arizona. Erandi Acevedo was employed by the Respondent from approximately June 18, 2012, to October 10, 2013, Jennifer Flynn from approximately September 4, 2012, to September 17, 2013, and Jonathan Longnecker from approximately September 17, 2012, to September 17, 2013.

At all material times, the Respondent has maintained the "American Express Company Employment Arbitration Policy" (the Policy) and has required new hires to sign a document entitled the "New Hire Employment Arbitration Policy Acknowledgement Form" (the Form) as a condition of their employment. By signing the Form, each employee acknowledges receipt of the Policy and agreement to its terms. In its opening paragraph, the Form states, "I understand that arbitration is the final and exclusive forum for the resolution of all employment-related disputes between American Express and me that are based on a legal claim." The final paragraph before the employee's signature reads in its entirety: "I agree to submit any and all employment [-]related disputes based on a legal claim to arbitration, and agree to waive my right to trial before a judge or jury in federal or state court in favor of arbitration under the Policy."

The Policy applies to all employees hired since June 1, 2003, and to employees hired prior to June 1, 2003, who did not opt out of coverage.[2] The Charging Parties signed the Form on the first day of their employment.

The 14-page Policy states in relevant part:

- "The agreement between each individual and American Express to be bound to the Policy creates a contract requiring both parties to resolve all employment-related disputes that are based on a legal claim through final and binding arbitration. Arbitration is the exclusive forum for the resolution of such disputes, and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under the Policy." [Jt. Exh. 2, sec. II.]

[1] Member Miscimarra is recused and has taken no part in the consideration of this case.

[2] The Respondent does not argue that the opt-out provision makes the Policy lawful with respect to employees hired before June 1, 2003. In any event, that argument would lack merit for the reasons stated in *On Assignment Staffing Services*, 362 NLRB No. 189 (2015).

- "All claims subject to arbitration under this Policy **MUST** be submitted on an individual basis. **THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS OR COLLECTIVE BASIS** . . . . No party subject to this Policy shall have any right to participate in a representative capacity or as a member of a class of claimants in a court of law pertaining to any claims subject to arbitration." [Id., sec. II,D.]

- "Any claim under the National Labor Relations Act" is not covered. [Id., sec. II,C.]

- The Policy "does not preclude an individual from filing a claim or charge with a governmental administrative agency with independent statutory authority to pursue an enforcement action, such as the National Labor Relations Board . . . ." [Id., sec. II,E.]

Like the Policy, the Form states that arbitration is the final and exclusive forum for the resolution of all employment-related disputes, that the employee "shall have no right or authority for any claim to be arbitrated on a class action basis," and that he or she "will not have the right to participate in a representative capacity or a member of any class of claimants in a court of law pertaining to any claims subject to arbitration." The Form explains that "the employment related disputes subject to arbitration under the Policy include any claims arising under any federal, state or local statute, regulation or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment (and any future additions, changes or amendments to those laws), including not limited to: [11 laws]." Unlike the Policy, the Form does not specify that claims under the NLRA are exempt or that employees have the right to file a claim or a charge with a governmental administrative agency.

Since at least February 27, 2014, the Respondent has enforced its arbitration policy by moving to compel individual arbitration in a cause of action brought by five former employees, including the Charging Parties, in the United States District Court for the District of Arizona, asserting claims under the Fair Labor Standards Act. On May 28, 2014, the court granted the Respondent's motion and dismissed the action without prejudice. *Longnecker v. American Express Co.*, No. 2:14-cv-0069-HRH (D. Ariz. 2014).

### *B. Discussion*

The Board held in *D. R. Horton, Inc.*, 357 NLRB No. 184 (2012), enf. denied in relevant part 737 F.3d 344 (5th Cir. 2013), and reaffirmed in *Murphy Oil USA, Inc.*, 361 NLRB No. 72, slip op. at 1 (2014), enf. denied __ F.3d __ (5th Cir., Oct. 26, 2015), that an employer violates Section 8(a)(1) "when it requires employees covered by the Act, as a condition of their employment, to sign an agreement that precludes them from filing joint, class, or collective claims addressing their wages, hours, or other working conditions against the employer in any forum, arbitral or judicial." Additionally, an employer violates Section 8(a)(1) if employees would reasonably believe that its arbitration policy interferes with their ability to file a Board charge or to access the Board's processes. *U-Haul Co. of California*, 347 NLRB 375, 377–378 (2006), enfd. 255 Fed. Appx. 527 (D.C. Cir. 2007). And if an employer's arbitration policy is unlawful, the Board will find that the employer also violated Section 8(a)(1) by enforcing the policy. *Murphy Oil*, 361 NLRB No. 72, slip op. at 19 (citing *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 16–17 (1962), and *Republic Aviation Corp.*, 324 U.S. 793 (1945)).

Here, we find that the Respondent violated Section 8(a)(1) by maintaining and enforcing the Policy and the Form (collectively, the Respondent's arbitration policy). First, we find that the Respondent's arbitration policy is facially unlawful under *D. R. Horton* and *Murphy Oil,* supra. Like the policies in those cases, the Respondent's arbitration policy requires employees, as a condition of their employment, to submit their employment-related legal claims to individual arbitration, thereby compelling employees to waive their Section 7 right to pursue such claims through class or collective action in all forums, arbitral and judicial. See *Murphy Oil*, 361 NLRB No. 72, slip op. at 1; *D. R. Horton*, 357 NLRB No. 184, slip op. at 1.[3]

Second, we find that the Respondent's arbitration policy is also unlawful because employees would reasonably believe that it waived or limited their right to file a charge with the Board or to access the Board's processes. Although the Policy states that "[a]ny claim under the

[3] We find no merit in the Respondent's argument that the maintenance allegation is barred by Sec. 10(b) because the Charging Parties signed the arbitration policy more than 6 months before filing a charge. We reject this contention because the Respondent continued to maintain the unlawful policy throughout the 6-month period preceding the filing of the charge. The Board has long held under these circumstances that maintenance of an unlawful workplace rule, such as the Respondent's arbitration policy, constitutes a continuing violation. See *PJ Cheese, Inc.*, 362 NLRB No. 177, slip op. at 1 (2015); *Neiman Marcus Group*, 362 NLRB No. 157, slip op. at 2 & fn. 6 (2015); and *Cellular Sales of Missouri, LLC*, 362 NLRB No. 27, slip op. at 2 & fn. 7 (2015).

National Labor Relations Act" is not covered, and that the Policy "does not preclude an individual from filing a claim or a charge with a governmental administrative agency . . . such as the National Labor Relations Board," the Form contains no such exceptions. When the Policy and the Form are read together, it is at best ambiguous whether employees retain the right to file a charge with the Board or to access the Board's processes. "[A]ny ambiguity in the rule must be construed against the Respondent as the promulgator of the rule." *Lafayette Park Hotel*, 326 NLRB 824, 828 (1998), enfd. 203 F.3d 52 (D.C. Cir. 1999). Moreover, the Form is drafted as a complete agreement to be signed by the employee; in it, the employee acknowledges receipt of the Policy, but it does not incorporate the Policy in its operative language, which expressly covers "all employment-related disputes," without limitation. Therefore, the Respondent's arbitration policy also violates Section 8(a)(1) because employees would reasonably believe that it interferes with their ability to file a Board charge or to access the Board's processes. See *U-Haul Co. of California*, 347 NLRB at 377–378.[4]

Third, because we find that the Respondent's arbitration policy is unlawful, we also find that the Respondent violated Section 8(a)(1) by enforcing the arbitration policy through its motion to compel individual arbitration in the cause of action brought by the Charging Parties and two other former employees in the United States District Court for the District of Arizona. See *Murphy Oil*, 361 NLRB No. 72, slip op. at 19.

## CONCLUSIONS OF LAW

1. The Respondent is an employer within the meaning of Section 2(2), (6), and (7) of the Act.

2. By maintaining a mandatory arbitration agreement that employees reasonably would believe bars or restricts them from filing charges with the National Labor Relations Board or to access the Board's processes, and by maintaining and/or enforcing a mandatory arbitration agreement under which employees are compelled, as a condition of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial, the Respondent has engaged in unfair labor practices affecting commerce within the meaning of Section 2(6) and (7) of the Act, and has violated Section 8(a)(1) of the Act.

## REMEDY

Having found that the Respondent has engaged in certain unfair labor practices, we shall order it to cease and desist and to take certain affirmative action designed to effectuate the policies of the Act. Consistent with our decision in *Murphy Oil*, supra at 21, and the Board's usual practice in cases involving unlawful litigation, we shall order the Respondent to reimburse the plaintiffs for all reasonable expenses and legal fees, with interest,[5] incurred in opposing the Respondent's unlawful motion in United States District Court to compel individual arbitration of their collective FLSA action. See *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731, 747 (1983) ("If a violation is found, the Board may order the employer to reimburse the employees whom he had wrongfully sued for their attorneys' fees and other expenses" and "any other proper relief that would effectuate the policies of the Act."). We shall also order the Respondent to rescind or revise its arbitration policy, to notify employees and the district court that it has done so, and to inform the district court that it no longer opposes the plaintiffs' claims on the basis of the unlawful arbitration policy.

## ORDER

The National Labor Relations Board orders that the Respondent, Amex Card Services Company, a subsidiary of American Express Travel Related Company, Inc., a subsidiary of American Express Company, Phoenix, Arizona, its officers, agents, successors, and assigns, shall

1. Cease and desist from

(a) Maintaining a mandatory arbitration policy that employees reasonably would believe bars or restricts employees' right to file charges with the National Labor Relations Board or to access the Board's processes.

(b) Maintaining and/or enforcing a mandatory arbitration policy that requires employees, as a condition of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial.

(c) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed to them by Section 7 of the Act.

[4] Having found that employees would not reasonably view the Respondent's arbitration policy as providing unrestricted access to the Board, and, by inference, to other administrative agencies, we necessarily reject any argument by the Respondent that its arbitration policy is distinguishable from the policies in *D. R. Horton* and *Murphy Oil*, supra, and lawful, because it permits such access. We need not address here whether an arbitration policy that, in fact, permitted administrative-agency access would be lawful under the rationale of *D. R. Horton* and *Murphy Oil*, an issue that remains to be decided by the Board in an appropriate case.

[5] Interest shall be computed in the manner prescribed in *New Horizons*, 283 NLRB 1173 (1987), compounded daily as prescribed in *Kentucky River Medical Center*, 356 NLRB No. 8 (2010). See *Teamsters Local 776 (Rite Aid)*, 305 NLRB 832, 835 fn. 10 (1991) ("[I]n make-whole orders for suits maintained in violation of the Act, it is appropriate and necessary to award interest on litigation expenses."), enfd. 973 F.2d 230 (3d Cir. 1992), cert. denied 507 U.S. 959 (1993).

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Rescind the "American Express Company Employment Arbitration Policy" (the Policy) and the "New Hire Employment Arbitration Policy Acknowledgement Form" (the Form) in all of their forms, or revise them in all of their forms to make clear to employees that the Policy and the Form do not constitute a waiver of their right to maintain employment-related joint, class, or collective actions in all forums, and that they do not restrict employees' right to file charges with the National Labor Relations Board or to access the Board's processes.

(b) Notify all current and former employees who were required to sign or otherwise become bound to the Policy and the Form in any form that the Policy and the Form have been rescinded or revised and, if revised, provide them a copy of the revised documents.

(c) Notify the United States District Court for the District of Arizona that it has rescinded or revised the unlawful mandatory arbitration policy upon which it based its motion to compel individual arbitration of Erandi Acevedo's, Jennifer Flynn's, Jonathan Longnecker's, and their coplaintiffs' collective action, and inform the court that it no longer opposes the plaintiffs' action on the basis of the unlawful arbitration policy.

(d) In the manner set forth in the remedy section of this decision, reimburse the plaintiffs for any reasonable attorneys' fees and litigation expenses that they may have incurred in opposing the Respondent's motion to compel individual arbitration.

(e) Within 14 days after service by the Region, post at its Phoenix, Arizona facility copies of the attached notice marked "Appendix."[6] Copies of the notice, on forms provided by the Regional Director for Region 28, after being signed by the Respondent's authorized representative, shall be posted by the Respondent and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted. In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, or other electronic means, if the Respondent customarily communicates with its employees by such means. Reasonable steps shall be taken by the Respondent to ensure that the notices are not altered, defaced, or covered by any other material. If the Respondent has gone out of business or closed the facility involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, a copy of the notice marked "Appendix" to all current employees and former employees employed by the Respondent at any time since February 27, 2014.

(f) Within 21 days after service by the Region, file with the Regional Director for Region 28 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

Dated, Washington, D.C. November 10, 2015

Mark Gaston Pearce, Chairman

Kent Y. Hirozawa, Member

Lauren McFerran, Member

(SEAL) NATIONAL LABOR RELATIONS BOARD

APPENDIX

NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

Choose representatives to bargain with us on your behalf

Act together with other employees for your benefit and protection

Choose not to engage in any of these protected activities.

WE WILL NOT maintain a mandatory arbitration policy that our employees reasonably would believe bars or restricts their right to file charges with the National Labor Relations Board or to access the Board's processes.

WE WILL NOT maintain and/or enforce a mandatory arbitration policy that requires our employees, as a condition of employment, to waive the right to maintain class

[6] If this Order is enforced by a judgment of a United States court of appeals, the words in the notices reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

or collective actions in all forums, whether arbitral or judicial.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights listed above.

WE WILL rescind the "American Express Company Employment Arbitration Policy" (the Policy) and the "New Hire Employment Arbitration Policy Acknowledgement Form" (the Form) in all of their forms, or revise them in all of their forms to make clear that the Policy and the Form do not constitute a waiver of your right to maintain employment-related joint, class, or collective actions in all forums, and that they do not restrict your right to file charges with the National Labor Relations Board or to access the Board's processes.

WE WILL notify all current and former employees who were required to sign or otherwise become bound to the Policy and the Form in any of their forms that the Policy and the Form have been rescinded or revised and, if revised, WE WILL provide them a copy of the revised documents.

WE WILL notify the court in which Erandi Acevedo, Jennifer Flynn, and Jonathan Longnecker and their two fellow plaintiffs filed their collective lawsuit that we have rescinded or revised the unlawful arbitration policy upon which we based our motion to compel individual arbitration, and WE WILL inform the court that we no longer oppose the plaintiffs' claim on the basis of that agreement.

WE WILL reimburse Acevedo, Flynn, Longnecker and their two fellow plaintiffs for any reasonable attorneys' fees and litigation expenses that they may have incurred in opposing our motion to compel individual arbitration.

AMEX CARD SERVICES COMPANY, A SUBSIDIARY OF AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., A SUBSIDIARY OF AMERICAN EXPRESS COMPANY

The Board's decision can be found at https://www.nlrb.gov/case/28-CA-123865 or by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20570, or by calling (202) 273-1940.

# Exhibit C

*NOTICE: This opinion is subject to formal revision before publication in the bound volumes of NLRB decisions. Readers are requested to notify the Executive Secretary, National Labor Relations Board, Washington, D.C. 20570, of any typographical or other formal errors so that corrections can be included in the bound volumes.*

**Nijjar Realty, Inc., d/b/a Pama Management *and* Gerardo Haro.** Case 21–CA–092054

November 20, 2015

DECISION AND ORDER

BY CHAIRMAN PEARCE AND MEMBERS MISCIMARRA AND MCFERRAN

On December 4, 2013, Administrative Law Judge William Nelson Cates issued the attached decision. The Respondent filed exceptions and a supporting brief. The General Counsel filed an answering brief, and the Respondent filed a reply brief. The Respondent also filed a motion to dismiss the complaint or, alternatively, to stay and reschedule the hearing. The General Counsel filed an opposition to the Respondent's motion.

The National Labor Relations Board has delegated its authority in this proceeding to a three-member panel.

Applying the Board's decision in *D. R. Horton*, 357 NLRB No. 184 (2012), enf. denied in relevant part, 737 F.3d 344 (5th Cir. 2013), the judge found that the Respondent violated Section 8(a)(1) of the Act by maintaining and enforcing a Comprehensive Agreement and Applicant's Statement of Agreement (CAASA) that requires employees, as a condition of employment, to waive their rights to pursue class or collective actions involving employment-related claims in all forums, whether arbitral or judicial.[1] In *Murphy Oil USA, Inc.*, 361 NLRB No. 72 (2014), enf. denied in part, *Murphy Oil USA, Inc. v. NLRB*, No. 14-60800 (5th Cir. Oct. 26, 2015), the Board reaffirmed the relevant holdings of *D. R. Horton*, supra.

The Board has considered the decision and the record in light of the exceptions and briefs[2] and, based on the judge's application of *D. R. Horton* and on our subsequent decision in *Murphy Oil*, we affirm the judge's rulings, findings,[3] and conclusions, and adopt the recommended Order as modified and set forth in full below.[4]

1. To the extent that the Respondent argues that the complaint is time-barred by Section 10(b) because the initial unfair labor practice charge was filed and served more than 6 months after the Charging Party, Gerardo Haro, signed and became subject to CAASA, we reject this argument, as did the judge. The Respondent continued to maintain the unlawful CAASA during the 6-month period preceding the filing of the initial charge. The Board has long held under these circumstances that maintenance of an unlawful workplace rule, such as the Respondent's CAASA, constitutes a continuing violation that is not time-barred by Section 10(b). See *PJ Cheese, Inc.*, 362 NLRB No. 177, slip op. at 1 (2015); *The Neiman Marcus Group*, 362 NLRB No. 157, slip op. at 2 & fn. 6 (2015); and *Cellular Sales of Missouri, LLC*, 362 NLRB No. 27, slip op. at 2 & fn. 7 (2015). It is equally well-established that an employer's enforcement of an unlawful rule, like the CAASA, independently violates Section 8(a)(1). See *Murphy Oil*, supra, at 19–21.

We also reject the Respondent's argument that the judge should not have treated its attempt to enforce its policy as within the 10(b) period, because, although alleged as unlawful in the complaint, it was not included in the charge. The allegation involving the Respondent's enforcement of its arbitration policy is of the same class of violations as the allegation in the charge that it maintained an unlawful arbitration policy. The enforcement of the policy was dependent on, and plainly related to, its

[1] We agree with the judge that the "Comprehensive Agreement" and the "Applicant's Statement of Agreement" forms constituted "one inextricably intertwined employment application" (which we, like the judge, have abbreviated as "CAASA"). The Respondent required Haro, like other employees, to sign both the CA and the ASA at the same time, as part of the same set of documents, and as a condition of continuing employment with the Respondent.

[2] The Respondent has requested oral argument. The request is denied as the record and briefs adequately present the issues and the positions of the parties.

[3] In the Facts section of the judge's decision, the judge stated that Charging Party Gerardo Haro filed a lawsuit alleging violations of the Fair Labor Standards Act. Haro's lawsuit actually alleged violations of state labor law. This inadvertent error by the judge does not affect the result.

The Respondent excepts to the judge's refusal to admit into evidence an earlier agreement that Haro signed when he initially applied to the Respondent and other evidence that the Respondent argues demonstrate its reasons for implementing the CAASA. We find that the judge did not abuse his discretion in finding that this evidence was not relevant to the issues in this case.

[4] We shall modify the Order to conform to the Board's standard remedial language, and we shall substitute a new notice to conform to the Order as modified. Consistent with our decision in *Murphy Oil*, supra, at 21, we shall order the Respondent to reimburse Haro for all reasonable expenses and legal fees, with interest, incurred in opposing the Respondent's unlawful motion in state court to compel individual arbitration of his class or collective claims. See *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 747 (1983) ("If a violation is found, the Board may order the employer to reimburse the employees whom he had wrongfully sued for their attorneys' fees and other expenses" as well as "any other proper relief that would effectuate the policies of the Act."). Interest shall be computed in the manner prescribed in *New Horizons*, 283 NLRB 1173 (1987), compounded daily as prescribed in *Kentucky River Medical Center*, 356 NLRB 6 (2010). See *Teamsters Local 776 (Rite Aid)*, 305 NLRB 832, 835 fn. 10 (1991) ("[I]n make-whole orders for suits maintained in violation of the Act, it is appropriate and necessary to award interest on litigation expenses"), enfd. 973 F.2d 230 (3d Cir. 1992).

We shall also order the Respondent to notify the state court that it has rescinded or revised the CAASA and to inform the court that it no longer opposes Haro's lawsuit on the basis of the CAASA.

maintenance. Because the complaint allegation emerged out of the investigation of the charge while the proceeding was pending before the General Counsel, the complaint allegation was sufficiently related to a timely charge. See *Cellular Sales of Missouri, LLC*, 362 NLRB No. 27, slip op. at 2 fn. 9; see generally *NLRB v. Fant Milling Co.*, 360 U.S. 301 (1959).

2. We reject the Respondent's argument that Haro was not engaged in concerted activity in filing a lawsuit alleging violations of the state wage and hour law in the Superior Court of the State of California. As the Board made clear in *Beyoglu*, 362 NLRB No. 152 (2015), "the filing of an employment-related class or collective action by an individual is an attempt to initiate, to induce, or to prepare for group action and is therefore conduct protected by Section 7." Id., slip op. at 2. See also *D. R. Horton*, 357 NLRB No. 184, slip op. at 3.

3. We also reject the Respondent's contention that the opt-out provision of its Comprehensive Agreement places it outside the scope of the prohibition against mandatory individual arbitration agreements under *Murphy Oil* and *D. R. Horton*. See *D. R. Horton*, slip op. at 13 fn. 28. The Board has rejected this argument, holding that an opt-out procedure still imposes an unlawful mandatory condition of employment that falls squarely within the rule set forth in *D. R. Horton* and affirmed in *Murphy Oil*. See *On Assignment Staffing Services*, 362 NLRB No. 189, slip. op. at 1, 4–5 (2015). The Board further held in *On Assignment*, slip op. at 1, 5–8, that even assuming that an opt-provision renders an arbitration agreement not a condition of employment (or nonmandatory), an arbitration agreement precluding collective action in all forums is unlawful even if entered into voluntarily because it requires employees to prospectively waive their Section 7 right to engage in concerted activity. Id.[5]

4. We deny the Respondent's motion to dismiss the complaint or, alternatively, to stay the proceedings. The Respondent's arguments about the validity of the Board's decision in *D. R. Horton* lack merit for the reasons stated in *Murphy Oil*, slip op. at 2 fn. 16. The Respondent's assertion that the Board should issue a stay until it "has a non-challengeable quorum" is moot, given that the Board is currently composed of confirmed Members. The Respondent also argues that the complaint is invalid because the Regional Director who issued it was not appointed by a lawfully constituted Board. We reject this argument. The complaint was issued by Olivia Garcia, who was appointed Regional Director for Region 21 on December 22, 2011, at which time the Board had a valid quorum. See *Longshore & Warehouse Local 19 (Seattle Tunnel Partners)*, 361 NLRB No. 122, slip op. at 1 fn. 1 (2014). Lastly, we reject the Respondent's claim that, even if *D. R. Horton* is good law, it is distinguishable and inapplicable.

## ORDER

The National Labor Relations Board orders that the Respondent, Nijjar Realty, Inc., d/b/a Pama Management, El Monte, California, its officers, agents, successors, and assigns, shall

1. Cease and desist from

(a) Maintaining and/or enforcing a mandatory and binding arbitration agreement in its Comprehensive Agreement and Applicant's Statement of Agreement (CAASA) that requires employees, as a condition of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial.

(b) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Rescind the mandatory and binding arbitration agreement in all of its forms, or revise it in all of its forms to make clear to employees that the arbitration agreement does not constitute a waiver of their right to maintain employment-related joint, class, or collective actions in all forums.

(b) Notify all applicants and current and former employees who were required to sign or otherwise became bound to the CAASA that it has been rescinded or revised and, if revised, provide them a copy of the revised agreement.

(c) Notify the Superior Court of California, Los Angeles County in Case BC487199 that it has rescinded or revised the mandatory arbitration agreements upon which it based its petition to compel arbitration and to stay action pending arbitration of Gerardo Haro's claim, and inform the court that it no longer opposes the action on the basis of those agreements.

(d) In the manner set forth in the remedy section of the judge's decision, as amended, reimburse Gerardo Haro for any reasonable attorneys' fees and litigation expenses that he may have incurred in opposing the Respondent's petition to compel individual arbitration.

(e) Within 14 days after service by the Region, post at its facility in El Monte, California, copies of the attached

[5] Our dissenting colleague argues that Sec. 8(a)(1) of the Act does not prohibit agreements that waive class and collective actions, especially when, as here, they contain an opt-out provision. We disagree, for the reasons stated in *Murphy Oil*, supra, slip op. at 17–18, and *On Assignment*, supra, slip op. at 4, 9 & fns. 28, 29, 31.

notice marked "Appendix."[6] Copies of the notice, on forms provided by the Regional Director for Region 21, after being signed by the Respondent's authorized representative shall be posted by the Respondent and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted. In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means. Reasonable steps shall be taken by the Respondent to ensure that the notices are not altered, defaced, or covered by any other material. If the Respondent has gone out of business or closed the facility involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, a copy of the notice to all current employees and former employees employed by the Respondent at any time since April 26, 2012.

(f) Within 21 days after service by the Region, file with the Regional Director for Region 21 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

Dated, Washington, D.C. November 20, 2015

Mark Gaston Pearce, Chairman

Lauren McFerran, Member

(SEAL) NATIONAL LABOR RELATIONS BOARD

MEMBER MISCIMARRA, dissenting.

I agree that the National Labor Relations Act (the Act or NLRA) protects employees from retaliation if they engage in "concerted" activities for "mutual aid or protection." As explained in my partial dissenting opinion in *Murphy Oil USA, Inc.,*[1] I also agree that an employee may engage in protected activities in relation to a claim asserted under a statute other than NLRA.[2] However, I believe Section 8(a)(1) of the Act does not vest authority in the Board to dictate any particular procedures pertaining to the litigation of non-NLRA claims, nor does the Act entitle employees to class-type treatment of such claims. Moreover, when parties enter into an agreement that waives class or collective litigation regarding non-NLRA claims, I believe questions about the enforceability or nonenforceability of such an agreement are exclusively within the province of the court or other tribunal that, unlike the NLRB, has jurisdiction over such claims. Id.

In this case, the Respondent required its employees to enter into a Comprehensive Agreement and Applicant's Statement of Agreement (Agreement) that provided for individual arbitration of employment-related claims and waived the right to pursue class or collective actions in employment-related disputes involving non-NLRA claims.[3] Additionally, the Agreement contains an "opt-out" provision that permits employees to exercise a choice *not* to be covered by the class waiver by checking a designated box on the Agreement form. Haro signed the Agreement, and later he filed a class action lawsuit against the Respondent in state court alleging California labor law violations and asserting claims under the California Private Attorney General Act (PAGA). In reliance on the Agreement, the Respondent filed a state court motion to compel arbitration, which the court granted regarding Haro's individual claims.[4]

I disagree with my colleagues' finding that Section 8(a)(1) of the NLRA prohibits agreements that waive class and collective actions, and I especially disagree

[6] If this Order is enforced by a judgment of the United States court of appeals, the words in the notice reading, "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

[1] 361 NLRB No. 72, slip op. at 22–35 (2014) (Member Miscimarra, dissenting in part). The Board majority's holding in *Murphy Oil* invalidating class-action waiver agreements was recently denied enforcement by the Court of Appeals for the Fifth Circuit. *Murphy Oil USA, Inc. v. NLRB*, No. 14-60800, 2015 WL 6457613 (5th Cir. Oct. 26, 2015).

[2] I agree that non-NLRA claims can give rise to "concerted" activities engaged in by two or more employees for the "purpose" of "mutual aid or protection," which would come within the protection of NLRA Sec. 7. See *Murphy Oil*, 361 NLRB No. 72, slip op. at 23–25 (Member Miscimarra, dissenting in part). However, the existence or absence of Sec. 7 protection does not depend on whether non-NLRA claims are pursued as a class or collective action, but on whether Sec. 7's statutory requirements are met—an issue separate and distinct from whether an individual employee chooses to pursue a claim as a class or collective action. Id.; see also *Beyoglu,* 362 NLRB No. 152, slip op. at 4–5 (2015) (Member Miscimarra, dissenting). Here, Charging Party Gerardo Haro filed the lawsuit by himself without seeking the support of any other employee and testified that he did not even know what a class action was, though the judge found that Haro discussed the lawsuit with other employees after it was filed. Because I would dismiss the complaint in any event, I find it unnecessary to decide whether this evidence establishes that Haro was engaged in concerted activity.

[3] The majority adopts the judge's finding that the Comprehensive Agreement and Applicant's Statement of Agreement were "one inextricably intertwined employment application." In light of my disposition of this case, I do not pass on the Respondent's exception to this finding.

[4] The court severed and stayed the PAGA claims.

with the Board's finding here, similar to the Board majority's finding in *On Assignment Staffing Services*,[5] that class waiver agreements violate the NLRA even when they contain an opt-out provision. In my view, Sections 7 and 9(a) of the NLRA render untenable both of these propositions. As discussed in my partial dissenting opinion in *Murphy Oil*, NLRA Section 9(a) protects the right of every employee as an "individual" to "present" and "adjust" grievances "at any time."[6] This aspect of Section 9(a) is reinforced by Section 7 of the Act, which protects each employee's right to "refrain from" exercising the collective rights enumerated in Section 7. Thus, I believe it is clear that (i) the NLRA creates no substantive right for employees to insist on class-type treatment of non-NLRA claims;[7] (ii) a class-waiver agreement pertaining to non-NLRA claims does not infringe on any NLRA rights or obligations, which has prompted the overwhelming majority of courts to reject the Board's position regarding class waiver agreements;[8] (iii) enforcement of a class-action waiver as part of an arbitration agreement is also warranted by the Federal Arbitration Act (FAA);[9] and (iv) the legality of such a waiver is even more self-evident when the agreement contains an opt-out provision, based on every employee's Section 9(a) right to present and adjust grievances on an "individual" basis and each employee's Section 7 right to "refrain from" engaging in protected concerted activities.

The opt-out mechanism in Respondent's Agreement is not cumbersome, and I believe it is clearly unwarranted for the Board to find that the NLRA is violated by this type of opt-out class waiver agreement. According to my colleagues, the NLRA's "protection" paradoxically operates in reverse: rather than *protecting* employees' rights to engage in or refrain from certain kinds of collective activities, the majority makes it unlawful for employees to be given the *choice* of whether to make non-NLRA claims subject to individual arbitration. In my view, the NLRA does not divest employees of the right to make such a choice. Rather, Congress twice expressed its intention to protect this right of employees: in Section 7, which guarantees employees the right to "refrain" from collective action, and in Section 9(a), which guarantees every employee the right "at any time" to present and adjust his or her grievances individually, and thus to enter into agreements with employers providing for their adjustment on an individual basis.

The legality of the Respondent's opt-out agreement is reinforced by other considerations. Courts have uniformly upheld individual arbitration agreements that contain opt-out provisions (rejecting arguments like those advanced by my colleagues here).[10] Moreover, insofar as

---

[5] 362 NLRB No. 189, slip op. at 1, 4–5 (2015).

[6] *Murphy Oil*, above, slip op. at 30–34 (Member Miscimarra, dissenting in part). Sec. 9(a) states: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That *any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted*, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment" (emphasis added). The Act's legislative history shows that Congress intended to preserve every individual employee's right to "adjust" any employment-related dispute with his or her employer. See *Murphy Oil*, above, slip op. at 31–32 (Member Miscimarra, dissenting in part).

[7] When courts have jurisdiction over non-NLRA claims that are potentially subject to class treatment, the availability of class-type procedures does not rise to the level of a substantive right. See *D. R. Horton, Inc. v. NLRB*, 737 F.3d 344, 362 (5th Cir. 2013) ("The use of class action procedures . . . is not a substantive right.") (citations omitted), petition for rehearing en banc denied No. 12-60031 (5th Cir. 2014); *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 332 (1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims.").

[8] The Fifth Circuit has twice denied enforcement of Board orders invalidating a mandatory arbitration agreement that waived class-type treatment of non-NLRA claims. See *Murphy Oil, Inc., USA v. NLRB,* above; *D. R. Horton, Inc. v. NLRB,* above. The overwhelming majority of courts considering the Board's position have likewise rejected it. See *Murphy Oil,* 361 NLRB No. 72, slip op. at 34 (Member Miscimarra, dissenting in part); id., slip op. at 36 fn. 5 (Member Johnson, dissenting) (collecting cases); see also *Patterson v. Raymours Furniture Co., Inc*., No. 14-CV-5882 (VEC), 2015 WL 1433219 (S.D.N.Y. Mar. 27, 2015); *Nanavati v. Adecco USA, Inc.,* No. 14-cv-04145-BLF, 2015 WL 1738152 (N.D. Cal. Apr. 13, 2015), motion to certify for interlocutory appeal denied 2015 WL 4035072 (N.D. Cal. June 30, 2015); *Brown v. Citicorp Credit Services, Inc.,* No. 1:12-cv-00062-BLW, 2015 WL 1401604 (D. Idaho Mar. 25, 2015) (granting reconsideration of prior determination that class waiver in arbitration agreement violated NLRA).

[9] Even if a conflict existed between the NLRA and an arbitration agreement's class waiver provisions, the FAA requires that the arbitration agreement be enforced according to its terms. *Murphy Oil,* above, slip op. at 34 (Member Miscimarra, dissenting in part); id., slip op. at 49–58 (Member Johnson, dissenting).

[10] *On Assignment Staffing*, above, slip op. at 12–13 (Member Johnson, dissenting); see also *Johnmohammadi v. Bloomingdale's,* 755 F.3d 1072, 1075–1077 (9th Cir. 2014) (where employee had the right to opt out of individual arbitration agreement but chose not to, she "freely elected to arbitrate employment-related disputes on an individual basis . . . [and thus] cannot claim that enforcement of the agreement violates either the Norris-LaGuardia Act or the NLRA"); *Davis v. O'Melveny & Meyers,* 485 F.3d 1066, 1073 (9th Cir. 2007) ("[I]f an employee has a meaningful opportunity to opt out of the arbitration provision when signing the agreement and still preserve his or her job, then it is not procedurally unconscionable."); *Legair v. Circuit City Stores, Inc.,* 213 Fed. Appx. 436, 439 (6th Cir. 2007) (when plaintiff "failed to take the required action to opt out. . . . [he] by his conduct demonstrated his agreement to be bound"); *Garrett v. Circuit City Stores, Inc.,* 449 F.3d 672, 675 & fn. 2 (5th Cir. 2006) (employee agreed to arbitrate dispute

an employer implies or expresses a preference that employees refrain from exercising a voluntary opt-out right provided in a class waiver arbitration agreement, Section 8(c) of the Act precludes the Board from relying on such advocacy as evidence that the agreement is unlawful.[11] Finally, I disagree that Congress vested the Board with authority to conclude that employees lack sufficient "equality" in bargaining power to make their own choices regarding agreements pertaining to whether class-type procedures may apply to non-NLRA claims.[12]

Because I believe the Respondent's Agreement was lawful under the NLRA, I would find it was similarly lawful for the Respondent to file a motion in state court seeking to enforce the Agreement. It is relevant that the state court that had jurisdiction over the non-NLRA claims *granted* the Respondent's motion to compel arbitration. That the Respondent's motion was reasonably based is also supported by the multitude of court decisions that have enforced similar agreements.[13] As the Fifth Circuit recently observed—after rejecting (for the second time) the Board's position regarding the legality of class waiver agreements—"[I]t is a bit bold for [the Board] to hold that an employer who followed the reasoning of our *D. R. Horton* decision had no basis in fact or law or an 'illegal objective' in doing so. The Board might want to strike a more respectful balance between its views and those of circuit courts reviewing its orders."[14] I also believe that any Board finding of a violation based on the Respondent's meritorious state court motion to compel arbitration would improperly risk infringing on the Respondent's rights under the First Amendment's Petition Clause. See *Bill Johnson's Restaurants v. NLRB,* 461 U.S. 731 (1983); *BE & K Construction Co. v. NLRB,* 536 U.S. 516 (2002); see also my partial dissent in *Murphy Oil,* above, 361 NLRB No. 72, slip op. at 33–35. Finally, for similar reasons, I believe the Board cannot properly require the Respondent to reimburse the Charging Party for its attorneys' fees in the circumstances presented here. *Murphy Oil*, above, 361 NLRB No. 72, slip op. at 35.

For the above reasons, I believe that the Respondent's agreement, including its "opt-out" provisions, should be deemed lawful under NLRA Section 8(a)(1).

Accordingly, I respectfully dissent.

Dated, Washington, D.C. November 20, 2015

Philip A. Miscimarra, Member

NATIONAL LABOR RELATIONS BOARD

## APPENDIX

NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

Choose representatives to bargain with us on your behalf

Act together with other employees for your benefit and protection

Choose not to engage in any of these protected activities.

WE WILL NOT maintain and/or enforce a mandatory and binding arbitration agreement in our Comprehensive Agreement and Applicant's Statement of Agreement (CAASA) that requires employees, as a condition of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights listed above.

WE WILL rescind the CAASA in all of its forms, or revise it in all of its forms to make clear that it does not constitute a waiver of your right to maintain employment-related joint, class, or collective actions in all forums.

---

at issue where he had had notice and an opportunity to opt out of arbitration agreement, but did not do so); *Circuit City Stores, Inc. v. Najd,* 294 F.3d 1104, 1109 (9th Cir. 2002) (where employee could "mull over whether to opt out of [the agreement, he] . . . . assented . . . by failing to exercise his right to opt out"); *Circuit City Stores, Inc. v. Ahmed,* 283 F.3d 1198, 1199–1200 (9th Cir. 2002) (arbitration agreement not procedurally unconscionable where employee had meaningful opportunity to opt out); *Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634, 636 (7th Cir. 1999) (employee "was free not to arbitrate; she was given a choice and she chose—by not signing the opt-out provision—to be bound").

[11] *On Assignment Staffing*, above, slip op. at 13 (Member Johnson, dissenting).

[12] Id., slip op. at 14–15.

[13] See, e.g., *Murphy Oil, Inc., USA v. NLRB*, above; *Johnmohammadi v. Bloomingdale's*, above; *D. R. Horton, Inc. v. NLRB*, above; *Owen v. Bristol Care, Inc.,* 702 F.3d 1050 (8th Cir. 2013); *Sutherland v. Ernst & Young LLP,* 726 F.3d 290 (2d Cir. 2013).

[14] *Murphy Oil, Inc., USA v. NLRB,* above, at *6. Because I would dismiss the enforcement allegation on the merits, I find it unnecessary to decide whether the allegation was properly included in the complaint despite not being included in the charge, and whether the judge erred in excluding evidence proffered by the Respondent regarding the reasons for its implementation of the Agreement.

WE WILL notify all applicants and current and former employees who were required to sign the CAASA that it has been rescinded or revised and, if revised, provide them a copy of the revised agreement.

WE WILL notify the court in which Gerardo Haro filed his collective wage claim that we have rescinded or revised the mandatory arbitration agreements upon which we based our petition to compel arbitration and to stay action pending arbitration of Gerardo Haro's claim, and WE WILL inform the court that we no longer oppose Gerardo Haro's collective claim on the basis of that agreement.

WE WILL reimburse Gerardo Haro for any reasonable attorneys' fees and litigation expenses that he may have incurred in opposing our petition to compel individual arbitration.

NIJJAR REALTY, INC., D/B/A PAMA MANAGEMENT

The Board's decision can be found at www.nlrb.gov/case/21-CA-092054 or by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20570, or by calling (202) 273–1940.

*Cecelia Valentine, Esq.,* for the Government.[1]
*Ronald W. Novotny, Esq.,* for the Company.[2]
*David Spivak Esq.,* for the Charging Party.

DECISION

Statement of the Case

WILLIAM NELSON CATES, Administrative Law Judge. This case was tried before me on August 26, 2013, in Los Angeles, California. Charging Party Haro filed the charge initiating this matter on October 25, 2012, and the Acting General Counsel issued a complaint and notice of hearing (complaint) on May 30, 2013. The Government alleges the Company violated Section 8(a)(1) of the National Labor Relations Act (the Act) by, since on or about April 26, 2012, maintaining a Comprehensive Agreement and Applicant's Statement of Agreement (CAASA) which contains provisions that precludes employees from participating in collective and class litigation to resolve disputes arising out of employment, and, prohibits employees from arbitrating disputes as a class. It is further alleged the Company has, since on or about April 26, 2012, required all new and existing employees to execute the CAASA forms which provides that employees resolve all disputes arising out of employment through binding arbitration (unless they opt out by checking a box on the CAASA forms) and also, provides employees must arbitrate their claims individually. It is also alleged the Company has, since at least December 14, 2012, enforced the arbitration provisions regarding resolving disputes arising out of employment through binding arbitration as set forth in the CAASA forms, by asserting it in litigation brought against the Company by Charging Party Haro in *Gerardo Haro Guadarrama v. Nijjar Realty, Inc.* et al Case number BC487199 (Superior Court of California, Los Angeles County) by filing a petition to compel plaintiffs to individually arbitrate their class wide wage and hour claims against the Company. The trial court (Superior Court of California, Los Angeles County) on March 6, 2013, adopted its tentative ruling to Sever and Stay the Private Attorney General Act (PAGA) claims and to compel arbitration of Charging Party Haro's and all other claims on an individual basis.

This is another case raising issues concerning arbitration policies that effect collective bargaining and representational rights related to *D. R. Horton, Inc.*, 357 NLRB No. 184 (2012), petition to review filed 12-60031 (5th Cir. 2012), (oral argument heard on February 5, 2013).

The Company, in its answer to the complaint, and at trial, denies having violated the Act in any manner alleged in the complaint.

The parties were given full opportunity to participate, to introduce relevant evidence, to examine and cross-examine witnesses, and to file briefs. I carefully observed the demeanor of the witnesses as they testified and I rely on those observations here. I have studied the whole record, and based on the detailed findings and analysis below, I conclude and find the Company violated the Act essentially as alleged in the complaint.

FINDINGS OF FACT

I. JURISDICTION

The Company is a corporation with an office and place of business in El Monte, California, where it has been, and continues to be, engaged in the business of property management including management of leased residential properties. During the past year, a representative period, the Company derived gross revenues in excess of $500,000, and during that same time purchased and received at its El Monte, California facility goods from other enterprises located within the State of California, each of which other enterprises received these goods directly from points outside the State of California. The parties admit, and I find, the Company is an employer engaged in

[1] I shall refer to counsel for the Acting General Counsel as counsel for the Government and the Acting General Counsel as the Government.

[2] I shall refer to counsel for the Respondent as counsel for the Company and shall refer to the Respondent as the Company.

commerce within the meaning of Section 2(2), (6), and (7) of the Act.[3]

II. FACTS

Charging Party Haro made his initial application for employment with the Company on August 24, and commenced working around September 1, 2011. Haro was employed as a maintenance worker working from the Company's Ontario, California office the first 3 months and from the San Bernardino, California office the last month of his employment. Haro left his employment with the Company around mid-January 2012. The circumstances of Haro's departure from the Company are not before me.

Haro, who lives in San Bernardino, performed general maintenance work on, for example, floors, ceilings and welding assignments at company managed properties. Haro testified Rocio Chanez (Supervisor Chanez) was in charge of the San Bernardino area and Alejandro Montiel (Supervisor Montiel)[4] was supervisor of the maintenance workers.

Haro was required to and filled out a second job application and related employment documents for the Company on December 29, 2011. Haro testified that when he and 18 to 20 other maintenance employees reported for work at the San Bernardino office on the morning of December 29, 2011, they were told by both Supervisors Chanez and Montiel they had to fill out and sign new employment documents and if they did not "they would not pay us." Haro said Chanez and Montiel did not tell them anything about the documents except that they had to sign them. Haro asked what kind of documents they were and Chanez replied they were from the Company's El Monte, California office. Haro testified Montiel and Chanez "just wanted us to sign [the documents] in a hurry and go to work."

Haro completed the documents while in the office and placed them on Montiel's desk before going to work. Haro placed a question mark on the signature line of Applicant's Statement and Agreement because he "did not understand any of this." When Haro returned to the office that afternoon the secretary told him he had failed to sign some portions of the documents. The secretary placed post-its where Haro was to sign or mark which he did. The documents were in English. Haro started speaking English at age 30 and can read some English. Haro did not ask for a copy of the CAASA forms he signed on December 29, 2011, nor, did he request a Spanish language copy before signing the forms. Haro did not ask that the documents be translated for him. Haro testified he did not ask his supervisors any questions about the documents but did ask coworkers who did not know what the documents were. Haro testified he understood he had to sign the documents to continue working for the Company, and, he also understood that by having to sign the documents he was agreeing to the terms of the documents. No one from management or the secretary brought to Haro's attention when he signed the documents in the morning or when he further signed them in the afternoon that there was an "opt out" box in the CAASA forms that he could initial.

The CAASA forms executed by Charging Party Haro and the other maintenance employees, which were required by the Company as a condition of employment, contains, in part, the following:

> Comprehensive Agreement
>
> 2. Employee, Emplicity and Company, agree to utilize binding arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be related in any way to Employee's employment, including but not limited to the termination of Employee's employment and Employee's compensation. Employee specifically waives and relinquishes his/her right to bring a claim against Emplicity and/or Company, in a court of law, and this waiver shall be equally binding on any person who represents or seeks to represent Employee in a lawsuit against Emplicity or Company in a court of law. Similarly, Emplicity and Company specifically waive and relinquish their rights to bring a claim against Employee in a court of law, and this waiver shall be equally binding on any person who represents or seeks to represent Emplicity or Company in a lawsuit against the Employee in a court of law. Employee, Emplicity, and Company agree that any claim, dispute, and/or controversy that Employee may have against Emplicity (or its owners, directors, officers, managers, employees, or agents), or Company (or its owners, directors, officers, managers, employees, or agents), or that Emplicity or Company may have against Employee, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA"), in conformity with the procedures of the California Arbitration Act, (CAL. Code Civ. Proc. Sec 1280 et seq., including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery). The FAA applies to this agreement because both Emplicity and Company business involves interstate commerce. Included within the scope of this Agreement are all disputes, whether based on tort, contract, statute (including, but not limited to, any claims of discrimination, harassment and/or retaliation, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation), equitable law, or otherwise. The only exception to the requirement of binding arbitration shall be for claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, Employment Development department claims, or as may otherwise be required by state or federal law. However, nothing

---

[3] The Company at trial, and in its posttrial brief, contends *D. R. Horton,* supra is invalid because it was not decided by a quorum of at least three Board Members pursuant to 29 U.S.C. § 153(b) and was thus unconstitutional (citing *Noel Canning v. NLRB* 705 F.3d 490 (D.C. Cir. 2013), cert. granted 133 S.Ct. 2861 (June 24, 2013)). The Board has rejected similar contentions in numerous cases, see, e.g., *Bloomingdale's Inc.,* 359 NLRB No. 113 (2013). I note the Board now has a full complement of five members nominated by the President and confirmed by the Senate and could, if they deemed appropriate, reaffirm the earlier Board's actions. Consistent with Board precedent, I reject the Company's *Noel Canning,* supra, defense.

[4] While Chanez and Montiel were not named as supervisors in the complaint, and it is not necessary here to decide that issue, it appears no party disputes their positions or authority. I have applied the supervisory title to them for ease of understanding the sequence of events leading to the signing of the employment documents at issue here.

herein shall prevent Employee from filing and pursuing proceedings before the California Department of Fair Employment and Housing, or the United States Equal Employment Opportunity Commission (although if Employee chooses to pursue a claim following the exhaustion of such administrative remedies, that claim would be subject to the provisions of this Agreement). By this binding arbitration provision, Employee, Emplicity and Company give up their right to trial by jury of any claim Employee may have against Emplicity or Company, or of any claim Emplicity or Company may have against Employee. This agreement is not intended to interfere with Employee's rights to collectively bargain, to engage in protected, concerted activity, or to exercise other rights protected under the National Labor Relations Act.

4. This binding arbitration agreement shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees, and will not proceed as a class action, collective action, private attorney general action or any similar representative action. No arbitrator shall have the authority under this agreement to order any such class of representative action. I further understand and acknowledge that the terms of this Agreement include a waiver of any substantive or procedural rights that I may have to bring an action on a class, collective, private attorney general, representative or other similar basis. However, due to the nature of this waiver, the Company has provided me with the ability to choose to retain these rights by affirmatively checking the box at the end of this paragraph. Accordingly, I expressly agree to waive any right I may have to bring an action on a class, collective, private attorney general, representative or other similar basis, unless I check this box [ ].

Applicant's Statement and Agreement:

I further agree and acknowledge that Emplicity, the Worksite Employer, and I will utilize binding arbitration to resolve all disputes that may arise out of the employment context. Emplicity, the Worksite Employer, and I agree that any claim, dispute, and/or controversy that either I may have against Emplicity or the Worksite Employer (or their owners, directors, officers, managers, employees, agents, and parties affiliated with their employee benefit and health plans) or Emplicity or the Worksite Employer may have against me, arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with Emplicity or the Worksite Employer shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. Sec 1280 et seq., including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery), included within the scope of this Agreement are all disputes, whether based on tort, contract, statute (including, but not limited to any claims of discrimination and harassment, whether they be based on the California Fair Employment and Housing act, Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation), equitable law, or otherwise with exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, Employment Development Department claims, or as otherwise required by state or federal law. However, nothing herein shall prevent me from filing and pursuing proceedings before the California Department of Fair Employment and Housing, or the United States Equal Employment Opportunity Commission (although if I choose to pursue a claim following the exhaustion of such administrative remedies, that claim would be subject to the provisions of this Agreement). Further, this Agreement shall not prevent either me or the Company from obtaining provisional remedies to the extent permitted by Code of Civil Procedure Section 1281.8 either before the commencement of or during the arbitration process. In addition to any other requirements imposed by law, the arbitrator selected shall be a retired California Superior Court Judge, or otherwise qualified individual to whom the parties mutually agree, and shall be subject to disqualification on the same grounds as would apply to a judge of such court. All rules of pleading (including the right of demurrer), all rules of evidence, all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and judgment under Code of Civil Procedure Section 631.8 shall apply and be observed. Resolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including but not limited to, notions of "just cause") other than such controlling law. The arbitrator shall have the immunity of a judicial officer from civil liability when acting in the capacity of an arbitrator, which immunity supplements any other existing immunity. Likewise all communications during or in connection with the arbitration proceedings are privileged in accordance with Cal. Civil Code Section 47(b). As reasonably required to allow full use and benefit of this agreement's modifications to the Act's procedures, the arbitrator shall extend the times set by the Act for the giving of notices and setting of hearings. Awards shall include the arbitrator's written reasoned opinion. I understand and agree to this binding arbitration provision, and I, the Worksite Employer and Emplicity give up our right to trial by jury of any claim, the Worksite Employer and/or Emplicity may have against me.

On June 29, 2012, Charging Party Haro, through counsel, filed his Fair Labor Standard's Act lawsuit (*Gerardo Haro Guadarrama v Nijjar Realty, Inc*. et. al.) against the Company on behalf of himself and all others similarly situated, and as an "aggrieved employee" on behalf of other "aggrieved employees" under the Labor Code Private Attorney General Act of 2004 (PAGA). Haro testified that before he filed his lawsuit he did not discuss doing so with other employees. Haro explained he did not even know what a class action lawsuit meant. Haro said he had, after he filed his lawsuit, discussed the claims made in his lawsuit "lots" of times with current and former employees of the Company.

On December 14, 2012, the Company filed a Petition to Compel Arbitration and to Stay Action Pending Completion of Arbitration in *Gerardo Haro Guadarrama v. Nijjar Realty, Inc*.

et. al. seeking to enforce the provisions of the CAASA forms its employees, including Haro, had been compelled to sign.

On March 6, 2013, Superior Court of California, County of Los Angeles, Judge Jane R. Johnson issued her Ruling on Submitted Matter in the *Gerardo Haro Guadarrama v. Nijjar Realty, Inc.* et. al. case stating, "The Court adopts its tentative ruling (1) severing and staying the PAGA claims, and (2) compelling arbitration of Guadarrama's individual claims as to all remaining claims."

Company Chief Financial Officer Evert Miller (CFO Miller or Miller) testified the Company, for a number of years, utilized professional employer organizations to staff its workforce. For example, the Company utilized a professional employer organization "Workforce" at least in 2010. On December 3, 2011, the Company started using the professional employee organization Emplicity. These professional employee organizations handled employment applications and payroll documents for the Company. CFO Miller explained the Company would "interview and select the employee" and Emplicity "would have them sign the actual employment agreement and put them on the payroll." Miller testified Emplicity developed the application and employment documents utilized including the Comprehensive Agreement and Applicant's Statement of Agreement (CAASA) forms. Miller stated the Company had no input in drafting these documents but added he read over the CAASA forms after they were drafted. Miller testified that by the Company adopting and utilizing the CAASA forms it was not the Company's intention to interfere with the employees' right to assert group claims. Miller stated the Company no longer contracts with Emplicity and, has not since the expiration of that contractual relationship in 2012, utilized the CAASA forms. Miller explained the Company attempted to enforce the CAASA forms against Charging Party Haro in order to limit exposure to costs and it was also easier for the Company to handle individual claim cases. CFO Miller further explained the use of individual arbitration for claims is a "much less costly method to deal with claims against the Company."

### III. SOME PRELIMINARY CONTENTIONS AND FINDINGS

#### *A. The 10(b) Issue*

The Company contends the entire complaint here should be dismissed because it is time-barred in that it is based on events that occurred entirely outside the applicable limitations period. Section 10(b) of the Act requires that alleged violations of the Act occur within 6 months of the filing of a charge. The Company contends, correctly so, that the first date of allegations the Company violated the Act in the complaint is that "since on or about April 26, 2012" the Company has maintained a Comprehensive Agreement and Applicant's Statement and Agreement (CAASA) containing provisions that preclude employees from: arbitrating disputes as a class; requiring new and existing employees to execute CAASA forms providing that employees resolve all disputes arising out of employment through arbitration unless they opt out by checking a box on the CAASA forms' and, that the Company requires its new and existing employees to execute the CAASA forms which requires its employees to arbitrate their claims individually. The Company correctly notes Charging Party Haro signed his CAASA forms on December 29, 2011. The Company contends there is no showing it required any employees to sign the CAASA forms or that it actually hired any employees after April 26, 2012. The Company contends these seminal allegations of the complaint, upon which all other allegations are based, has not been established. The Company further contends that because the unfair labor practice relating to the enforcement of the CAASA agreements in the civil suit, filed on December 14, 2012, (*Gerardo Haro Guadarrama v. Nijjar Realty, Inc.* et al.) was "inescapable grounded" on events predating the 6-month limitations period, and as such, the entire complaint is barred by Section 10(b) of the Act.

I find the Company's 10(b) defense without merit. First it is clear, as testified to by CFO Miller, the Company continued to hire employees after December 29, 2011, and continued, at least for a time, to have new employees execute the CAASA forms. Second, again as testified to by CFO Miller, the Company made no effort, after it stopped using the professional employer Emplcity, to: rescind any of the agreements (CAASA forms) that had been instituted with employees by Emplicity; nor, did it seek to withdraw the arbitration component of the agreements previously signed by its employees as instituted by Emplicity; nor, did the Company seek to eliminate the waivers the employees entered into by signing the CAASA forms waiving their right to collective action or class related arbitration. I am persuaded the Company maintained the CAASA employment forms, singed by its employees on and after April 26, 2012. That the evidence establishes the Company continued to maintain the CAASA forms after April 26, 2012, is clearly demonstrated in that the Company still maintain Charging Party Haro's CAASA forms into mid-December 2012 even after Haro's employment with the Company had ended. The charge filed on October 25, 2012, was timely filed with respect to events on and after April 26, 2012. Even if one considers December 29, 2011, the date Charging Party Haro signed the CAASA employment forms, as the controlling date, the Company's 10(b) defense fails. The allegations are that the Company continued to maintain the CAASA forms on and after April 26, 2012. It is clear the Company maintained Haro's CAASA employment forms even as of December 14, 2012, when it utilized those forms in its defense to Haro's lawsuit. It is irrelevant when Haro signed the CAASA forms the Company continued to maintain, and in Haro's case utilize, because this is a continuing matter subject to an ongoing violation within the 10(b) period. Thus, the continued maintaining and enforcing of the CAASA forms within the 10(b) period establishes that this conduct and action by the Company is not inescapable grounded in pre-10(b) events and the Supreme Court's holding in *Local Lodge 1424 v. NLRB (Bryan Mfg.),* 362 U.S. 411 (1960), does not require a different result than what I reach here.

It is well established that unlawful rules maintained by an employer inside the 10(b) period can be found unlawful, even if executed, adopted or promulgated outside the 10(b) period. See, e.g., *Camey Hospital,* 350 NLRB 627, 640 (2007).

Having rejected the Company's 10(b) defense, I turn to other complaint allegations.

*B. The Company is responsible for the Comprehensive Agreement and Applicant's Statement of Agreement*

As noted elsewhere herein, the complaint alleges the Company violated Section 8(a)(1) of the Act by, since on or about, April 26, 2012, maintaining and requiring its employees to execute a Comprehensive Agreement and Applicant's Statement of Agreement (CAASA) forms which contains provisions precluding employees from participating in collective and class litigation to resolve disputes arising out of employment, and prohibits employees from arbitrating disputes as a class.

The CAASA employment application forms at issue here are part of the record and undisputed. I consider the Comprehensive Agreement and Applicant's Statement of Agreement to, in essence, constitute one inextricably intertwined employment application packet. Stated differently, at all applicable times here, employees, or applicants for employment, were required to sign both forms. On December 29, 2011, then current employees were required to execute the CAASA forms under the penalty of not being paid or allowed to continue working. As fully explained elsewhere, these CAASA forms were maintained at least until December 14, 2012, at which time the Company utilized Haro's forms in its state court action. To the extent the Company, advances as a defense, it was not responsible for the CAASA forms because the forms were formulated and drafted by the professional employer organization Emplicity, is totally without merit. First, the Applicants Statement of Agreement expressly refers to the Company here as the "Worksite Employer." Second, CFO Miller testified that while the Company had no input in formulating or drafting the CAASA employment forms, he read the forms and added that when the Company *utilized* and *adopted* the CAASA employment forms it was not the Company's intention to interfere with the employees' right to assert group claims. Clearly CFO Miller knew, and so testified, the Company adopted and utilized the CAASA forms crafted by Emplicity. CAASA forms were utilized in all hiring for the Company. I conclude and find, the Company is responsible for the content of the employment forms utilized for and/or by it.

IV. ANALYSIS OF CENTRAL ISSUES

The complaint alleges that since April 26, 2012, the Company has maintained a Comprehensive Agreement and Applicant's Statement and Agreement (CAASA) which contains provisions that precludes employees from participating in collective and class litigation to resolve disputes arising out of employment and prohibits employees form arbitrating disputes as a class and requires all new and existing employees to resolve all disputes arising out of employment through binding arbitration unless they opt out by checking a box in the Comprehensive Agreement and requires new and existing employees to arbitrate their claims individually. Additionally, it is alleged that as least since December 14, 2012, the Company has enforced the arbitration provisions regarding resolving disputes arising out of employment through binding arbitration as set forth in the CAASA forms by asserting it in litigation brought against the Company by the Charging Party in *Gerardo Haro Guadarrama v. Nijjar Realty, Inc.* et al and by filing a petition to compel plaintiffs to individually arbitrate their class wide wage and hour claims against the Company. The State Court, on March 6, 2013, adopted its tentative ruling to sever and stay the PAGA claims and to compel arbitration of the Charging Party's individual claims as to all remaining claims.

The Company, at trial, argued at length in a motion to dismiss that it considers *D. R. Horton,* supra wrongly decided and unenforceable. The Company, at trial, raised various asserted justifications including that numerous Federal and State court decisions, issued after D. *R. Horton*, have rejected the *D.R. Horton* rational of the Board. The Company renews here, its argument, that *D. R. Horton* was wrongly decided. I reject again the Company's request I find *D. R. Horton* wrongly decided. Such requested action must be made directly to the Board and not to me. I am bound by Board precedent, including *D. R. Horton*, unless and until the Supreme Court overturns it or the Board itself does so. I must, and do, follow *D. R. Horton.*

The overriding issue here is whether the Company's Comprehensive Agreement and Applicant's Statement of Agreement (CAASA) forms contain restrictive provisions that violates Section 8(a)(1) of the Act. In addressing the CAASA forms, I do not consider them to be separate documents, but, rather one inextricably intertwined employment document. The CAASA forms had to be signed by all current and new employees and were mandatory conditions of employment. As Charging Party Haro credibly testified, the 18 to 20 employed maintenance workers were required, on December 29, 2011, to sign the new CAASA forms or the Company "would not pay" or allow them to return to work unless they signed the CAASA forms "in a hurry" so they could go "back to work."

Looking further at the content of the CAASA forms, it is necessary to review the rules the Board has established for doing so.

In evaluating whether a rule applied to all employees, as a condition of continued employment, including the mandatory CAASA rules at issue here, violates Section 8(a)(1), the Board, as noted in *D. R. Horton Inc.*, at 4–6, applies its test set forth in *Lutheran Heritage Village-Livonia*, 343 NLRB 646 (2004), citing *U–Haul Co. of California,* 347 NLRB 375, 377 (2006), enfd. 255 Fed. Appx. 527 (D.C. Cir. 2007). Pursuant to *Lutheran Heritage* the inquiry, or test to be applied, is whether the rule explicitly restricts activities protected by Section 7 of the Act. If so, the rule is unlawful. If it does not explicitly restrict protected activity, the finding of a violation is dependent upon a showing of one of the following: (1) employees would reasonably construe the rule to prohibit Section 7 activity; (2) the rule was promulgated in response to union activity; or, (3) the rule has been applied to restrict the exercise of Section 7 rights.

Viewing the CAASA employment forms as a whole, I am fully persuaded a reasonable employee would read the rules as restricting his or her ability to resolve in concert employment disputes protected by Section 7 of the Act.

Counsel for the Government, in her posttrial brief, states the CAASA employment forms "are lawful in that they specifically exempt claims arising under the National Labor Relations Act", but, rather asserts the CAASA employment forms unlawfully restrict employees' ability to resolve employment-related issues in a protected concerted manner. Accordingly, I do not address

whether the CAASA employment forms could reasonably be construed as restricting employees' rights to file charges or claims with the National Labor Relations Board.

While I do not address whether the CAASA forms restricts or bars filing of Board charges, I do address whether the CAASA forms interferes with and restricts employees' from engaging in protected concerted conduct. In this regard, the Board in *D. R. Horton, Inc.,* supra at slip op. at 13, held an employer violates Section 8(a)(1) of the Act "by requiring employees to waive their right to collectively pursue employment-related claims in all forums, arbitral and judicial." The Board noted at. 10 "The right to engage in collective action—including collective *legal* action—is the core substantive right protected by the NLRA and is the foundation on which the Act and Federal labor policy rest."

Provisions of the CAASA employment forms, in part, state: "Employee . . . and Company, agree to utilize binding arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be related in any way to Employee's employment, including but not limited to termination . . . [and] . . . compensation." The rules, in part, further state: "This binding arbitration shall not be construed to allow or permit the Consolidation or joinder of other claims or controversies involving any other employees, and will not proceed as a class action, collective action, private attorney general action or any similar representative action. No arbitrator shall have the authority under this agreement to order any such class or representative action." Again in the CAASA forms it states; "I further agree and acknowledge that . . . the . . .[Company] and I will utilize binding arbitration to resolve all disputes that may arise out of the employment context." The CAASA forms conclude; in part, "I understand and agree to this binding arbitration provision . . ."

The CAASA employment forms clearly inhibits and interferes with Section 7 conduct, and, the Company's insisting its employees waive their right to pursue class actions in court, arbitration or any other forum as a condition of employment violates Section 8(a)(1) of the Act and I so find.

I reject the Company's contention the "opt-out" provision in the CAASA forms, allowing an employee to entirely opt-out of the waiver relating to the right to bring class and concerted actions, renders the waiver lawful under the *D. R. Horton* rational. Although I view the Comprehensive Agreement and the Applicant's Statement of Agreement to constitute one document and as such the waiver would, if valid, apply to both portions of the CAASA employment forms, I would, nonetheless, conclude the waiver is invalid even if applied to each portion separately.

I find the Company's "opt-out" policy has a reasonable tendency to chill employees from exercising their statutory rights because they are required to take an affirmative action simply to preserve Section 7 rights they already have. State differently, the CAASA waiver unlawfully compels, as a condition of employment, employees to affirmatively act (check an "opt-out" box at the end of a long paragraph, with little explanation, as to its far reaching effects) in order to maintain rights they already have under Section 7; for example, to exercise their substantive statutory right to bring collective or class claims. The CAASA waiver is also invalid because it imposes a waiver of Section 7 rights, or to "opt-out" at a time when the employees are unlikely to have an awareness of employment issues that may now, or in the future, be best addressed by collective or class action. Additionally the CAASA waiver violates public policy. While not precedent Judge Gerald M. Etchingham in *Gamestop Corp., Gamestop Inc., Sunrise Publications, Inc., and Gamestop Texas LTD. (L.P.)* JD(SF)–42–13 WL– (August 29, 2013) spoke to why such waivers violates public policy. Judge Etchingham explained, and I adopt his rational, that a waiver, such as the one here, violates public policy because such waivers operate as a prospective waiver of employees rights to pursue future concerted conduct in the form of collective class action(s). I am persuaded the Company, by imposing an immediate and affirmative requirement on Charging Party Haro and his coworkers, in a hurried setting, to sign the CAASA waiver simply to maintain their statutory Section 7 rights, or forever lose them, interfered with Haro and his coworkers exercise of those statutory rights.

In summary, I find, the "opt-out" provision of the CAASA employment forms does not render the waiver of class and collective action voluntary; but, rather unlawfully burdens employees requiring them to prospectively trade away their statutory right to engage in collective or class actions, including litigation in any forum, that may arise in the future. I note the Board has long held employees may not be required to prospectively trade away their statutory rights. *Ishikawa Gasket American, Inc.,* 337 NLRB 175, 176 (2001).

Contrary to the Company's contention the Federal Arbitration Act (FAA) does not preclude a finding the CAASA waiver is invalid. The Board in *D. R. Horton, Inc.* concluded that finding restrictions on class or collective actions unlawful under the NLRA would not necessarily conflict with the FAA. The Board recognized it must be mindful of any conflicts between the terms or policies of the Act and those of other federal statues, including the FAA. The Board explained that where possible conflict exists, it is required, when possible, to undertake a "careful accommodation" of the two statues, citing, *Southern Steamship Co. v. NLRB*, 316 U.S. 31, 47 (1942). The Board concluded such accommodation does not mean that the Act must automatically yield to the FAA—or the other way around. The Board explained that when two Federal statues are capable of coexisting both should be given effect absent a clearly expressed congressional intent to the contrary. The Board in *D. R. Horton, Inc.* noted arbitration agreements may be invalidated, in whole or in part, for any grounds that exist at law or in equity for the revocation of any contract, including that the agreement is contrary to public policy. The Board in *D. R. Horton, Inc.,* held that if it considered the policies underlying the FAA and the NLRA as part of the balancing test required to determine if a term of a contract is against public policy and invalid under section 2 of the FAA; or, as a part of the accommodation analysis required in *Southern Steamship,* its conclusion would be the same; that an employer violates the NLRA by requiring employees, as a condition of employment, to waiver their right to pursue collective redress in both judicial and arbitral forums and it also accommodates policies underlying both the NLRA and the FAA to the greatest extent possible.

In summary on this point, the FAA does not preclude a finding that, the wavier here is invalid.

The Company contends two Supreme Court cases decided after *D. R. Horton, Inc.,* are controlling and that the waiver here must be found valid. One case, *American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304 (2013), involved merchants who accepted American Express cards and in their agreement with American Express agreed to arbitrate disputes arising between them and American Express and further precluded any claims from being arbitrated on a class action basis. The merchants, nonetheless, filed a class action suit against American Express contending their agreement with American Express violated federal antitrust statues. The merchants contended waiving class arbitration made their agreement with American Express invalid and unenforceable because the cost of individually arbitrating a Federal statutory claim would exceed any potential recovery. In response to the merchant's suit, American Express moved to enforce the individual arbitration agreement terms pursuant to provisions of the FAA. The Supreme Court rejected the merchants' position and held arbitration is a matter of contract agreement between the parties and the FAA precludes courts from invalidating a contractual waiver of class arbitration simply because the cost of individually arbitrating a Federal statutory claim exceeds any potential recovery.

The other case the Company relies on; *CompuCredit Corp. v. Greenwood* 132 S.Ct 665, 669 (2012), involved actions brought by consumers against the marketer of credit cards and the issuing bank, alleging fees that were charged in connection with the credit cards violated the Federal Credit Repair Organization Act (CROA). The Court held that CROA provisions requiring credit repair organizations to disclose to consumers their right to sue for violations of CROA and prohibiting waiver of that right did not preclude enforcement of the arbitration agreement the parties had also executed. The Supreme Court held the FAA required the parties' arbitration agreement to be enforced according to its terms. The court specifically concluded that even when the claims at issue are Federal statutory claims, the FAA's mandate cannot be overridden unless "overridden by a contrary congressional command." The Company here argues there is no such "command" in the NLRA and the Board has no authority to declare the arbitration agreement here invalid.

The two Supreme Court cases above address consumer rights and contract language, and, in my opinion, have absolutely nothing to do with unilaterally imposed arbitration agreements in the context of employee—employer relationships. The cases do not discuss how, if at all, the FAA may be applied to alter, by private arbitration agreements, the core substantive rights protected by the NLRA which are the foundation on which the NLRA and all Federal labor law rests. It goes without saying the core issue before me is whether the Company may, by private arbitration agreement imposed on its employees, restrict the right of its employees to engage in concerted or class activities recognized and protected by Section 7 of the Act. I have elsewhere here concluded the Company cannot lawfully do so and nothing in the subsequent Supreme Court decisions compels a different conclusion than I make.

Did the Company, as alleged in the complaint, violate Section 8(a)(1) of the Act when it enforced the arbitration provisions by asserting them in litigation brought against it by Charging Party Haro in *Gerardo Haro Guadarrama v. Nijjar Realty et al* by filing a petition to compel Haro and other plaintiffs to individually arbitrate their class wide wage and hour claims against the Company? The answer is clearly yes.

The Company asserts, in its posttrial brief, Haro was not engaging in "protected concerted activity" when he filed his litigation in *Gerardo Haro Guadarrama v. Nijjar Realty et al*. The Company asserts Haro was not involved in any group action when he filed his class action lawsuit because, as he testified, he did not even know what a class action lawsuit was, and, did not seek the support of others before filing the suit. The Company's arguments are without merit. The Board in *D. R. Horton Inc.* held that filing a class action is protected concerted activity. The Board in so holding relied on *Meyers Industries,* 281 NLRB 882, 887 (1986), for the proposition that the actions of a single employee, such as Haro here, are protected, if the employee "seek[s] to initiate or to induce or to prepare for group action." *D. R. Horton, Inc.,* slip op. at 4. The Board further held "an individual who files a class or collective action . . . in court . . . seeks to initiate or induce group action and is engaged in conduct protected by Section 7." The . . . fact Charging Party Haro may not have understood all the ramifications of a class action lawsuit, or even what constituted a class action suit is not controlling. Haro and various coworkers discussed the lawsuit after it was filed. The filing of a class action lawsuit to address wages, hours, and other terms and conditions of employment, as was the case here, constitutes protected activity, unless done with malice or in bad faith of which there is none demonstrated here.

I find the Company's action of filing its petition to compel Haro and his coworkers to individually arbitrate their classwide wage and hour claims violated Section 8(a)(1) of the Act

## CONCLUSIONS OF LAW

1. The Company, Nijjar Realty, Inc., d/b/a Pama Management is, and has been, an employer engaged in commerce within the meaning of Section 2(6) and (7) of the Act.

2. By maintaining mandatory requirements in its employment applications, Comprehensive Agreement and Applicant's Statement of Agreement (CAASA), that waives the right of its employees to maintain class of collective actions in all forums, judicial or arbitral, the Company has engaged in unfair labor practices affecting commerce within the meaning of Section 2(6) and (7) of the Act and has violated Section 8(a)(1) of the Act.

3. By enforcing the arbitration provisions set forth in the Comprehensive Agreement and Applicant's Statement and Agreement by asserting them in litigation brought against the Company in *Gerardo Haro Guadarrama v. Nijjar Realty, Inc.* et al by filing a petition to compel plaintiffs to individually arbitrate their class wide wage and hour claims against the Company, the Company has engaged in unfair labor practices affecting commerce within the meaning of Section 2(6) and (7) of the Act and has violated Section 8(a)(1) of the Act.

### REMEDY

Having found the Company has engaged in certain unfair labor practices, I shall recommend that it cease and desist therefrom and take certain affirmative actions designated to effectuate the policies of the Act.

I recommend the Company be ordered to rescind, modify or revise its Comprehensive Agreement and Applicant's Statement of Agreement (CAASA) to clearly inform its employees that the agreement does not constitute a waiver in all forums of their right to maintain employment-related class or collective actions and notify its employees the CAASA forms have been rescinded, modified or revised and provide a copy of the modified or revised agreements to all employees. If the Company has ceased using the CAASA forms it is to review each employee's personnel file, and remove any CAASA documents remaining in the personnel files of its employees and destroy the documents. The Company shall timely notify each employee of the removable and destruction of the CAASA forms.

I recommend the Company be required to reimburse Charging Party Haro for any litigation and related expenses, with interest, todate and in the future, directly related to the Company's filing its petition (*Gerardo Haro Guadarrama v. Nijjar Realty, Inc.,* et al*)* in the Superior Court of California, Los Angeles County. Determining the applicable rate of interest on the reimbursement will be as outlined in *New Horizons*, 283 NLRB 1173 (1987), (adopting the Internal Revenue Service rate for underpayment of Federal taxes). Interest on all amounts due to Charging Party Haro shall be computed on a daily bases as prescribed in *Kentucky River Medical Center*, 356 NLRB 8 (2010). This remedy is specifically to include any direct legal and other expenses incurred with respect to any State court ordered individual arbitration proceedings. See *Federal Security Inc*., 359 NLRB No. 1, slip op at 14 (2012).

I recommend the Company be required to, upon request, file a joint motion with Charging Party Haro to vacate the State Court Order compelling arbitration, if a motion to vacate can still be timely filed, that the Superior Court of California, Los Angeles County, (*Gerardo Haro Guadarrama v. Nijjar Realty, Inc.* et al) issued on March 6, 2013. See *Federal Security Inc*.,supra.

I lack authority to direct the Superior Court of California to vacate its Order; however, the Government has other venues in which it may seek such relief.

On these findings of fact and conclusions of law and on the entire record, I issue the following recommended[5]

### ORDER

The Company, Nijjar Realty, Inc. d/b/a Pama Management, El Monte, California, it officers, agents, successors, and assigns, shall

1. Cease and desist form

(a) Maintaining mandatory requirements in its employment application documents, Comprehensive Agreement and Applicant's Statement of Agreement (CAASA) forms, that waives employees' right to maintain class or collective actions in all forums; arbitral and judicial.

(b) Enforcing such agreements by filing petition(s) in any court to compel individual arbitration, pursuant to the terms of the CAASA forms.

(c) In any like or related manner, interfering with, restraining, or coercing employees in the exercise of their right under the Act.

2. Take the following affirmative action designed to effectuate the policies of the Act.

(a) Within 7 calendar days after the Board enters its Decision, upon request of Charging Party Haro, file with the Superior Court of California Los Angeles County in *Gerardo Haro Guadarrama v. Nijjar Realty, Inc. et al,* a motion to withdraw its petition to compel individual arbitration pursuant to the terms of the CAASA documents and to request the Superior Court vacate its Order of March 6, 2013, compelling arbitration, if such a motion to vacate can still be timely filed.

(b) Reimburse Charging Party Haro for all legal and other expenses incurred in defending the Superior Court of California, Los Angeles petition filed by the Company in *Gerardo Haro Guadarrama v. Nijjar Realty, Inc. et al* including all expenses incurred related to the court's order compelling arbitration to date, and in the future, with interest as described in the remedy section of this decision.

(c) Rescind, modify or revise the Comprehensive Agreement and Applicant's Statement of Agreement to ensure its employees that the CAASA forms do not contain or constitute a waiver in all forums of their right to maintain employment-related class or collective actions.

(d) Notify its employees of the rescinded, modified or revised CAASA forms and provide a copy of the modified or revised CAASA forms to each employee and notified each employee that the original CAASA forms have been removed from their personnel records and destroyed.

(e) Within 14 days after service by the Region, post at its El Monte, California facility, as well as all its California locations, copies of the notice marked "Appendix."[6] Copies of the notice, on forms provided by the Regional Director for Region 21, after being signed by the Company's authorized representative, shall be posted by the Company and maintained for 60 consecutive days in conspicuous places including all places where notices to employees are customarily posted. Reasonable steps shall be taken by the Company to ensure that the notices are not altered, defaced, or covered by any other material. In addition to the physical posting of paper notices, notices shall be distributed electronically, such as email, posting on an intranet or an internet site, or other electronic means, if the Company customarily communicates with its employees by such means. In the event that, during the pendency of these proceedings, the Com-

[5] If no exceptions are filed provided by Section 102.46 of the Board's Rules and Regulations, the findings, conclusions, and recommended Order shall, as provided in Section 201.48 of the Rules, be adopted by the Board and all objections to them shall be deemed waived for all purposes.

[6] If this Order is enforced by a judgment of a United States court of appeals, the words in the notice reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

pany has gone out of business or closed the facility involved in these proceedings, the Company shall duplicate and mail, at its own expense, a copy of the notice to all current employees and former employees employed by the Company at any time since April 26, 2012.

Dated at Washington, D.C., December 4, 2013.

APPENDIX
NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

Choose representatives to bargain with us on your behalf

Act together with other employees for your benefit and protection

Choose not to engage in any of these protected activities.

WE WILL NOT maintain or enforce our Comprehensive Agreement and Applicant's Statement of Agreement (CAASA) forms that waives employees' right to maintain class or collective action in all forums, arbitral and judicial.

WE WILL NOT enforce or attempt to enforce such agreements by filing a petition(s) in any court to compel you to individually arbitrate your wage and hour and other collective action lawsuits or arbitrations.

WE WILL NOT in any like or related manner, interfere with, restrain, or coerce employees in the exercise of their rights under the Act.

WE WILL within 7 days after the Board Order, upon request of Charging Party Haro, file a joint motion to vacate the State Court Order issued on March 6, 2013, if such a motion can still be timely filed, in *Gerardo Haro Guadarrama v. Nijjar Realty, Inc.* et al Case number BC487199.

WE WILL reimburse Charging Party Haro any legal and other expenses incurred related to our motion to compel arbitration or any other legal or arbitration action related to that motion, plus interest, as described in the remedy section of this decision.

WE WILL rescind, modify or revise our Comprehensive Agreement and Applicant's Statement of Agreement forms to make it clear to our employees that our CAASA forms do not constitute a waiver in all forums of your right to maintain employment-related class or collective actions.

WE WILL notify our employees we have rescinded, modified, or revised our CAASA forms and provide each a copy of the revised or modified CAASA forms.

NIJJAR REALTY, INC., D/B/A PAMA MANAGEMENT

# Exhibit D

*NOTICE: This opinion is subject to formal revision before publication in the bound volumes of NLRB decisions. Readers are requested to notify the Executive Secretary, National Labor Relations Board, Washington, D.C. 20570, of any typographical or other formal errors so that corrections can be included in the bound volumes.*

**Bristol Farms** ***and*** **Konny Renteria.** Case 21–CA–103030

November 25, 2015

ORDER

BY CHAIRMAN PEARCE AND MEMBERS MISCIMARRA AND MCFERRAN

The Respondent has filed a Motion to Approve Unilateral Settlement, seeking a Board Order approving its proposed Settlement Agreement, Notice, and revised Arbitration Agreement. The General Counsel, responding to the Board's issuance of a Notice to Show Cause why the Respondent's motion should not be granted, opposes the Respondent's motion.

The National Labor Relations Board has delegated its authority in this matter to a three-member panel. The Board has reviewed the submissions of the parties and the proposed settlement agreement and finds that approving the Respondent's motion would not effectuate the purposes of the National Labor Relations Act. The motion is therefore denied.

This case was transferred to the Board after Administrative Law Judge Lisa Thompson issued her October 17, 2014 decision. The judge found that the Respondent violated Section 8(a)(1) of the Act by: (1) maintaining and enforcing a mandatory Mutual Agreement to Arbitrate (MAA), and enforcing the MAA by moving to compel individual arbitration of the Charging Party's class-action lawsuit pertaining to wages, and (2) maintaining the MAA, which employees would reasonably construe to restrict their right to file charges with the Board. In finding the violations, the judge relied on the Board's decisions in *D. R. Horton, Inc.*, 357 NLRB No. 184 (2012), enf. denied in relevant part, 737 F.3d 344 (5th Cir. 2013), and *Lutheran Heritage Village-Livonia*, 343 NLRB 646 (2004).

To remedy these violations, the judge ordered the Respondent to: (1) rescind or revise the MAA to clarify to employees that it does not constitute a waiver in all forums of their right to maintain employment-related class or collective actions, and that the MAA does not bar or restrict their right to file charges with the Board; (2) notify employees of the rescinded or revised agreements; (3) reimburse the Charging Party for litigation expenses directly related to the Respondent's filing of its motion to compel arbitration; and (4) post a notice.

Thereafter, the Respondent and the Region participated in the Board's Alternative Dispute Resolution Program. The Respondent proposed a Settlement Agreement, in which it agrees to post a Notice and offers a revised Arbitration Agreement (AA). The AA differs from the MAA by including in the AA document: (1) "SIGNING THIS AGREEMENT IS OPTIONAL," (2) an explicit class and collective action waiver,[1] and (3) language clarifying that employees may access the Board and its processes. The Region rejected the Respondent's proposed settlement, contending that "the General Counsel's current position on this issue is that an employer cannot maintain in effect for its current employees an arbitration agreement which waives the right to engage in class litigation, even if the agreement is entered into voluntarily." The Respondent then filed its Motion to Approve Unilateral Settlement Agreement.

The Respondent contends that because its proposed AA is "truly optional," it does not fall within the proscriptions of *Murphy Oil USA, Inc.*, 361 NLRB No. 72 (2014), enf. denied ___ F.3d ___(5th Cir. 2015), and *D. R. Horton, Inc.*, above, which addressed the lawfulness of "mandatory" class waivers, "imposed upon" employees and "required" by employers "as a condition of employment." See *D. R. Horton*, slip op. at 13 fn. 28. Deciding an issue left open by *D. R. Horton*, the Board has now rejected this argument, holding that an arbitration agreement that precludes collective action in all forums is unlawful even if entered into voluntarily, because it requires employees to prospectively waive their Section 7 right to engage in concerted activity. See *On Assignment Staffing Services*, 362 NLRB No. 189, slip op. at 1, 5–8 (2015). The Board there held that "such non-mandatory agreements are contrary to the National Labor Relations Act and to fundamental principles of federal labor policy." Id., slip op. at 6.

We are not persuaded by our dissenting colleague's view that *D. R. Horton*, *Murphy Oil*, and *On Assignment*, were wrongly decided and thus that the Respondent's motion should be granted. Because the Board has addressed our colleague's current arguments before—in responding to his dissent and then-Member Johnson's dissent in *Murphy Oil* and to then-Member Johnson's dissent in *On Assignment Staffing*—our response here can be brief.

The main premise of our colleague's position—that the right to pursue joint, class, or collective claims arising in

[1] The proposed AA makes binding arbitration the "exclusive remedy" for employment-related claims except for certain enumerated claims (now including "claims arising under the [NLRA]") and explicitly waives an employee's right to "commence, be a party to, or act as a class member in any class or collective action against the other party relating to employment issues [….and the] right to commence or be a party to any group, class, or collective action in arbitration or any other forum."

the workplace is not a *substantive* right under Section 7 of the Act—contradicts longstanding Board and judicial precedent, as demonstrated at length in *D. R. Horton* and *Murphy Oil*.[2] Nor is our colleague correct when he insists that Section 9(a) of the Act requires the Board to permit individual employees to prospectively waive their Section 7 right to engage in concerted legal activity. As the *Murphy Oil* Board carefully explained, the Section 9(a) proviso has no bearing in cases like this one. It merely permits an employer to entertain individual grievances without violating its duty to bargain collectively under Section 8(a)(5) of the Act—where a collective-bargaining agreement permits as much.[3] Contrary to our colleague, the Section 7 right to refrain from engaging in protected concerted activity is not implicated here. In preventing *employers* from enforcing agreements by individual employees not to exercise their statutory rights to engage in concerted activity, the Board does not require *employees* to act collectively. Rather, it permits them to do so in cases (like this one) where they have chosen to do so, notwithstanding their prior (invalid) agreement.[4]

It is a bedrock principle of federal labor law and policy that agreements in which individual employees purport to give up the statutory right to act concertedly for their mutual aid or protection are void. As the Board explained in *On Assignment Staffing*,[5] that principle is reflected not simply in the Board's case law, but also in the decisions of the Supreme Court[6] and in the Norris-LaGuardia Act, which broadly proscribes "any undertaking or promise . . . in conflict with the public policy" of that statute and which anticipated the National Labor Relations Act in guaranteeing the right of employees to engage in "concerted activities for the purpose of . . . mutual aid or protection," including "[b]y all lawful means aiding any person participating or interested in any labor dispute who . . . is prosecuting any action or suit."[7] Accordingly, and notwithstanding other provisions of the Respondent's proposed Settlement Agreement intended to comply with the judge's Order, we deny its motion. The due date for filing exceptions to the judge's decision is 28 days from the date of this Order.[8]

Dated, Washington, D.C. November 25, 2015

Mark Gaston Pearce, Chairman

Lauren McFerran, Member

(SEAL) NATIONAL LABOR RELATIONS BOARD

MEMBER MISCIMARRA, dissenting.

I would grant the Respondent's motion and approve its proposed Settlement Agreement, Notice, and revised Arbitration Agreement. As explained in my partial dissent in *Murphy Oil USA, Inc.*, 361 NLRB No. 72, slip op. at 22–35 (2014), enf. denied in pert. part __ F.3d __, 2015 WL 6457613 (5th Cir. Oct. 26, 2015), I believe Section 8(a)(1) of the National Labor Relations Act (NLRA or Act) does not vest authority in the Board to dictate any particular procedures pertaining to the litigation of non-NLRA claims, nor does the Act entitle employees to class-type treatment of such claims. Whether an agreement to waive class or collective litigation of non-NLRA claims is or is not enforceable is an issue exclusively within the province of the courts or other tribunals that are vested with jurisdiction over such claims. Id.[1]

Not only does the Board lack jurisdiction over procedural issues pertaining to non-NLRA claims, several other considerations make it particularly inappropriate for

---

[2] See, e.g., *Murphy Oil*, 361 NLRB No. 72, slip op. at 7–8; *D. R. Horton*, 357 NLRB No. 184, slip op. at 2–4, 10. Our colleague states that "it is clear the NLRA creates no substantive right for employees to insist on class-type treatment of non-NLRA claims." To be sure, the Board consistently has taken care to point out that what Sec. 7 protects is the right to "*pursue* . . . such claims of a class or collective nature as may be available to them under Federal, State or local law." *D. R. Horton*, slip op. at 10 fn. 24 (emphasis added). "[T]here is no Section 7 right to class certification . . ." Id. at 10. See also *Murphy Oil*, 361 NLRB No. 72, slip op. at 2, 5 fn. 30, 9 fn. 44.

[3] 361 NLRB No. 72, slip op. at 17–18, citing *Emporium Capwell Co. v. Western Addition Community Organization*, 420 U.S. 50 (1975) (Sec. 7 did not protect effort by union-represented minority employees to bargain separately with employer).

[4] Cf. *Murphy Oil*, supra, 361 NLRB No. 72, slip op. at 18 (prohibition of mandated individual arbitration does not implicate right to refrain).

[5] 362 NLRB No. 189, slip op. at 5–8.

[6] *J. I. Case Co. v. NLRB*, 321 U.S. 332 (1944) (holding that individual employees' agreements pre-dating certification of union did not limit scope of employer's statutory duty to bargain with union); *National Licorice Co. v. NLRB*, 309 U.S. 350 (1940) (invalidating agreement that effectively required employees to present grievances to employer individually).

[7] 29 U.S.C. §§102–104.

[8] We reject the General Counsel's argument that the Respondent, by pursuing its motion, failed to timely file exceptions.

[1] In addition, where, as here, a class-waiver provision is part of an agreement to arbitrate disputes, the Federal Arbitration Act (FAA) applies. For the reasons expressed in my *Murphy Oil* partial dissent, and those thoroughly explained in former Member Johnson's partial dissent in *Murphy Oil*, the FAA requires that the arbitration agreement be enforced according to its terms. See 361 NLRB No. 72, slip op. at 34 (Member Miscimarra, dissenting in part); id., slip op at 49–58 (Member Johnson, dissenting in part).

the Board to declare unlawful the revised Arbitration Agreement in this case.

First, as my colleagues acknowledge, the revised Agreement explicitly states that employees may file Board charges or otherwise access the Board's processes, and it excludes from mandatory arbitration any claims arising under the NLRA.

Second, the revised Agreement has no effect whatsoever unless an employee voluntarily chooses to sign it. Employees may freely elect *not* to sign the Agreement. Because the revised Agreement merely offers employees the opportunity to "opt in" to the Agreement and has no effect unless an employee chooses to do so, it is even more clearly lawful under the NLRA than the voluntary "opt-out" arrangement at issue in *On Assignment Staffing Services*, 362 NLRB No. 189 (2015),[2] and the class waiver agreement at issue in *Murphy Oil* (which employees voluntarily signed, although the agreement contained no "opt-out" provision and employees were not given the choice of being employed without signing the agreement).

Certainly, as my colleagues state, the Board has now held (in divided opinions) that an "arbitration agreement that precludes collective action in all forums is unlawful even if entered into voluntarily." However, I believe Sections 7 and 9(a) of the NLRA render this proposition untenable. As discussed in my partial dissenting opinion in *Murphy Oil*,[3] NLRA Section 9(a) protects the right of every employee as an "individual" to "present" and "adjust" grievances "at any time."[4] The Act's legislative history shows that Congress intended to preserve every individual employee's right to "adjust" any employment-related dispute with his or her employer.[5] This right clearly encompasses agreements as to *procedures* that will govern the adjustment of such disputes, including agreements to waive class-action treatment. This aspect of Section 9(a) is reinforced by Section 7 of the Act, which protects each employee's right to "refrain from" exercising the collective rights enumerated in Section 7.

I believe it is clear that the NLRA creates no substantive right for employees to insist on class-type treatment of non-NLRA claims,[6] and a class-waiver agreement pertaining to non-NLRA claims does not implicate any NLRA rights or obligations (provided it contains no provision that interferes with the right to engage in concerted activity for the purpose of mutual aid or protection).[7] The Respondent's revised Arbitration Agreement is lawful under Section 8(a)(1) for these reasons alone. However, even if employees were deemed to have an NLRA-protected right to insist on the class-type treatment of non-NLRA claims, the Respondent's revised Agreement is clearly lawful because (i) Section 7 gives every employee the right "to refrain" from NLRA-protected activity; (ii) Section 9(a) gives every employee the right "at any time" to adjust his or her non-NLRA disputes on an individual basis and thus the right to agree to waive class-type dispute-adjustment procedures;[8] and (iii) the Respondent's revised Agreement does not have any effect on any employee unless he or she affirmatively

---

[2] For the reasons expressed in my partial dissenting opinion in *Murphy Oil* and in former Member Johnson's dissenting opinions in *Murphy Oil* and *On Assignment Staffing Services*, I believe an "opt-out" arrangement involving non-NLRA class waivers, such as the agreement at issue in *On Assignment Staffing Services*, is also lawful under NLRA Sec. 8(a)(1).

[3] *Murphy Oil*, 361 NLRB No. 72, slip op. at 30–34 (Member Miscimarra, dissenting in part).

[4] Sec. 9(a) states: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That *any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted*, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment." (Emphasis added.)

[5] See *Murphy Oil*, 361 NLRB No. 72, slip op. at 31–32 (Member Miscimarra, dissenting in part).

[6] When courts have jurisdiction over non-NLRA claims that are potentially subject to class treatment, the availability of class-type procedures does not rise to the level of a substantive right. See *D. R. Horton, Inc. v. NLRB*, 737 F.3d 344, 362 (5th Cir. 2013) ("The use of class action procedures . . . is not a substantive right.") (citations omitted); *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 332 (1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims.").

[7] I agree that non-NLRA claims can give rise to "concerted" activities engaged in by two or more employees for the "purpose" of "mutual aid or protection," which would come within the protection of NLRA Sec. 7. See *Murphy Oil*, 361 NLRB No. 72, slip op. at 23–25 (Member Miscimarra, dissenting in part). However, the existence or absence of Sec. 7 protection does not depend on whether non-NLRA claims are pursued as a class action, but on whether Sec. 7's statutory requirements are met—an issue separate and distinct from whether an individual employee chooses to pursue a claim as a class or collective action. Id.

[8] It is significant that Sec. 9(a) protects the right of every employee to present and adjust his or her own individual grievances, even in a unionized work setting. The Act states that individual employees may adjust their grievances "*without the intervention of the bargaining representative*" (provided that the adjustment is not "inconsistent with the terms of a collective-bargaining contract or agreement then in effect" and that "the bargaining representative has been given opportunity to be present at such adjustment"). Sec. 9(a) (emphasis added). Given that employees have a protected right to agree to resolve employment disputes on an individual basis even when they are represented by a union, it is even clearer that individual employees have the same right when they are not represented by a union. See *Murphy Oil*, 361 NLRB No. 72, slip op. at 33–34 (Member Miscimarra, dissenting in part).

chooses to sign it, and employees are free to decline to do so.

It is worth noting that the courts have been nearly uniform in rejecting the Board's invalidation of mandatory arbitration agreements containing class action waivers, even when those agreements contain neither an "opt-in" procedure (as in the Respondent's revised Agreement here) nor an "opt-out" procedure (as in *On Assignment Staffing Services*).[9] The Board's position is even less defensible when the Board finds that NLRA "protection" operates in reverse—not to *protect* employees' rights to engage or refrain from engaging in certain kinds of collective action, but to *divest* employees of those rights by denying them the right *to choose* whether to be covered by an agreement to arbitrate non-NLRA claims on an individual basis.[10] Moreover, the Board finds that Congress intended to divest employees of this right even when employees are unrepresented by a union, when they are free to sign or not sign such an agreement, and when choosing not to sign such an agreement has no adverse impact on their employment. Indeed, when an individual's potential claim is covered by a lawsuit that has been certified as a class or collective action, the individual has the right either to opt out (for example, where the lawsuit is subject to Rule 23 of the Federal Rules of Civil Procedure) or opt in (for example, in a wage-hour collective action under the Fair Labor Standards Act). In my view, it makes no sense to find that Congress intended, when enacting the NLRA, to make these same choices unlawful.

As explained above, I believe the Act itself renders these findings untenable. Rather than divesting employees of these rights, Congress twice expressed its intention to protect the right of employees to make such a choice: in Section 7, which guarantees employees the right to "refrain" from collective action, and in Section 9(a), which guarantees every employee the right "at any time" to present and adjust his or her grievances individually, and thus to enter into agreements with employers providing for their adjustment on an individual basis.

Accordingly, for these reasons, I respectfully dissent.

Dated, Washington, D.C. November 25, 2015

Philip A. Miscimarra, Member

NATIONAL LABOR RELATIONS BOARD

---

[9] The Fifth Circuit denied enforcement of the Board's order in *D. R. Horton, Inc.*, 357 NLRB No. 184 (2012), the first case in which the Board invalidated a mandatory arbitration agreement that waived class-type treatment of non-NLRA claims. See *D. R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013). The overwhelming majority of courts considering the Board's position have likewise rejected it. See *Murphy Oil*, 361 NLRB No. 72, slip op. at 34 (Member Miscimarra, dissenting in part); id., slip op. at 36 fn. 5 (Member Johnson, dissenting).

[10] Of course, employees may favor agreements providing for arbitration of non-NLRA claims, even if such agreements require the resolution of claims on an individual basis, based on the speed, informality and certainty associated with arbitration, among other advantages. Such potential benefits were among the reasons that Congress adopted the Federal Arbitration Act, which the overwhelming majority of courts have broadly enforced in cases involving class action waivers, notwithstanding the Board's contrary position. See fn. 9, supra.

# Exhibit E

*NOTICE: This opinion is subject to formal revision before publication in the bound volumes of NLRB decisions. Readers are requested to notify the Executive Secretary, National Labor Relations Board, Washington, D.C. 20570, of any typographical or other formal errors so that corrections can be included in the bound volumes.*

**Convergys Corporation *and* Hope Grant.** Cases 14–CA–075249 and 14–CA–083936

November 30, 2015

DECISION AND ORDER

BY CHAIRMAN PEARCE AND MEMBERS MISCIMARRA AND MCFERRAN

On October 25, 2012, Administrative Law Judge Arthur J. Amchan issued the attached decision. The Respondent filed exceptions and a supporting brief, the General Counsel and Charging Party filed answering briefs, and the Respondent filed a reply brief. The General Counsel filed cross-exceptions and a supporting brief, and the Respondent filed an answering brief.

The National Labor Relations Board has considered the decision and the record in light of the exceptions, cross-exceptions, and briefs and has decided to affirm the judge's rulings, findings, and conclusions as modified below and to adopt the judge's recommended Order as modified and set forth in full below.

1. We affirm the judge's finding that the Respondent violated Section 8(a)(1) by maintaining a requirement that employees waive their right to litigate employment-related disputes on a class or collective basis. As more fully set forth in the judge's decision, the Respondent required all job applicants, as a condition of employment, to agree that they would pursue any claim or lawsuit relating to their employment on an individual basis, "and will not lead, join, or serve as a member of a class or group of persons bringing such a claim or lawsuit." As this is a workplace rule, we treat it as the Board treats other unilaterally implemented workplace rules by analyzing it under the test set forth in *Lutheran Heritage Village-Livonia*, 343 NLRB 646 (2004). Under this test, a work rule will be found unlawful if it explicitly restricts activities protected by Section 7. Id. at 646.[1] The Respondent's rule explicitly does this. It states plainly and unambiguously that employees may not pursue any lawsuit against the Respondent as part of a class or group of persons. The Board has long and consistently held, with uniform judicial approval, that the Act protects the right of employees to join together to improve their terms and conditions of employment through litigation.[2] Accordingly, by requiring employees to waive their right to engage in class or group litigation as a condition of employment, the Respondent has interfered with their Section 7 right and violated Section 8(a)(1) of the Act.[3]

[1] If the rule does not explicitly restrict Sec. 7 activity, the Board may additionally find a violation if: (1) employees would reasonably construe the rule to prohibit Sec. 7 activity; (2) the rule was promulgated in response to union activity; or (3) the rule has been applied to restrict the exercise of Sec. 7 rights. Id. at 647.

[2] See *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565–566 (1978) (holding that Sec. 7 protects employees' efforts to improve their working conditions "through resort to administrative and judicial forums"); *U Ocean Palace Pavilion, Inc.*, 345 NLRB 1162, 1170 (2005) (finding employees' joint wage-and-hour lawsuit protected concerted activity); *Le Madri Restaurant*, 331 NLRB 269, 275–276 (2000) (same); *Trinity Trucking & Materials Corp.*, 221 NLRB 364, 365 (1975) (same), enfd. mem. 567 F.2d 391 (7th Cir. 1977), cert. denied 438 U.S. 914 (1978); *Salt River Valley Water Users Assn.*, 99 NLRB 849, 853–854 (1952) (finding that Sec. 7 protects employee's circulation of petition among coworkers, designating him as their agent to seek back wages under the Fair Labor Standards Act ("FLSA")), enfd. 206 F.2d 325 (9th Cir. 1953); *Spandsco Oil & Royalty Co.*, 42 NLRB 942, 948–949 (1942) (finding employees' joint FLSA suit protected concerted activity). See also *Beyoglu*, 362 NLRB No. 152, slip op. at 2 (2015) (individual employee's filing of an employment-related class or collective action is "an attempt to initiate, to induce, or to prepare for group action and is therefore conduct protected by Section 7.").

[3] In *D. R. Horton, Inc*., 357 NLRB No. 184 (2012), enf. denied in relevant part 737 F.3d 344 (5th Cir. 2013) and *Murphy Oil USA, Inc*., 361 NLRB No. 72 (2014), enf. denied in relevant part __F.3d __ , No. 14–60800, 2015 WL 6457613 (5th Cir. Oct. 26, 2015), the Board applied the *Lutheran Heritage* test to find unlawful similarly imposed rules that waived employees' Sec. 7 right to pursue employment claims on a class or collective basis. The unlawful waivers in those cases were set forth in arbitration agreements. The instant case, however, does not involve an arbitration agreement or, accordingly, implicate any issues involving the Federal Arbitration Act.

We reject our dissenting colleague's argument that the class action waiver agreement here entails a voluntary exercise of a job applicant's right to refrain from pursuing collective actions and to pursue individual adjustment of grievances with the Respondent. We note that the Respondent does not even make this argument. The judge found, and the Respondent acknowledges in its brief, that signing the job applications containing the collective litigation waiver was a condition of employment for all applicants. They could either "agree" to the waiver or not be employed. Under these circumstances, the waiver was a mandatory condition of employment and thus unlawful. But even if the waiver was not mandatory, it would still be unenforceable. See *On Assignment Staffing Services,* 362 NLRB No. 189, slip op. at 8 (2015) (explaining that "Federal labor law and policy . . . prohibit agreements in which employees prospectively waive their right to engage in concerted activity for mutual aid or protection"). Contrary to our dissenting colleague, our finding that the class action waiver is unlawful does not "operate[ ] in reverse" of Sec. 7 protections by denying employees the choice of refraining from engaging in collective pursuit of their employment claims. *Bristol Farms*, 363 NLRB No. 45, slip op. at 1–2 (2015).

The dissent also maintains that the Act does not "dictate" that employees are entitled to class or other particular treatment of non-NLRA claims. This is surely correct, as the Board has previously explained. See, e.g., *Murphy Oil*, supra, 361 NLRB No. 72, slip op. at 2. But what our colleague ignores is that the Act does "create[] a right to *pursue* joint, class, or collective claims if and as available without the interference of an employer-imposed restraint." Id. at 16–17. The Respondent's waiver is just such an unlawful restraint.

2. We also affirm the judge's finding that the Respondent violated Section 8(a)(1) by enforcing its mandatory waiver through its motion to strike the class and collective allegations in a lawsuit filed by employee (and Charging Party) Hope Grant. Grant filed a class and collective action in Federal district court, alleging that the Respondent was violating the FLSA and state wage-hour law. The Respondent filed a motion to strike the class and collective claims, citing the waiver described above. The court denied the Respondent's motion on the basis that the waiver violated the Act. *Grant v. Convergys Corp.,* No. 4:12–CV–496, 2013 WL 781898 (E.D. Mo. 2013).[4]

In finding that the Respondent violated Section 8(a)(1) by enforcing the waiver through its motion to strike, the judge purported to apply *D. R. Horton*. That case, however, presented no enforcement issue. It is well settled that an employer violates Section 8(a)(1) by enforcing a rule that unlawfully restricts Section 7 rights. See *Bigg's Foods*, 347 NLRB 425 (2006) (finding unlawful the respondent's enforcement of no solicitation/no distribution rule). See also *Murphy Oil,* supra, slip op. at 19 and cases cited therein. That is precisely what the Respondent did here through its motion to strike.[5] As the Supreme Court held long ago, the Board has the authority to prevent an employer from taking any benefit from "contracts which were procured through violation of the Act and which are themselves continuing means of violating it, and from carrying out any of the contract provisions, the effect of which would be to infringe the rights guaranteed by the National Labor Relations Act." *National Licorice Co. v. NLRB,* 309 U.S. 350, 365 (1940) (enforcing Board order requiring employer to cease enforcing individual contracts under which employees waived rights under the Act); cf. *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83 (1982) ("[A] federal court has a duty to determine whether a contract violates federal law before enforcing it."). Our determination that the Respondent violated the Act by its enforcement, in court, of the unlawful waiver is consistent with these fundamental principles.[6]

ORDER

The National Labor Relations Board orders that the Respondent, Convergys Corporation, Hazelwood, Missouri, its officers, agents, successors, and assigns, shall

Cease and desist from

(a) Maintaining and/or enforcing a provision in its job applications that requires employees to waive their right to pursue employment-related claims or lawsuits as class, collective, or joint actions.

(b) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Rescind, nationwide, the provision in its job applications that requires employees and applicants to agree to pursue employment-related claims or lawsuits as individuals and not to lead, join, or serve as a member of a

[4] The court subsequently certified the question of whether the waiver was enforceable for interlocutory appeal. *Grant v. Convergys Corp.,* No. 4:12–CV–496, 2013 WL 1342985 (E.D. Mo. 2013). The Eighth Circuit dismissed the appeal in an unreported 2014 order (No. 13–2094).

[5] We reject our dissenting colleague's view that the Respondent's motion to strike was protected by the First Amendment's Petition Clause. In *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731 (1983), the Court identified two situations in which a lawsuit enjoys no such First Amendment protection: where the action is beyond a State court's jurisdiction because of Federal preemption, and where "a suit . . . has an objective that is illegal under federal law." 461 U.S. at 737 fn. 5. Thus, the Board may properly restrain litigation efforts such as the Respondent's motion to strike that have the illegal objective of limiting an employee's exercise of Sec. 7 rights and enforcing an unlawful contractual provision, even if the litigation was otherwise meritorious or reasonable. See *Murphy Oil*, supra, slip op. at 20–21.

[6] On September 8, 2014, Charging Party Grant filed a request to withdraw her charge in this case, asserting that the wage-hour claims alleged in her class action lawsuit against the Respondent were settled pursuant to a non-Board Settlement Agreement and Release of Claims. On June 8, 2015, the Board issued an Order denying the request because the settlement did not provide a remedy for the unfair labor practices found by the judge. We take administrative notice that the Federal district court entered an order dismissing Grant's lawsuit with prejudice on February 3, 2014, in accordance with its "December 9, 2013 order approving the class action settlement agreement."

Because the lawsuit has been dismissed, we find it unnecessary to order the Respondent, as in *Murphy Oil* (at 21–22), to remedy the Sec. 8(a)(1) enforcement violation by notifying the court that it no longer opposes Grant's lawsuit. However, it is not clear from the settlement agreement whether Grant was reimbursed for attorneys' fees and expenses, if any, that she may have incurred in opposing the Respondent's unlawful enforcement of its waiver through its motion to strike her lawsuit. Accordingly, consistent with our decision in *Murphy Oil*, supra, at 21, we shall amend the judge's remedy and order the Respondent, to the extent that it has not done so pursuant to the settlement agreement, to reimburse Grant for all reasonable expenses and legal fees, with interest, incurred in opposing the Respondent's unlawful motion. See *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731, 747 (1983) ("If a violation is found, the Board may order the employer to reimburse the employees whom he had wrongfully sued for their attorneys' fees and other expenses" as well as "any other proper relief that would effectuate the policies of the Act."). Interest shall be computed in the manner prescribed in *New Horizons*, 283 NLRB 1173 (1987), compounded daily as prescribed in *Kentucky River Medical Center*, 356 NLRB No. 8 (2010). See *Teamsters Local 776 (Rite Aid*), 305 NLRB 832, 835 fn. 10 (1991) ("[I]n make-whole orders for suits maintained in violation of the Act, it is appropriate and necessary to award interest on litigation expenses"), enfd. 973 F.2d 230 (3d Cir. 1992), cert. denied 507 U.S. 959 (1993).

class or group of persons bringing such a claim or lawsuit.

(b) Notify all applicants and current and former employees, nationwide, that the above-described waiver agreements have been rescinded and are no longer in force.

(c) In the manner set forth in this decision, reimburse Grant for any reasonable attorneys' fees and litigation expenses that she may have incurred in opposing the Respondent's motion to strike her class and collective claims.

(d) Within 14 days after service by the Region, post at its Hazelwood, Missouri facility copies of the attached notice marked "Appendix A" and at all its other facilities nationwide copies of the attached notice marked "Appendix B."[7] Copies of the notices, on forms provided by the Regional Director for Region 14, after being signed by the Respondent's authorized representative, shall be posted by the Respondent and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted. In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means. Reasonable steps shall be taken by the Respondent to ensure that the notices are not altered, defaced, or covered by any other material. If the Respondent has gone out of business or closed the facility involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, a copy of the notice marked "Appendix A" to all current employees and former employees employed by the Respondent at its Hazelwood, Missouri call center at any time since August 23, 2011.

(e) Within 21 days after service by the Region, file with the Regional Director for Region 14 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

[7] If this Order is enforced by a judgment of a United States court of appeals, the words in the notices reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

Dated, Washington, D.C. November 30, 2015

Mark Gaston Pearce, Chairman

Lauren McFerran, Member

(SEAL) NATIONAL LABOR RELATIONS BOARD

MEMBER MISCIMARRA, dissenting.

This case involves an employment agreement that incorporates a waiver of class and collective procedures in pursuit of legal claims unrelated to the National Labor Relations Act ("NLRA" or "Act"). In this respect, the employment agreement here resembles the class-action waiver agreement invalidated by the Board majority in *Murphy Oil USA, Inc.*, 361 NLRB No. 72 (2014), enf. denied in relevant part __F.3d__, No. 14–60800, 2015 WL 6457613 (5th Cir. Oct. 26, 2015). However, the agreement in *Murphy Oil* also provided for the arbitration of non-NLRA claims, which therefore implicated the Federal Arbitration Act ("FAA"). The class-action waiver here does *not* provide for arbitration of non-NLRA claims, and this renders the FAA inapplicable.

Nonetheless, for the same reasons described at length in my partial dissenting opinion in *Murphy Oil*,[1] I dissent from my colleagues' finding that the Respondent's employment agreement—specifically, the waiver of class-type procedures regarding non-NLRA claims—constitutes interference with or restraint or coercion of employees' right to engage in protected concerted activity in violation of NLRA Section 8(a)(1). In this regard, I emphasize the following points.

First, I agree that the NLRA protects employees from retaliation when they engage in concerted activity for the purpose of mutual aid or protection. Two or more employees enjoy Section 7 protection when they engage in activity that satisfies the requirements set forth in that section of the Act: first, "concerted" activity (i.e., activity "engaged in with or on the authority of other employees, and not solely by and on behalf of the employee himself" or, where the activity involves only a speaker and a listener, speech "engaged in with the object of ini-

[1] *Murphy Oil*, above, 361 NLRB No. 72, slip op. at 22–35 (Member Miscimarra, dissenting in part). As noted above in the text, Respondent's class-action waiver agreement does not provide for mandatory arbitration of non-NLRA claims, which renders the FAA inapplicable. Therefore, I do not rely here on Part D of my *Murphy Oil* partial dissent (id., slip op. at 34) pertaining to the FAA.

tiating or inducing or preparing for group action"), and second, a "purpose" of "mutual aid or protection."[2] As stated in my *Murphy Oil* partial dissent, this can include protected concerted activities in connection with non-NLRA claims (or potential claims) asserted against an employer or union.[3]

Second, Congress did not vest the Board with the authority to dictate any particular *procedures* under which non-NLRA claims are to be litigated, nor does the Act entitle employees to class-type treatment of such claims. To the contrary, as explained in my *Murphy Oil* partial dissent, I believe it is clear that Congress contemplated that procedural matters involving non-NLRA claims would be governed by the applicable statutes or laws governing such claims, supplemented by whatever additional procedural rules were authorized or adopted by Congress, State legislatures, or the courts and/or agencies vested with jurisdiction over such claims.

Third, even if employees had an NLRA-protected right to insist on the class-type treatment of non-NLRA claims, the NLRA would also protect the right of employees *not* to bring such claims on a class or group basis. In this regard, Section 7 of the Act gives every employee the right "to refrain" from NLRA-protected collective activity, which would give every employee a right to litigate non-NLRA claims individually rather than through class or collective actions. Moreover, Section 9(a) of the Act protects the right of every employee "at any time" to present and adjust grievances on an "individual" basis, and this right to resolve non-NLRA disputes at any time as an individual necessarily permits employees to enter into agreements waiving class or collective procedures in connection with their non-NLRA claims.[4] An employee's exercise of this right, which is affirmatively protected under the Act, cannot reasonably be deemed a violation of the same statute.

In the instant case, consistent with these principles, the Respondent's employees agreed that they would pursue any non-NLRA claims relating to their employment on an individual basis.[5] Charging Party Hope Grant signed such an agreement in September 2011. In 2012, however, Grant filed a class and collective action against the Respondent in the United States District Court for the Eastern District of Missouri, alleging violations of the Fair Labor Standards Act and state wage-and-hour law. There is no allegation that the Respondent took any job-related action against Grant based on her filing this lawsuit. In Grant's non-NLRA court case, the Respondent moved to strike Grant's class- and collective-action claims based on her agreement that such claims would be litigated individually.[6]

For the above reasons and those stated in my *Murphy Oil* partial dissent, I believe the Board lacks authority to find that Respondent's actions violated Section 8(a)(1) of the NLRA, and I also believe Respondent's motion to strike Grant's class- and collective-action claims is protected by the First Amendment's Petition Clause. See *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731 (1983); *BE & K Construction Co. v. NLRB,* 536 U.S. 516

---

[2] See *Meyers Industries*, 268 NLRB 493, 497 (1984) *(Meyers I)*, remanded sub nom. *Prill v. NLRB*, 755 F.2d 941 (D.C. Cir. 1985), cert. denied 474 U.S. 948 (1985); *Meyers Industries*, 281 NLRB 882, 887 (1986) *(Meyers II)*, affd. sub nom. *Prill v. NLRB*, 835 F.2d 1481 (D.C. Cir. 1987), cert. denied 487 U.S. 1205 (1988); *Mushroom Transportation Co. v. NLRB*, 330 F.2d 683, 685 (3d Cir. 1964).

[3] For examples of protected concerted activities pertaining to non-NLRA claims, see my partial dissent in *Murphy Oil*, above, 361 NLRB No. 72, slip op. at 24–25.

[4] Sec. 9(a) states: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That *any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted*, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment." (Emphasis added.)

[5] The class-action waiver agreements were voluntarily signed, even though Respondent was willing to hire employees or continue their employment only if they entered into the agreements. For my colleagues, however, the voluntariness of such a waiver is also immaterial. They indicate that "even if the waiver was not mandatory, it would still be unenforceable." See *On Assignment Staffing Services*, 362 NLRB No. 189 (2015) (finding class-action waiver agreement unlawful even where employees are free to opt out of the agreement); *Bristol Farms*, 363 NLRB No. 45 (2015) (finding class-action waiver agreement unlawful even where employees must affirmatively opt *in* before they will be covered by a class-action waiver agreement, and where they are free to decline to do so). By definition, every agreement sets forth terms upon which each party may insist as a condition to entering into the relationship governed by the agreement. Thus, conditioning employment on the execution of a class-action waiver does not make it involuntary. However, the Board's position is even less defensible when the Board finds that NLRA "protection" operates in reverse—not to *protect* employees' rights to engage or refrain from engaging in certain kinds of collective action, but to *divest* employees of those rights by denying them the right *to choose* whether to be covered by an agreement to litigate non-NLRA claims on an individual basis. See *Bristol Farms*, above, slip op. at 3–4 (Member Miscimarra dissenting).

[6] The court denied the Respondent's motion on the basis that the agreement violated the Act. *Grant v. Convergys Corp.,* No. 4:12–CV–496, 2013 WL 781898 (E.D. Mo. 2013), reconsideration denied, motion to certify interlocutory appeal granted 2013 WL 1342985 (E.D. Mo. 2013), appeal dismissed No. 13–2094 (8th Cir. 2014). The district court subsequently dismissed Grant's lawsuit with prejudice on February 3, 2014, in accordance with its "December 9, 2013 order approving the class action settlement agreement."

(2002); *Murphy Oil,* above, slip op. at 33–35 (Member Miscimarra, dissenting in part). Even though Respondent's motion was denied, this determination was properly made by the court vested with jurisdiction over the Charging Party's lawsuit, subject to potential appeal under the non-NLRA statute(s) applicable to that lawsuit. Additionally, one cannot reasonably suggest that the Respondent lacked a reasonable basis for its motion, given the multitude of court decisions that have enforced class waivers similar to Respondent's agreement.[7]

Accordingly, I respectfully dissent.

Dated, Washington, D.C. November 30, 2015

______________________________

Philip A. Miscimarra, Member

NATIONAL LABOR RELATIONS BOARD

APPENDIX A

NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

Choose representatives to bargain with us on your behalf

Act together with other employees for your benefit and protection

Choose not to engage in any of these protected activities.

WE WILL NOT maintain and/or enforce a provision in our job applications that requires you to waive your right to pursue employment-related claims or lawsuits as class, collective or joint actions.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights set forth above, which are guaranteed you by Section 7 of the National Labor Relations Act.

WE WILL rescind the provision in our job applications that requires employees to agree to pursue employment-related claims or lawsuits as individuals and not to lead, join, or serve as members of a class or group of persons bringing such a claim or lawsuit.

WE WILL notify all our employees that the above-described waiver agreements have been rescinded and are no longer in force.

WE WILL reimburse Hope Grant for any reasonable attorneys' fees and litigation expenses that she may have incurred in opposing our motion to strike her class and collective allegations.

CONVERGYS CORPORATION

The Board's decision can be found at www.nlrb.gov/case/14-CA-075249 or by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20570, or by calling (202) 273–1940.

---

[7] See, e.g., *Owen v. Bristol Care, Inc.,* 702 F.3d 1050, 1055 (8th Cir. 2013); *Sutherland v. Ernst & Young LLP,* 726 F.3d 290 (2d Cir. 2013). The Fifth Circuit denied enforcement (in relevant part) of the Board's order in *D. R. Horton, Inc.*, 357 NLRB No. 184 (2012), the first case in which the Board invalidated an agreement that waived class-type treatment of non-NLRA claims. See *D. R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013). The Fifth Circuit recently reaffirmed its rejection of the Board's position in *Murphy Oil*, above. The overwhelming majority of other courts considering the Board's position have likewise rejected it. See *Murphy Oil*, above, 361 NLRB No. 72, slip op. at 34 (Member Miscimarra, dissenting in part); id., slip op. at 36 fn. 5 (Member Johnson, dissenting) (collecting cases). To be sure, the agreements at issue in those cases typically provided for arbitration, and the FAA and Supreme Court decisions enforcing the FAA provide additional grounds for rejecting the Board's holding in *D. R. Horton* and *Murphy Oil*. But aside from the decision of the district court in *Grant v. Convergys Corp.*, above, I am unaware of any court decision invalidating a class-action waiver agreement, such as Respondent's, that does not include an arbitration agreement. Indeed, another Federal district court *granted* Respondent's motion to strike class and collective claims based on an agreement identical in all relevant respects to the one at issue here. *Palmer v. Convergys Corp.*, No. 710–cv–145, 2012 WL 425256 (M.D. Ga. 2012).

Even if the Respondent has not defended its position by invoking the First Amendment, the Respondent did file an opposition to the General Counsel's request for attorneys' fees—a remedy my colleagues grant. For the reasons expressed in the text, I believe such a remedy "is unwarranted in the circumstances presented here." *Murphy Oil,* above, slip op. at 35 (Member Miscimarra, dissenting in part).

APPENDIX B

NOTICE TO EMPLOYEES

POSTED BY ORDER OF THE

NATIONAL LABOR RELATIONS BOARD

An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

Choose representatives to bargain with us on your behalf

Act together with other employees for your benefit and protection

Choose not to engage in any of these protected activities.

WE WILL NOT maintain a provision in our job applications that requires you to waive your right to pursue employment-related claims or lawsuits as class, collective or joint actions.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights set forth above, which are guaranteed you by Section 7 of the National Labor Relations Act.

WE WILL rescind the provision in our job applications that requires employees to agree to pursue employment-related claims or lawsuits as individuals and not to lead, join, or serve as members of a class or group of persons bringing such a claim or lawsuit.

WE WILL notify all our employees that the above-described waiver agreements have been rescinded and are no longer in force.

CONVERGYS CORPORATION

The Board's decision can be found at www.nlrb.gov/case/14-CA-075249 or by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20570, or by calling (202) 273–1940.

*Rotimi Solanke, Esq*. for the General Counsel.

*Raymond D. Neusch, Esq. (Frost Brown Todd, LLC),* of Cincinnati, Ohio, for the Respondent.

*Mark A. Potashnick, Esq. (Weinhaus & Potashnick*), of St. Louis, Missouri, for the Charging Party.

DECISION

STATEMENT OF THE CASE

ARTHUR J. AMCHAN, Administrative Law Judge. This case was submitted to me upon a stipulated record pursuant to the parties' joint motion. Hope Grant, the Charging Party, filed the charges giving rise to this case on February 23, and June 26, 2012. The General Counsel issued the complaint in this case on July 31, 2012.

On the entire record and after considering the briefs filed by the General Counsel, Respondent and the Charging Party, I make the following

FINDINGS OF FACT

I. JURISDICTION

Respondent is an Ohio corporation, with offices in Cincinnati, Ohio and places of business in many other states, including a call center in Hazelwood, Missouri.[1] Respondent performed services valued in excess of $50,000 in states other than Ohio in the year prior to the issuance of the complaint. Respondent admits, and I find, that it is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

II. ALLEGED UNFAIR LABOR PRACTICES

On about September 16, 2011, Hope Grant completed and submitted an application for employment with Respondent at its Hazelwood, Missouri call center. The form she submitted contained a waiver of the right to a jury trial, a waiver of any statute of limitations longer than 6 months and the following clause:

> 9. I further agree that I will pursue my claim or lawsuit relating to my employment with Convergys (or any of its subsidiaries or related entities) as an individual, and will not lead, join, or serve as a member of a class or group of persons bringing such a claim or lawsuit.

Respondent has required all applicants for a job at Convergys to sign this waiver as a condition of their employment since at least August 2011. Respondent hired Grant as a customer service representative in September 2011.

On March 16, 2012, Grant, individually and on behalf of the employees at Respondent's Hazelwood call center, filed a civil suit against Respondent in the United States District Court, Eastern District of Missouri. The complaint alleged that Respondent was violating the Fair Labor Standards Act (FLSA), 29 U.S.C. Section 201 et seq. The class action complaint alleges that Grant and other similarly situated customer service representatives perform preparatory activities and other related

[1] This case was consolidated with two charges filed by employees of the Valdosta, Georgia call center, which were withdrawn pursuant to a settlement agreement and then severed from the instant matter.

work activities that are integral and indispensable for them to perform their customer service duties. These include booting up computers, logging into and out of various computer programs and applications, and reading company communications. The complaint further alleges that Respondent does not pay employees for this time, in violation of the FLSA.

On June 22, 2012, Respondent filed a motion to strike the class and collective allegations in the FLSA suit. It argues that Grant and other employees had waived their right to bring any collective claims or suits pertaining to their employment. Grant's attorneys filed a memorandum in opposition to this motion to strike.

ANALYSIS

The General Counsel alleges that Respondent is violating Section 8(a)(1) of the Act by requiring job applicants to waive their rights to file collective lawsuits, by enforcing these waivers by filing the motion to strike the class and collective allegations of Grant's suit and defending against the class and collective allegations of Grant's suit on the basis of the waiver she signed.

Administrative Law Judges of the National Labor Relations Board are bound to follow Board precedent which neither the Board nor the Supreme Court has reversed, notwithstanding contrary decisions by courts of appeals, *Waco, Inc.,* 273 NLRB 746, 749 fn.14 (1984).

The parties appear to recognize that I am bound by the Board's decision in *D. R. Horton, Inc.,* 357 NLRB No. 184 (2012), which is pending before the United States Court of Appeals for the Fifth Circuit. Respondent submits that the Board wrongly decided that case. However, unless it is materially distinguishable from the instant case, I am bound to conclude that Respondent violated the Act as alleged.[2]

In *D. R. Horton,* the Board held that, "employers may not compel employees to waive their NLRA right to collectively pursue litigation of employment claims in *all* forums, arbitral and judicial," (slip opinion page 12 and 13). Thus, despite the fact that the *D. R. Horton* decision concerned a mandatory arbitration agreement, rather than a lawsuit which waived the employees' rights to maintain a class or collective action, it is clearly dispositive of this case. Indeed, the Board's order specifically requires *D. R. Horton* to cease and desist from "maintaining a mandatory arbitration agreement that waives the right to maintain class or collective actions in all forums, whether arbitral or judicial."

In footnote 28 at page 13 of the decision, the Board stated that it was not reaching the more difficult question of whether an employer can require employees, as a condition of employment to waive their right to pursue class or collective action in court so long as the employees retain the right to pursue class claims in arbitration. Since Respondent's employees did not have recourse to arbitration of their grievances, this does not present an issue in this case.

Respondent argues that this case is distinguishable because Hope Grant was a job applicant, not an employee within the meaning of the Act, when she signed the waiver. However, that is simply incorrect. Applicants for employment are employees within the meaning of section 2(3) of the NLRA, *Phelps Dodge Corporation v NLRB,* 313 US 177 (1944); *NLRB v. Town & Country Electric, Inc.,* 516 US 85, 88 (1995). Moreover, Ms. Grant was working for Respondent when she exercised the right found by the Board in *D.R. Horton* to file a class action lawsuit.

Finally, Respondent argues that even assuming that employees may have a Section 7 right to file or participate in a class action lawsuit, an employer does not violate the Act in seeking dismissal of the class action suit on the basis of a waiver such as the one it requires its job applicants to execute. The Board's discussion at page 6 of the *D.R. Horton* decision convinces me otherwise. The Board explicitly rejected the rationale of a General Counsel memo which indicated that while employees are free to bring employment-related class action lawsuits, the employer may seek to have the suit dismissed on the ground that the employees executed a valid waiver.

Respondent's brief at page 10 cites footnote 24 at page 10 of the Board's *D.R. Horton* decision in support of its argument that an employer does not commit an unfair labor practice by merely opposing a plaintiff's motion for class certification. I read footnote 24 as standing for the proposition that an employer remains free to assert arguments against certification other than those based on the kind of waiver Respondent required of job applicants in this case.[3]

CONCLUSIONS OF LAW

By maintaining and enforcing a mandatory provision in its employment applications that waives the right to maintain class or collective actions in all forums, the Respondent has engaged in unfair labor practices affecting commerce within the meaning of Section 2(6) and (7) of the Act and has violated Section 8(a)(1) of the Act.

REMEDY

Because the Respondent utilized the waiver herein on a corporate-wide basis, I shall recommend that the Respondent be ordered to post a notice at all locations where the waiver is in effect. See, e.g., *U-Haul Co. of California*, 347 NLRB 375 fn. 2 (2006), enfd. 255 Fed. Appx. 527 (D.C. Cir. 2007).

On these findings of fact and conclusions of law and on the entire record, I issue the following recommended[4]

ORDER

The Respondent, Convergys, Cincinnati, Ohio, and Hazelwood, Missouri, its officers, agents, successors, and assigns, shall:

[2] I also believe it is not within my authority to opine as to whether the *D.R. Horton* is procedurally infirm, as Respondent contends.

[3] *D.R. Horton* does not prevent an individual employee from a non-coercive waiver of his or her right to participate in a class action lawsuit. It does hold that a waiver obtained by the employer as a condition of employment to be a violation of the NLRA.

[4] If no exceptions are filed as provided by Sec. 102.46 of the Board's Rules and Regulations, the findings, conclusions, and recommended Order shall, as provided in Sec. 102.48 of the Rules, be adopted by the Board and all objections to them shall be deemed waived for all purposes.

1. Cease and desist from

(a) Maintaining a mandatory requirement in its employment applications that waives employees' right to maintain class or collective actions in all forums.

(b) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed to them by Section 7 of the Act.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Rescind or revise its employment applications to make it clear to employees that the application does not constitute a waiver in all forums of their right to maintain employment-related class or collective actions.

(b) Notify the employees of the rescinded or revised application to include providing them a copy of the revised application or specific notification that provisions waiving their right to maintain employment-related class or collective actions has been rescinded.

(c) Within 14 days after service by the Region, post at its facility at Hazelwood, Missouri, and any other facility where the waiver provisions have been in effect, copies of the attached notice marked "Appendix." Copies of the notice, on forms provided by the Regional Director for Region 14 after being signed by the Respondent's authorized representative, shall be posted by the Respondent and maintained for 60 consecutive days in conspicuous places including all places where notices to employees are customarily posted. In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, or other electronic means, if the Respondent customarily communicates with its employees by such means. Reasonable steps shall be taken by the Respondent to ensure that the notices are not altered, defaced, or covered by any other material. In the event that, during the pendency of these proceedings, the Respondent has gone out of business or closed the facility involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, a copy of the notice to all current employees and former employees employed by the Respondent at any time since August 23, 2011.

(d) Within 21 days after service by the Region, file with the Regional Director for Region 14 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

Dated, Washington, D.C., October 25, 2012

APPENDIX

NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

Choose representatives to bargain with us on your behalf

Act together with other employees for your benefit and protection

Choose not to engage in any of these protected activities.

WE WILL NOT require you as a condition of your employment to waive the right to maintain class or collective actions in all forums.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights guaranteed you by Section 7 of the Act.

WE WILL rescind or revise our employment application to make it clear to employees that the application and their acceptance of employment do not constitute a waiver of the right in all forums to maintain class or collective actions.

WE WILL notify all employees who were subject to these waivers that we are no longer maintaining and enforcing this waiver. WE WILL provide these employees with either a revised employment application or specific notification that the waiver has been rescinded.

CONVERGYS CORP.