UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | **ED CV 14-1766 DMG (DTBx)** | | Date | January 22, 2016 |

| | | | | |
|---|---|---|---|---|
| Title | ***David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.*** | | Page | 1 of 30 |

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| None Present | None Present |

Proceedings:  **IN CHAMBERS - ORDER RE DEFENDANTS' MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS, AND DISMISS CLASS AND REPRESENTATIVE CLAIMS [22]**

## I.
## PROCEDURAL BACKGROUND

On July 22, 2014, Plaintiff David L. Totten filed an amended complaint in San Bernardino County Superior Court, alleging the following causes of action:  (1) failure to pay wages for all hours worked at the minimum wage rate, in violation of Cal. Lab. Code §§ 1194 and 1197; (2) failure to pay overtime wages for daily overtime and all time worked, in violation of Cal. Lab. Code §§ 510, 1194, and 1198; (3) failure to provide second meal periods or pay meal period premium wages, in violation of Cal. Lab. Code §§ 512 and 226.7; (4) failure to provide complete and accurate wage statements, in violation of Cal. Lab. Code § 226; (5) failure to timely pay all earned wages due at the time of separation of employment, in violation of Cal. Lab. Code §§ 201, 202, and 203; (6) unfair business practices, in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*; and (7) civil penalties under the Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 *et seq.*  [Doc. # 1-1.]  On August 27, 2014, Defendants removed the action to federal court.  [Doc. # 1.]

Defendants Kellogg Brown & Root, LLC ("KBR") and Molycorp, Inc. ("Molycorp") currently have a motion to compel arbitration and dismiss or stay the action pending before this Court.  ("Def. Motion") [Doc. # 22.]  For the reasons set forth below, Defendants' motion to compel arbitration of individual claims, and dismiss class and representative claims, is **GRANTED in part** and **DENIED in part**.  Defendants' motion to compel arbitration is **GRANTED** as to Plaintiff's individual claims.
//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | ***David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.*** | Page | 2 of 30 |
|---|---|---|---|

## II.
## FACTUAL BACKGROUND

On January 16, 2012, KBR hired Totten.  *See* Bynum Decl. ¶ 6 [Doc. # 22-1 at 1-3.] Totten worked for KBR at the Mountain Pass rare earth mine in California, where KBR provided services to Molycorp, Inc.  *Id.* ¶¶ 2, 6.

At his new hire orientation on January 16, Totten signed an acknowledgment of and agreement to KBR's Dispute Resolution Program ("DRP") as a condition of his employment. *See id.* ¶ 9, Exh. B ("Signature Page") [Doc. # 22-1 at 38.]  Totten contends, however, that he was not given a copy of any of the American Arbitration Association ("AAA") or Judicial Arbitration and Mediation Services ("JAMS") rules referenced in the DRP Agreement.  Totten Decl. ¶ 3 [Doc. #23-1].

The DRP Agreement requires employees to arbitrate their claims against KBR and third parties, including KBR's clients such as Molycorp:

> This Program is intended to be for the benefit of the Company's clients, customers, contractors, and vendors, who are intended third-party beneficiaries of this Dispute Resolution Plan.  The mandatory arbitration provisions of this Plan shall be applicable to all Disputes between Employees and the Company's clients, customers, contractors, and vendors, who shall have the right to enforce the provisions of the Plan.

*See id.* ¶ 5, Exh. A ("DRP Agreement") § 3C [Doc. # 22-1 at 4-37.]  The agreement to arbitrate also "applies to and binds the Company" as well as "each Employee and Applicant."  *Id.* § 3B.

Furthermore, the scope of the DRP Agreement encompasses "all legal and equitable claims . . . with respect to . . . [t]he employment . . . of an Employee, including but not limited to the terms, conditions, or termination of such employment . . . [or] any other matter related to or concerning the relationship between the Employee and [KBR]."  *Id.* § 2E(4).

The DRP Agreement also bars KBR, employees, and applicants from pursuing claims on a class, collective, or representative basis:

> Each Dispute shall be arbitrated on an individual basis. *Neither the Company nor any Employee or Applicant may pursue any Dispute on a class action, collective*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | ***David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.*** | Page | 3 of 30 |
|---|---|---|---|

> *action or consolidated basis or in a representative capacity on behalf of other persons or entities who are claimed to be similarly situated, or participate as a class member in such a proceeding.* The arbitrator in any proceeding under this Plan shall have no authority to conduct the matter as a consolidated, class, or collective action.

*Id.* § 4B(i) (emphasis added). The agreement further states:

> If the procedural limitation in subparagraph B(i) of this section is held unenforceable by a court in a proceeding in which a party seeks to pursue a class or collective action or otherwise act in a representative capacity, then this Plan shall not apply with respect to that class or representative action which shall proceed instead before the court. If the court, however, ultimately denies the party's request to proceed on a class, collective or representative basis, then the party's individual claim(s) shall be subject to this Plan and referable to arbitration pursuant to the Plan's terms.

*Id.* § 4B(ii). The agreement also contains provisions addressing modification, discovery costs, and attorneys' fees. *Id.* §§ 6, 31C, 8B, 8D.

KBR terminated Totten's employment on or around June 24, 2014. Bynum Decl. ¶ 10.

**III.**
**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 1744, 179 L. Ed. 2d 742 (2011). The FAA reflects "both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *Id.* at 1745 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)). "The FAA mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (*en banc*) (internal quotation omitted). "The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* (internal quotation omitted). "Upon being satisfied that the issue involved in such suit or proceeding is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | ***David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.*** | Page | 4 of 30 |
|---|---|---|---|

referable to arbitration under . . . an agreement," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.

"Section 2 of the FAA contains a savings clause, which provides that arbitration agreements are 'enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2). The savings clause "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746 (internal quotation omitted).

Federal substantive law governs questions concerning the interpretation and enforceability of arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22-24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Courts apply ordinary state law contract principles, however, "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . ." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). As long as an arbitration clause is not itself invalid under "generally applicable contract defenses, such as fraud, duress, or unconscionability," it must be enforced according to its terms. *Concepcion*, 131 S. Ct. at 1746.

"When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Chavez v. Bank of Am.*, 2011 WL 4712204, at *3 (N.D. Cal. Oct. 07, 2011) (citing *Perez v. Maid Brigade*, *Inc.*, 2007 WL 2990368, at *3 (N.D. Cal. Oct. 7, 2007)).

**IV.**
**DISCUSSION**

Defendants move to compel arbitration of Totten's individual claims on the ground that they are encompassed within their valid agreement to submit disputes to the KBR DRP. They also seek to dismiss Totten's class and representative claims as they are barred by the DRP Agreement. In opposition, Totten asserts that he never agreed to arbitrate under the DRP. And even if he did, Totten maintains that the arbitration agreement is unenforceable because it is unconscionable. In addition, Totten argues that the DRP Agreement's class action waiver is unenforceable because it interferes with his right to engage in protected concerted action under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 5 of 30 |
|---|---|---|---|

the National Labor Relations Act ("NLRA"), 29 U.S.C § 151 *et seq*.  Finally, Totten contends that the DRP Agreement's representative action waiver cannot be enforced as to his PAGA claims.

**A.      Mutual Assent**

The parties do not dispute that, if the agreement is valid, it encompasses Totten's claims.  Rather, the parties disagree that a valid agreement exists.  Under California law, a contract is valid if there is mutual assent between the parties and valid consideration.  *Div. of Labor Law Enforcement v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268, 275, 137 Cal. Rptr. 855 (1977).

Totten contends that he never assented to the agreement because he was never given a copy of, or access to, the KBR arbitration agreement at or before the time he signed it. ("Plaintiff's Opp.") [Doc. # 23 at 13.]  KBR has submitted evidence that its practice is to brief new employees on the DRP, provide new employees with a copy of the DRP's rules, and read aloud the DRP's rules to them.  *See* Bynum Decl. ¶ 8.  Totten disputes that this occurred when he was hired.  Nonetheless, it is undisputed that Totten signed the agreement acknowledging that he had "received and reviewed a copy of the KBR Dispute Resolution Plan and Rules," "agree[d] to the terms of the Program," and understood that certain legal claims must be "resolved through binding and final arbitration instead of any court system."  *See id.* ¶ 9, Exh. B.

"It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it."  *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1588, 36 Cal. Rptr. 3d 901 (2005) (internal quotation marks and citations omitted); *see also Brookwood v. Bank of Am.*, 45 Cal. App. 4th 1667, 1674, 53 Cal. Rptr. 2d 515 (1996) (holding the employee was "bound by the provisions of the [arbitration] agreement regardless of whether [she] read it or [was] aware of the arbitration clause when [she] signed the document").  Indeed, "ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms.  A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing."  *Metters v. Ralphs Grocery Co.*, 161 Cal. App. 4th 696, 701, 74 Cal. Rptr. 3d 210 (2008) (internal quotation omitted).

Here, Totten assented to be bound by the DRP when he signed the agreement that he had "received and reviewed a copy of the KBR Dispute Resolution Plan and Rules," "agreed to the terms of the Program," and understood that certain legal claims must be "resolved through binding and final arbitration instead of any court system."  *See* Bynum Decl. ¶ 9, Exh. B.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 6 of 30 |
|---|---|---|---|

Furthermore, valid consideration supports the DRP. The parties mutually agreed to submit to arbitration in the event of a dispute covered by the DRP, and Totten accepted KBR's offer of employment in exchange for his agreement to arbitrate.

Accordingly, the Court finds that Totten has not demonstrated a lack of assent to the DRP Agreement. An agreement to arbitrate exists in this case.

**B.      Unconscionability**

Even if he assented to the DRP Agreement, however, Totten asserts that it is invalid because it is unconscionable. Under California law, "the doctrine of unconscionability has both a procedural and substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Sonic-Calabasas A, Inc. v. Moreno*, 51 Cal. 4th 659, 685, 121 Cal. Rptr. 3d 58 (2011). Both procedural and substantive unconscionability are required to render a contract unenforceable, but they need not be present in the same degree. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114, 99 Cal. Rptr. 2d 745 (2000). California courts apply a "sliding scale" analysis in making determinations of unconscionability: the "more substantively unconscionable the contract, the less procedurally unconscionable it must be to be found unconscionable, and vice versa." *Kilgore*, 718 F.3d at 1063. Whether a contract or provision is unconscionable is a question of law. *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 851, 113 Cal. Rptr. 2d 376 (2001). The party challenging the arbitration agreement bears the burden of establishing unconscionability. *Pinnacle Museum Tower Ass'n,* 55 Cal. 4th 223, 247, 145 Cal. Rptr. 3d 514 (2012).

**1.      Procedural Unconscionability**

Totten has met his burden of showing that the DRP Agreement is procedurally unconscionable. First, KBR imposed the agreement on Totten as a condition of his employment, without giving him a meaningful opportunity to negotiate its terms. Indeed, the Signature Page states, "I understand that this agreement is a condition of my employment with the Company." *See* Bynum Decl. ¶ 9, Exh. B. Thus, because the agreement was signed by Totten as a condition of his employment without affording him a meaningful opportunity to negotiate its terms, the DRP Agreement is to some degree procedurally unconscionable. *See Armendariz*, 24 Cal. 4th at 114-15 (arbitration agreement was procedurally unconscionable because "[i]t was imposed on employees as a condition of employment and there was no opportunity to negotiate").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | ***David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.*** | Page | 7 of 30 |
|---|---|---|---|

But "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991). Here, Totten bolsters his argument that the agreement is procedurally unconscionable because he was never given a copy of any of the American Arbitration Association ("AAA") or Judicial Arbitration and Mediation Services ("JAMS") rules referenced in the DRP Agreement. *See Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406, 7 Cal. Rptr. 3d 418 (2003) (an agreement was procedurally unconscionable where it referenced the arbitration rules but failed to provide them to the customer to review, forcing the customer "to go to another source to find out the full import of what he or she is about to sign . . . *prior* to signing"); *see also Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1146, 140 Cal. Rptr. 3d 492 (2012) (defendant's failure to provide plaintiffs with a copy of the relevant arbitration rules was "significant"); *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393-94, 116 Cal. Rptr. 3d 804 (2010) ("Numerous cases have held that the failure to provide a copy of the arbitration rules to which the employee would be bound, supported a finding of procedural unconscionability."). Under the existing standards, Totten has shown that the DRP Agreement is procedurally unconscionable.

### 2.      Substantive Unconscionability

California law requires that a plaintiff also show that the agreement is substantively unconscionable in order to find the agreement unenforceable on the basis of unconscionability. Totten advances several arguments why the DRP Agreement is substantively unconscionable: (1) the agreement lacks mutuality; (2) KBR reserves the right to unilaterally modify the arbitration policy and rules in its sole discretion; (3) the DRP Agreement requires that all discovery costs be borne by the party taking the discovery; (4) the attorneys' fees provision permits an arbitrator to award fees to either party, including KBR; and (5) the class and representative action waivers violate the NLRA and California public policy. The Court addresses each of these arguments in turn.

### i.      Lack of Mutuality

The Court rejects Totten's argument that the DRP Agreement lacks mutuality. The agreement clearly states that it "applies to and binds the Company" as well as "each Employee and Applicant," thus ensuring a mutual obligation to arbitrate. DRP Agreement § 3B.
//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 8 of 30 |
|---|---|---|---|

### ii.   Unilateral Modification Policy

Totten objects to the DRP Agreement's unilateral modification provision.  The provision states:  "This Plan may be amended by Sponsor at any time by giving at least 30 days notice to current Employees.  However, no amendment shall apply to a Dispute which is initiated prior to the effective date of the amendment."  DRP Agreement § 6A.  Totten argues that KBR's reservation of the right to unilaterally modify the arbitration policy and rules with 30 days' notice renders the arbitration agreement illusory, unconscionable, and unenforceable, because KBR can be aware of a pending dispute before it is "initiated" and can therefore unfairly manipulate the rules.

The Court agrees, but only to the extent that the quoted language renders the modification provision itself illusory and unconscionable.  Under California law, "[a]n agreement to arbitrate is illusory if . . . the employer can unilaterally modify [it]."  *Sparks v. Vista Del Mar Child & Family Servs.*, 207 Cal. App. 4th 1511, 1523, 145 Cal. Rptr. 3d 318 (2012).  Nevertheless, "the covenant of good faith and fair dealing may save an arbitration agreement from being illusory[.]"  *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1465, 140 Cal. Rptr. 3d 38 (2012); *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1214, 78 Cal. Rptr. 2d 533 (1998) (finding employment arbitration agreement that allows employer to prospectively modify its terms enforceable because employer's discretionary power is subject to "prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings") (citation omitted).

The court in *Peleg* examined a similar modification provision that allowed the employer arbitration agreement to be "amended, modified, or revoked in writing by the Company at anytime, but only upon thirty (30) days' advance notice . . . ."  *Peleg*, 204 Cal. App. 4th at 1436.  Yet, such amendments would have "*no effect on any Claim that was filed for arbitration prior to the effective date* of [the] amendment."  *Id.* (emphasis in original).  Finding that the modification provision allowed the employer to alter the agreement after it *became aware* of potential claims, the court questioned the validity of the modification provision:  "[t]he vice of the modification provision . . . is that it allows the employer to manipulate the arbitration process . . . either by making the process more difficult or more expensive for the employee, or by revoking the Agreement in the belief that a judicial forum is preferable."  *Id.* at 1459.

Thus, the *Peleg* court concluded, "if a claim has accrued or if the employer knows about a claim, all parties to the Agreement should be bound by the version in effect at that time; no changes should apply after the point of accrual or knowledge."  *Id.*  Discussing the implied

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 9 of 30 |
|---|---|---|---|

covenant of good faith and fair dealing as a potential remedy, the court found that "[a] unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims." *Id.* at 1465.

Conversely, if "a modification provision expressly addresses whether contract changes apply to claims that have accrued or are known to the employer," the implied covenant of good faith and fair dealing "cannot create implied terms that contradict the express language." *Id.* Accordingly, the court determined that a modification provision—which expressly states that it shall have "*no effect on any Claim that was filed for arbitration prior to the effective date* of [the] amendment"—is illusory under California law. *Id.* at 1436, 1465 (emphasis in original).

Here, the DRP Agreement explicitly delineates the modification provision's applicability. The modification provision states that the arbitration policy may be amended with a 30-day notice, but that "no amendment shall apply to a Dispute *which is initiated* prior to the effective date of the amendment." DRP Agreement § 6A (emphasis added). Put differently, "modifications may apply to claims already accrued or known to [KBR], provided that the claim was not *filed* until after the 30-day notice period." *Reyes v. United Healthcare Servs., Inc.*, 2014 WL 3926813, at *3 (C.D. Cal. Aug. 11, 2014) (emphasis in original) (finding illusory the following modification provision: "[a]ll arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Employee Relations Department receives the Demand for Arbitration").[1]

Just as in *Peleg* and *Reyes*, the implied covenant of good faith and fair dealing cannot save the DRP Agreement's unilateral modification provision—the implied covenant cannot alter the express language of the arbitration agreement between Totten and KBR. Accordingly, the Court finds that the modification provision is illusory and unconscionable.

### iii. Discovery Costs Provision

With respect to discovery costs, Defendants point out that the DRP Agreement's provision that discovery costs be borne by the party initiating the discovery allocates those costs

---

[1] While the language in *Peleg* referred to "filed claims" and the DRP Agreement here refers to "initiated disputes," the Court does not find that distinction significant. In both instances, claims or disputes that were known to the employer before the employer amended the rules may be subject to those amendments if the claims or disputes were not filed or initiated until after those amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 10 of 30 |
|---|---|---|---|

in the same manner that they are allocated in state and federal courts. *See Luafau v. Affiliated Computer Services, Inc.*, 2006 WL 1320472, at *7 (N.D. Cal. May 15, 2006) (arbitration provision requiring that the cost of discovery be borne by the party initiating it is not substantively unconscionable because it is "consistent with the practice under the Federal Rules of Civil Procedure" and "does not require an employee to bear costs that she would not incur if she were free to bring the action in court").

Further, the Agreement does not preclude Totten from recovering discovery costs, but provides the arbitrator with the authority to order the same relief as would be available in court to a prevailing Party. *See* DRP Agreement § 8B ("The substantive legal rights, remedies, and defenses of all Parties are preserved . . . the arbitrator shall have the authority . . . to order any and all relief, legal or equitable . . . which a Party could obtain from a court of competent jurisdiction . . . ."). This includes awarding discovery costs. As such, the discovery costs provision is not substantively unconscionable.

### iv. Attorneys' Fees Provision

The attorneys' fees provision at issue permits the arbitrator to award attorneys' fees to an employee, not KBR, even where the law does not provide for an award of fees:

> Notwithstanding the provisions of the preceding subsection, in any proceeding before an arbitrator, the arbitrator, in the arbitrator's discretion, may allow a prevailing Employee or Applicant a reasonable attorney's fee as part of the award. The discretion to allow an award of fees under this subsection is in addition to any discretion, right or power which the arbitrator may have under applicable law. However, any award of fees shall be reduced by any amounts which have been or will be paid by the KBR Employee Legal Consultation Plan.[2]

*See id.* § 8D. Nothing in this provision suggests that the arbitrator has the power to award KBR attorneys' fees contrary to a statute. As the attorneys' fees provision in the arbitration agreement would not discourage potential claimants, the Court finds that it is not substantively unconscionable.
//

---

[2] Under KBR's Legal Consultation Plan, KBR pays up to $2,500 a year for an employee to consult an attorney when the employee is pursuing a claim pursuant to the DRP. *See* Supplemental Declaration of Bynum ¶ 9.

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 11 of 30 |
|---|---|---|---|

**C.      Class Action Waiver**

      Totten argues that this Court should not enforce the class action waiver in the DRP Agreement because the waiver violates the NLRA.  In particular, Totten contends that the class action waiver interferes with his right to engage in protected concerted activity under Sections 7 and 8(a)(1) of the NLRA.  Plaintiff's Opp. at 22 (citing NLRA § 7, 29 U.S.C. § 157; NLRA § 8(a)(1), 29 U.S.C. § 158(a)(1)).[3]

**1.      Sections 7 and 8(a)(1) of the NLRA**

      Section 7 of the NLRA provides that "[e]mployees shall have the right to . . . engage in . . . *concerted activities* for the purpose of collective bargaining or other *mutual aid or protection*."  NLRA § 7, 29 U.S.C. § 157 (emphasis added).[4]  Section 8(a)(1) makes it an unfair labor practice for the employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7]."  NLRA § 8(a)(1), 29 U.S.C. § 158(a)(1).  Thus, if the workplace rule imposed by the employer restricts activities protected by Section 7, the rule is unlawful.

      It is firmly established that employees' Section 7 right to act for the purpose of "mutual aid or protection" includes employees' efforts to "improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship."  *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565, 98 S. Ct. 2505, 57 L. Ed. 2d 428 (1978).

      This right to engage in concerted activity to improve one's working conditions is not limited to union workers seeking to collectively bargain with management.  It also applies to non-union employees "when they seek to improve working conditions through resort to administrative and judicial forums . . . ."  *Id.* at 566; *see, e.g.*, *Signal Oil and Gas Co. v. NLRB*, 390 F.2d 338, 342-43 (9th Cir. 1968) (finding non-union employee engaged in protected concerted activity when he made pro-strike remarks to another non-union employee); *see also*

---

[3] Totten makes this argument under the substantive unconscionability rubric.  But because he cites to no authority that necessarily subsumes the NLRA analysis under the state law contractual concept of unconscionability, the Court will analyze this invalidity argument separately as a matter of federal law.

[4] The NLRA broadly provides that "[the] term 'employee' shall include any employee," 29 U. S. C. § 152(3), subject only to certain specifically enumerated exceptions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 12 of 30 |
|---|---|---|---|

*Wilson Trophy Co. v. NLRB*, 989 F.2d 1502, 1508 (8th Cir. 1993) ("Non-union employees as well as union employees share the right to engage in concerted activity.") (citations omitted); *Vic Tanny Int'l, Inc. v. NLRB*, 622 F.2d 237, 241 (6th Cir. 1980) ("[U]norganized employees who jointly participate in a walkout . . . to present job related grievances to management are engaged in concerted activity protected by Section 7 regardless of whether or not the employees are members of a union.").

In order for employee activity to fall within Section 7, it must be "concerted." While this term "embraces the activities of employees who have joined together in order to achieve common goals," the Supreme Court has found that "the language of § 7 does not confine itself to such a narrow meaning." *NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822, 831, 104 S. Ct. 1505, 79 L. Ed. 2d 839 (1984) ("In fact, § 7 itself defines both joining and assisting labor organizations – activities in which a single employee can engage – as concerted activities."). Thus, "[a]n individual acting alone engages in concerted activity when she acts on behalf of the workforce." *YMCA of Pikes Peak Region, Inc. v. NLRB*, 914 F.2d 1442, 1455 (10th Cir. 1990) (citing *City Disposal*, 465 U.S. at 831) (footnote omitted); *see also Int'l Transp. Serv. v. NLRB*, 449 F.3d 160, 166 (D.C. Cir. 2006) ("[C]oncerted activity includes circumstances where individual employees work to initiate, induce or prepare for group action. . . . The touchstone for concerted activity, then, must be some relationship between the individual employee's actions and fellow employees.") (citation omitted).

Significantly, concerted activity also encompasses concerted legal action. *See, e.g.*, *Brady v. National Football League*, 644 F.3d 661, 673 (8th Cir. 2011) ("[A] lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under § 7 of the National Labor Relations Act."); *Mohave Elec. Co-op, Inc. v. NLRB*, 206 F.3d 1183, 1188 (D.C. Cir. 2000) (filing petition for injunction against employer harassment supported by fellow employees and joined by a co-worker was protected concerted activity); *Altex Ready Mixed Concrete Corp. v. NLRB*, 542 F.2d 295, 297 (5th Cir. 1976) ("Generally, filing by employees of a labor related civil action is protected activity under section 7 of the NLRA unless the employees acted in bad faith.") (citing *Leviton Mfg. Co., Inc. v. NLRB*, 486 F.2d 686, 689 (1st Cir.1973)).

Such concerted legal action is also evident in *Salt River Valley Water Users' Association v. NLRB.*, 206 F.2d 325, 328 (9th Cir. 1953), where the Ninth Circuit found that a petition circulated by an employee authorizing him to take court action or negotiate on behalf of his coworkers with regard to workplace grievances constituted concerted activity for the purpose of mutual aid and protection. *Id.* The court went on to recognize the effectiveness of collective

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 13 of 30 |
|---|---|---|---|

action as opposed to individual action:  "By soliciting signatures to the petition, [the employee] was seeking to obtain such solidarity among the [workers] as would enable the exertion of group pressure upon the [employer] in regard to possible negotiation and settlement of the [workers'] claims."  *Id.*  The court characterized "concerted activity for the purpose of . . . mutual aid or protection" as an "effective weapon for obtaining that to which the participants, as individuals, are already 'legally' entitled."  *Id.*

Given that protected concerted activity can take the form of concerted legal action, the Court turns next to the National Labor Relations Board's ("NLRB") decision in *In re D. R. Horton, Inc.*, a case which both sides debate in their briefing.

## 2.    The NLRB's *Horton I* Decision

### i.    Class Action Waiver and the NLRA

In support of his argument that the class action waiver in this case is invalid under the NLRA, Totten invokes a series of NLRB decisions that began with *In re D. R. Horton, Inc.*, 357 NLRB No. 184, 2012 WL 36274 (Jan. 3, 2012) ("*Horton I*").  *See, e.g., Murphy Oil USA, Inc.*, 361 NLRB No. 72, 2014 WL 5465454, *3 (Oct. 28, 2014) ("*Murphy Oil I*") (reaffirming *Horton I*); *Chesapeake Energy Corp. & Its Wholly Owned Subsidiary Chesapeake Operating, Inc. & Bruce Escovedo*, 362 NLRB No. 80, 2015 WL 1956197, at *4 (Apr. 30, 2015) (applying *Horton I* and *Murphy Oil I* to find arbitration agreement's class action waiver violated Section 8(a)(1)); *Hoot Winc, LLC, et al.*, 363 NLRB No. 2, 204 LRRM 1285, 2015 BL 282611, at *2 (September 1, 2015) (same); *Countrywide Fin. Corp., et al.*, 362 NLRB No. 165, 204 LRRM 1009, 2015 BL 263136, at *3-4 (Aug. 14, 2015) (while silent as to whether employees are prohibited from filing class or collective claims, arbitration agreement violated Section 8(a)(1) by requiring employees to arbitrate on an individual basis); *Leslie's Poolmart, Inc.*, 362 NLRB No. 184, 2015 BL 273521, at *8 (August 25, 2015) (affirming ALJ decision finding the same).

Defendants respond by pointing to the Fifth Circuit's decision refusing to enforce that portion of the Board's opinion upon which Totten relies.  *D. R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013) ("*Horton II*").

In *Horton I*, the NLRB struck down an employer arbitration agreement containing a class action waiver because it restricted employees from engaging in the protected concerted activity of pursuing collective legal action to improve workplace conditions under Section 7 of the NLRA.  Specifically, the Board found that the coming together by employees to bring a class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 14 of 30 |
|---|---|---|---|

proceeding to address workplace issues like wages constituted a form of concerted activity under Section 7. *Horton I*, 2012 WL 36274, at \*7-10. It then found that the arbitration agreement at issue there violated Section 8(a)(1) of the NLRA because it "require[d] employees covered by the Act, as a condition of their employment, to sign an agreement that precludes them from filing joint, class, or collective claims addressing their wages, hours or other working conditions against the employer in any forum, arbitral or judicial." *Id.* at \*1.

The *Horton I* Board highlighted the fact that the Supreme Court has long upheld the principle that "employers cannot enter into individual agreements with employees in which the employees cede their statutory rights to act collectively." *Horton I*, 2012 WL 36274, at \*6 (citing *J. I. Case Co. v. NLRB*, 321 U.S. 332, 337, 64 S. Ct. 576, 88 L. Ed. 762 (1944) ("Wherever private contracts conflict with [the Board's] functions [of preventing unfair labor practices], they obviously must yield or the Act would be reduced to a futility."); *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 361, 60 S. Ct. 569, 84 L. Ed. 799 (1940) (agreement forbidding employees from presenting grievances to employer "through a labor organization or his chosen representatives, or in any way except personally" was unlawful and a "continuing means of thwarting the policy of the Act"); *see also NLRB v. Stone*, 125 F.2d 752, 756 (7th Cir. 1942) (employer agreement requiring employees to arbitrate disputes individually with the employer is an unlawful "restraint upon collective action").

The Board then concluded that, unlike procedural rights, employers cannot demand that employees waive their substantive rights to act collectively to improve workplace conditions:

> Just as the substantive right to engage in concerted activity aimed at improving wages, hours or working conditions through litigation or arbitration lies at the core of the rights protected by Section 7, the prohibition of individual agreements imposed on employees as a means of requiring that they waive their right to engage in protected, concerted activity lies at the core of the prohibitions contained in Section 8.

*Horton I*, 2012 WL 36274, at \*7.

The Board had no trouble reconciling its ruling with the FAA. In fact, the Board stated that the class action waiver it found impermissible fell within the FAA's savings clause, which makes arbitration agreements "enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. According to the Board:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | ***David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.*** | Page | 15 of 30 |
|---|---|---|---|

[T]he purpose of the FAA was to prevent courts from treating arbitration agreements less favorably than other private contracts. The Supreme Court . . . has made clear that "[w]herever private contracts conflict with [the] functions" of the National Labor Relations Act, "they obviously must yield or the Act would be reduced to a futility." *J. I. Case Co.* [ ]321 U.S. at 337. To find that an arbitration agreement must yield to the NLRA is to treat it no worse than any other private contract that conflicts with Federal labor law. The [employer's arbitration agreement] would equally violate the NLRA if it said nothing about arbitration, but merely required employees, as a condition of employment, to agree to pursue any claims in court against the Respondent solely on an individual basis.

*Horton I*, 2012 WL 36274, at *11.

Because the arbitration agreement violated federal law—by preventing employees from exercising their substantive right to engage in protected concerted activity for mutual aid or protection—the Board concluded that the agreement could not be enforced under the FAA.

To further support its position, the Board emphasized the principle that arbitration agreements may not require a party to "forgo the substantive rights afforded by the statute." *Id.* (quoting *Gilmer*, 500 U.S. at 26) (internal quotation marks omitted); *see also Murphy Oil I*, 2014 WL 5465454, at *11 ("The Supreme Court has explained recently that the Federal policy favoring arbitration, however liberal, does have limits. It does not permit a 'prospective waiver of a party's right to pursue statutory remedies,' such as a 'provision in an arbitration agreement forbidding the assertion of certain statutory rights.'") (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310, 186 L. Ed. 2d 417 (2013)).

Here, like in *Horton I*, KBR's arbitration agreement requires employees like Totten to agree, as a condition of employment, that "[e]ach Dispute shall be arbitrated on an individual basis" and that no employee "may pursue any Dispute on a class action, collective action or consolidated basis or in a representative capacity on behalf of other persons or entities who are claimed to be similarly situated, or participate as a class member in such a proceeding." DRP Agreement § 4B(i).

In light of the plain text of Sections 7 and 8 of the NLRA, this Court finds the Board's reasoning in *Horton I* not only persuasive, but at the very least "reasonably defensible." *See Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 891, 104 S. Ct. 2803, 81 L. Ed. 2d 732 (1984) (interpretations of the Board will be upheld if "reasonably defensible") (internal citation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 16 of 30 |
|---|---|---|---|

omitted).  In the face of competing interpretations of the FAA and the NLRA, the Court must honor the spirit animating both statutes.

### ii.  Class Action Waiver and the Norris-LaGuardia Act

In addition to its finding that class action waivers run afoul of Section 7 rights, the NLRB also found that the Norris-LaGuardia Act of 1932, 29 U.S.C. § 101 *et seq*., protects employees' concerted litigation activity against contractually-based restraints, because an employment-related class, collective, or joint action falls within the definition of a "labor dispute."  *Horton I*, 2012 WL 36274, at *7 (citing 29 U.S.C. §§ 104(d), 113).  The Court finds this analysis in *Horton I* persuasive.

Section 2 of the Norris-LaGuardia Act declares that it is the "public policy of the United States" that individual workers be free of "interference, restrain, or coercion" by employers when they engage in "concerted activities for the purpose of collective bargaining or *other mutual aid or protection* . . . ."  29 U.S.C. § 102 (emphasis added).  Section 3 states that "any . . . undertaking or promise" that conflicts with the policy declared in Section 2 "shall not be enforceable in any court of the United States . . . ."  29 U.S.C. § 103.  Section 4 identifies activities not subject to restraining orders or injunctions—whether undertaken "singly or in concert"—including "[b]y all lawful means aiding any person participating or interested in any labor dispute who . . . is *prosecuting, any action or suit* in any court of the United States or of any State."  29 U.S.C. § 104(d) (emphasis added).  The Norris-LaGuradia Act goes on to define "labor dispute" in Section 13 to include "any controversy concerning terms or conditions of employment."  29 U.S.C. § 113.

Viewed in tandem, Sections 2, 3, 4, and 13 of the Norris-LaGuardia Act prevent a federal court from enforcing any undertaking or promise that contravenes the public policy that employees be free from employer interference in concerted activities for the purpose of mutual aid or protection, such as pursuing employment-related collective legal action.  The Norris-LaGuardia Act makes KBR's class action waiver, imposed as a condition of employment, unenforceable—such waivers constitute promises or undertakings that prevent employees from acting in concert with their coworkers to vindicate their workplace rights in court or in arbitration.[5]

---

[5] The Board also observed, assuming a "direct conflict between the NLRA and the FAA," that the Norris-LaGuardia Act was enacted after the FAA and includes language repealing any acts that conflict with it.  *Horton I*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | ***David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.*** | Page | 17 of 30 |
|---|---|---|---|

### 3.    *AT&T Mobility LLC v. Concepcion*

Defendants contend that Supreme Court precedent permits class action waivers like the one in KBR's arbitration agreement. Relying on the Supreme Court's decision in *Concepcion*, Defendants state that this Court "is obligated to comply with the mandate of the United States Supreme Court and enforce the class arbitration waiver at issue in this matter." ("Def. Reply") [Doc. # 25 at 18.]

The Court disagrees, however, that *Concepcion* applies to this case. *Concepcion* involved preemption of a state law ruling precluding enforcement of a class arbitration waiver in the consumer context. *Concepcion*, 131 S. Ct. at 1746 ("The question in this case is whether § 2 [of the Federal Arbitration Act] preempts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable."). The consumers in *Concepcion* could not have relied upon the NLRA: they did not seek to bring a collective action against their employer seeking to better their workplace conditions.[6] Although many courts, including this one, have granted motions to compel arbitration in the employment litigation context under the FAA, those cases involved *individual* employees who were not engaged in concerted activity. *See, e.g.*, *Foster v. Macy's, Inc.*, No. 15-CV-03123-DMG, slip op. at 12 (C.D. Cal. Nov. 4, 2015); *Verdugo v. Davey Tree Surgery Co.*, No. 14-CV-09897-DMG, slip op. at 1, 8 (C.D. Cal. Apr. 28, 2015); *Wright v. JPMorgan Chase Bank N.A.*, No. 13-CV-09022-DMG, slip op. at 1 (C.D. Cal. Aug. 1, 2014); *Abeyrama v. J.P. Morgan Chase Bank*, 2012 U.S. Dist. LEXIS 87847, at *15 (C.D. Cal. June 22, 2012). Moreover, *Concepcion* did not involve a class action waiver that clashed with a substantive right guaranteed in another federal statute.

Defendants cite another recent Supreme Court case, *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013). There, merchants who accepted American Express cards brought a class action against American Express for violations of federal antitrust laws, namely the Sherman Act and Clayton Act. *Id.* at 2308. The merchants alleged that American Express used its monopoly power in the charge-card market to force merchants to pay high credit card fees. *Id.* American Express moved to compel individual

---

2012 WL 36274, at *16 (citing 29 U.S.C. § 115). The Court need not address this concern over conflicting statutes. As explained *infra*, the Court does not perceive a direct conflict between the NLRA and the FAA in Totten's case.

[6] For the same reason, the Court also finds the Supreme Court's decision in *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 193 L. Ed. 2d 365 (2015), cited by Defendants in a Notice of Supplemental Authority, inapposite. [Doc. # 46.]

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 18 of 30 |
|---|---|---|---|

arbitration under the FAA. *Id.* The arbitration agreement between the merchants and American Express contained a class action waiver. *Id.* In opposing the motion, the merchants argued that the costs (e.g., expert fees) necessary to prove the antitrust claims would far exceed any statutory recovery for each individual plaintiff. *Id.* Because such costs would make it economically infeasible for plaintiffs to pursue their statutory claims individually, the merchants argued that the class action waiver should be invalidated in accordance with the "effective vindication" exception to the FAA. *Id.* at 2310. This exception "allow[s] courts to invalidate agreements that prevent the 'effective vindication' of a federal statutory right." *Id.*

The Supreme Court rejected the merchants' arguments. It found that federal "antitrust laws do not guarantee an affordable procedural path to the vindication of every claim." *Id.* at 2309. The Court also held that the class action waiver was enforceable, even when "the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery." *Id.* at 2307. As the majority put it, "the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy." *Id.* at 2311 (citation omitted).

This case is distinguishable. *Italian Colors* did not implicate NLRA-covered employees entitled to the substantive right to collective action. The Court in *Italian Colors* considered whether a "judge-made exception to the FAA" applied to invalidate an arbitration agreement's class action waiver. *See id.* at 2310. By contrast, here, the plain text of Section 2 of the FAA renders the class action waiver unenforceable: Defendants' interference with Totten's Section 7 rights violates federal law. *See id.* at 2310-11 (the FAA's savings clause "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights").

### 4.     The Fifth Circuit's *Horton II* Decision

Understandably, Defendants rely heavily on the Fifth Circuit's decision in *Horton II*, which overturned the key ruling in *Horton I*. The Fifth Circuit disagreed with the Board's finding that the class action waiver in the arbitration agreement violated the NLRA. *See also Murphy Oil USA, Inc. v. NLRB.*,——F.3d——, 2015 WL 6457613, at *3 (5th Cir. Oct. 26, 2015) ("*Murphy Oil II*") (affirming *Horton II* and finding employer "committed no unfair labor practice by requiring employees to relinquish their right to pursue class or collective claims in all forums by signing" an arbitration agreement).

This Court is not persuaded by *Horton II* for the following reasons.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | ***David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.*** | Page | 19 of 30 |
|---|---|---|---|

### i.   Concerted Legal Action is a Section 7 Substantive Right

First, this Court respectfully disagrees with the Fifth Circuit's assertion that the right to protected concerted litigation activity under Section 7 is not a substantive non-waivable right. According to the Fifth Circuit, the "[t]he use of class action procedures . . . is not a substantive right" but merely a "procedural device." *Horton II*, 737 F.3d at 357 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 332, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980)).  "Thus, while a class action may lead to certain types of remedies or relief, a class action is not *itself* a remedy."  *Id.* (internal quotation marks omitted) (citing *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 643 (5th Cir.2012), *abrogated on other grounds by Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013)).  The Fifth Circuit's facile pronouncement eviscerates the right of concerted action by eliminating the mechanism that effectuates the right. Section 7 recognizes the right of employees to join together for mutual aid and protection by challenging a condition of employment that affects them all.  One of the remedies for *that* right *is* to permit employees to join together for concerted litigation activity through the class action mechanism, whether the class action proceeds in court, arbitration, or some other forum.[7]

The Fifth Circuit cites cases in support of its decision that do not involve Section 7. *Horton II*, 737 F.3d at 357 (citations omitted).  For instance, the cases it cites involve Federal Rule of Civil Procedure 23 or "class procedures under various employment-related statutory frameworks," such as the Age Discrimination in Employment Act ("ADEA")[8] and the Fair Labor and Standards Act ("FLSA")[9], where courts have held based upon the language specific to those

---

[7] In the Section 7 context, the right often cannot exist without the remedy.  For example, employees who wish to stage a lawful demonstration or a picket to challenge what is perceived to be unfair employer policies must apply for a permit to lawfully assemble, which may result in the imposition of appropriate time, place, and manner restrictions.  *See, e.g.*, *Serv. Employees Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 605 (5th Cir. 2010) (ordinances under which a labor union applied for parade permits for striking janitors violated the First Amendment).  The permit is a procedural device, which effectuates the employees' right to assemble and engage in concerted activity.  Likewise, the Rule 23 class action procedure imposes the equivalent of time, place, and manner restrictions on employee class actions.

[8] "The ADEA, like Title VII of the Civil Rights Act of 1964, authorizes courts to award broad, class-based injunctive relief to achieve the purposes of the Act.  29 U.S.C. § 626(b)."  *Gilmer*, 500 U.S. at 41-42.

[9] The FLSA's class action provision states that an action to recover the liability prescribed under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 20 of 30 |
|---|---|---|---|

statutes that there is no substantive right to proceed collectively. *See, e.g.*, *Gilmer*, 500 U.S. at 32 (ADEA); *Carter v. Countrywide Credit Indus.*, Inc., 362 F.3d 294, 298 (5th Cir. 2004) (FLSA); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002) (FLSA); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319-20 (9th Cir. 1996) (FLSA); *Amchem*, 521 U.S. at 612-13 (Rule 23). The Fifth Circuit goes on to state that these ADEA and FLSA cases stand for the proposition that "[e]ven explicit procedures for collective actions will not override the FAA." *Horton II*, 737 F.3d at 360 (citations omitted).

This Court does not quibble with the line of decisions the Fifth Circuit cites that determined no substantive right to class procedures exist under the ADEA and the FLSA. Whether those substantive rights exist under those particular "employment-related statutory frameworks" bears no relevance to whether the substantive right to "engage in concerted activities for the purpose of . . . mutual aid or protection" through a class action exists under the NLRA. Indeed, the Fifth Circuit acknowledges the distinctions that the Board makes between the NLRA and other statutes. *See Horton II*, 737 F.3d at 357 ("Rule 23 is not the source of the right to the relevant collective actions. The NLRA is.").

In its decision, the Fifth Circuit also states that "[a] detailed analysis of *Concepcion* leads to the conclusion that the Board's rule does not fit within the FAA's saving clause." *Horton II*, 737 F.3d at 359. This Court respectfully disagrees. As explained earlier, *Concepcion* is distinguishable because it did not involve a waiver of time-honored *substantive* rights protected by a federal statute, i.e., Section 7 of the NLRA. Moreover, *Concepcion* addressed a conflict between the FAA and state law, triggering the application of the preemption doctrine. Here, in contrast, two federal statutes are at play—the Supremacy Clause is not implicated.

In short, the Fifth Circuit fails to provide a convincing response to the Board's explanation of why the right to engage in collective legal action is a core substantive right protected by Section 7:

> Any contention that the Section 7 right to bring a class or collective action is merely "procedural" must fail. The right to engage in collective action—including collective legal action—is the core substantive right protected by the NLRA and is the foundation on which the Act and Federal labor policy rest. . . . To the extent [the employer and amici argue] that there is no Section 7 right to

---

§ 216(b). It adds that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 21 of 30 |
|---|---|---|---|

class certification, they are surely correct. Whether a class is certified depends on whether the requisites for certification under Rule 23 have been met. But that is not the issue in this case. The issue here is whether [the employer] may lawfully condition employment on employees' waiving their right under the NLRA to take the collective action inherent in seeking class certification, whether or not they are ultimately successful under Rule 23. *Rule 23 may be a procedural rule, but the Section 7 right to act concertedly by invoking Rule 23, Section 216(b), or other legal procedures is not.*

*Horton I*, 2012 WL 36274, at *12 (internal citations omitted) (emphasis added).

In similarly criticizing the Fifth Circuit's opinion in *Horton II*, the district court in *Herrington v. Waterstone Mortgage Corporation* observed that "it is not clear [from the Fifth Circuit's analysis] how §§ 157 and 158(a)(1) can be distinguished from any other substantive right in the employment context, such as the right to be paid a minimum wage or to be free from certain types of discrimination." 993 F. Supp. 2d 940, 944 (W.D. Wis. 2014) (denying reconsideration of earlier decision in *Herrington v. Waterstone Mortgage Corp.*, 2012 WL 1242318, at *6 (W.D. Wis. Mar. 16, 2012) (finding *Horton I* "reasonably defensible" and applying it to invalidate class action waiver in arbitration agreement)).

Courts and the Board regularly invoke Section 7 to protect various forms of concerted employee activity geared towards improving the workplace, and even activities for "mutual aid or protection" not limited to those aimed at changing the terms and conditions of employment. *See, e.g.*, *Std. Concrete Prods. v. General Truck Drivers, Office, Food & Warehouse Union, Local 952*, 353 F.3d 668, 678 (9th Cir. 2003) (sympathy strike to support workers engaged in primary strike); *Brown & Root, Inc. v. NLRB*, 634 F.2d 816, 817 (5th Cir. 1981) (refusal to return to work because of dangerous working conditions); *Kaiser Engineers v. NLRB*, 538 F.2d 1379, 1385 (9th Cir. 1976) (lobbying legislators regarding national policy issues which affect job security); *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 82 S. Ct. 1099, 8 L. Ed. 2d 298 (1962) (walkout to protest cold working conditions); *Walls Mfg. Co. v. NLRB.*, 321 F.2d 753, 753 (D.C. Cir. 1963) (writing letter on behalf of employees to state health department complaining of sanitary conditions); *Teamsters, Chauffeurs & Helpers Local Union No. 79, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. NLRB*, 325 F.2d 1011, 1012 (D.C. Cir. 1963) (refusal by drivers to cross picket line at another employer's place of business where drivers were supposed to make deliveries).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 22 of 30 |
|---|---|---|---|

      Given the myriad forms that protected collective action can take, Defendants cite to no authority that can provide a reasoned basis why the Court should create a special carve-out for concerted *legal* activity and deem that particular form of concerted action unprotected activity.

### ii. The NLRA Coexists with the FAA Through the Savings Clause

      In *Horton II*, the Fifth Circuit observes that "[t]here is no argument that the NLRA's text contains explicit language of a congressional intent to override the FAA." *Horton II*, 737 F.3d at 360. As the *Herrington* court noted, however, the Fifth Circuit "did not explain why it was necessary to locate language or congressional intent to 'override the FAA.'" *Herrington*, 993 F. Supp. 2d at 944. The Supreme Court has already established that a valid arbitration agreement cannot require a party to waive a substantive federal right. *See Gilmer*, 500 U.S. at 26 (arbitration agreement may not require party to "forgo the substantive rights afforded by the [federal] statute"). Yet, rather than engaging with the plain text of Sections 7 and 8—which served as the basis for the Board's *Horton I* decision—and its interplay with the plain meaning of the savings clause, the Fifth Circuit searched in vain for explicit congressional intent to "override the FAA." *Cf. Russello v. United States*, 464 U.S. 16, 20, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983) ("If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.") (internal quotation marks and citation omitted).

      The Fifth Circuit had no need to search for congressional intent to "override the FAA": there is no conflict between the NLRA and the FAA in this context. *But see infra*, note 10. The class action waiver in *Horton* violated the NLRA and thus falls squarely within the ambit of the FAA's savings clause. 9 U.S.C. § 2. *See also Mortensen v. Bresnan Communs., LLC*, 722 F.3d 1151, 1158 (9th Cir. 2013) ("The FAA's preemption power has an exception: It does not require the enforcement of arbitration agreements on 'such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2"). The Supreme Court firmly held in *J.I. Case* and *National Licorice* that individual employment contracts that conflict with employees' rights to "engage in concerted activities for the purpose of . . . mutual aid or protection" under Section 7 are unlawful. *J.I. Case*, 321 U.S. at 337; *National Licorice*, 309 U.S. at 361. As the Supreme Court later made clear, "[i]t is . . . well established . . . that a federal court has a duty to determine whether a contract violates federal law before enforcing it." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83-84, 102 S. Ct. 851, 70 L. Ed. 2d 833 (1982) (finding illegality under the NLRA a valid defense to claims made under the contract). Notably, as the Board in *Murphy Oil I* pointed out, "[i]n rejecting the Board's position in [*Horton I*], the Fifth Circuit failed even to

      **CIVIL MINUTES—GENERAL**      Initials of Deputy Clerk KT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|----------|------------------------------|------|------------------|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 23 of 30 |
|-------|----------------------------------------------------------------|------|----------|

cite *National Licorice* or *J.I. Case*, much less attempt to reconcile them with the result reached by the court." *Murphy Oil I*, 2014 WL 5465454, at *11.

Finally, the Fifth Circuit looked for evidence in the NLRA's "legislative history of a disavowal of arbitration" and found none.[10]  Just as the Fifth Circuit had no reason to examine

_____

[10] The Fifth Circuit further concluded, "[h]aving worked in tandem with arbitration agreements in the past, the NLRA has no inherent conflict with the FAA." *Horton II*, 737 F.3d at 361.  To the extent that the Fifth Circuit is referring to the body of law governing labor arbitration, this is not necessarily true.  To be sure, a conflict between the two statutes does not exist in cases involving individual, non-union workers without a collective bargaining agreement.  But in the context of labor-management relations that revolve largely around a collective bargaining agreement with an arbitration provision, potential conflicts between federal labor law and the FAA do exist.  Such conflicts stem from the fact that the FAA does not govern arbitration in the collective bargaining context.

The Fifth Circuit, in its exploration of the NLRA's legislative history, neglects to discuss Section 301 of the Labor Management Relations Act ("LMRA"), which is the statute, distinct from the NLRA, that gives federal courts jurisdiction to enforce and vacate labor arbitration agreements.  While Section 301 makes no mention of the word "arbitration," the Supreme Court in *Textile Workers Union of America v. Lincoln Mills* ruled that arbitration agreements in collective bargaining contracts are enforceable under Section 301 of the LMRA, not the FAA.  353 U.S. 448, 455-56, 77 S. Ct. 912, 1 L. Ed. 2d 972 (1957); *see also id.* at 466 (Frankfurter, J., dissenting) ("I find rejection, though not explicit, of the availability of the Federal Arbitration Act to enforce arbitration clauses in collective-bargaining agreements in the silent treatment given that Act by the Court's opinion.").

The Supreme Court acknowledged that Section 301 expresses a federal policy that "federal courts should enforce these agreements . . . and that industrial peace can be obtained only in that way." *Id.* at 455.  It then held that "the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws." *Id.* at 456.  *Lincoln Mills* thus laid the groundwork for three seminal Supreme Court cases that came to be known as the *Steelworkers Trilogy*, where the Court solidified arbitration as a defining aspect of federal labor law.  Among other things, the Court announced a "presumption of arbitrability" and established a deferential standard of judicial review of arbitration awards.  *See* 1 J. Higgins, *The Developing Labor Law* 1503-1512 (6th ed. 2012) (describing the *Steelworkers Trilogy*).  Notably, the Court stated that in the field of collective bargaining agreements—as opposed to commercial agreements—"the hostility evinced by courts to arbitration of commercial disputes has no place here." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 578, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960).  After all, unlike in commercial cases where "arbitration is the substitute for litigation," in the field of labor relations, "arbitration is the substitute for industrial strife." *Id.*  In the wake of the *Steelworkers Trilogy*, the courts fashioned an entire body of labor-arbitration law unique to union-management relations.

As this judicial "hostility" towards arbitration in commercial cases has waned in recent decades, courts have applied reasoning from labor arbitration case law to commercial arbitration cases brought under the FAA.  *See, e.g., Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993) ("Although *Nolde Bros.* involved a collectively bargained labor agreement and thus is arguably not dispositive here, we find its

_____

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 24 of 30 |
|---|---|---|---|

the legislative history for evidence of intent to "override the FAA," it also had no need to search the legislative history for a "disavowal of arbitration."

In light of the above discussion, the Court declines to follow the Fifth Circuit's decision in *Horton II*. Instead, like the *Horton II* dissent, the Court endorses the Board's position in *Horton I*. See *Horton II*, 737 F.3d at 364-65 (Graves, J., dissenting) ("I agree with the Board that the [arbitration agreement] interferes with the exercise of employees' substantive rights under Section 7 of the NLRA, which provides, in relevant part, that employees have the right 'to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . .'").

### 5.   Other Cases That Have Declined to Follow *Horton I*

Defendants assert that "[f]ederal courts have overwhelmingly rejected the NLRB's reasoning [in *Horton I*], found that class action waivers in arbitration agreements do not violate the NLRA, and held that the NLRB's reasoning conflicts with the [FAA] and Supreme Court

---

reasoning persuasive in this context as well.") (quoting language from Section 301 case *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 255, 97 S. Ct. 1067, 51 L. Ed. 2d 300 (1977)). In turn, courts in arbitration cases brought under Section 301 have sought guidance from arbitration cases brought under the FAA. *See, e.g., Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812*, 242 F.3d 52, 54 (2d Cir. 2001) ("[T]he body of law developed under Section 301 will at times draw upon provisions of the FAA, but by way of guidance alone."). Some courts, such as the Seventh Circuit, have even taken the position that the FAA applies to collective bargaining agreements provided there is no conflict with an express provision of Section 301. *See Smart v. Int'l Broth. of Elec. Workers, Local 702*, 315 F.3d 721, 724-25 (7th Cir. 2002) ("Where there is no conflict, however, and the FAA provides a procedure or remedy not found in section 301 but does not step on section 301's toes, then . . . we apply the Federal Arbitration Act.").

This blurring of the divide between FAA cases and Section 301 cases does not mean, however, that "no inherent conflict" exists between labor law and the FAA. For instance, the Court in the *Steelworkers Trilogy* established standards for when a court can overturn an arbitrator's award, including when a court determines that the award does not draw its "essence" from the collective bargaining agreement. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960). No such "essence test" exists under FAA doctrine. In contrast to the doctrine for vacating awards under Section 301, the FAA lays out four grounds for vacating an arbitration award in § 10(a) of the Act: (1) "where the award is procured by corruption, fraud, or undue means;" (2) "where there was evident partiality or corruption in the arbitrators;" (3) "where the arbitrators were guilty of misconduct . . . or any other misbehavior by which the rights of any party have been prejudiced;" and (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10.

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 25 of 30 |
|---|---|---|---|

precedent." Def. Reply at 17. In addition to *Horton II*, they cite to three other circuit court decisions. *Id.* (citing *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297-98 n.8 (2d Cir. 2013); *Owens v. Bristol Care, Inc.*, 702 F.3d 1050, 1053-1054 (8th Cir. 2013); *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1075 n.3 (9th Cir. 2013)).

None of these other circuit opinions are controlling authority. The Second Circuit in *Sutherland* did not provide any substantive analysis regarding its decision not to apply the Board's *Horton I* reasoning. *Sutherland*, 726 F.3d at 297-98 n.8 (stating that it owed no deference to the Board's reasoning and that *Horton I* may have been decided without proper quorum). Similarly, the Eight Circuit in *Owens* stated that it owes "no deference" to the reasoning in *Horton I*. *Owens*, 702 F.3d at 1054. That court did state that the arbitration agreement at issue in *Owens* "does not preclude an employee from filing a complaint with an administrative agency such as the Department of Labor . . . , the Equal Employment Opportunity Commission, the NLRB, or any similar administrative body," and hence does not bar "*all* protected concerted action." *Id.* at 1053 (emphasis in original). But as the court in *Herrington* pointed out, the Eighth Circuit fails to explain "why a statute that protects 'concerted activities' *generally* should be construed to permit an employer to determine on its own which concerted activities are protected and which are not." *Herrington*, 993 F. Supp. 2d at 946 (emphasis in original). As for the Ninth Circuit, Defendants rightly state that the court declined to address the rationale in *Horton I*, only noting other courts' rejection of the Board's reasoning. *Richards*, 744 F.3d at 1075 n.3 (listing cases). In fact, the Ninth Circuit amended its opinion to add language clarifying that it notes the other cases "[w]ithout deciding the issue" of whether *Horton I* "conflicts with the explicit pronouncements of the Supreme Court concerning the policies undergirding the Federal Arbitration Act." *Id.* (amended decision); *contrast with Richards v. Ernst & Young, LLP*, 734 F.3d 871, 873-74 n.3 (9th Cir. 2013) (original decision).

Defendants also cite to two district court decisions and a California Supreme Court decision. *See Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070, 1082-83 (E.D. Cal. 2014); *Miguel v. JPMorgan Chase Bank, N.A.*, 2013 WL 452418, at \*9 (C.D. Cal. Feb. 5, 2013); *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 366-374, 173 Cal. Rptr. 3d 289 (2014). To the extent these cases largely endorse the Fifth Circuit's rationale in *Horton II* or the Eighth Circuit's position in *Owens*, the Court does not find those cases persuasive for the reasons already discussed. *See* discussion *supra*, Section IV.C.4.

In sum, the Court endorses the Board's reasoning in *Horton I* and finds the class action waiver in KBR's arbitration agreement invalid. The waiver violates federal labor law and thus is unenforceable under Section 2 of the FAA. 9 U.S.C. § 2. The Court, therefore, **DENIES** Defendants' motion to dismiss Totten's class action claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | | Date | January 22, 2016 |
|----------|------------------------------|--|------|------------------|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 26 of 30 |
|-------|---------------------------------------------------------------|------|----------|

### D.    Totten's PAGA Claim

Totten contends that the representative action waiver cannot be enforced against claims brought under the Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 *et seq.* Such "representative" PAGA claims seek penalties for Labor Code violations affecting other employees. The California Supreme Court in *Iskanian v. CLS Transp. Los Angeles, LLC* found agreements that waive the right to bring PAGA representative claims to be unenforceable under California law. 59 Cal. 4th at 360. In *Iskanian*, the court reasoned:

> [California Civil Codes sections 1668 and 3513] compel the conclusion that an employee's right to bring a PAGA action is unwaivable. Section 2699, subdivision (a) states: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency . . . for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3." As noted, the Legislature's purpose in enacting the PAGA was to augment the limited enforcement capability of the Labor and Workforce Development Agency by empowering employees to enforce the Labor Code as representatives of the Agency. Thus, an agreement by employees to waive their right to bring a PAGA action serves to disable one of the primary mechanisms for enforcing the Labor Code. Because such an agreement has as its "object, . . . indirectly, to exempt [the employer] from responsibility for [its] own . . . violation of law," it is against public policy and may not be enforced. (Civ. Code, § 1668.)

59 Cal. 4th at 383. Because "[i]n interpreting state law, federal courts are bound by the pronouncements of the state's highest court," this Court is bound by the California Supreme Court's pronouncement that waiver of an employee's right to bring a PAGA action is against public policy and unenforceable. *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002).

Defendants contend that the rule against PAGA waivers laid out in *Iskanian* is preempted by the FAA. This argument, however, no longer carries weight.

The Ninth Circuit, in *Sakkab v. Luxottica Retail North America, Inc.*, recently found that "the *Iskanian* rule does not stand as an obstacle to the accomplishment of the FAA's objectives,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 27 of 30 |
|---|---|---|---|

and is not preempted" by the FAA.  803 F.3d 425, 427 (9th Cir. 2015).  In particular, *Sakkab* found that the *Iskanian* rule falls within the ambit of FAA § 2's savings clause and does not conflict with the FAA's purposes.  *Id.* at 433 (finding that the "*Iskanian* rule is a 'generally applicable' contract defense that may be preserved by § 2's savings clause, provided it does not conflict with the FAA's purposes. . . .  After considering the objectives of the FAA, we conclude that the *Iskanian* rule does not conflict with those objectives").

The *Iskanian* court likened PAGA actions to *qui tam* actions in that a representative plaintiff brings an action "as the proxy or agent of the state's labor enforcement agencies." *Iskanian*, 59 Cal. 4th  at 380-82 (internal quotation marks and citation omitted).  Thus, unlike a consumer class action, a representative PAGA action is "an action to recover civil penalties [that] is fundamentally a law enforcement action designed to protect the public and not to benefit private parties."  *Id.* at 381 (internal quotation marks and citation omitted).  *Sakkab* endorsed this view, finding that the "right to inform the state of violations that did not injure the informer is the very essence of a qui tam action."  *Sakkab*, 803 F.3d at 439-40 ("Qui tam actions predate the FAA by several centuries.") (citing *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773-76, 120 S. Ct. 1858, 146 L. Ed. 2d 836 (2000)).  "The FAA was [neither] intended to preclude states from authorizing qui tam actions to enforce state law" nor "was it intended to require courts to enforce agreements that severely limit the right to recover penalties for violations that did not directly harm the party bringing the action."  *Id.*

Because the *Iskanian* rule against PAGA waivers is not preempted by the FAA, this Court finds the representative action waiver in KBR's agreement as applied to Totten's PAGA claims unenforceable.  Accordingly, the Court **DENIES** Defendants' motion to dismiss Totten's PAGA claims.

### E.    Severance of Unconscionable Contract Provision

A court determination that "the arbitration agreement contains . . . flawed provisions does not necessarily mean that the entire [arbitration agreement] is substantively unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1084 (9th Cir. 2007) (quotation omitted).  State law permits a court to sever unconscionable provisions of an arbitration agreement if they are "merely 'collateral' to the main purpose of the arbitration agreement[.]"   *Id.* (quoting *Armendariz*, 24 Cal. 4th at 124).

Here, the Court finds the modification provision "collateral" to the arbitration agreement's main purpose.  Accordingly, the Court severs the prospective-modification provision from the DRP Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 28 of 30 |
|---|---|---|---|

As for the class action and representative waivers, section 4B(ii) of the DRP Agreement provides that in the event the Court finds those waivers unenforceable, "this Plan shall not apply with respect to that class or representative action which shall proceed instead before the court." Thus, pursuant to the DRP Agreement's own terms, Totten's class and representative claims shall proceed in this Court.

To the extent Totten brings individual claims, the Court **GRANTS** Defendants' motion to compel arbitration as to those individual claims.

## F.     Defendant Molycorp's Bankruptcy

On August 5, 2015, Defendant KBR notified the Court that Molycorp filed a petition for Chapter 11 bankruptcy. [Doc. # 39.] KBR suggests that the bankruptcy petition should automatically stay the entire case under 11 U.S.C. § 362. The Court disagrees. The Court "does not have the jurisdiction to extend the stay to a non-debtor party." *Placido v. Prudential Ins. Co. of Am.*, 2010 U.S. Dist. LEXIS 12147, at *2-3 (N.D. Cal. Jan. 21, 2010) ("In order to apply the automatic stay outlined in 11 U.S.C. § 362 to a non-debtor party, the bankruptcy court must issue an extension of the stay under its jurisdiction.") (citing *Boucher v. Shaw*, 572 F.3d 1087, 1093 (9th Cir. 2009)); *see also Campo v. Am. Corrective Counseling Serv.*, 2009 U.S. Dist. LEXIS 23036, at *10 (N.D. Cal. Mar. 12, 2009) ("A determination concerning whether the automatic stay under § 362(a) should be extended to non-debtor parties is a determination to be made by a bankruptcy court.") (citing *In re Chugach Forest Products, Inc.*, 23 F.3d 241, 247 (9th Cir. 1994); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

In any event, the bankruptcy of one defendant does not normally stay the case as to non-debtor defendants absent unusual circumstances. *Chugach Timber Corp. v. Northern Stevedoring & Handling Corp. (In re Chugach Forest Products, Inc.)*, 23 F.3d 241, 246 (9th Cir. 1994) ("As a general rule, 'the automatic stay of section 362(a) protects only the debtor. . . . It does not protect non-debtor parties. . . . Thus, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor.") (quoting *In re Advanced Ribbons & Office Prods.*, 125 B.R. 259, 263 (Bankr. 9th Cir. 1991). Such circumstances include when the judgment against the non-debtor defendant would in effect be a judgment or finding against the debtor. *See Boucher*, 572 F.3d at 1093 (where bankruptcy debtor is contractually obligated to indemnify the non-debtor defendant in the same lawsuit, it may be necessary to extend the automatic stay to the non-debtor party). Even in that particular circumstance, however:

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | ***David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.*** | Page | 29 of 30 |
|---|---|---|---|

> [T]he bankruptcy court would first need to extend the automatic stay under its equity jurisdiction. Such extensions, although referred to as extensions of the automatic stay, are in fact injunctions *issued by the bankruptcy court* after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate.

572 F.3d at 1093 n.3 (internal quotation marks and citation omitted) (emphasis added).

Bankruptcy courts are in accord. *See, e.g.*, *Kenoyer v. Cardinale (In re Kenoyer)*, 489 B.R. 103, 120-121 (Bankr. N.D. Cal. 2013) ("[T]he unusual circumstances doctrine typically is not used to extend the automatic stay to actions against non-debtors under § 362, but instead is used to obtain an injunction under § 105.") (citing *In re Chugach Forest Products*, 23 F.3d at 247 n.6). According to the Bankruptcy Appellate Panel, "any extension of the automatic stay to nondebtors does not occur automatically but requires the filing of an adversary proceeding requesting the bankruptcy court to act under § 105(a)." *In re Ripon Self Storage, LLC*, 2011 WL 3300087, *6 (B.A.P. 9th Cir. 2011) (citing *Boucher v. Shaw*, 572 F .3d at 1093 n. 3).

In the absence of a bankruptcy court order extending the automatic stay to the non-debtor in this action, this case will go forward as to Defendant KBR.
//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 14-1766 DMG (DTBx)** | Date | January 22, 2016 |
|---|---|---|---|

| Title | *David L. Totten, et al. v. Kellogg Brown & Root, LLC, et al.* | Page | 30 of 30 |
|---|---|---|---|

**IV.**
**CONCLUSION**

In light of the foregoing:

1.  Defendants' motion to compel arbitration is **GRANTED** as to Totten's individual claims;

2.  The motion to dismiss is **DENIED** as to Totten's class action claims;

3.  The motion to dismiss is **DENIED** as to Totten's claims under PAGA, Cal. Lab. Code § 2698 *et seq.*;

4.  Defendant KBR shall file its Answer within 21 days from the date of this Order; and

5.  The Court's Order to Show Cause why the action should not be stayed [Doc. # 41] is discharged.

**IT IS SO ORDERED.**