Lee R. Feldman, Esq. (SBN 171628)
lee@leefeldmanlaw.com
Alicia Olivares, Esq. (SBN 181412)
alicia@leefeldmanlaw.com
Leonard H. Sansanowicz, Esq. (SBN 255729)
leonard@leefeldmanlaw.com
**FELDMAN BROWNE OLIVARES**
**A Professional Corporation**
12400 Wilshire Blvd., Suite 1100
Los Angeles, California 90025
Telephone: (310) 207-8500
Fax: (310) 207-8515

Attorneys for Plaintiff, DAVID L. TOTTEN, and all others similarly situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DAVID L. TOTTEN, an individual, and all others similarly situated

Plaintiffs,

vs.

KELLOGG BROWN & ROOT, LLC, a Delaware Corporation; and DOES 1 through 100, inclusive,

Defendants.

CASE NO. 5:14-cv-01766-DMG-DTBx

[*Case Assigned to the Honorable Dolly M. Gee in Courtroom 8C – First Street*]

[San Bernardino County Superior Court Case No. CIVDS1408596]

**JOINT SUPPLEMENTAL BRIEF REGARDING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Before Honorable United States District Judge Dolly M. Gee

Hearing Date: July 28, 2017
Time: 11:30 a.m.
Courtroom: 8C (First Street)

Notice of Removal Filed: August 28, 2014
Trial Date: June 12, 2018

FELDMAN BROWNE OLIVARES
A PROFESSIONAL CORPORATION

The Court has requested supplemental briefing regarding the fairness of the class action settlement agreement. Doc. # 113. The Court has expressed reservations about: (1) the reversion clause in the agreement; (2) Class Counsel's proposed fees; and (3) adequate and representative notice of the settlement to putative class members.

Reversion of unclaimed funds to a defendant is an acceptable means of distributing the unclaimed funds if, as here, a common fund is established and the defendant deposits a sum certain into the fund. William B. Rubenstein, et al., *Newberg on Class Actions* ("*Newberg*") § 12:29 (5th ed.). "Indeed, claims-made settlements with a reversion of unclaimed funds to the employer are routinely approved in the Ninth Circuit and courts in California." *Nur v. Tatitlek Support Srvcs., Inc.*, 2016 WL 7626144 at *3 (C. D. Cal. Aug. 23, 2016)(citing numerous cases approving claims-made reversionary settlement in wage and hour cases). Here, the parties mediated with a well-respected and well-established mediator, David Rotman. The parties were unable to reach a settlement on the date of the mediation, which lasted well into the evening. Supplemental Declaration of Leonard H Sansanowicz ("Sansanowicz Suppl Decl") ¶2. Because the parties had reached an impasse, Mr. Rotman made a formal mediator's proposal to the parties that the case be resolved with a claims-made, reversionary settlement with a defined settlement fund of $3,750,000. The proposal specified that payments to the class, administrative fees, the enhancement award, and attorney's fees and costs, all were to be paid "off the top." *Ibid.* The proposal also dictated that a minimum of 50% of the remaining net settlement fund would be guaranteed to be distributed to the class if 50% or less of the class submitted valid claims. *Ibid.* The parties were required to accept or reject the proposal *in toto*.

After carefully considering the proposal and weighing the effect of the reversionary settlement versus the potential recovery in a nonreversionary settlement (that was not being offered), Plaintiff concluded that the proposed settlement was potentially better for the putative class, for the reasons set forth below.

Moreover, the two major concerns with funds reverting to a defendant – that a

FELDMAN BROWNE OLIVARES
A PROFESSIONAL CORPORATION

low percentage of claims made will undermine the deterrent aims of the protective wage and hour statutes, or that Class Counsel may have undersold the class's claims (*Newberg* § 12:29) – are not present here. Deterrence is not a factor under these circumstances, given that Plaintiff originally brought this suit in California to enforce California wage and hour laws, yet the construction project at issue ended 3½ years ago and Defendant does not have any other construction projects in California; thus, injunctive relief is no longer either necessary or possible. *See Six (6) Mexican Workers v. AZ Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ("[R]eversion to the defendant may be appropriate when deterrence is not…required by the circumstances."). As for the value of the claims, the proposed settlement – even with the reversion clause – actually *enhances* the possibility of <u>greater</u> recovery by class members. This is not a consumer class action where the attorneys will earn millions and the anticipated participation rate is less than 10%; here, there is a <u>guarantee</u> that *at least* 50% of the net settlement fund will be paid out, with the possibility of even greater participation. This settlement represents real value to the putative class, with an average recovery potentially in the thousands of dollars, not simply a $5 coupon they will never use. In other words, the proposed settlement is not a sham settlement but rather an attempt by Plaintiff and Class Counsel to compensate the putative class for labor performed.

Regarding the proposed attorney's fees, as detailed below, the United States Supreme Court, the Ninth Circuit, and numerous district courts – including multiple district judges in the Central District – have held that attorney's fees should be calculated as a percentage of the total potential settlement fund created by the class representative and attorney's efforts rather than the amounts actually claimed by the class. District Judge Margaret M. Morrow **recently approved a settlement based on a mediator's proposal from the same mediator, David Rotman, that also contained a reversion clause, and approved class counsel's fees as a percentage of the gross common fund rather than the amount actually claimed**. *Lewis v. Wendy's Int'l, Inc.*, 2011 WL13176648, at *9-14 (C.D. Cal. June 30, 2011). There,

District Judge Morrow **approved attorney's fees of 33 1/3% of the common fund**, in part due to the results class counsel achieved, a $1.5 million dollar settlement in a wage and hour class action. Here, through the efforts of Plaintiff and Class Counsel, the benefit conferred on the class is ***two and-a-half times*** that amount, or $3.75 million, and Plaintiff only seeks the Ninth Circuit benchmark of 25% in fees.

Finally, as to the notice requirements, the parties have met and conferred and have agreed to a number of changes to the agreement, the class notice, and the claim form that hopefully address the Court's previous concerns.

Accordingly, the parties address the specific issues raised in the Minute Order.

**1. Why is this a claims-made settlement if the parties have the necessary data and last-known contact information?**

Notwithstanding the fact that claims-made settlements are "synonymous" with reversionary fund settlements (*Newberg* § 13:7), and the fact that the claims-made aspect of the agreement was an explicit term of the mediator's proposal, one important reason the claims-made clause exists is to ensure that class members satisfy the opt-in requirement for a Fair Labor Standards Act ("FLSA") collective action. Although Plainitff did not plead a FLSA cause of action, the settlement allows for all claims, known or unknown, whether based in federal or state law, arising out of the facts of the operative complaint. The claim form's language reflects this: "By submitting this claim form, I also acknowledge that I am consenting to opt into this lawsuit and settlement pursuant to the federal Fair Labor Standards Act and 29 U.S.C. § 216(b)." Further, the parties have amended the Stipulation as follows, "Participating Claimants who cash or deposit a payment check will be deemed to have opted in to this Stipulation; accordingly, each individual payment check will contain the following language as further notice: "By cashing or depositing this check, I confirm my consent to the Settlement, which includes releasing claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA")." Stipulation, ¶2.5.2 (24:9-14). The Amended Stipulation re: Settlement of Class Action is filed concurrently with this brief.



FELDMAN BROWNE OLIVARES
A PROFESSIONAL CORPORATION

**<u>Notice Requirements</u>:**

**2. Is the claim form accurate as to the relevant time period?**

The parties added the phrase "at some point" to the claim form to clear up any confusion, such that the full sentence reads, "I declare that I actively worked for KBR as a non-exempt construction worker at the Molycorp Mountain Pass rare earth facility in Mountain Pass, California <u>at some point</u> during the period from June 16, 2010 through [Preliminary Approval Date]."

**3. Why must class members check a box on the claim form?**

The parties have agreed to remove the requirement to check any boxes. Stipulation, ¶1.31 (11:15-19). Class members now simply need to submit the Claim Form in order to claim their portion of the fund. An Amended Claim Form is filed concurrently with this brief.

**5. The description of the redistribution in the class notice is ambiguous or potentially misleading.**

The Court was concerned with the following language in the class notice: "if some class members do not submit claims, and as a result, less than half of the funds available from this settlement are claimed, then *the remaining amount* will be redistributed pro rata to those who do submit claims…" The parties have changed the language as follows: "if some class members do not submit claims and less than half of the funds available from this settlement are claimed, then the difference between what is claimed and fifty percent (50%) of the Maximum Settlement Portion for Payments to Participating Claimants ($2,666,000) ("MSP") will be redistributed *pro rata* to those who do submit qualifying claims" [4:10-14] "and in this process, the gross amount paid to those class members who do file valid claims will increase." [6:22-27]. An Amended Class Notice is filed concurrently with this brief.

**7. Will there be an informational website?**

The parties have agreed to an informational website as described by the Court and have obtained a quote from the Claims Administrator showing that the website can be incorporated into the services provided and still keep the estimated costs (just

barely) under $30,000. Sansanowicz Suppl Decl ¶3. Further, the parties have added a Section H to Section V of the class notice [11:13-16], entitled "How Do I View the Relevant Documents in This Action?" as follows: "An informational website has been set up for you to view the Settlement and all related documents, such as the motions for preliminary and final approval and motion for attorney's fees. You may view the website here [URL]." In addition, the parties have added a toll-free number through which class members may contact the Claims Administrator [10:14-18].

**4. Why should the Court approve the reversion clause?**

As discussed above, the reversion was a defined term of the mediator's proposal. Without the reversion, Defendant would not have agreed to pay $3,750,000. In essence, it was the cost of securing a potentially more favorable settlement for the class, particularly in the face of great risk that the Supreme Court could uphold the class action waiver in this action and the class members could be left with significantly less settlement leverage. Further, the reversion clause likely will result in a larger payment to the putative class than if Plaintiff had insisted on a purely nonreversionary settlement for the guaranteed amount contained in this settlement.

As it stands now, there are $1,084,000 in hard costs: $937,500 (25% of the fund) in attorney's fees; $21,500 in Plaintiff's costs; $30,000 in claims administrator expenses; $20,000 as an enhancement award to Plaintiff; and $75,000 (75% of $100,000) to the California Labor and Workforce Development Agency ("LWDA"). This leaves a net settlement fund of $2,666,000, with 50%, or $1,333,000, guaranteed. Thus, the minimum amount that Defendant is *required* to pay is $2,417,000. If class members claim more of the available funds, Defendant will have to pay more.

Assume that Defendant would have been willing to settle a non-reversionary fund for the same amount, $2,417,000. (It must be noted Defendant never made any such offer.) In that case, the hard costs would have been $750,750: $604,250 (25%) in attorney's fees; $21,500 in Plaintiff's costs; $30,000 in claims administrator expenses;

$20,000 as an enhancement award to Plaintiff; and $75,000 to the LWDA. Thus, the net settlement fund would have been $1,666,000.

But Plaintiff did not agree to a $1,666,000 net settlement fund – he agreed to a net settlement fund of *a million dollars more* than that, or $2,666,000. And therein lies a fundamental question: is it better for the class for $2,417,000 to be the floor *and* the ceiling of any potential recovery, or does it benefit the class more to have $2,417,000 as *only* the floor and $3,750,000 as the ceiling? The question is a bit of wishful thinking to begin with because t*here never was a different settlement offer*. The only option that was presented, under mediator's proposal, contained the reversion clause. But Plaintiff believed that the potential for greater recovery was more advantageous.

Consider the current, reversionary settlement. The bare minimum net settlement fund will be $1,333,000. At 19,304 workweeks (claims depend on the number of weeks worked by each class member), the average recovery is $69.05 per workweek, with an average of 22.79 workweeks for 847 class members, or $69.05 x 22.79/workweek = $1,573.65 per class member. This is well within the acceptable limits of wage and hour class action settlements approved in California district courts. *See Lemus v. H & R Block Enter. LLC*, 2012 WL 3638550, at *5 (N.D. Cal. Aug. 22, 2012) (appeal dismissed) (approving a reversionary, claims-made settlement because "[a] significant portion of the class participated in the settlement, and the average class member recovery [was] at least $1,200…"). Arguably, 50% of the net settlement fund is "a significant portion" of class participation.

Not every class member here will participate in the settlement; Plaintiff is aware of this fact. Yet even at a 75% claims rate ($1,999,500 claimed), the average recovery would be $103.58 per workweek; at an average of 22.79 workweeks, that represents a total average recovery of $2,360.59 per class member. Complete participation would mean an average recovery of $138.11 per workweek, for a total recovery of $3,147.53.

The parties have put certain safeguards in place to increase the likelihood of participation: the claims administrator will perform up to two skip traces of

nondeliverable addresses; the Stipulation has been revised to move up the text messaging campaign to only two weeks after notice is mailed to the class (Plaintiff requested emails, too, but Defendant does not have class member email addresses); the parties have stipulated to an informational website and have added a toll-free phone number to the class notice, making it easier for class members to contact the claims administrator; and the claims administrator will send out a reminder postcard 30 days after notice has been mailed to those class members who have not yet responded.

The parties recognize the Court must be vigilant against any apparent collusion, particularly where, as here, there is a "clear sailing" agreement with respect to attorney's fees. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). However, none of the indicia of collusion are present in the instant case. Plaintiff's attorney's fees are not disproportionate to the distribution of the settlement, nor can they be under the agreement where at least 50% of the net settlement fund is guaranteed. *See, e.g., Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) (settlement vacated where attorney's fee award of $1.125 million was <u>three times</u> the amount recovered, $373,675, the claims rate was only 8%, and class counsel admitted he would consider it a success if 10-15% of the class participated). Nor have the parties agreed for fees not awarded by the Court to revert to Defendant; under the Stipulation, unawarded fees get redistributed to the putative class *pro rata*. Stipulation ¶2.8.1, 29:10-17. And the key terms at issue were proposed by the mediator as a condition of settlement. At all times the Stipulation was the product of arm's-length, non-collusive negotiations and careful consideration of a mediator's proposal.

**6. Why is it fair for attorney's fees to be paid from a percentage of the gross common fund?**

The United States Supreme Court has recognized that a percentage fee award is properly granted from the value of the <u>total</u> benefit that class counsel has created, and therefore necessarily includes the total pool of money made available for class members. *Boeing Co. v. VanGemert*, 444 U.S. 472, 479-480 (1980):

In this case, the named respondents have recovered a determinate fund

FELDMAN BROWNE OLIVARES
A PROFESSIONAL CORPORATION

> for the benefit of every member of the class whom they represent…To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, **whether or not they exercise it**, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs.

Here, there are 847 class members. Given the proposed attorney's fee of $937,500, the per member legal cost is $1,106.85 for the creation of a common fund of $3,750,000. At Class Counsel's current hourly rates, that is only two hours' worth of senior counsel's time and not even an hour and a half of the partner's time. Sansanowicz Decl ¶65. Moreover, even at the guaranteed 50% floor for participating class members, where the average payout would be $1,573.65, the proposed attorney's fees would be 38.78% of the total recovery of $2,417,000. Yet requiring legal fees to be paid only by the class members who file claims forces them to bear a disproportionate amount of the the cost of obtaining such a substantial benefit that *all* class members could enjoy, regardless of whether they take advantage of that benefit.

Accordingly, following *Boeing*, the Ninth Circuit reversed a district court's fee award, holding that "the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar." *Williams v. MGM-Pathe Comm'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Post-*Williams*, numerous district courts have based fee awards on the ceiling settlement fund amount rather than the floor. For example, in *Vandervort v. Balboa Capital Corp.*, "the Court award[ed] attorney's fees and costs in the amount of $1.1 million, or 33% of the $3.3 million settlement fund ceiling amount."[1] *Vandervort*

[1] Although class counsel's lodestar figure was just $415,155, and only 271 claim forms were returned by class members (out of 57,000 that had been mailed), the district court held that class counsel should be awarded 1/3 of the total available settlement given the results achieved, the skill required, the risks of the litigation, the contingent risk taken by counsel, and the financial burden on counsel of advancing $50,000 in out of pocket costs. *Vandervort*, 8 F.Supp.3d at 1210.

*v. Balboa Capital Corp.* (C.D. Cal. 2014) 8 F.Supp.3d 1200, 1210; *see also Brawner v. Bank of Am. Nat'l Ass'n*, No. 3:14-CV-02702-LB, 2016 WL 161295, at *5 (N.D. Cal. Jan. 14, 2016)("Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed."); *Wakefield v. Wells Fargo & Co.*, No. 3:13-CV-05053 LB, 2015 WL 3430240, at *5 (N.D. Cal. May 28, 2015)("Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed."); *Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *5 (N.D. Cal. Feb. 20, 2015)(same); *Lee v. Enter. Leasing Co.-W.*, No. 3:10-CV-00326-LRH, 2015 WL 2345540, at *10 (D. Nev. May 15, 2015)("the percentage of the fund cross check should be calculated based on the total amount available to the class, rather than the amount actually recovered."); *Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2014 WL 1724891, at *6 (N.D. Cal. Apr. 29, 2014) ("To calculate appropriate attorneys' fees under the constructive common fund method, the court looks to the maximum settlement amount that could be claimed. (cite). This includes *all* funds available to eligible claimants, whether claimed or not."); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 643 n.10 (S.D. Cal. 2011) ("Under Ninth Circuit law, it is an abuse of discretion to base the percentage recovery on the amount of claimed funds rather than the entire settlement fund.").[2]

In the Central District alone, district courts have consistently approved attorney's fees as a percentage of the gross common fund. *See Lewis*, 2011 WL 13176648 (approving one-third, or $500,000, of the total $1,500,000 common fund);

---

[2] Although not unanimously, other Circuits have followed this rule as well. *See, e.g.*, *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436–37 (2d Cir. 2007) (reversing district court's award calculated according to monies disbursed, finding that: "The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. **An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not**."); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) (affirming district court's decision to award fees based on a percentage of the total fund made available to the class).

*Taylor v. Shippers Transport Express, Inc.*, 2015 WL 12658458 at *12-13 (C.D. Cal. May 14, 2015) (approving one-third, or $3,680,000, of the gross settlement fund of $11,040,000); and *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959 at *9-11 (C.D. Cal. Aug. 4, 2015) (approving 30% of a $12,000,000 settlement)("Here, the Settlement Agreement gives Class Members the opportunity to obtain some recovery without litigating individual claims and without relying on Plaintiffs maintaining class status throughout trial."); see also *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766 at * 16 (C.D. Cal. Feb. 16, 2017) (citing *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010)(approving 33.3% of the gross common fund where each class member stood to recover an average of $2,600).

Plaintiff and Class Counsel have been prosecuting this case for three years now. Recognizing that this case settled shortly after the discovery stay was lifted and well before class certification, Plaintiff has only requested 25% of the total fund in fees despite Class Counsel's efforts in obtaining a favorable result for the putative class in the face of great risk and uncertainty. *See Vasquez*, 266 F.R.D. at 491 ("Awarding a percentage of the common fund is particularly appropriate 'when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf'")(quoting *Boeing*, 444 U.S. at 478-79)(also recognizing that in most common fund cases the percentage awarded to class counsel exceeds the 25% benchmark and is closer to 30%, quoting *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) and *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009)). Having taken on this case also precluded Class Counsel from taking on other class actions. Nevertheless, if the Court finds Class Counsel's efforts do not merit even the Ninth Circuit benchmark for fees then Plaintiff would be willing to accept less in attorney's fees and redistribute the difference to the class. However, as unawarded fees also count towards the payment floor, this would represent a windfall for Defendant if claims do not exceed 50%. Stipulation ¶2.8.1, 29:10-17.



**FELDMAN BROWNE OLIVARES**
A PROFESSIONAL CORPORATION

FELDMAN BROWNE OLIVARES
A PROFESSIONAL CORPORATION

**CONCLUSION**

The parties respectfully submit this Joint Supplemental Brief Regarding Plaintiff's Motion for Preliminary Approval of Class Action Settlement in accordance with the Court's Order dated July 13, 2017.

Dated: July 21, 2017

FELDMAN BROWNE OLIVARES, APC

By: /s/ Leonard H. Sansanowicz
LEE R. FELDMAN
ALICIA OLIVARES
LEONARD H. SANSANOWICZ
Attorneys for Plaintiff DAVID TOTTEN and all others similarly situated and similarly aggrieved

Dated: July 21, 2017

MILLER LAW GROUP
THE KULLMAN FIRM, APLC

By: /s/ Kelly D. Reese
SAMUEL ZURIK III
RACHEL E. LUNZY
KELLY D. REESE
Attorneys for Defendant KELLOG BROWN & ROOT, LLC

**ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.