1  Lee R. Feldman, Esq. (SBN 171628)
   lee@leefeldmanlaw.com
   Alicia Olivares, Esq. (SBN 181412)
2  alicia@leefeldmanlaw.com
   Leonard H. Sansanowicz, Esq. (SBN 255729)
3  leonard@leefeldmanlaw.com
   **FELDMAN BROWNE OLIVARES**
4  **A Professional Corporation**
   12400 Wilshire Blvd., Suite 1100
5  Los Angeles, California 90025
   Telephone: (310) 207-8500
6  Fax:          (310) 207-8515

7  Attorneys for Plaintiff, DAVID L. TOTTEN,
   and all others similarly situated

8

## UNITED STATES DISTRICT COURT

9

10

## CENTRAL DISTRICT OF CALIFORNIA

11

12  DAVID L. TOTTEN, an individual,
    and all others similarly situated

13

        Plaintiffs,

14

        vs.

15

16  KELLOGG BROWN & ROOT,
    LLC, a Delaware Corporation; and
    DOES 1 through 100, inclusive,

17

        Defendants.

18

19

20

21

22

23

24

25

26

27

28

CASE NO.  5:14-cv-01766-DMG-DTBx

[*Case Assigned to the Honorable Dolly M. Gee in Courtroom 8C – First Street*]

[San Bernardino County Superior Court Case No. CIVDS1408596]

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Before Honorable United States District Judge Dolly M. Gee

Hearing Date:    December 15, 2017
Time:              10:00 a.m.
Courtroom:       8C (First Street)

Notice of Removal Filed: August 28, 2014
Trial Date: June 12, 2018

# INDEXED TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................. Page 1

II.   PROCEDURAL HISTORY ................................................. Page 3

III.  SUMMARY OF SETTLEMENT  ..................................................... Page 5

      A. The Proposed Stipulated Class  .......................................... Page 5

      B. Fund Created  ........................................................................ Page 6

      C. Class Representative Enhancement  .................................... Page 6

      D. Attorney's Fees and Costs  ................................................. Page 7

      E. LWDA Payment  .................................................................. Page 7

      F. Settlement Administration Costs  ....................................... Page 7

      G. Taxes  ................................................................................... Page 7

      H. Settlement Class Member Released Claims................................ Page 7


IV.   FINAL APPROVAL OF THE SETTLEMENT IS
      APPROPRIATE ............................................................................ Page 8

      A. Legal Standard for Final Approval of Class Action
         Settlement  ........................................................................ Page 8

      B. The Settlement Is Presumptively Fair, Reasonable,
         and Adequate  .................................................................... Page 9

      C. The Settlement Is Demonstrably Fair, Reasonable,
         and Adequate  ..................................................................... Page 10

         1. The value of the Settlement favors final approval............ Page 11

         2. The risk, expense, complexity, and likely duration of
            further litigation favors final approval  ............................ Page 12

         3. Plaintiff conducted significant discovery prior to settling,
            and the major settlement terms were proposed by an
            experienced mediator...................................................... Page 14

FELDMAN BROWNE OLIVARES
A PROFESSIONAL CORPORATION

4.  Class counsel's experience and views favor final approval.................................................................. Page 14

5.  Class members' positive reaction to the settlement strongly favors final approval ........................................ Page 15

D.  The Notice Procedures Satisfy Due Process Requirements  .................................................................. Page 15

E.  The Settlement of PAGA Penalties Is Fair and Reasonable .................................................................... Page 16

V.   **CONCLUSION** .............................................................. Page 16

**FELDMAN BROWNE OLIVARES**
A PROFESSIONAL CORPORATION

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

<u>**TABLE OF AUTHORITIES**</u>

<u>**Federal Cases**</u>

*Alberto v. GMRJ Inc.,*
    252 F.R.D. 652 (E.D.Cal. 2008) .......................................................................... 11

*Boyd v. Bechtel Corp.,*
    485 F.Supp. 610 (N.D.Cal. 1979) .................................................................. 14, 15

*Churchill Villages, LLC v. Gen. Electric,*
    361 F.3d 566 (9th Cir. 2004) .......................................................................... 15, 16

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) .......................................................................... 8, 9

*Doninger v. Pac. NW Bell, Inc.,*
    564 F.2d 1304 (9th Cir. 1977) .............................................................................. 10

*Dunleavy v. Nadler,*
    213 F.3d 454 (9th Cir. 2000) .................................................................................. 8

*Evans v. Jeff D.,*
    106 S.Ct. 1531 (1986) ............................................................................................ 10

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980) ..................................................................... 9, 14, 15

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .............................................................................. 11

*In re Omnivision Tech., Inc.,*
    559 F.Supp.2d 1036 (N.D.Cal. 2008) .................................................................. 15

*In re Warner Comm'ns Sec. Litig.,*
    618 F.Supp. 735 (S.D.N.Y. 1985) ................................................................. 14, 15

*Lemus v. H & R Block Enter. LLC,*
    2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) .................................................... 12

**FELDMAN BROWNE OLIVARES**
A PROFESSIONAL LAW CORPORATION

**FELDMAN BROWNE OLIVARES**
A PROFESSIONAL LAW CORPORATION

*Linney v. Cellular Alaska P'ship,*
  151 F.3d 1234 (9th Cir. 1998).................................................................8

*Mendoza v. Tucson Sch. Dist. No. 1,*
  623 F.2d 1338 (9th Cir. 1980)................................................................9

*Misra v. Decision One Mortg. Co.,*
  2009 WL 4581276 (C.D.Cal. Apr. 13, 2009) ......................................16

*Morris v. Ernst & Young*,
  834 F.3d 975 (9th Cir. 2016).............................................................3, 13

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982)........................................................9, 10, 11

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir.1993)....................................................................9

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976)..................................................................9

**Federal Rules:**

Fed. R. of Civ. Proc., Rule 23(e) ...............................................................8

**California Cases:**

*Dunk v. Ford Motor Co.*,
  48 Cal.App.4th 1794 (1996)..............................................................9, 10

*Malibu Outrigger Bd. of Governors v. Super. Ct.*,
  (1980) 103 Cal.App.3d 573...................................................................9

**Other Authorities:**

California Labor Code §226 .......................................................................3

5 James Wm. Moore, *et al.*, *Moore's Fed. Practice*, § 23.85 (3) (3d ed. 1997)......11

William B. Rubenstein, et al., *Newberg on Class Actions* §§ 8.21, 8.39 ...............16

William B. Rubenstein, et al., *Newberg on Class Actions* § 12:29 ........................11

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I.   INTRODUCTION

Plaintiff David L. Totten ("Plaintiff") seeks final approval of this Class Action Settlement ("Settlement") with Defendant Kellogg Brown & Root, LLC ("Defendant" or "KBR"). On July 28, 2017, the Court granted preliminary approval of the Settlement and directed the parties and claims administrator to provide notice to the class of the proposed Settlement. Notice has been provided, through regular mailings, supplemental mailings after skip traces of over 160 returned notices, a text message campaign, reminder postcards, and an informational website (to which class members were directed) containing all relevant documents filed since preliminary approval. Thus, the Parties gave class members every opportunity to review and respond to the Settlement, and the members have spoken: the notice period has ended and **not a single class member has opted out of or objected to the Settlement.**

**Instead, 367 class members have claimed $1,511,847 in funds, which exceeds the Settlement's 50% floor by nearly $200,000**, despite the fact that Defendant ceased operating in the State of California <u>nearly four years ago</u> and there was concern that class member contact information may have grown stale. Indeed, only 588 class members (of 847) still had valid cell phone numbers to which the claims administrator could send text message reminders. Nor were the final numbers padded by the participation of current employees, as there was no project employing class members in California. Nevertheless, 43% of the total number of class members responded – 62.4% of all class members with valid cell phone numbers – and claimed 56.71% of the Maximum Settlement Portion ($2,666,000).

If the Settlement is approved, Defendant will have to pay a total of $2,595,847 (the total funds claimed, plus $1,084,000 in attorney's fees, costs, administrative fees, enhancement award, and PAGA payment), nearly 70% of the Maximum Settlement Amount of $3,750,000. **The average individual Settlement Sum**, even after deducting for the above payments, **will be nearly $4,120**, and **the highest individual Settlement Sum will be approximately $14,640**. At preliminary approval, the Parties

estimated the average potential recovery would be between $1,573.65 and $3,147.53 per class member (Doc. 114-1, at 6:11-26); the results have *exceeded* that estimate.

Despite the Court's concerns that this is a claims-made, reversionary Settlement, neither aspect has impeded class members' abilities to claim funds. First, as the Parties represented at preliminary approval, the issue of how to phrase the claim form was zealously contested, and the final claim form was further modified to incorporate the Court's suggestions to make it even simpler. (RT, 25:17-26:8.) Second, over 60% of all class members with valid addresses and phone numbers (a significant response number) submitted claims for nearly 57% of the available funds. Third, the initial notice packet was reinforced with subsequent text message and postcard reminders, to ensure greater participation. Fourth, per the Court's suggestion, a website was established and all relevant documents were uploaded, for greater transparency and to avoid even the appearance of collusion, which did not occur. Fifth, and most importantly, **there were <u>zero</u> objections to the Settlement**, which further speaks to the strength of its terms. Moreover, as addressed in Plaintiff's Motion for an Award of Attorney's Fees and Costs and Class Representative Enhancement, the claim form and reversion were part of the mediator's proposal issued by the mediator post-mediation, after arm's-length negotiations had stalled, without which there would not have been an agreement at all. (Doc. 123-1, 3:4-14.)

By any measure, then, class counsel has achieved an excellent result in this litigation, as embodied in the Settlement. The proposed Settlement provides substantial benefits to the class and is the product of smart litigation to obtain the best possible result for the class members. Given the uncertainty of whether this litigation could continue in light of the pending decision by the United States Supreme Court regarding class action waivers, the settlement of this action is fair, reasonable, and adequate and in the best interests of the class members, as shown by the fantastic response and approval of the Class. Accordingly, final approval is appropriate. By and through this Motion, and to implement the terms of the Settlement, Plaintiff hereby

requests this Court enter an Order finally approving the proposed Settlement, including Plaintiff's attorney's fees and costs, and awarding Plaintiff the enhancement award he deserves.

## II. PROCEDURAL HISTORY

On June 16, 2014, Plaintiff filed a wage and hour class action in Superior Court of California, amending his complaint on July 22, 2014, to add civil penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA") (hereinafter, the "Action"). Claims included: (1) failure to pay compensable drive time; (2) failure to pay overtime; (3) failure to provide second meal periods; (4) statutory Labor Code §226 penalties; (5) statutory §203 penalties; and (6) PAGA civil penalties. Declaration of Leonard H. Sansanowicz ("Sansanowicz Dec") ¶2.

KBR removed the matter to federal court and immediately moved to compel arbitration. This Court took the matter under submission and ultimately issued a 30-page opinion denying the motion, finding that the attempt to enforce a class action waiver in the arbitration agreement violated Section 7 of the National Labor Relations Act, that the right to concerted activity is a substantive right not preempted by the Federal Arbitration Act, and that PAGA claims could not be compelled to arbitration. Sansanowicz Dec ¶3.

Defendant noticed an appeal, but the matter was deferred (and the Court issued a stay in this action) pending the resolution of *Morris v. Ernst & Young*, 834 F.3d 975 (9th Cir. 2016), a previously-filed appeal with the same class waiver issue. Sansanowicz Dec ¶4. This Court released the stay in this action after the Court of Appeals issued a ruling consistent with this Court's opinion. *Ibid.* The Supreme Court held oral argument in *Ernst & Young* and two related cases on October 2, 2017, and until the high court renders its decision on the waiver issue there is great uncertainty regarding the potential for recovery. *Ibid.*

Class counsel conducted a thorough investigation of the Action and diligently pursued an investigation of class members' claims against KBR, including reviewing

and analyzing nearly 1,000 documents, as well as the applicable law and potential defenses, interviewing nearly 140 putative class members, producing Plaintiff for his deposition in Las Vegas, and taking the deposition of Defendant's Senior Account and Finance Manager, Randy Bynum. Sansanowicz Dec ¶¶ 14-16. Plaintiff also filed a charge with National Labor Relations Board related to this case in which he challenged the arbitration agreement and class action waiver and prevailed. Sansanowicz Dec ¶5. On April 6, 2017, the Parties participated in a full-day mediation session with mediator David Rotman, Esq., in San Francisco, but when they reached an impasse Mr. Rotman made a formal mediator's proposal that the case be resolved with a claims-made, reversionary settlement with a defined settlement fund of $3,750,000. Sansanowicz Dec ¶6. After carefully considering the proposal and weighing the effect of the reversionary settlement versus the potential recovery in a nonreversionary settlement (that was not being offered),[1] Plaintiff concluded that the proposed settlement was potentially better for the putative class. *Ibid.* After three months of further negotiations over the long-form agreement – including Plaintiff's stipulation to dismiss his NLRB complaint, an integral factor in helping to bring about the classwide settlement – the Parties submitted the Settlement for preliminary approval. *Ibid.*

The Court preliminarily approved the Settlement and Class Notice and all related forms on July 28, 2017, appointing Plaintiff as Class Representative, Plaintiff's counsel as Class Counsel, and Rust Consulting as the claims administrator, as well as setting timelines for the claims and settlement procedure. Sansanowicz Dec ¶7 (Doc. 118.) Following the Court's Order, the claims administrator mailed the court-approved notice packets to 847 class members on August 25, 2017. Declaration of Amanda

---

[1] As discussed at length in the Parties' Joint Supplemental Brief in support of preliminary approval, had Defendant offered to settle this action with a total non-reversionary fund for the amount of the minimum payout under the current Settlement, $2,417,000 (50% floor of $1,333,000, plus $1,084,000 in hard costs), the net settlement fund would have been $1,666,000. (Doc. 114, at 5:10-6:2.) The current net fund of $1,511,847 is approximately 91% of that amount – and if approved, the current Settlement **requires Defendant to pay $178,847 more** than in that hypothetical scenario

4

Myette ("Myette Dec") ¶12). On September 8, 2017, the claims administrator initiated a text message reminder to 588 class members. *Ibid.*, ¶13. On September 25, 2017, the claims administrator mailed reminder postcards to 683 class members. *Ibid.*, ¶14. Both the text messages and the postcards contained the same language. *Ibid.*; Exh. A. The claims administrator also performed skip traces on 164 undeliverable notices, obtaining 115 more current addresses, and remailed four other notices that were returned by the Post Office. Myette Dec ¶¶15-16.

On October 5, 2017, Plaintiff filed his Motion for an Award of Attorney's Fees and Costs and Class Representative Enhancement. Sansanowicz Dec ¶9 (Doc. 123-1.)

On October 13, 2017, the Parties filed a Joint Status Report attesting that the most current weekly report from the claims administrator showed that 252 class members had claimed $1,043,116 through five of the eight weeks in the notice period, and that the Parties anticipated class members would claim at least the 50% participation floor (see below) set forth in the Settlement. Sansanowicz Dec ¶10 (Doc. 124.) The Parties' prediction proved correct, as in the final tally 367 class members claimed 56.71% of the total potential settlement fund. Myette Dec ¶17. **The average individual Settlement Sum, pending Court approval, will be $4,119.47, and the highest individual portion will be $14,639.25**. *Ibid.* During the relevant time period, the average regular hourly rate of pay was only $24.36 per hour, and therefore the average individual recovery represents nearly 170 work hours, or 4.23 workweeks, per class member. Sansanowicz Dec ¶17. **Further, no class member opted out of the Settlement, and no one objected.** Myette Dec ¶¶18-19.

Plaintiff now seeks final approval of the Settlement.

### III.   SUMMARY OF SETTLEMENT

The principal terms of the Settlement are as follows:

#### A. The Proposed Stipulated Class.

The proposed "Settlement Class" is comprised of 847 non-exempt construction

---

($2,595,847, as opposed to $2,417,000), even with the claims-made reversionary agreement.

**MEMORANDUM OF POINTS AND AUTHORITIES**

workers of Defendant Kellogg Brown & Root, LLC who worked in California at the Molycorp Mountain Pass rare earth facility (in San Bernardino, CA) at any time from June 16, 2010, through July 28, 2017, who do not properly request to exclude themselves from the settlement. (Settlement, ¶¶ 1.4, 1.8, 1.13, 1.35)

### B. Fund Created.

The Parties stipulated to a maximum gross amount of $3,750,000. This Maximum Settlement Amount ("MSA") includes payments made to Participating Class Members, settlement administration costs, awards of attorneys' fees and costs, the Class Representative Enhancement for Plaintiff, employer and employee payroll taxes on the portion of the settlement payments to Participating Class Members deemed as wages, and payment to the California Labor and Workforce Development Agency ("LWDA"), and shall be allocated to Participating Class Members who submitted claim forms during the Notice Period and who did not opt out of the Settlement. (Settlement, ¶¶ 1.18, 1.26, 1.27, 1.35).

Of the MSA, the parties agreed to a Maximum Settlement Payment Fund ("MSP") of $2,666,000 for Participating Class Members, of which Defendant agreed to pay at least 50% ($1,333,000), or a 50% payment floor. Unclaimed funds revert to Defendant. (Settlement, ¶¶ 1.19, 2.5.2)

Proportionate shares of the MSP equal to (i) the number of weeks the Participating Class Member was employed, multiplied by (ii) the quotient of the MSP divided by the total number of employment weeks (19,304) of all Participating Class Members. (Settlement, ¶¶ 1.18, 1.32, 1.37).

### C. Class Representative Enhancement.

Subject to Court approval, Plaintiff shall be paid a Class Representative Enhancement not to exceed $20,000 for his time and effort in bringing and presenting the action, and in exchange for a general release of all claims, known or unknown, as well as a dismissal of the charge he filed with the National Labor Relations Board related to this case in which he challenged the arbitration agreement and class action waiver and prevailed, to be paid from the MSA. (Settlement, ¶¶ 1.18, 2.8.2, 2.11.21)

### D. Attorney's Fees and Costs.

Subject to Court approval, class counsel shall receive an award of attorneys' fees in an amount not to exceed $937,500.00, representing 25% of the MSA, and costs in an amount not to exceed $21,500. Said fee includes all of the work remaining to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered, and obtaining dismissal of the action. Any fees or costs awarded shall be paid from the MSA and, in the event counsel is awarded less than requested, shall be redistributed pro-rata to class members. (Settlement, ¶¶ 1.18, 2.8.1).

### E. LWDA Payment.

Subject to Court approval, $100,000 of the MSA shall be allocated to settlement of PAGA claims – 75% shall be paid to the LWDA, and 25% shall be part of the MSP distributed to Participating Class Members. (Settlement, ¶¶ 1.18, 2.7.2)

### F. Settlement Administration Costs.

The court-appointed claims administrator, Rust Consulting, Inc. ("Rust"), incurred $30,000 in costs in administrating this settlement, which the Parties agreed will be paid out of the MSA. (Settlement, ¶¶ 1.3, 1.18,; Myette Dec ¶20.) This is a litigation cost, is a reasonable amount for such fees (based on class counsel's experience), and is supported by the Parties' Settlement. Sansanowicz Dec ¶20.

### G. Taxes.

Employer and employee taxes will be deducted from the wage portion (25%) of the MSP (the remaining 75% is deemed payment for penalties, liquidated damages, and interest). Participating Class Members shall be responsible for any tax liability, if any, on the non-wage portion of their respective Settlement Sums (i.e., the total, gross amount due to an individual Participating Claimant). (Settlement, ¶¶ 1.27, 2.2.1)

### H. Settlement Class Member Released Claims.

Settlement Class Members release all claims related to the claims in this action, including an allegation of failure to provide rest periods or pay rest period premiums, arising from the class members' employment in California during the Class Period (June 16, 2010, through July 28, 2017), except Settlement Class Members who do not

7

submit claim forms and become Participating Class Members will not be deemed to have released claims arising directly under the Fair Labor Standards Act ("FLSA"). This release will, upon the date the judgement becomes final ("Effective Date"), release and discharge the Releasees.[2]

The Released Claims include any known or unknown claims under state or federal law, for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, that arose from Defendant employing the Class Members in California.

The Settlement binds all Class Members, since none opted out. (Settlement, ¶¶ 1.34, 2.7.1)

## IV.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

In practical terms, the settlement of a class action follows three parts: 1) preliminary approval of the proposed settlement; 2) notice to class members, and 3) a Final Approval hearing or "fairness hearing" at which evidence and argument may be heard on the fairness, adequacy and reasonableness of the settlement. In the instant matter, the Court has given preliminary approval of the settlement, Notice has been sent to all Class Members, and the claims procedure has been completed.

### A. Legal Standard for Final Approval of Class Action Settlement.

Court approval is required in order to settle a class action, and the decision to approve or reject a proposed settlement is committed to the Court's sound discretion. Fed. R. of Civ. Proc., Rule 23(e); *see also Dunleavy v. Nadler,* 213 F.3d 454, 458 (9th Cir. 2000)(*citing Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1238 (9th Cir. 1998)). The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th

---

[2] "Releasees" means Defendant and each of its parents, affiliates, subsidiaries, predecessors, successors, divisions, joint venturers, attorneys, actual or alleged joint employers, and assigns, including without limitation MolyCorp, Inc., and each of these entities' past or present owners, directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, re-insurers, shareholders, attorneys, employee benefit plans, employee benefit plan trustees, fiduciaries,

Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

"A settlement should be approved if 'it is fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir.1993) (internal citations omitted). That determination is often said to require "'a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.' This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi*, 8 F.3d at 1375 (internal citation omitted).

**B.  The Settlement Is Presumptively Fair, Reasonable, And Adequate.**

At final approval, a court may presume a Settlement is fair where (1) the settlement is reached through arm's-length bargaining, (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently, (3) counsel is experienced in similar litigation, and (4) the percentage of objectors is small. *Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794, 1802 (1996); *see Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) (aff'd, 661 F.2d 939 (9th Cir. 1981)).

To prevent fraud, collusion or unfairness to the class, a class action settlement requires court approval. *Malibu Outrigger Bd. of Governors v. Super. Ct.* (1980) 103 Cal.App.3d 573, 578-79. The purpose is to protect those class members, including the named plaintiff, whose rights may not have been given due regard by the negotiating parties. *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (*cert. denied*, 459 U.S. 1217 (1983). A trial court has broad powers to determine whether a proposed class action settlement is fair. *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338 (9th Cir. 1980) (disapproved

and administrators, and personal or legal representatives.

**MEMORANDUM OF POINTS AND AUTHORITIES**

of on other grounds by *Evans v. Jeff D.*, 106 S.Ct. 1531 (1986)) ("Overall fairness is the touchstone for evaluating the conduct and resolution of class actions, and the onus for this evaluation is vested in the trial court."); *Doninger v. Pac. NW Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977) ("[T]he district court is in the best position to consider the most fair and efficient procedure for conducting any given litigation.").

At the Final Approval Hearing, the Court should consider the relevant factors, such as the strength of the Plaintiff's case, the risk, expenses, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. *Officers for Justice*, 688 F.2d at 624. "This list is not exhaustive and should be tailored to each case. Due regard should be given to what is otherwise a private consensual agreement between the parties." *Dunk*, 48 Cal.App.4th at 1801.

This presumption of fairness applies here. Negotiations between the Parties were extensive and occurred at arm's length, culminating in a mediator's proposal from California's preeminent class action mediator, David Rotman (whose previous mediator's proposals that have included claims-made, reversionary agreements have been approved in the Central District), upon which the essential terms of the Settlement are predicated. Experienced class counsel engaged in substantial fact investigation and discovery before settling, including review of approximately 1,000 pages of documents and two depositions that provided crucial evidence that substantiated the Settlement. Moreover, **no Class Members objected** to the proposed Settlement. Thus, the Settlement is presumptively fair, reasonable, and adequate.

### C. The Settlement Is Demonstrably Fair, Reasonable, and Adequate.

Not only is the present Settlement <u>entitled</u> to a presumption of fairness, the proposed Settlement *is* fair given the strengths of Plaintiff's case, the risks, expenses, complexity, and likely duration of further litigation, the risk of maintaining class

action status throughout trial, the Settlement amount (including average per member recovery), the extent of completed discovery, the stage of the proceedings, counsel's experience and views of the Settlement, and the reaction of the class members to the Settlement. *Alberto v. GMRJ Inc.*, 252 F.R.D. 652, 664-65 (E.D.Cal. 2008) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also* 5 James Wm. Moore, *et al.*, *Moore's Fed. Practice,* § 23.85(3) (3d ed. 1997). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers*, 688 F.2d at 682).

### 1. The value of the Settlement favors final approval.

As detailed in Plaintiff's Motion for Preliminary Approval, Plaintiff believes he had sufficient evidence at the time of mediation to evaluate and prevail on his compensable drive time, overtime, meal period, and rest period claims. (Doc 110-1, 4:16-8:17). Plaintiff further estimated the maximum payout of $3,750,000 represents nearly 30% of all the major damage components of Plaintiff's claims (if the rest period claim were included; 50% if excluded). *Ibid.* Any settlement is, of course, a compromise figure, yet the proposed Settlement reflects a significant portion of the maximum potential value of class claims, and the amount claimed by class members ($1,511,847, or 57%) is a significant portion of that proposed settlement amount.

As set forth above, and reinforced by defense counsel at the hearing on preliminary approval, KBR committed to pay a *minimum* of $2,417,000 (50% of $2,666,000, or $1,333,000, plus $1,084,000 "off the top" for claims administrator fees, attorney's fees and costs, class rep enhancement award, and LWDA payment) and a potential maximum of $3,750,000. As it stands, if the Court approves the above proposed fees and penalties, Defendant's total payout will be $2,595,847. If Defendant will have to pay nearly 70% of the Settlement's maximum potential payout, class counsel has not undersold the class' claims. *See* William B. Rubenstein, et al., *Newberg on Class Actions* § 12:29 (5th ed.) (example of a $10 million settlement with a reversion clause and 25% fees but only a 5% claims rate ($500,000) by the class,

11

such that the attorneys received $2.5 million (83% of the entire payout) of the entire payout of only 30% ($3 million) of the proposed settlement; here, class members' claims are nearly 60% of the entire payout of $2,595,847, attorney's fees only 36%).

Further, a $2.6 million payment for a class of employees who have not worked at the project in question for *over four years* from a company that has ceased all operations in the State of California is a tremendous result for the participating class members. That 62.4% of the readily accessible class of construction workers[3] – a notoriously transient community of employees – have been able to claim over $1.5 million demonstrates a significant amount of relief to the class members. This is not the case where, like certain consumer class actions, participation was not expected to exceed 15%; here, there was a minimum *guaranteed* floor of 50% ($1.3 million), and class members' claims exceeded that floor by nearly $200,000. Rather, the final payout, if approved, will be approximately 70% of the maximum potential payout under the mediator's proposal – again, without the benefit of an additional bump from current employees (typically a larger portion of any employment class), since KBR no longer operates in California. Moreover, if a per member average recovery amount of $1,200 is acceptable in a claims-made, reversionary settlement, then an average recovery amount of **$4,120** under similar terms should be, *a fortiori*, fair, adequate, and reasonable. *See Lemus v. H & R Block Enter. LLC*, 2012 WL 3638550, at *5 (N.D. Cal. Aug. 22, 2012) (appeal dismissed) (**approving a reversionary, claims-made settlement** because "[a] significant portion of the class participated in the settlement, and the average class member recovery [was] at least $1,200…").

In addition, class counsel have protected class members' rights by ensuring that the class-wide release is narrowly tailored in scope, releasing only claims that were pled or could have been pled based on factual allegations in the operative complaint.

### 2. The risk, expense, complexity, and likely duration of further litigation favors final approval.

---

[3] It stands to reason that class members with the highest number of workweeks would file claims.

The elephant in the room, of course, is the Supreme Court's pending decision on the *Ernst & Young* case (and two other related cases) and the very real possibility that should the Court not grant final approval, further litigation in this matter could get scuttled for 847 bilateral arbitrations – and with that would disappear any hope of retaining any semblance of the current Settlement for the class. As discussed in Plaintiff's Motion for Preliminary Approval, given the current makeup of the high court, as well as the fact that the Solicitor General's office has done an about face on the petition for review it filed under the Obama administration and suddenly *has sided with the employers and against the NLRB*, there is a high likelihood class waivers (such as the one in this case) would be upheld. Plaintiff concluded that it was in the best interest of the class to settle this dispute at reasonable value (discussed above) and to do so quickly, before any ruling from the Supreme Court.

Even setting aside that issue, Plaintiff faced additional risks in this matter. While Plaintiff believes his claims were meritorious, he would have faced numerous challenges at class certification, establishing liability, and proving damages if he had continued to litigate this case. Defendant has consistently and vigorously denied liability and the appropriateness of class certification.

Despite their differences regarding the appropriateness of class certification and the merits of Plaintiffs' claims, however, the Parties agree that litigating this case through verdict would be time-consuming and expensive. Consider the scope of discovery, where key witnesses (such as the two deposed in this case, Plaintiff and Randy Bynum (KBR's Senior Account and Finance Manager, who oversaw payroll functions for the Molycorp project) would be far-flung, and memories fade over time.

Even if Plaintiff had prevailed at trial, an appeal likely would have followed.[4] Plaintiff then would face the threat that an appellate court could diminish or eliminate the value of his claims.

The Settlement provides instead for immediate and substantial relief without the

---

[4] KBR noticed an appeal of this Court's Order denying Defendants' Motion to Compel Arbitration.

**MEMORANDUM OF POINTS AND AUTHORITIES**

risk and delay of continued litigation. The Court should thus grant final approval of the Settlement to provide class members with prompt, efficient, and reasonable relief.

### 3.  Plaintiff conducted significant discovery prior to settling, and the major settlement terms  were proposed by an experienced mediator.

The stage of the proceedings at which this Settlement was reached also favors approval of the Settlement. *In re Warner Comm'ns Sec. Litig.*, 618 F.Supp. 735, 741 (S.D.N.Y. 1985), (aff'd, 198 F.2d 35 (2d Cir. 1986)); *Ellis*, 87 F.R.D. at 18; *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617-18 (N.D.Cal. 1979). The litigation reached a stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *In re Warner*, 618 F.Supp. at 745; *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F.Supp. at 617-18. Plaintiff's investigation was sufficient: an informal pre-mediation data exchange of nearly 1,000 pages, including hundreds of pages of payroll summaries and handrwritten time sheets for a broad cross-section of the putative class during the class period (approximately 30% of all workweeks), as well as documents related to the claim for uncompensated drive time and KBR's attendance policy. Sansanowicz Dec ¶15. In addition, KBR deposed Plaintiff and class counsel deposed Randy Bynum, who oversaw payroll functions for the project in question. *Ibid.*, ¶16.

Plaintiff prepared and submitted a detailed mediation brief and damages analysis to the mediator and shared his brief with Defendant. Sansanowicz Dec ¶6. Plaintiff and class counsel engaged in a full-day mediation session at which the Parties and mediator discussed the strengths and weaknesses of Plaintiff's case.  *Ibid*. After the Parties had reached an impasse, the mediator issued his proposal with the key terms of what became the Settlement, including the claims-made, reversionary elements. *Ibid.* Plaintiff's final agreement to the Settlement did not occur until after he possessed sufficient information to make an informed judgment regarding the results that could be obtained through further litigation. Sansanowicz Dec ¶¶6, 14-17. Plaintiff's diligence in evaluating and settling this matter supports final approval.

### 4.  Class counsel's experience and views favor final approval.

Class counsel support the Settlement as fair, reasonable, and adequate, and in

the best interest of the class. The judgment of experienced counsel regarding the settlement is entitled to great weight. *Boyd*, 485 F.Supp. at 622 ; *Ellis*, 87 F.R.D. at 18 ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."); *In re Warner*, 618 F.Supp.at 741. The recommendation of class counsel should be given a presumption of reasonableness. *Boyd*, 485 F.Supp at 622.

Class counsel's extensive experience with wage and hour claims, including litigating collective and class actions, is discussed in greater detail in Plaintiff's Motion for an Award of Attorney's Fees and Costs and Class Representative Enhancement. (Doc. 123-1, 123-2.) This experience allowed class counsel to tailor their discovery and investigation properly and to accurately assess KBR's exposure.

Further, class counsel have effectively negotiated the proposed Settlement with ample knowledge of the factual and legal issues underlying the claims and defenses in the action, as well as the strengths and weaknesses of Plaintiff's case.

### 5. Class members' positive reaction to the settlement strongly favors final approval.

Courts may look to class member reaction in determining whether the Settlement is fair, adequate, and reasonable, and a low number of opt-outs and objections by class members supports the conclusion that a class action settlement is fair, adequate, and reasonable. *Churchill Villages, LLC v. Gen. Electric*, 361 F.3d 566, 575-76, 577 (9th Cir. 2004) (cert. denied, 543 U.S. 818 (2004)); *In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D.Cal. 2008).

In this case, <u>no</u> class member has objected to the Settlement, and <u>no</u> class member has requested to be excluded from the Settlement. Myette Dec ¶¶ 18-19. The complete absence of objections and opt-outs indicates acceptance of the Settlement's terms by the members of the class and strongly supports the conclusion that final approval should be granted. *Churchill Villages*, 361 F.3d at 577.

### D. The Notice Procedures Satisfy Due Process Requirements.

As detailed above, the class notice satisfies due process requirements because it

15

was reasonably calculated to provide actual notice to class members of the Settlement and of the final approval hearing. *Churchill Villages,* 361 F.3d at 575 (notice deemed sufficient if it generally describes the settlement's terms in enough detail to alert those with adverse viewpoints to investigate and to come forward and be heard); *Misra v. Decision One Mortg. Co.,* 2009 WL 4581276 at *9 (C.D.Cal. Apr. 13, 2009) (approving direct mail notice, updated through National Change of Address Database, and "skip tracing" for returned notice); *Newberg*, *supra*, §§ 8.21, 8.39.

### E. The Settlement of PAGA Penalties Is Fair and Reasonable.

The Parties agreed to the sum of $100,000 in exchange for a release of PAGA claims. Seventy-five percent (75%) of this amount, or $75,000, will be paid out of the Maximum Settlement Amount to the Labor and Workforce Development Agency ("LWDA"), and the balance will become part of the net Settlement Amount and distributed in full to class members. (Settlement, ¶¶ 1.18, 2.7.2) Class counsel has reviewed PAGA payments in similar cases and believes that an allocation in this proportion is reasonable. Sansanowicz Dec ¶21.

### V. CONCLUSION

The Settlement is fair, adequate, and reasonable. It will result in substantial payments to class members, is non-collusive, and was achieved as a result of informed, extensive litigation, and arm's-length negotiations by counsel experienced in wage and hour class action litigation, with the assistance and proposal of an experienced and highly-regarded mediator. For the foregoing reasons, Plaintiff respectfully requests the Court grant final approval of the proposed Settlement and enter the proposed Final Approval Order submitted herewith, including the Claims Adminstrator's reasonable fee ($30,000) and the requested Class Representative Enhancement Award ($20,000), Attorney's Fees ($937,500) and Costs ($21,168.72), filed as a separate motion.

Dated: November 22, 2017          FELDMAN BROWNE OLIVARES, APC
                                   By:      /s/   Leonard H. Sansanowicz
LEE R. FELDMAN, LEONARD H. SANSANOWICZ, Attorneys for Plaintiff
DAVID TOTTEN and all others similarly situated and similarly aggrieved

16